DAVIDA BROOK (275370)
dbrook@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Phone:  (310) 789-3100; Fax: (310) 789-3150

ARUN SUBRAMANIAN
(*Pro Hac Vice forthcoming*)
asubramanian@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019-6023
Phone: (212) 336-8330; Fax: (212) 336-8340

(*See additional counsel on signature page*)

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE on behalf of herself and all others similarly situated,<br><br><p align="center">Plaintiff,</p><br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),<br><br><p align="center">Defendants.</p> | Case No. 8:21-cv-00338<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF FEDERAL SEX TRAFFICKING LAWS**<br><br>**JURY TRIAL DEMANDED** |

### **NATURE OF THE ACTION**

1.     Plaintiff brings this proposed class action for damages and injunctive relief on behalf of herself and all persons who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Defendants in the last ten years.

2.     As alleged below, over the course of the last decade, Defendants have knowingly benefited financially from thousands—if not millions—of videos posted to their various websites featuring victims who had not yet reached the age of majority.   Rather than address this horrifying and pervasive trend, for years, Defendants took almost no action, refusing to so much as institute any semblance of an age-verification policy that would prevent the uploading of this deeply problematic content.

3.     The reason for Defendants' inaction is simple:  greed.  As Pornhub's own Senior Community Manger publicly acknowledged via a Reddit post, **age verification would be a "disaster"** for Pornhub because it **"costs us money to verify"** and would result in a **50% reduction in traffic**.



2

4.      In short, Defendants chose to prioritize their profits over the safety and welfare of children across the globe.

5.      Defendants' decision is not only upsetting, it is illegal.   As the Trafficking Victims Protection Reauthorization Act (TVPRA) makes clear, it is unlawful for any person or entity to knowingly (whether because it knew or should have known) benefit financially from sex trafficking, which includes any instance where a person under the age of 18 is caused to engage in a commercial sex act.  That is precisely what Defendants have done here—on an incredible scale.

## THE PARTIES

6.      Plaintiff Jane Doe No. 1 is an individual who is now the age of majority under U.S. and California law.  She is a United States citizen who resided within this judicial district at all relevant times alleged herein.  She is also a victim of child sex trafficking and child pornography, as alleged herein.

7.      Plaintiff Jane Doe No. 1 requests that this Court permit her to proceed under a pseudonym.  If required by the Court, she will seek permission to proceed under this pseudonym.  Plaintiff's anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature given that the allegations detailed herein relate to Plaintiff's experience as a victim of child sex trafficking and child pornography.  Plaintiff's sensitive and personal experiences were not the result of any voluntary undertaking on her part, and neither the public, nor the Defendants, will be prejudiced by Plaintiff's identity remaining private.

8.      Defendant MindGeek USA Incorporated is a corporation organized and existing under the laws of the state of Delaware, with an established place of business located at 23000 West Empire Avenue, 7th Floor, Burbank, California 91504.  Upon information and belief, defendant can be served with process by serving its registered agent for service of process in the State of California, CT Corporation System, 818 W. 7th Street, Suite 930, Los Angeles, CA. 90017.  Upon information and belief, MindGeek USA Incorporated is a wholly owned subsidiary of MindGeek S.A.R.L.,

either directly or through intermediary companies also under the control MindGeek S.A.R.L.

9.      Defendant MindGeek S.A.R.L. is a foreign entity (a Société à responsabilité limitée) organized and existing under the laws of Luxembourg and conducting business in the United States, including in this District.  Although incorporated in Luxembourg, Mindgeek S.A.R.L.'s principal place of business is Montreal, Canada, and has satellite offices in, among other places, Los Angeles, California.

10.      Defendant MG Freesites, Ltd. (d/b/a Pornhub) is a company incorporated in the Republic of Cyprus and conducting business in the United States, including in this District.  Upon information and belief, MG Freesites, Ltd. is a wholly owned subsidiary of MindGeek S.A.R.L., either directly or through intermediary companies that are also under the control of Mindgeek S.A.R.L.  Upon information and belief, MG Freesites, Ltd. is predominantly under the control of and operated by directors, officers, and employees working in MindGeek's offices in the United States and Canada, with little business operations being conducted within the Republic of Cyprus.

11.      Defendants MG Freesites II, Ltd. is a company incorporated under the laws of the Republic of Cyprus conducting business throughout the United States, including within this District.

12.      Defendant MG Content RT Limited is a company organized under the laws of Ireland conducting business throughout the United States, including within this District.

13.      Defendant 9219-1568 Quebec, Inc. (d/b/a MindGeek) is a company organized and existing under the laws of Canada with a principal place of business located in Montreal, though it conducts business throughout the United States, including within this District.

14.    Herein, "Defendants" or "MindGeek" refers to MindGeek S.A.R.L., MG Freesites, Ltd., MG Freesites II, Ltd., MG Content RT Limited, 9219-1568 Quebec, Inc., MindGeek USA Incorporated, and all of their parents, subsidiaries and affiliates.

15.    Defendants have incorporated dozens of subsidiaries and related companies around the world, the details of which are unknown to the Class at this time.  However, all the MindGeek entities operate as a single business enterprise, commingling their funds and other assets to shelter and avoid liabilities and to hide the identity of their owners, and are jointly and severally liable in this action as alter egos of one another.

16.    Plaintiff is unaware of any MindGeek-related entity that does not act at the direction of the MindGeek enterprise operated by Defendants.

## JURISDICTION AND VENUE

17.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

18.    The claims asserted herein arise under 18 U.S.C. § 1595(a).  Pursuant to Section 1595(a), "an individual who is a victim of a violation of this chapter" may bring a civil action in "an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

19.    The court may properly exercise personal jurisdiction over all Defendants.  Each of the Defendants maintains minimum contacts with this District, such that maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.

20.    Defendants have offices in this State and this District, conducting business directly related to the websites at issue in this case.  Specifically, MindGeek USA Incorporated is a corporation organized and existing under the laws of the state of Delaware, with an established place of business located at 23000 West Empire Avenue, 7th Floor, Burbank, California 91504.  According to recent papers filed with

the California Secretary of State, MindGeek USA Incorporated also maintains a business, mailing, and street address at 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367. Collectively, Defendants transmit millions upon millions of videos and images to and from this State on an annual basis. And according to analytics Defendants recently posted on Pornhub.com, Los Angeles, California is the fourth city by volume of Pornhub.com usage.

21.     Defendants have also purposefully availed themselves of this Court's jurisdiction, including in the case of MindGeek S.A.R.L. and MindGeek USA, Inc., by having litigated in this District. *See Preservation Technologies, LLC v. MindGeek USA, Inc. and MindGeek S.A.R.L.*, Case No. 2:17-cv-08906-DOC-JPR (C.D. Cal.).

22.     Jurisdiction is further appropriate under 18 U.S.C. §1596, which provides for jurisdiction over any offender, in addition to any "domestic or extra-territorial jurisdiction otherwise provided by law," where the offender is "present in the United States, irrespective of the nationality of the alleged offender."

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought.  Venue is also appropriate in this district because defendant MindGeek USA, Inc. maintains a place of business in this district.

## I.     <u>SEX TRAFFICKING AND CHILD PORNOGRAPHY ON THE INTERNET</u>

24.     Sex trafficking and the proliferation of child pornography are rapidly growing problems in the United States.  Human trafficking is a 150-billion-dollar industry.  Out of an estimated 40.3 million victims, 25% are children.[1]

25.     The rise of the Internet and e-commerce has facilitated the rapid growth of the market for child pornography online.  The Internet and digital technologies

---

[1] https://coil.com/p/RileyQ/Child-Trafficking-What-You-Need-To-Know/mj4WEwhW7

have created new models for sexual exploitation and trafficking, which are hidden and protected by cryptocurrency, laundered money, foreign Internet servers and anonymous messaging applications.  The Child Rescue Coalition alone has identified 71 million unique IP addresses worldwide sharing and downloading sexually explicit images and videos of children.[2]

26.     The Internet is the number one platform for customers to buy and sell sex with children in the United States.  Many sex buyers use the Internet to identify and connect with sellers and victims.  Traffickers, in turn, use online networks, social media, websites, and dating tools to disguise their identities while identifying potential victims, which reduces traffickers' chances of being caught by law enforcement.

27.     Americans are some of the top consumers and producers of child pornography.  According to the U.S. Department of Justice, "Federal law defines child pornography as any visual depiction of sexually explicit conduct involving a minor (persons less than 18 years old)."

28.     According to the National Center for Missing & Exploited Children, their cyber tip line has received more than 50 million reports of suspected child exploitation from 1998 through 2019, with 18.4 million reports in 2018 alone.  The vast majority of these reports contain child sexual abuse material, most of which is on the Internet.  North America now hosts 37% of child sexual abuse content and children under the age of 10 now account for 22% of online porn consumption among those under the age of 18, while 10-14 year-olds make up 36%.[3]

29.     The link between sexual exploitation and pornographic videos is undeniable.  According to an article by Melissa Farley, 49 percent of sexually

_____

[2] *Id.*

[3] https://www.prnewswire.com/news-releases/enough-is-enough-calls-on-doj-to-investigate-mindgeek-for-a-trifecta-of-potential-us-law-violations-child-abuse-material-trafficking-videos-and-obscene-content-301196447.html

exploited women say pornographic videos of them were made while they were being sold for sex.[4]

30.    As just one example, in 2009, fourteen-year-old girl Rose Kalemba went for a walk when a man appeared from the shadows, forced her into a car at knifepoint.[5]  He and a second man raped her while a third man filmed parts of the assault.  The men threatened to kill her before they dumped her in the street, a thirty-minute walk from her house.  A few months later, she was browsing MySpace where several kids from her school were sharing a link.  Rose was tagged in the link so she clicked on it and was directed to Pornhub where several videos had been posted depicting her attack.  The titles of the videos made it clear that she was underage: "teen crying and getting slapped around" and "teen getting destroyed."  Others indicated that she was both unconscious and underage:  "passed out teen."  One of the videos had over 400,000 views.  Within days, most of the children at Rose's school had seen the videos.  Rose then emailed Defendants over a period of six months begging for them to take down the videos with no reply.  The videos remained live.  Finally, Rose set up a new email address posing as a lawyer and threatened legal action if the videos were not removed.  Only then did Defendants finally take down the videos.

## II.    THE TVPA AND TVPRA

31.    In response to the growing problem of sex trafficking, in 2000, Congress passed the Trafficking Victims Protection Act ("TVPA"), which laid the groundwork for the federal response to human trafficking.

32.    In 2003, Congress reauthorized the TVPA and passed the Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, § 4(a)(4)(A),

---

[4] "Renting an Organ for Ten Minutes:  What Tricks Tell Us about Prostitution, Pornography, and Trafficking," in *Pornography:  Driving the Demand in International Sex Trafficking*, ed. David E. Guinn and Julie DiCaro (Bloomington, IN:  Xlibris, 2007), 145.
[5] https://www.bbc.com/news/stories-51391981

117 Stat. 2875, 2878 (2003) ("TVPRA").  Under the TVPRA, trafficking victims can sue their traffickers in federal court.

33.     In 2008, Congress amended the TVPRA to make it easier for victims of trafficking violations to bring civil suits.  First, the civil remedy was expanded to include enterprise liability.  It was likewise expanded to include anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).   Second, Congress expanded the statute's reach to include extraterritorial jurisdiction for certain trafficking offenses. *Id.*  The statute of limitations is ten years, or ten years after the victim turned 18 if the victim was a minor. *See id.* § 1595(c).

34.     Commercialization of sex acts involving minors is a violation of the TVPRA.  Under the TVPRA,

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. §1591(a).  Under §1595(a), not only perpetrators who act "knowingly" under §1591, but also "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter" is civilly liable.

35.    In 2018, in response to platforms such as those run by Defendants knowingly allowing human trafficking to occur and profiting from it, Congress passed the Allow States and Victims to Fight Online Sex Trafficking Act/Stop Enabling Sex Traffickers Act (FOSTA/SESTA).  Pornhub and other tube sites run by Defendants have traditionally been shielded from liability under Section 230 of the Communications Decency Act, which protects internet platforms on which members of the public post their own content.  The new statute, however, makes it illegal to knowingly assist, facilitate, or support sex trafficking, and amends the Communications Decency Act's Section 230 safe harbors (which make online services immune from civil liability for their users' actions) to authorize enforcement of federal or state sex trafficking laws.

## III.   DEFENDANTS' BUSINESS MODEL

36.    Defendants constitute a series of privately held companies that operate many popular pornographic websites, including, among others, Pornhub, RedTube, and YouPorn.  Defendants also operate many adult film production companies, including Brazzers, Digital Playground, Men.com, Reality Kings, Sean Cody, and WhyNotBi.com.

37.    As explained by Defendants' leadership in a recently authored letter to the Canadian Parliament:

> Our flagship video sharing platform is Pornhub.  Created in 2007, Pornhub is a leading free, ad-supported, adult content hosting and streaming website, offering visitors the ability to view content uploaded by verified users, models, and third-party adult entertainment companies.

Pornhub Premium, our subscription service, provides subscribers with additional exclusive studio-produced content in an ad-free environment.[6]

38.     In 2019, Pornhub had roughly 42 billion visits, an average of 115 million visits per day.  This made Pornhub the eighth most visited website in the United States, falling just behind such household names as: Google.com (1st), YouTube.com (2nd), Facebook.com (3rd), Amazon.com (4th), Yahoo.com (5th), Twitter.com (6th), and Instagram.com (7th).   And beating out such other household names as: Wikipedia.org, Zillow.com, and Zoom.us.[7]

39.     Further, according to analytics Defendants have posted on Pornhub.com, the United States is the top country by volume of Pornhub.com usage and, Los Angeles, California is the fourth city by volume of the same.

40.     Defendants' leadership, of course, is aware of its massive success.  In their letter to Canadian Parliament, Defendants' executives wrote:

Demand for online adult entertainment is as old as the internet.  Demand for MindGeek's content rivals that of some of the largest social media platforms.  For example, in 2020, Pornhub averaged over 4 million unique user sessions per day in Canada alone, equivalent to over 10% of the adult Canadian population.[8]

**A.     Defendants' Business Embraces User-Generated Uploads of Commercial Sex Acts**

41.     The most popular feature on Pornhub is a searchable library.  As of December 1, 2020, Pornhub had about 14,000,000 pornographic videos in its free video library.

---

[6]https://www.ourcommons.ca/Content/Committee/432/ETHI/Brief/BR11079307/br-external/MindGeek-e.pdf
[7] https://www.similarweb.com/top-websites/united-states/
[8]https://www.ourcommons.ca/Content/Committee/432/ETHI/Brief/BR11079307/br-external/MindGeek-e.pdf

42.     Pornhub and many of the other websites operated by Defendants are "tube sites."  Meaning, Pornhub's interface is similar to YouTube, with individual users—not formal studios—uploading much of the content and comments available for viewing.

43.     Pornhub depends heavily on this community of user-creators.  Until recently, in order to upload a video or image to Pornhub, all a user need do was create an account, click on the upload button next to the search bar, upload their content, and decide whether the content should be shown in standard or high definition.[9]

44.     The process takes less than ten minutes.  A user can post any video or image of any person doing anything without any consequences.  The user does not have to demonstrate that he or she owns the copyrights in the content, that those depicted in the content have consented, or that those depicted in the content are of majority age.

45.     Defendants make it easy for users to upload to its network of websites to maximize their exposure, which includes, Pornhub , Redtube, and YouPorn.

46.     Defendants also have mechanisms for users to participate in the profits from their content.  For example, to the extent a user is hoping to participate in the earnings from their uploads to Pornhub, Pornhub has a Model Program, in which users get "verified" by Pornhub staff and are paid a percentage of the ad revenue made on their verified content.

47.     Getting verified in Pornhub's Model Program only requires a user to upload a photo purportedly of himself or herself showing their username.   In describing verification, Pornhub encouraged users to "prove that you are real, stand out and attract more attention from other Pornhub community users!"  But all that is needed is a Pornhub account, an avatar uploaded to the user's account, and a verification image.  The verification image requires only that the user hold up a photo with his or her username and pornhub.com written on it (or written on the user's

---

[9] https://help.pornhub.com/hc/en-us/articles/229817547-How-do-I-upload-videos-

body).  Pornhub requires that the video show a picture of the user's face and required that the user not wear a mask or sunglasses in the picture.

48.    The below are actual examples given by Pornhub showing all that has been required for a user to become verified with Pornhub's "Model Program."



49.    In order to sign up in Pornhub's Model Hub program, a user is not even required to list his or her birthdate.  If a user clicks through the signup process, he or she is only alerted if they fail to note their gender on the Model Hub application.

50.    Indeed, Pornhub lists many reasons on their site why a Model Hub Verification Image might be rejected.  The fact that an applicant may not be 18 years old is not one of the reasons.  The only reasons described on Pornhub's site are:  (1) the photo does not show a person, (2) the photo does not show a username, (3) the photo does not say "pornhub.com," (4) the model's face is not in the photo, (5) the text is illegible, (6) the text is digital (vs. handwritten), (7) the applicant tries to be

verified using a gender other than what is listed on their application, and (8) the applicant tries to be verified as a couple when the applicant is a single person:



51.     In short, no age verification exists.  The only time age is even referenced in the process is when Pornhub requires a user to check a box indicating that they are over the age of 18 when uploading their photograph.  Defendants take no action to confirm the age of the model applicant in the submission process.

52.     There is also the other problem that even if a Model Hub applicant posted a legitimate photo of themselves where they were over the age of 18 in order to obtain Pornhub's "verification" checkmark, there is nothing to stop Model Hub users from uploading videos of someone else who is not over the age of 18.

53.     For "verified" Model Hub users, the name is obviously deceptive, as the only thing MindGeek verifies is that someone can hold up a piece of paper with writing on it.  There is no requirement to use government-issued identification.  And the verification process has nothing to do with the people **appearing** in the videos or images, whose age, as described more below, also went entirely unverified.

54. Clearly, the so-called "verification" process associated with ModelHub does nothing to protect victims of child sex trafficking. Pornhub acknowledged as much when it admitted to giving its "seal of approval" for 58 videos in which a 15-year-old girl was repeatedly assaulted, allowing Pornhub and the victim's traffickers to profit from her repeated rape.



55. Another way in which MindGeek stands out is that, until very recently, any user of MindGeek could also download videos and images from its websites. This meant that even if victims could convince a website to take down a video depicting child pornography, their videos were frequently uploaded anew and/or recirculated on other websites by users who had already downloaded the content.

**B.** **Defendants Knowingly Benefit From Child Sex Trafficking**

**1.** **Defendants Have Earned Enormous Profits**

56. Defendants generate substantial advertising revenue by hosting advertisements on their sites using their TrafficJunky ad network and other sites, which receive billions of ad impressions on a daily basis.

57.     There's no question that financial considerations drive the content on MindGeek's websites.  MindGeek collects money from ads featured with its unpaid videos.  It also collects subscriptions from premium users of its websites.  Those subscriptions generated $1.3 billion in revenue between 2012 and 2018.[10]  Following an investigation from the *New York Times* revealing the extent of child pornography featured on Pornhub's website, multiple financial institutions, including Visa, Mastercard, and Discover, stopped processing transactions for Pornhub.  Within days, Pornhub removed 10 million videos, nearly two-thirds of the videos on its site.  After the *New York Times* investigation, Mindgeek's auditor, Grant Thornton, resigned.[11]

58.     Pornhub has since made modifications to its website, like limiting content to that posted only by "verified" users in its Model Hub program.  Of course, as described above, restricting content on Pornhub to only "verified" users is meaningless because Pornhub has no age verification process in place to confirm that "verified" users are over the age of 18.  Nor does Pornhub have a mechanism in place to confirm that the user posting the video or photograph is the same as the user depicted in the video or photograph.

### 2.     Defendants Facilitate Child Sex Trafficking By Encouraging Users To Target Underage Content

59.     In an effort to attract attention and revenues, users post content that generates traffic.  Often this content is child pornography.

60.     Defendants knowingly participate in and capitalize on this user interest. In December of 2020, searches of Pornhub for terms like "girlsunder18" or "14yo" lead to more than 100,000 videos.[12]  What's more, Pornhub has recently offered

---

[10] https://www.irishtimes.com/business/economy/grant-thornton-resigns-as-auditor-to-firms-owned-by-pornhub-operator-1.4480517
[11] *Id.*
[12] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html

playlists with names like "less than 18," "the best collection of young boys," and "under---age" in an effort to entice users who would like to see content featuring underage victims.[13]  Pornhub also allows members with names like "13yoboyteen" to post videos.[14]  And Defendants have intentionally deleted words from video titles that describe criminal content, but left the actual videos on its site.

61.    Defendants also use the massive quantity of data it collects about its users to facilitate the distribution of child pornography.  By collecting data about its users, Defendants are able to track users preferences.  When a user signs up to for a Pornhub account, he or she is directed to fill out a survey describing their preferences, including hair, color, body art, ethnicity, and breast size.  The user describes their sex, sexual preference, and whether they are single or part of a couple.  The user is also presented with dozens of Pornhub categories to choose from, including "babysitter," "college," and "school" categories.  Pornhub also recommends that users sign up to follow certain channels, "pornstars," and community members to better target the content they receive.  And, of course, Pornhub asks whether a user prefers to view "professional" or "homemade" videos.  Pornhub then uses this information to target users with videos that suit their preferences.

62.    Even for users who don't voluntarily provide all of this data to Pornhub, Pornhub acquires a significant amount of data.  Whenever a user views a page on Pornhub, the website automatically receives their IP address, how full their battery is, what browser version they are using, their time zone, their system fonts, their screen resolution, and what plugins they have installed.[15]  This allows Pornhub to create a digital fingerprint that tracks users over time and across websites.  As Pornhub learns more about its users' preferences, it suggests videos it thinks they will like.  So if a user indicates a preference for child pornography, Pornhub intentionally directs that user to its illegal content.

---

[13] *Id.*
[14] *Id.*
[15] https://www.vice.com/en/article/kzmmpa/pornhub-xhamster-data-about-you

63.     Besides the entirely inadequate verification process described above, Defendants' only "protection" against the posting of underage content and other illegal content is that they hires certain moderators who view "every video and photo uploaded to Pornhub."



64.     Although Defendants claim the goal of content moderation is to locate and prevent the streaming of child pornography and other illegal material, the truth is that "the goal for a content moderator is to let as much content as possible go through" because Defendants' focus is maximizing revenue.[16]

65.     Defendants' profit-maximizing goal is made plain by the following: Despite the fact that 1.36 million new hours of video are uploaded each year to Pornhub, Defendants employ only 80 moderators across all of its websites worldwide.[17]  By contrast, Facebook has 15,000 moderators.[18]

---

[16] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html
[17] *Id.*
[18] *Id.*

66.     On information and belief, only around ten people on Defendants' moderator team are working at any given time throughout the day.  They also lack any specialized training.

67.     Looking just at the year 2019, according to Pornhub there were approximately 18,000 videos uploaded to that website daily, with an average length of approximately 11 minutes each.[19]  Assuming each of the 10 moderators were focused solely on Pornhub, and worked a full 8-hour shift, they would be required to review 1,800 11-minute videos every day, where they are screening for not just child pornography but other inappropriate content such as bestiality and even murder. That's 19,800 minutes of upload every day, meaning a single moderator is somehow required to view 2,475 minutes per hour.

68.     Defendants know that that is an impossible task, and that it necessarily leads to moderators quickly fast forwarding through, or even skipping videos/images entirely.

69.     But Defendants' business model profits from sexual videos and images featuring underage victims, and Defendants' claim that it acts "swiftly and promptly" when users violate its Terms of Service is belied by the many stories of victims whose photos and videos have been streamed on Pornhub for years with no action.

70.     Notably, on Pornhub's ModelHub page, Defendants advertise their ability to use DMCA and fingerprinting to protect pirating of videos.  Meaning, when it comes to preserving revenue, Defendants have long since demonstrated both an interest and technical ability to monitor and protect against access.  Despite being fully aware of the problem of child trafficking, Defendants did not employ similarly advanced methods to filter for underage or other illegal content.[20]

---

[19] https://www.pornhub.com/insights/2019-year-in-review
[20] https://www.pornhub.com/partners/models?_ga=2.200643118.1816855087.1613 736072-62734983.1613736072

**3.**   **Defendants Have Admitted That Videos Featuring Underage Persons Are Some Of The Most Popular/Sought-After Content In Its Entire Library**

71.   In its explanation of "How to Succeed," on Defendants' Pornhub website, Defendants direct users to use up to 16 tags that describe the video and performers; select up to 8 relevant categories; when applicable, use niche specific categories to ensure content is visible to the "right" fans; write a creative title that describes the scene, and add a stage name to the title of the video.  These tactics are all designed to generate as much traffic as possible.  The more sensational the video, the more likely it is to be streamed and generate revenues.  Defendants' categories demonstrate how it is specifically targeting viewers who are interested in child pornography, with categories like "teen," "school," "babysitter" and "old/young."[21] On the page explaining video categories, Defendants acknowledged that Teen is one of its most popular categories.[22]

72.   Defendants' description of what titles to use similarly reflects their instructions to users to make titles "enticing" so that "users will be curious enough to click!"[23]   For example, in its explanation of a bad vs. good title selection, Defendants describe how adding that a student is a participant in the video will entice users to click.[24]

**C.**   **Defendants Know That Its Websites Are Known For Sex Trafficking Activity**

73.   This is not a situation where Defendants can credibly claim ignorance. There are numerous ways in which Defendants have been made aware of the fact that its websites have become a go-to home for child pornography.

---

[21] https://help.pornhub.com/hc/en-us/articles/115007986887-Video-Categories
[22] *Id.*
[23] https://help.pornhub.com/hc/en-us/articles/115007986747-Video-Titles
[24] *Id.*

### 1.    The Presence Of Underage Pornography Is Obvious From Language On Defedants' Own Websites

74.    To start, Defendants need go no further than the language used on their own websites.

75.    For example, until very recently, a simple search of PornHub revealed countless examples of the presence—and indeed aggressive marketing—of underage pornography.

76.    As just one example, the *New York Times* recently reported that, as of December 4, 2020, a search on Pornhub for "girlunder18" led to more than 100,000 videos.[25]

77.    Similarly, as of December 4, 2020, a search on Pornhub for "14yo" led to more than 100,000 videos.[26]   And a search for "13yo" led to approximately 155,000 videos.[27]   "Girl with braces" turned up 1,913 videos and suggested to also try searching for "exxxtra small teens."[28]

78.    The *Sunday Times* similarly reported that, as of November 2019, while Pornhub had blocked users from searching terms such as "underage" and "child porn", synonyms including "jailbait", "very young girl", and "lolita" could still be used to locate content.[29]

79.    Beyond the searches, Defendants have allowed members with usernames such as "13yoboyteen" to post videos to Pornhub, and recently promoted "playlists" with names such as "less than18," "the best collection of young boys" and "under—age."

---

[25] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html
[26] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html
[27] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html
[28] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html
[29] *Need cite.*

### 2.   Presence Of Underage Pornography Brought To Defendants' Attention Via Victims

80.    Victims and their families have also notified Defendants of the presence of child pornography on their websites.

81.    Rose Kalemba, described in paragraph 30, spent six months emailing various employees of Defendants in vain, begging them to take down the footage of her abuse.[30]

82.    In her own words: "I sent Pornhub begging emails.  I pleaded with them. I wrote, 'Please, I'm a minor, this was assault, please take it down.'"  She received no reply and the videos remained live.[31]

83.    It was only removed after Ms. Kalemba had the idea to create a new email account, posed as a lawyer, and send a threatening email, that Pornhub finally took down the content.[32]

84.    Serena Fleites.  Ms. Fleites, aged just 14, was recorded in a video that was then uploaded to PornHub.[33]  In testimony before the House of Commons ethics committee, she explained; "The titles would always be something like 'preteen,' 'young teen.'"

85.    Ms. Fleites further testified that it took Pornhub more than a week to remove the video, which it only agreed to do after she was asked multiple times to prove that it was, in fact, her video and that she was underage.  As she put it:  "It was very obvious it was a child in the video . . . Even if I wasn't the girl in that video, they could still tell that was a child in that video and they were still dragging out that process."[34]

---

[30] https://www.bbc.com/news/stories-51391981
[31] https://www.bbc.com/news/stories-51391981
[32] https://www.bbc.com/news/stories-51391981
[33] https://www.thestar.com/news/canada/2021/02/01/child-porn-victim-testifies-during-day-1-of-pornhub-discussions-at-committee.html
[34] https://www.thestar.com/news/canada/2021/02/01/child-porn-victim-testifies-during-day-1-of-pornhub-discussions-at-committee.html

86.     Avri Sapir.   19-year-old sex abuse survivor-turned-activist Ms. Sapir posted the following to twitter:



87.     She went on to explain: "The more views they got, the more ads were put around and in front of the videos.  I flagged the videos as 'underage' and filled out the 'content removal request form', but nothing happened.  I watched the view count tick up faster and faster."[35]

### 3.     Presence Of Underage Pornography Brought To Defendants' Attention Via Third-Party Reporting

88.     Numerous media outlets have also notified Defendants of the presence of child pornography on their websites.

89.     In October of 2018, numerous print outlets ranging from the *New York Post*[36] to the *Mercury News*[37] reported that an investigation was launched after a high school student recognized his classmate—a 14-year-old girl—in a video uploaded to Pornhub.  The video depicted the young girl being sexually assaulted by a substitute teacher.  The classmate notified the principal, who in turn contacted authorities.

---

[35] https://www.nzherald.co.nz/world/child-abuse-victim-says-pornhub-profited-from-her-child-rape/W2MFWK6XLXP5RFYETS7J7LVBSQ/
[36] https://nypost.com/2018/10/26/videos-on-pornhub-showed-female-teacher-having-sex-with-teen-girl-cops/
[37] https://www.mercurynews.com/2018/10/26/pornhub-videos-lead-to-redwood-city-womans-arrest/

90.    Just one month later, in November 2019, the *Sunday Times* of London published an investigation in which it questioned Pornhub's claim that it "bans content showing under-18s and removes it swiftly."[38]   It reported that, in just minutes of searching on the website, it was able to find dozens of examples of illegal material. Including an entire account called "Candid teen asses," devoted to posting covertly filmed "creepshots" of girls in their school uniforms.[39]   And then there were the videos featuring victims as young as three years old.[40]

91.    Many of the videos the newspaper located had more than 350,000 views, and had had been on the platform for years.[41]

92.    Even after the *Sunday Times* flagged certain specific videos for Defendants, three of the worst clips remained on Pornhub some 24 hours later.[42]

93.    More recently, *New York Times* columnist Nicholas Kristof wrote a lengthy article entitled: "The Children of Pornhub: Why does Canada allow this company to profit off videos of exploitation and assault?  That article is described in more detail below.

### 4.    Presence Of Underage Pornography Brought To Defendants' Attention Via Advocacy Groups

94.    Numerous advocacy groups have devoted significant resources to bringing attention to the ubiquitous problem of child pornography on Defendants' various websites.

95.    The Internet Watch Foundation, which assesses and gets removed from the internet child sexual abuse images and videos every year, reported that it found

---

[38] *https://www.thetimes.co.uk/article/unilever-and-heinz-pay-for-ads-on-pornhub-the-worlds-biggest-porn-site-knjzlmwzv*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*

118 instances of child sexual abuse imagery on Pornhub between 1 January 2017, and 29 October 2019.[43]

96.    TraffickingHub has also launched a worldwide campaign to bring attention to Defendants' bad acts, including gathering over 2 million signatures for a petition to shut down Pornhub and hold its executives accountable for aiding trafficking.[44]

### 5.    Presence of Underage Victims Brought to Defendants' Attention Via Government-Led Investigations

91.    The governments of multiple countries have also become involved in this issue, launching investigations into the Pornhub's wrongdoing.

92.    In the United States, Senator Ben Sasse wrote to U.S. Attorney General Bill Barr, calling for a federal investigation into Pornhub and its owner MindGeek for their involvement in streaming videos of raped and exploited women and children.  In his letter he explained:

> In several notable incidents over the past year, Pornhub made content available worldwide showing women and girls that were victims of trafficking being raped and exploited.  Indeed, the problem of Pornhub streaming content featuring women and children victims of sex trafficking reached the point in November that Paypal cut off services for Pornhub, refusing to facilitate this abuse any longer… Pornhub must not escape scrutiny. I therefore request that the Department open an investigation into Pornhub and its parent entity MindGeek Holding SARL for their involvement in this disturbing

---

[43] *https://www.iwf.org.uk/news/pornhub-data-out-of-context-tells-us-nothing*
[44] https://traffickinghub.com/

pipeline of exploiting children and other victims and survivors of sex trafficking.[45]

93.    The same calls for action are being heard in Canada, where Canadian Members of Parliament from four parties sent an open letter to Canada's Minister of Justice, Attorney General David Lametti, along with Prime Minister Justin Trudeau, demanding a government response to what is happening on Pornhub.[46]

**D.    The *New York Times* Investigation**

94.    Despite their apparent knowledge of this growing problem, for over a decade, Defendants took no action.

95.    Then, in December 2020, Nicholas Kristof of the *New York Times* published a detailed investigation that chronicled all the ways Pornhub monetizes child rapes and revenge pornography.[47]   "The site is infested with rape videos," Kristof wrote. "It monetizes child rapes, revenge pornography, spy cam videos of women showering, racist and misogynist content, and footage of women being asphyxiated in plastic bags."

96.    Kristof wrote that there are more than 6.8 million new videos posted on Pornhub each year, many of which depict child abuse.

97.    The story referenced a woman named Cali who was forced to appear in pornographic videos beginning at the age of nine, many of which ended up on Pornhub and regularly reappear there.  Kristof described how he came across many videos on Pornhub featuring unconscious girls, with rapists opening the eyelids of the victims and touching their eyeballs to demonstrate that they were, in fact, unconscious.

98.    Kristof wrote:  "In the last few days as I was completing this article, two new videos of prepubescent girls being assaulted were posted, along with a sex video

---

[45] https://www.sasse.senate.gov/public/_cache/files/06557325-43d1-4aed-8e34-27cf8cbdfb13/3-10-20-sasse-letter-to-ag-barr.pdf
[46] https://twitter.com/ArnoldViersen/status/1331647921692041216?s=20
[47] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html

of a 15-year-old girl who was suicidal after it went online.  I don't see how good-faith moderators could approve any of these videos."

99.    Of course, the problem is that the moderators are not acting in good faith.  They are trying to get as much content through as possible to ensure traffic, because traffic equals profits.

## E.    Financial Institutions Cut Ties with Defendants

100.    Kristof's article called for Visa, Mastercard, and American Express to suspend cooperation with Pornhub.  Mastercard launched its own investigation into Kristof's claims and said it found them to be substantiated.   In a statement, Mastercard said:   "The use of our cards at Pornhub is being terminated.   Our investigation over the past several days has confirmed violations of our standards prohibiting unlawful content on their site.  As a result, and in accordance with our policies, we instructed the financial institutions that connect the site to our network to terminate acceptance."[48]

101.    Visa followed suit.   Although its investigation is ongoing, Visa suspended Pornhub's acceptance privileges while its investigation is underway and instructed the financial institutions who serve Defendants to suspend processing of payments through the Visa network.[49]

102.    Discover also cut ties with Pornhub. "We require our financial institution partners to monitor for and prevent card acceptance at merchants that allow illegal or any other prohibited activities that violate our operating standards," Discover said in a statement. "When Discover determines merchants are offering prohibited activity, we promptly terminate card acceptance through the offending merchant's financial institution."[50]

---

[48] https://www.cnn.com/2020/12/14/business/mastercard-visa-discover-pornhub/index.html
[49] *Id.*
[50] *Id.*

**F.      Defendants Remove Millions of Videos from Their Sites**

103.    Within days of the financial institutions cutting ties with Pornhub, Defendants finally took some action.   Most notably, they removed all content previously uploaded to its Pornhub website by unverified users, bringing the total number of videos on that one site down from 13 million to 4 million.[51]   On information and belief, they did nothing, however, to confirm that any of the individuals featured in any of the 4 million videos that remained on the website were of consenting adults.

104.    Defendants also announced that they were removing the ability for users to download content from Pornhub (with the exception of paid downloads from the "verified" Model Program), along with other changes.  Despite these announcements, as evidenced in paragraphs 47-54 above, nothing substantive appears to have changed because the Model Program has no age verification requirement.[52]

**IV.   JANE DOE'S EXPERIENCE AS A VICTIM OF DEFENDANTS' SEX TRAFFICKING**

105.    Jane Doe was in high school when her boyfriend created four videos of the two of them engaging in sexual intercourse.  She was sixteen years old at the time the videos were recorded, and some of the videos were recorded without her knowledge let alone consent.

106.    The relationship ended when Jane Doe's boyfriend pushed her out of his moving car onto the street, dragging her until she was able to free herself.

107.    After the relationship ended, Jane Doe learned from a mutual friend that her ex-boyfriend has posted multiple videos online of the two of them engaging in sexual intercourse.  Jane Doe is clearly identifiable in the videos, which were posted to various websites, including Pornhub.com, from the period of December 2019 to the present.

---

[51] https://www.theguardian.com/technology/2020/dec/14/pornhub-purge-removes-unverified-videos-investigation-child-abuse
[52] https://www.pornhub.com/blog/11422

108.   The postings were accompanied by crude, disparaging, misogynistic and/or racist remarks.

109.   The circulation of the videos and images has caused Ms. Doe great anxiety, distress and sleeplessness.  She has had recurring thoughts of contemplating suicide and feelings of hopelessness, resulting in withdrawing from school and seeking therapy.

110.   The videos were on Pornhub for nearly a month before Jane Doe was made aware of them.  Ms. Doe immediately reached out to Pornhub to have the videos taken down on March 26, 2020.  While Pornhub ultimately removed the videos, they warned Ms. Doe:  "We have taken it upon ourselves to fingerprint the content with Vobile on your behalf.  This should effectively block future uploads of the videos.  Please note that we offer no guarantee.  We do not operate the Vobile service.  Furthermore we recommend that you educate yourself on their services and the limitations of digital fingerprinting technology."

111.   Apparently it is on Ms. Doe to ensure that the videos are never uploaded anew to Pornhub, or any of Defendants' numerous other websites, again.

## CLASS ACTION ALLEGATIONS

112.   Plaintiff brings this action on her own behalf, and on behalf of a class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Class is defined as:

> all persons who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Defendants in the last ten years.

113.   Plaintiff also brings this action on behalf of:

> all persons residing in California who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise

made available for viewing on any website owned or operated by Defendants in the last ten years (the "California Subclass").

114. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are many thousand members of the Class. Absent members of the Class may be notified of the pendency of this action using a form of notice similar to that customarily used in purchaser class actions.

115. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class were similarly affected by Defendants' wrongful common course of conduct complained of herein.

116. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

117. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   (a)   Whether Defendants knowingly benefitted from child trafficking;

   (b)   Whether user-generated uploads on Defendants' websites feature underage victims;

   (c)   Whether Defendants knew or should have known that there were videos and/or images of underage victims on its websites; and

   (d)   Whether Defendants' age verification system prevents users from uploading child pornography.

   (e)   Whether Defendants have earned profits from child trafficking;

118. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is

impracticable.  The damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible as a practical matter for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

<div align="center">

**FIRST CLAIM FOR RELIEF**

**TRAFFICKING VICTIMS PROTECTION ACT**

**18 U.S.C. §§ 1591, 1595**

**(Against All Defendants)**

</div>

119.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

120.   Defendants knowingly used the instrumentalities of interstate commerce to violate 18 U.S.C. § 1595.

121.   Defendants knowingly benefit from child trafficking by benefitting financially from videos/images viewable on their websites that depict victims who are underage.   Defendants make substantial profits with almost three billion ad impressions each day, many of which are attributable to content posted of underage victims.

122.   Defendants knew or should have known that the videos and images featured on their websites depicted sex trafficking.  Defendants have repeatedly been made aware of the child pornography on their websites by victim's complaints, third-party reporting, advocacy groups, and government investigations.  Defendants knew or should have known that their websites are known for child sex trafficking based on all of this information.

123.   Defendants monetized child trafficking on their websites through revenues generated by subscriptions and advertisements.

124.   Rather than take action to combat the problem of child sex trafficking, Defendants intentionally catered their websites to facilitate sex trafficking and make it easier for traffickers to monetize underage victims in commercial sex acts.

125.   Defendants not only maintained affiliations with sex traffickers by enabling the posting of child pornography on their websites, they have strengthened those affiliations by making it easier to connect traffickers with those who want to view child pornography.   Defendants create playlists that target those interested in child pornography; feature categories on their websites that target users interested in child pornography; instructs users to describe their videos using categories like "teen" to drive traffic; and decline to take down child pornography that generates significant streams.

126.   Defendants have repeatedly featured victims who have not attained the age of 18 years in videos/images on its websites.   The victims have engaged in commercial sex acts because all of the videos featured on its websites generate revenue for Defendants and/or traffickers and depict sex acts.

127.   Defendants had a reasonable opportunity to observe the victims featured on its websites because their moderators had the opportunity to view all of the content posted thereon.

128.   Defendants' conduct has harmed the Class by causing physical, psychological, financial, and reputational harm.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF DUTY TO REPORT CHILD
## SEXUAL ABUSE MATERIAL
## 18 U.S.C. § 2258A
### (Against All Defendants)

129.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

130.   As an "electronic communication service provider," Defendants' websites are a "provider" under 18 U.S.C. § 2258E(6) and 2258A.

131.   Defendants obtained actual knowledge that there was online sexual exploitation material of children being published on their websites, which was an apparent violation of 18 U.S.C. § 2252.

132.   Defendants knowingly engaged in intentional misconduct by ignoring clear notice of the presence of actual online sexual exploitation material of children. 18 U.S.C. § 2258B(b)(1).

133.   Defendants' conduct constitutes a failure to act with reckless disregard to a substantial risk of causing physical injury without physical justification.   18 U.S.C. § 2258B(b)(2)(B).

134.   Defendants' conduct constitutes a failure to act for a purpose unrelated to the performance of any responsibility or function under 18 U.S.C. §§ 2258B(b)(2)(C).

135.   Defendants' conduct has seriously harmed the Class, including without limitation, physical, psychological, financial, and reputational harm.

<div align="center">

**THIRD CLAIM FOR RELIEF**

**RECEIPT AND DISTRIBUTION OF CHILD PORNOGRAPHY**

**18 U.S.C. § 2252A**

**(Against All Defendants)**

</div>

136.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

137.   Defendants knowingly and intentionally offer, operate, maintain an advertise on their websites.  Defendants also knowingly and intentionally encourage traffic on their websites and encourage advertisers to purchase advertisement space thereon.

138.   Defendants knowingly received and distributed child pornography depicting Plaintiff and the Class on their websites.

139.   Defendants' receipt and distribution of child pornography occurred in or affected interstate or foreign commerce.

140.   As a proximate result of Defendants' violation of 18 U.S.C. § 2252A, Plaintiff and the Class have suffered serious harm including, without limitation, physical, psychological, financial, and reputational harm.

141.   Defendants' conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights and the Class' rights and Plaintiff and the Class are entitled to injunctive relief, compensatory and punitive damages, and the costs of maintaining this action.  18 U.S.C. § 2252A(f).

142.   Defendants' liability for knowingly violating 18 U.S.C. § 2252A is not limited by 47 U.S.C. § 230 because nothing in Section 230 "shall be construed to impair the enforcement of [] chapter [ ] 110 (relating to sexual exploitation of children) [ ] or any other Federal criminal statute."  47 U.S.C. § 230(e)(1).

## FOURTH CLAIM FOR RELIEF
## DISTRIBUTION OF PRIVATE SEXUALLY EXPLICIT
## MATERIALS, CAL. CIV. CODE § 1708.85
### (Against All Defendants)
### (On behalf of California Subclass)

143.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

144.   Defendants intentionally distributed child pornography.

145.   Plaintiff and the Class did not consent to the online distribution of the videos and images depicting them.

146.   Defendants knew Plaintiff and the Class had a reasonable expectation that the videos depicting them would remain private.

147.   The videos depicted on Pornhub exposed intimate body parts of Plaintiff and the Class.

148.   Plaintiff and the Class were harmed by Defendants' knowing and intentional distribution of child pornography and Defendants' conduct was a substantial factor in causing harm to Plaintiff and the Class.

1
2
3
4
5

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**

**Cal. Bus. & Prof. Code § 17200**

**(Against All Defendants)**

**(On behalf of California Subclass)**

149.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

150.   Defendants have violated the UCL by engaging in unlawful, unfair, and fraudulent business acts and practices.

151.   Defendants knowingly had inadequate age verification systems in place that enabled users to upload child pornography to Defendants' websites.

152.   Defendants' conduct constitutes an unlawful, unfair, and fraudulent business act and practice.

**SIXTH CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

**(Against All Defendants)**

153.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

154.   Defendants profited off of videos and images depicting Plaintiff and the Class on Defendants' websites.

155.   By permitting users to upload videos and images of Plaintiff and the Class and profiting from those videos and images, Defendants have become unjustly enriched at the expense of Plaintiff and the Class in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment, as follows:

A.      Determine that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure and appointing plaintiff's counsel as Class counsel;

B.    Award injunctive relief sufficient to bring Defendants' policies in compliance with the TVPRA.

C.    Award compensatory and punitive damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of defendants' violations of the law, in an amount to be proven at trial, including prejudgment interest thereon.

D.    Award Plaintiff and the Class reasonable attorneys' fees, costs and expenses incurred in this action, including expert fees.

E.    Award such other and further relief as the Court may deem just and proper.

Dated:  February 19, 2021

DAVIDA BROOK
KRYSTA KAUBLE PACHMAN
ARUN SUBRAMANIAN
SUSMAN GODFREY L.L.P.

STEVE COHEN
(*Pro Hac Vice forthcoming*)
scohen@pollockcohen.com
POLLOCK COHEN LLP
60 Broad Street, 24th Fl.
New York, NY 10004
Phone: (212) 337-5361


By  /s/ *Krysta Kauble Pachman*
        Krysta Kauble Pachman
      Attorneys for Plaintiff

1

## **JURY DEMAND**

2     Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands trial by jury of all of the

3 claims asserted in this complaint so triable.

4 Dated:  February 19, 2021          DAVIDA BROOK
                                    KRYSTA KAUBLE PACHMAN
5                                    ARUN SUBRAMANIAN
                                    SUSMAN GODFREY L.L.P.
6
                                    STEVE COHEN
7                                    POLLOCK COHEN LLP
8
                                    By  /s/ *Krysta Kauble Pachman*
9                                        Krysta Kauble Pachman
10                                       Attorneys for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28