BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
MARK S. CHEFFO (*pro hac vice forthcoming*)
mark.cheffo@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE on behalf of herself and all other similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219- 1568 QUEBEC, INC. (D/B/A MINDGEEK),<br><br>   Defendants. | CASE NO.  8:21-CV-00338-CJC-ADS<br><br>Judicial Officer: Cormac J. Carney<br>Courtroom: 9B<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE**<br><br>Hearing Date: August 2, 2021 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 4

LEGAL STANDARD ........................................................................................ 7

ARGUMENT ...................................................................................................... 7

I.  Section 230 Bars Plaintiff's Claims against Websites Based on Third-Party Content ................................................................................... 8

    A.  Defendants provide an interactive computer service. .................... 8

    B.  Plaintiff seeks to treat Defendants as the publishers or speakers of third-party content. ................................................................... 9

    C.  The offending content was created by a third party ..................... 10

II.  Section 230's Broad Grant of Immunity Applies to Plaintiff's TVPRA Claim and the FOSTA Exception Does Not Apply. ..................................... 13

    A.  Plaintiff fails to allege commercial sex trafficking. ..................... 14

    B.  Plaintiff fails to allege a sex trafficking venture involving Defendants. ................................................................................... 15

    C.  Plaintiff fails to allege Defendants knowingly benefitted from Plaintiff's alleged trafficking. ..................................................... 18

    D.  Plaintiff fails to allege actual knowledge by Defendants of the alleged trafficking. ....................................................................... 19

III.  Section 230 Applies to All of Plaintiff's Remaining Claims ....................... 20

IV.  Plaintiff's Claims Fail For Additional Reasons ........................................... 21

    A.  The Complaint fails to plead a *prima facie* TVPRA claim .......... 21

    B.  18 U.S.C. § 2258A does not create a private right of action ....... 23

    C.  Plaintiff has not alleged that Defendants knowingly possessed and distributed CSAM ................................................................ 23

    D.  Defendants have not violated Cal. Civ. Code § 1708.85 ............. 24

    E.  Plaintiff's UCL claim should be dismissed ................................ 24

    F.  California has no cause of action for "unjust enrichment" ........... 25

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
  484 F. Supp. 3d 921 (D. Or. 2020)....................................................22

*A.B. v. Wyndham Hotels & Resorts, Inc.*,
  2021 WL 1235241 (D. Or. Mar. 31, 2021) .......................................17

*Asdar Group v. Pillsbury, Madison & Sutro*,
  99 F.3d 289 (9th Cir. 1996) ...............................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................7

*Avakian v. Wells Fargo Bank, N.A.*,
  2019 WL 3064426 (C.D. Cal. May 10, 2019)....................................25

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 4368214 (N.D. Cal. July 30, 2020) ...................................22

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) .......................................................9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................7

*Caraccioli v. Facebook, Inc.*,
  167 F.Supp.3d 1056 (N.D. Cal. 2016)................................................25

*Caraccioli v. Facebook, Inc.*,
  700 F. App'x 588 (9th Cir. 2017) ......................................................20

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ......................................................10, 23

*Diez v. Google, Inc.*,
  831 F. App'x 723 (5th Cir. 2020).......................................................20

*Doe v. Bates*,
  2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) .............................12, 20

*Doe v. Kik Interactive, Inc.*,
　　482 F. Supp. 3d 1242 (S.D. Fla. 2020)...........................................................*passim*

*Doe v. MySpace, Inc.*,
　　528 F.3d 413 (5th Cir. 2008) ...............................................................................8, 9

*Domen v. Vimeo, Inc.*,
　　991 F.3d 66 (2d Cir. 2021) .................................................................................9, 13

*Dyroff v. Ultimate Software Grp., Inc.*,
　　934 F.3d 1093 (9th Cir. 2019) ..................................................................................8

*Dyroff v. Ultimate Software Grp., Inc.*,
　　2017 WL 5665670 (N.D. Cal. Nov. 26, 2017)........................................................12

*Evans v. Alliance Funding*,
　　2010 WL 11482495 (C.D. Cal. Dec. 13, 2010) ........................................................4

*Fair Hous. Council v. Roommates.com, LLC*,
　　521 F.3d 1157 (9th Cir. 2008) ......................................................................2, 9, 11

*Force v. Facebook, Inc.*,
　　934 F.3d 53 (2d Cir. 2019) .............................................................................10, 12

*Geiss v. Weinstein Co. Holdings LLC*,
　　383 F. Supp. 3d 156 (S.D.N.Y. 2019)....................................................................*passim*

*GoDaddy.com, LLC v. Toups*,
　　429 S.W.3d 752 (Tex. Ct. App. 2014) ...................................................................20

*Goddard v. Google, Inc.*,
　　2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ....................................................8, 12

*Goddard v. Google, Inc.*,
　　640 F.Supp.2d 1193 (N.D. Cal. 2009).....................................................................11

*Gonzalez v. Google, LLC*,
　　-- F.4th --, 2021 WL 2546675 (9th Cir. June 22, 2021)...........................................*passim*

*Green v. Am. Online (AOL)*,
　　318 F.3d 465 (3d Cir. 2003) ....................................................................................9

*H.G. v. Inter-Cont'l Hotels Corp.*,
　　489 F. Supp. 3d 697 (E.D. Mich. 2020) ..................................................................22

*Holt v. Facebook, Inc.*,
    240 F.Supp.3d 1021 (N.D. Cal. 2017).......................................................25

*J.B. v. G6 Hosp., LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020).........................................23

*Jurin v. Google, Inc.*,
    695 F.Supp.2d 1117 (E.D. Cal. 2010)......................................................11

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016)..........................................................8, 10

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014)...............................................................13

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
    2013 WL 6816174 (W.D. Ark. Dec. 24, 2013).......................................14

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011).........................................................................25

*La Park La Brea A LLC v. Airbnb, Inc.*,
    285 F. Supp. 3d 1097 (C.D. Cal. 2017).....................................................9

*Morton v. Twitter, Inc.*,
    2021 WL 1181753 (C.D. Cal. Feb. 19, 2021).........................................20

*Myers-Armstrong v. Actavis Totowa, LLC*,
    382 F. App'x 545 (9th Cir. 2010)............................................................25

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018).............................................*passim*

*M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*,
    809 F. Supp. 2d 1041 (E.D. Mo. 2011).............................................12, 20

*Perfect 10, Inc. v. CCBill, LLC*,
    488 F.3d 1102 (9th Cir. 2007).................................................................20

*Peterson v. Cellco Partnership*,
    164 Cal. App. 4th 1583 (2008)................................................................25

*Ratha v. Phatthana Seafood Co.*,
    2017 WL 8293174 (C.D. Cal. Dec. 21, 2017).........................................22

iv

*Ricci v. Teamsters Union Local 456*
     781 F.3d 25 (2d Cir. 2015) ......................................................................... 8

*Riggs v. MySpace, Inc.*,
     444 Fed. Appx. 986 (9th Cir. 2011) ....................................................... 13

*S.J. v. Choice Hotels Int'l, Inc.*,
     473 F. Supp. 3d 147 (E.D.N.Y. 2020) ............................................. 22, 23

*United States v. Afyare*,
     632 F. App'x 272 (6th Cir 2016) ................................................... *passim*

*United States v. Dobbs*,
     629 F.3d 1199 (10th Cir. 2011) ............................................................. 23

*United States v. Durham*,
     902 F.3d 1180 (10th Cir. 2018) ............................................................. 15

*United States v. Myers*,
     355 F.3d 1040 (7th Cir. 2004) .............................................................. 24

*United States v. Phea*,
     953 F.3d 838 (5th Cir. 2020) ................................................................ 19

*United States v. Todd*,
     627 F.3d 329 (9th Cir. 2010) ................................................................ 15

*United States v. X-Citement Video, Inc.*,
     513 U.S. 64 (1994) ................................................................................ 23

*Universal Commc'n Sys., Inc., v. Lycos, Inc.*,
     478 F.3d 413 (1st Cir. 2007) ................................................................. 12

*Van Patten v. Vertical Fitness Group, LLC*,
     847 F.3d 1037 (9th Cir. 2017) .............................................................. 24

*Zeran v. Am. Online, Inc.*,
     129 F.3d 327 (4th Cir. 1997) ................................................................ 12

*Ziglar v. Abbasi*,
     137 S.Ct. 1843 (2017) ........................................................................... 23

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
     -- F. Supp. 3d --, 2021 WL 930623 (N.D. Cal. Mar. 11, 2021) ........... 10

**Statutes**

18 U.S.C. § 1591...................................................................................*passim*

18 U.S.C. § 1595...................................................................................*passim*

18 U.S.C. § 2252A..........................................................................20, 23, 24

18 U.S.C. § 2255.........................................................................................20

18 U.S.C. § 2258A..................................................................................3, 23

47 U.S.C. § 230....................................................................................*passim*

Cal. Bus. & Prof. Code § 17204.................................................................24, 25

California Civil Code § 1708.85.................................................................20, 24

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................7

**Other Authorities**

http://vobilemarketing-corporatesite.squarespace.com/technology (last visited Jun. 30, 2021).......................................................................................5

## INTRODUCTION

In this putative class action, Plaintiff seeks to represent an expansive class of all persons who had videos posted of themselves on Defendants' websites that were made when they were under eighteen years of age.  Compl. ¶ 112.  But the factual allegations relating to her own claims are much narrower.  Plaintiff alleges that, when she was sixteen years old, her then-boyfriend created sexually explicit videos of the two of them.  After Plaintiff terminated the relationship, her now ex-boyfriend posted these videos onto several websites in an apparent "revenge pornography" plot.  After initially posting the videos on other entities' websites, he posted the videos to a website operated by Defendants.  This conduct is not only heinous and disturbing, but almost certainly criminal.  This putative class action suit, however, attempts to shift the legal liability from Plaintiff's ex-boyfriend for creating and posting the videos to Defendants for allegedly owning and operating one of several internet websites that provided a platform for members of the public to upload and share their video content.[1]

Plaintiff's claims are barred by Section 230 of the Communications Decency Act ("Section 230").  Section 230 affords a provider of interactive computer services (an "ICS") broad immunity from liability for content posted to its websites by third parties.  Section 230(c)(1) mandates: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Section 230 also expressly preempts all state laws inconsistent with this immunity.  *Id.* § 230(e)(3).  In passing Section 230, Congress made a deliberate policy decision that ICSs cannot be

---

[1] Defendants MindGeek USA Inc., MindGeek S.à.r.l., MG Freesites Ltd ("Freesites"), 9219-1568 Quebec Inc., and MG Content RT Ltd (collectively "Defendants") dispute Plaintiff's allegations they all own or operate websites.  However, given the posture of the case, Defendants do not undertake to make distinctions among the different entities, with one exception.  When referring to actions taken relative to the website Pornhub.com ("Pornhub"), Defendants refer to Freesites because it operates the site.

**MOTION TO DISMISS**

held liable for content created by their users.  This broad immunity serves a number of public policy goals, including allowing "[t]he Internet and other interactive computer services" to "flourish[], to the benefit of all Americans, with a minimum of government regulation," *id.* (a)(4), and "preserv[ing] the vibrant and competitive free market that presently exists for the Internet and other interactive computer services." *Id.* (b)(2).  Without such immunity—as the law stood prior to the passage of Section 230—websites would face a perverse incentive whereby they could be held liable if they attempted to moderate content, but not be held liable if they chose not to act at all.  *See Gonzalez v. Google, LLC,* -- F.3d --, 2021 WL 2546675, *9 (9th Cir. June 22, 2021).  Congress passed Section 230 because it recognized that if ICSs "were forced to choose between taking responsibility for all messages and deleting no messages at all, [they] would have to choose the latter course." *Fair Hous. Council v. Roommates.com, LLC,* 521 F.3d 1157, 1163 (9th Cir. 2008).  Just this month the Ninth Circuit reaffirmed, in a precedential opinion, that Section 230 broadly bars suit against an ICS when a plaintiff seeks to hold it responsible for content uploaded to its website by third parties. *Gonzalez,* 2021 WL 2546675, *13-14.  The court found that Google could not be held liable for harm allegedly arising out of its hosting ISIS recruiting videos on YouTube. *Id.* at *32.  The Ninth Circuit reaffirmed that:

- "[A]n interactive computer service does not create or develop content by merely providing the public with access to its platform";
- "A website is not transformed into a content creator or developer by virtue of supplying 'neutral tools' that deliver content in response to user inputs"; and
- Algorithms that "recommend[] content … to users based upon users' viewing history and what is known about the users" do not abrogate Section 230 immunity, even when the algorithms direct users to unlawful content.

*Id.* at *14-15.  Plaintiff's allegations and claims in this case are strikingly similar to those the court found barred by Section 230 in *Gonzalez.*  Accordingly, as set forth herein, Section 230 operates to either bar or preempt all of Plaintiff's claims.

Plaintiff seeks to circumvent this broad grant of immunity by contending that Defendants are liable under Sections 1591 and 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA"). The TVPRA provides trafficking victims with a civil cause of action against sex traffickers and those who knowingly benefit from participating in a trafficking venture. *See* 18 U.S.C. § 1595(a). Section 230 immunity applies to such claims, subject to an exception created by the 2018 Allow States to Fight Online Sex Trafficking Act ("FOSTA"), which does not apply here. FOSTA applies only "if the conduct underlying the claim constitutes a violation of [S]ection 1591," the criminal statute prohibiting sex trafficking. 47 U.S.C. § 230(e)(5)(A). Plaintiff fails to plead facts establishing that her ex-boyfriend's conduct constitutes commercial sex trafficking, that Defendants directly participated in that trafficking, or that Defendants had actual knowledge of that trafficking, all of which Section 1591 requires. Accordingly, the FOSTA exception does not apply.

Section 230 applies to all of Plaintiff's claims. But even were that not the case, they all fail for independent reasons. Plaintiff's First Claim for Relief fails to state a *prima facie* TVPRA claim against Defendants. Plaintiff does not plead facts showing that she was a victim of trafficking, that Defendants participated in the alleged trafficking venture, that Defendants knew (or should have known) of trafficking involving Plaintiff, or that Defendants knowingly benefitted from any trafficking of Plaintiff, all of which are required to state a TVPRA claim. Plaintiff's Second Claim for Relief under 18 U.S.C. § 2258A fails because that criminal statute does not provide any private right of action. Plaintiff's Third Claim for Relief fails because Plaintiff has not alleged that Defendants knowingly received and distributed child sexual abuse material ("CSAM"). Plaintiff's Fourth Claim for Relief is under California's "revenge pornography"[2] statute, which does not apply because Defendants have not knowingly or intentionally distributed Plaintiff's private sexually explicit imagery

---

[2] The term "revenge pornography" generally refers to the dissemination of explicit material to humiliate and intimidate an ex-partner who has broken off a relationship.

against her wishes, and because the videos were posted on other websites before Plaintiff's ex-boyfriend posted them on Defendants' site.  Plaintiff's Fifth Claim for Relief under California's Unfair Competition Law fails because Plaintiff lacks standing to bring it.  And Plaintiff's Sixth Claim for Relief for unjust enrichment fails because no such cause of action exists in California.

For these reasons, and those that follow, the Complaint should be dismissed with prejudice.

## BACKGROUND

Pornhub is an adult interactive video site and one of the most popular websites in the world.  *See* Compl. ¶¶ 38, 42-43.  Pornhub's interface is similar to YouTube's; Pornhub's main feature is a library of videos uploaded by third-party users.  *Id.* ¶ 42.  Those who wish to upload videos must register and agree to be bound by the website's Terms of Service, *id.* ¶¶ 42-43, which expressly prohibit "post[ing] any Content that depicts any person under 18 years of age … whether real or simulated."[3]  Pornhub also retains full-time moderators to screen for CSAM and other inappropriate content. *Id.* ¶ 67.

Plaintiff's suit arises out of illegal videos Plaintiff's ex-boyfriend uploaded to Pornhub in violation of those Terms of Service.  Plaintiff claims that when she was sixteen "her boyfriend created four videos of the two of them engaging in sexual intercourse," and "some … were recorded without her knowledge let alone consent." *Id.* ¶ 105.  In or about December 2019, after their relationship ended, her ex-boyfriend posted some of these videos on various websites, other than Pornhub, and accompanied the videos with "crude, disparaging, misogynistic and/or racist remarks."  *Id.* ¶ 106-108.  The Complaint omits naming all of the websites these

---

[3] *See* Pornhub.com Terms of Service (Mar. 9, 2020) (Decl. of Benjamin M. Sadun in Support of Mot. To Dismiss the Compl. with Prejudice ("Sadun Decl.") Ex. A).  The Complaint references the Terms of Service, Compl. ¶ 69, and the Court may consider documents referenced in the Complaint on a motion to dismiss.  *See, e.g.*, *Evans v. Alliance Funding*, 2010 WL 11482495, *5 (C.D. Cal. Dec. 13, 2010).

CASE NO. 8:21-CV-00338

**MOTION TO DISMISS**

videos were posted to, but according to Plaintiff's allegations the videos were posted to other internet sites before being uploaded to Pornhub in early March 2020—*i.e.*, they had been available on other websites for 3 months before being uploaded to Pornhub. *See id.* ¶¶ 107, 110. Plaintiff, represented by the same counsel, also sued a different website operator, Reddit.com.[4] In the Reddit Complaint, Plaintiff alleges the same videos at issue here were uploaded to "various websites, including Reddit, from the period of December 2019 to the present." Sadun Decl. Ex. B. ¶ 121. The Reddit Complaint alleges the videos were uploaded to multiple user groups on Reddit and continue to be reposted to this day, even after the videos are taken down. *Id.* ¶¶ 121-129.

According to the Complaint, in or about the beginning of March 2020, Plaintiff's ex-boyfriend uploaded some of the explicit videos to Pornhub. Compl. ¶¶ 107, 110. Plaintiff alleges she contacted Pornhub on March 26, 2020 and requested that the videos be removed. *Id.* ¶ 110. The Complaint does not allege how long it took before the videos were removed—presumably because they were removed promptly. *Id.* If there had been any delay in responding to Plaintiff's takedown request, Plaintiff would have pleaded so, as she did in her Reddit Complaint. Sadun Decl. Ex. B ¶¶ 124-128. When Freesites became aware of the videos, it took them down. Plaintiff also acknowledges that Freesites affirmatively digitally "fingerprinted" the offending videos with a program called Vobile. Compl. ¶ 110. Vobile's Digital fingerprinting technology "enables accurate detection and identification of video" posted to the internet, which in turn can be used to block further uploads of the video online. *Id.*; http://vobilemarketing-corporatesite.squarespace.com/technology (last visited Jun. 30, 2021). Plaintiff does not allege that the videos were reposted to Pornhub (nor to any other website operated

---

[4] Complaint, *Jane Doe v. Reddit, Inc.* (C.D. Cal., No. 8:21-cv-00768) (Sadun Decl. Ex. B). The Court may take judicial notice of pleadings in related proceedings. *See*, *Asdar Group v. Pillsbury, Madison & Sutro,* 99 F.3d 289, 290 n. 1 (9th Cir. 1996).

1  by Defendants).

2       Tellingly, the Complaint contains 155 paragraphs.  Yet only seven paragraphs

3  concern allegations about Plaintiff herself or the videos depicting her, and only one

4  of those paragraphs discusses Plaintiff's interactions with one of the Defendants.

5  Compl. ¶¶ 105-111; *id* ¶ 110.  Instead, the Complaint dedicates dozens of paragraphs

6  to general allegations about Defendants' purported business practices, without ever

7  tying those purported practices to what happened to Plaintiff or her alleged injury.  *Id.*

8  ¶¶ 36-104.  Many of these allegations appear to be copied directly from media reports

9  (including an opinion column from the New York Times), but Plaintiff does not allege

10 she was discussed in that column.  While Defendants disagree that these allegations

11 are accurate, they are irrelevant to this motion because they have nothing to do with

12 her ex-boyfriend's posting of revenge pornography on multiple websites.

13      Plaintiff does not allege that Defendants created the videos of her and her ex-

14 boyfriend or uploaded those videos to Pornhub.  Plaintiff does not allege that

15 Defendants encouraged her ex-boyfriend to post revenge pornography.  Nor is there

16 any allegation that Defendants knew Plaintiff was underage when her boyfriend made

17 the videos or knew that some of them were allegedly recorded without her knowledge

18 or consent.  What the Complaint *does* allege is that Defendants "intentionally catered

19 their websites to facilitate sex trafficking and make it easier for traffickers to monetize

20 underage victims in commercial sex acts."  *Id.* ¶ 124.  Defendants strongly disagree

21 with this allegation, and it is not substantiated by any specific facts in the Complaint.

22 But most significantly, Plaintiff has not alleged this purported "catering" had anything

23 to do with how or why Plaintiff's ex-boyfriend uploaded revenge pornography to

24 Pornhub.  Plaintiff's ex-boyfriend does not appear to have had any profit motive in

25 uploading the files (and did not receive any pecuniary benefit from Defendants).

26      Plaintiff has not connected any alleged wrongdoing by ***Defendants*** to the harm

27 ***she*** allegedly suffered.  Defendants do not permit, let alone encourage, the posting of

28 CSAM or non-consensual content on their websites.  To the contrary, Freesites has

taken a number of steps to combat the practice.  While the specific procedures have evolved over time, the Complaint acknowledges that Freesites actively screens for videos containing CSAM or non-consensual content, which are prohibited by Pornhub's Terms of Service.  *See* Compl. ¶ 67.  Plaintiff's ex-boyfriend violated those terms when he uploaded videos of Plaintiff to Pornhub.  Moreover, while no content moderation process for user-generated content is ever perfect, Freesites has worked diligently to prevent CSAM and non-consensual content from being uploaded to the sites it operates, and to remove videos that violate the Terms of Service when violations are detected.  In fact, Plaintiff's allegations confirm this:  When Plaintiff asked to have the videos removed from Pornhub, they were taken down without delay and fingerprinted to help prevent reposting.  *Id.* ¶ 110.

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory statements."  *Id.*  Facts that create a mere "suspicion of a legally cognizable right of action" are insufficient; the complaint must plead facts that "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 561 (2007).  Where, as here, the allegations in a complaint are sufficient to demonstrate Section 230 immunity, the complaint should be dismissed.  *See, e.g.*, *Gonzalez*, 2021 WL 2546675, at *12 n.8.

## ARGUMENT

As discussed below, Defendants are immune from liability pursuant to Section 230.  Although FOSTA created a narrow exception to Section 230, that exception requires Plaintiff to plead facts showing that Defendants' conduct violated 18 U.S.C. § 1591, and Plaintiff has failed to do so.  Plaintiff also fails to plead facts establishing that any exception to Section 230 applies to any of her remaining claims.  Even absent

Section 230 immunity, all of Plaintiff's remaining claims fail for additional reasons.

## I.    Section 230 Bars Plaintiff's Claims against Websites Based on Third-Party Content

Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). In other words, internet service companies cannot be held liable as the publishers of user-generated content (like the videos made by Plaintiff's ex-boyfriend). Section 230 also expressly preempts all state laws inconsistent with this immunity. 47 U.S.C. § 230(e)(3). Thus, because Plaintiff seeks to hold Defendants liable for content posted to their websites, both federal and state claims are proscribed by Section 230.

Section 230 applies where, as here, Plaintiff alleges each defendant is "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat … as a publisher or speaker (3) of information provided by another information content provider." *Gonzalez*, 2021 WL 2546675, *12 (ellipses in original); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). These elements are construed broadly. "Courts consistently have held that § 230 provides a 'robust' immunity… and that all doubts 'must be resolved in favor of immunity.'" *Goddard v. Google, Inc.*, 2008 WL 5245490, at *2 (N.D. Cal. Dec. 17, 2008); *accord Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

### A.    Defendants provide an interactive computer service.

An "interactive computer service" is "any information service, system, or access software provider that provides or enables … access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). This definition "has been construed broadly to effectuate the statute's speech-protective purpose." *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015). The definition includes websites. *See Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016). In particular, courts have consistently held that video sharing websites, like Pornhub.com, are covered by Section 230. *E.g.*,

*Gonzalez*, 2021 WL 2546675, *12-13 (YouTube); *Domen v. Vimeo, Inc.*, 991 F.3d 66, 73 (2d Cir. 2021) (Vimeo). Plaintiff does not allege otherwise.

## B.    Plaintiff seeks to treat Defendants as the publishers or speakers of third-party content.

Plaintiff claims she was harmed by "[t]he circulation of the videos and images" of her on "various websites, including Pornhub.com." Compl. ¶¶ 109, 107.  She also alleges that Defendants wrongfully allowed third-party users to post and view that content and did not adequately filter out such content.  *E.g.*, *id.* ¶¶ 44, 63-68, 107. This satisfies the second element of Section 230 immunity—seeking to treat the defendant as publisher.  As the Ninth Circuit has explained, "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-03 (9th Cir. 2009); *accord, e.g.*, *Gonzalez*, 2021 WL 2546675, at *13 (same).  "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com*, 521 F.3d at 1170-71.  Like the other elements of Section 230 immunity, courts have adopted a "capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party." *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1103 n.4 (C.D. Cal. 2017) (citation omitted).

In evaluating whether Plaintiff is seeking to hold an ICS liable as a publisher, "what matters is not the name of the cause of action … what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another .…  If it does, section 230(c)(1) precludes liability." *Barnes*, 570 F.3d at 1101-02; *accord Myspace, Inc.*, 528 F.3d at 417-18; *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003).  In *Barnes,* the Ninth Circuit held that Section 230 barred a negligence claim based on the defendant's failure to "remov[e] … indecent profiles that [the plaintiff's] former boyfriend posted on Yahoo's website" because "removing content is something publishers do, and to

**MOTION TO DISMISS**

impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." 570 F.3d at 1103; *see also Gonzalez*, 2021 WL 2546675, *13 (citing *Barnes*); *Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) ("Facebook's alleged failure to delete content from Hamas members' Facebook pages" falls "within the heartland of what it means to be the 'publisher' of information under Section 230.").

Plaintiff's claims here fall within the scope of Section 230 for the same reason. Although styled under a variety of federal and state causes of action, at bottom they are all based on allegations about Defendants' decisions "whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102.

## C.   The offending content was created by a third party

The Complaint makes clear that all the offending content was created and uploaded by a third party, namely Plaintiff's ex-boyfriend, who posted "multiple videos online of the two of them engaging in sexual intercourse." Compl. ¶ 107. Indeed, all of Plaintiff's claims are premised on allegations that Defendants made it too easy for ***users*** of their websites to upload and share illegal content. For example, Plaintiff alleges that "[a] user can post any video or image of any person doing anything without any consequences," *Id.* ¶ 44, "there is nothing to stop" users from uploading underage content, *id.* ¶ 52, and Defendants' efforts to monitor uploaded content are inadequate. *Id.* ¶¶ 63-68, 70. Such claims are barred: Defendants' "failure to edit or block user-generated content is the very activity Congress sought to immunize." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, -- F. Supp. 3d --, 2021 WL 930623, at *12 (N.D. Cal. Mar. 11, 2021) (citation and internal quotation marks omitted) (quoting *Roommates.Com*, 521 F.3d at 1172 n.32); *cf. Kimzey v. Yelp! Inc.*, 836 F.3d at 1270-71 ("proliferation and dissemination of content does not equal creation or development of content."). This is especially true where, as here, the offending content violates the ICS's policies. *See Gonzalez*, 2021 WL 2546675, at *14, 15; *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1121 (9th Cir. 2003).

None of Plaintiff's allegations about how Pornhub is operated changes that analysis. The Complaint fails to connect the referenced website features to the specific harm **Plaintiff** allegedly suffered. Moreover, courts have consistently found that the sort of content management tools Plaintiff points to do not vitiate immunity under Section 230.

**Content-neutral search technology**. Plaintiff repeatedly makes the general allegation that the websites' search tools could be used to find illegal content, like CSAM. *E.g.*, Compl. ¶¶ 71-72; 75-78, 90 (alleging that search terms like "'teen,' 'school,' 'babysitter' and 'old/young'" could be used). But "a website is not transformed into a content creator or developer by virtue of supplying 'neutral tools' that deliver content in response to user inputs" unless it makes a "material contribution" to the contents' illegality. *Gonzalez*, 2021 WL 2546675, at *13, 14. For instance, the Ninth Circuit has held that a website would not become "the developer of discriminatory content if it provided a free-text search … even if users utilized it to search for discriminatory keywords." *Roommates.com*, 521 F.3d at 1174 n.37; *accord, e.g.*, *Jurin v. Google, Inc.,* 695 F.Supp.2d 1117 (E.D. Cal. 2010) (use of search words). This is so even where "a particular tool facilitate[s] the expression of" the offending content and the "service provider knows that third parties are using such tools to create illegal content." *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1197-98 (N.D. Cal. 2009).

**Algorithmic content suggestion.** Plaintiff contends that "Pornhub intentionally directs [a] user to its illegal content" based on his or her account preferences and viewing history. Compl. ¶ 61-62. The Ninth Circuit reaffirmed in *Gonzalez*, however, that even where an ICS algorithm recommends illegal content "based upon users' viewing history and what is known about the users" Section 230 immunity is not abrogated. 2021 WL 2546675, at *15. The "core principle" of such tools is "the same" as a search engine: the content is automatically provided based

1    upon the *users*' inputs.  *Id.*.  Similarly, in *Dyroff*, the plaintiff claimed the defendant

2    website was culpable in her son's drug overdose death because it used "algorithms

3    and tools to collect [and] analyze" user data to "'recommend' and 'steer' vulnerable

4    users, like [the plaintiff's] son, to forums frequented by drug users and dealers."  2017

5    WL 5665670, at *8 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019).

6    The court disagreed, holding that Section 230 preempted that claim because those

7    website functionalities—*i.e.*, "algorithmic recommendations of related groups[]"—

8    were based on "users' voluntary inputs that create[d] the content on" the website.  *Id.*

9    at *10; *accord Force*, 934 F.3d at 66-67.

10    **Alleged knowledge of the offending content**.  Plaintiff alleges generally that

11   Defendants' websites are "known for sex trafficking activity," Compl. at 20

12   (formatting altered), and that "Defendants know" that they cannot adequately monitor

13   the content users upload.  *Id.* ¶ 68.  Tellingly, Plaintiff does not allege that Defendants

14   had any specific knowledge of *her* videos—nor could she because she admits that

15   once she notified Defendants the videos were promptly taken down.  Moreover,

16   "Section 230 immunity applies even after notice of the potentially unlawful nature of

17   the third-party content."  *Universal Commc'n Sys., Inc., v. Lycos, Inc.*, 478 F.3d 413,

18   420 (1st Cir. 2007). "Liability upon notice would defeat the dual purposes advanced

19   by § 230 of the CDA [and] … reinforce[] service providers' incentives to restrict

20   speech and abstain from self-regulation."  *Zeran v. Am. Online, Inc.*, 129 F.3d 327,

21   333 (4th Cir. 1997); *see also M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*,

22   809 F. Supp. 2d 1041, 1050-51 (E.D. Mo. 2011) (collecting cases).

23    **Advertising revenue.**  Plaintiff spends many pages alleging Defendants profit

24   from advertising on their sites.  *E.g.*, Compl. ¶¶ 56, 69. "[T]he fact that a website

25   elicits online content for profit is immaterial" to the Section 230 analysis; "the only

26   relevant inquiry is whether the interactive service provider 'creates' or 'develops' that

27   content."  *Goddard*, 2008 WL 5245490, at *3; *accord M.A. ex rel. P.K.*, 809 F. Supp.

28   2d at 1050; *Doe v. Bates*, 2006 WL 3813758, at *4 (E.D. Tex. Dec. 27, 2006).

**Content moderation**. Finally, but no less fundamentally, Plaintiff cannot evade Section 230 by alleging that Defendants' efforts to monitor and remove offensive content are inadequate, Compl. ¶¶ 63-68, applied inconsistently, *id.* ¶ 70, or hindered by a conflict of interest. *Id.* ¶ 99. Congress enacted Section 230 to eliminate the perverse incentive that would follow if providers faced more liability for doing imperfect monitoring rather than no monitoring at all. Consistent with this purpose, courts have unanimously held that moderating content does not waive Section 230 immunity. *E.g.*, *Gonzalez*, 2021 WL 2546675, *13; *Riggs v. MySpace, Inc.*, 444 Fed. Appx. 986, 987 (9th Cir. 2011); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014). Nor can bad faith, *see* Compl. ¶ 99, be inferred from Defendants' allegedly "imperfect exercise of content-policing discretion." *Domen*, 991 F.3d at 73.

## II.     Section 230's Broad Grant of Immunity Applies to Plaintiff's TVPRA Claim and the FOSTA Exception Does Not Apply.

In 2018, Congress enacted FOSTA to remove immunity for ICSs that engage in or facilitate sex trafficking. By its terms, the exemption is narrow. "[I]t is clear that FOSTA does not subject interactive computer service providers to liability for any cause of action that might otherwise be available under common law. Rather, FOSTA removes [Section 230] immunity **only** for claims 'under section 1595 of Title 18, **if** the conduct underlying the claim constitutes a violation of 1591 of that title,'" the criminal provision prohibiting sex trafficking. *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249 (S.D. Fla. 2020) (quoting 47 U.S.C. § 230(e)(5)(A)) (emphasis added). This limitation is critical because it means that all of Plaintiff's federal and state claims are barred by Section 230 unless she can prove the elements of **both** Sections 1591 (the criminal provision) **and** 1595 (the civil right of action). *Id.*

Plaintiff has not pleaded facts to establish a violation of Section 1591.[5] Section 1591 punishes (1) primary violators who directly engage in sex trafficking; and (2) secondary participants who "knowingly ... benefit[], financially or by receiving

---

[5] As explained in Part IV.A, Plaintiff also fails to state a claim under Section 1595.

anything of value, from participation in a venture" with a primary violator.  18 U.S.C. § 1591(a).  Here, Plaintiff apparently seeks to hold Defendants liable as secondary participants.  *See* Compl. ¶ 121 (alleging that Defendants "knowingly benefit from child trafficking").  To make out a Section 1591 secondary participant claim, Plaintiff must plead all four of the following elements.  First, there must be a "venture" that commits an act of commercial sex trafficking. 18 U.S.C. § 1591(a)(1), (e)(3).  Second, Defendants must have knowingly participated in that trafficking, *id.* (a)(2), (e)(4), which requires Plaintiff to allege Defendants committed "some 'overt act' that furthers the sex trafficking aspect of the venture." *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir 2016).  Third, Plaintiff must plead Defendants "knowingly" benefitted from participation in the sex trafficking venture. 18 U.S.C. § 1591(a)(2).  And fourth, Defendants must have had actual knowledge of specific sex trafficking involving Plaintiff. 18 U.S.C. § 1591(a)(2); *Kik Interactive, Inc.*, 482 F. Supp. 3d at 1251.  Plaintiff has failed to plead any one of these elements, let alone all four.

### A.    Plaintiff fails to allege commercial sex trafficking.

As Plaintiff acknowledges, Section 1591 applies only to "trafficking" for "commercial sex."  Compl. ¶¶ 5, 34, 126.  A person is guilty of commercial sex trafficking only if he "knowingly ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits" a person for commercial sex. 18 U.S.C. § 1591(a).  A commercial sex act is one "on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).  This means that there must be a causal *quid pro quo* between the sex act and an exchange of something of value.  *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).

Plaintiff does not allege that any of the sex in the videos at issue was *commercial*.  Plaintiff has not pleaded that anything of value was exchanged for sex.  Nor does she allege that her ex-boyfriend had any future intent to monetize the videos at the time they were made, and the production of pornography for private use is not

a commercial sex act.  *See United States v. Durham*, 902 F.3d 1180, 1195 (10th Cir. 2018).  Even if Plaintiff's ex-boyfriend had subsequently attempted to monetize the videos, which there is no allegation that he did, that still would not retroactively make the sex acts commercial.  *See, e.g.*, *United States v. Todd*, 627 F.3d 329, 333-338 (9th Cir. 2010) (§ 1591(a)(1) requires defendant to possess requisite knowledge at time of enticement); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 518 (S.D.N.Y. 2018) (key inquiry is defendant's state of mind "at the initial recruitment or enticement stage").  As nothing of value was ever exchanged or offered "on account of" the sex acts, and there is no allegation the ex-boyfriend intended to monetize the videos when he made them, no ***commercial*** sex took place.

Even if Plaintiff had alleged a commercial sex act, which she has not, she would still need to show that someone was engaged in commercial sex ***trafficking***.  Here, Plaintiff merely alleges that "Defendants … make it easier for traffickers to monetize underage victims in commercial sex acts" in general.  Compl. ¶ 125.  Plaintiff does not allege that anyone unlawfully recruited, enticed or otherwise coerced her into having sex with her ex-boyfriend.  Accordingly, Plaintiff does not allege that ***she herself*** was involved in any act of sex trafficking as defined by 18 U.S.C. § 1591(a).

Because Plaintiff was not party to a commercial sex and does not allege that she was trafficked as defined by the statute, she does not meet this threshold showing under § 1591 and, consequently, FOSTA does not apply.

### B.  Plaintiff fails to allege a sex trafficking venture involving Defendants.

Plaintiff must allege Defendants knowingly benefitted "***from participation in***" a commercial sex trafficking venture.  18 U.S.C. § 1591(a)(2) (emphasis added).  The statute does not extend to everyone who "benefit[s] financially from sex trafficking," as alleged in the Complaint. Compl. ¶ 5.  Plaintiff must plead facts showing that Defendants benefitted through "some 'overt act' that furthers the sex trafficking aspect of the venture." *Afyare*, 632 F. App'x at 286; *accord Geiss v. Weinstein Co.*

*Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019); *Noble*, 335 F. Supp. 3d at 524 ("some participation in the sex trafficking act itself must be shown").  Plaintiff's failure to plead facts that show she was trafficked precludes any attempt to hold Defendants liable as secondary participants or beneficiaries of such "trafficking."

Even assuming that Plaintiff's non-commercial sex with her boyfriend could be considered "trafficking," her attempt to hold Defendants liable as secondary participants would still fail.  First, secondary liability requires "participation in a venture."  18 U.S.C. § 1591(a)(2).  Plaintiff does not plead the existence of any venture.  By definition, a "'venture' means any group of two or more individuals associated in fact, whether or not a legal entity."  18 U.S.C. § 1591(e)(6).  Here, Plaintiff alleges that only one person exploited her: her ex-boyfriend.  Thus, no "venture" existed in which Defendants could have participated.

Second, Plaintiff has not pleaded facts showing that Defendants "knowingly assist[ed], support[ed], or facilitate[ed] a [primary] violation."  *Id.* § 1591(e)(4).  A defendant cannot be found liable under Section 1591 merely for being associated with sex traffickers but must "actually participate and commit some 'overt act' that furthers the sex trafficking aspect of the venture."  *Afyare*, 632 F. App'x at 286; *cf. Geiss*, 383 F.Supp.3d at 169 ("aiders and abettors of sex trafficking are liable under the TVPA only if they knowingly 'benefit[ ], financially or by receiving anything of value from ***participating*** in a venture which has engaged in' sex trafficking" (emphasis added)).

*Doe v. Kik Interactive* addressed this "overt act" requirement in the FOSTA context. The plaintiff alleged that Kik was aware its platform was being used for sex trafficking but continued to market it to teenagers without implementing sufficient policies to protect underage users.  482 F.Supp.3d at 1245.  The plaintiff claimed that adults frequently used the Kik instant messaging application, which was marketed to teenagers, to solicit sexual activity with minors, sometimes even resulting in the deaths of those minors.  *Id.* at 1244.  The court dismissed the case, holding that "this is exactly the type of claim that [Section 230] immunity bars" and that the FOSTA

exception did not apply.  *Id.* at 1249.  The court carefully analyzed the history and structure of FOSTA and held that "Congress only intended to create a narrow exception to [Section 230] for 'openly malicious actors' . . . where it was plausible for a plaintiff to allege actual knowledge and ***overt participation***."  *Kik Interactive*, 482 F.Supp.3d at 1249-51 (emphasis added). The court also held that under Section 1591, the plaintiff must allege that Defendants knowingly participated in a "sex trafficking venture involving ***her***," in particular.  *Id.* at 1251 (emphasis added). Applying this standard, the court held that the plaintiff's pleading that "Defendants knew that other sex trafficking incidents occurred on [their platform]" failed to allege knowing participation "in the sex trafficking venture involving her." *Id.*

Plaintiff's claim is flawed in the same way.  As in *Kik Interactive*, Plaintiff merely alleges that Defendants failed to adequately police what website users were doing.  Such "negative acquiescence" does not, as a matter of law, constitute a violation of Section 1591.  *Afyare*, 632 F. App'x at 286.  "[T]he [law] does not impose an affirmative duty to police and prevent sex trafficking." *A.B. v. Wyndham Hotels & Resorts, Inc. et al*., 2021 WL 1235241, at \*7 (D. Or. Mar. 31, 2021).

Allegations that "Defendants intentionally catered their websites to facilitate sex trafficking and make it easier for traffickers to monetize underage victims in commercial sex acts," Compl. ¶ 124, and "maintained affiliations with sex traffickers," *id.* ¶ 125, are entirely conclusory.  The only particulars of these alleged affiliations are that Defendants "enable[ed] the posting of child pornography on their websites," "[made] it easier to connect traffickers with those who want to view child pornography" through the provision of content-neutral tools such as playlists and "categories like 'teen,'" and "decline[d] to take down child pornography." *Id.*  As discussed above, the mere provision of content-neutral website features cannot be considered "participation" in a user's illegal conduct.  And alleged affiliation with sex traffickers, which Defendants deny, is not enough either, since "liability[] cannot be established by association alone." *Noble*, 335 F.Supp.3d at 524.

Even if Plaintiff's claim that Defendants "enabled" third-party traffickers to share videos were true—which it is not—that still would not meet the requirements of Section 1591. At most, Plaintiff alleges that Defendants enabled third parties to share videos and images *depicting* sex trafficking. *See* Compl. ¶¶ 60, 122. But that is not enough. A plaintiff must plausibly allege that the defendant participated in "the sex trafficking act itself." *Kik Interactive*, 482 F. Supp. 3d at 1251 (quoting *Noble*, 335 F. Supp. 3d at 524); *see also Afyare*, 632 F. App'x at 286; *Geiss*, 383 F.Supp.3d at 169. Plaintiff has not done so.

### C.   Plaintiff fails to allege Defendants knowingly benefitted from Plaintiff's alleged trafficking.

Section 1591 requires that the defendant knowingly benefit from participation in the commercial sex trafficking venture. 18 U.S.C. § 1591(a)(2). This means Plaintiff's claims must be dismissed unless Defendants not only benefitted, but benefitted "*because of*" participation in commercial sex trafficking. *Geiss*, 383 F.Supp.3d at 169-70 (emphasis in original). Plaintiff has failed to connect any alleged benefit received by Defendants with participation in the alleged trafficking.

*Geiss* and *Noble* are on point. In both cases, plaintiffs brought TVPRA claims against Harvey Weinstein for sexually exploiting aspiring actresses and against individuals and corporations that allegedly enabled his actions.[6] Each time, the court found the plaintiffs had adequately pleaded claims against Weinstein himself, but the beneficiary claims against Weinstein's associates failed. In *Geiss*, the court acknowledged that defendant TWC undoubtedly received benefits from employing Weinstein because "[h]is movies and influence generated revenue" for the company. 383 F. Supp. 3d at 169. But the "controlling question" was "whether H[arvey] Weinstein provided any of those benefits to TWC *because of* [its] facilitation of [his]

---

[6] Because Section 1595 also requires that the defendant knowingly benefit from participation in the commercial sex trafficking venture, 18 U.S.C. § 1595(a), case law discussing this element under Section 1595 applies equally to the analysis of this element under Section 1591.

sexual misconduct." *Id.*  The court dismissed the TVPRA claim against TWC because the plaintiff failed to allege how TWC benefitted from facilitating Weinstein's "alleged predations," as opposed to benefitting from the movies he helped produce. *Id.* at 170.  Similarly, in *Noble* the court dismissed a TVPRA claim against a defendant who "benefitted financially from Harvey Weinstein's promotion of films and other business-related activities" because there were no "factual allegations that link[ed]" that benefit to Weinstein's actions towards the plaintiff. 335 F. Supp. 3d at 524.

Plaintiff's claims are similarly defective.  The only benefit Defendants allegedly received was "substantial advertising revenue by hosting advertisements on their sites."  Compl. ¶ 56.  But an allegation that Defendants monetized their websites in general does not imply that those advertising revenues were received "because of" trafficking by third parties.  Nor does Plaintiff allege that Defendants received any benefit whatsoever from ***her*** specific revenge videos.  To the contrary, she alleges that Defendants devote resources to removing underage content, including her videos.  Plaintiff has accordingly failed to plead that Defendants knowingly benefitted from any alleged participation in trafficking generally, or from her videos in particular.

### D.   Plaintiff fails to allege actual knowledge by Defendants of the alleged trafficking.

Section 1591 requires that beneficiaries have actual knowledge of the commercial sex trafficking.  While constructive knowledge is generally sufficient for civil TVPRA claims, those claims are only exempted from Section 230 immunity where the defendant had "***actual knowledge***" of the trafficking.  *See Kik Interactive*, 482 F. Supp. 3d at 1250 (emphasis added); *see also United States v. Phea*, 953 F.3d 838, 843 (5th Cir. 2020) (discussing requirement of actual knowledge under Section 1591).  Moreover, as the court held in *Kik Interactive*, Defendants must have actual knowledge of trafficking involving Plaintiff specifically; general knowledge that "other sex trafficking incidents occurred on [the platform]" is insufficient to survive a motion to dismiss.  *Id.*  Plaintiff fails to allege in even a conclusory way that

1   Defendants had actual knowledge of sex trafficking involving *her* until she brought it

2   to Defendants' attention and then the content was removed. Without this element (or

3   any one of the preceding three elements), her claim must be dismissed. *Id.*

4       In light of the foregoing, Plaintiff fails to plead a violation of Section

5   1591. Accordingly, the FOSTA exception to Section 230 does not apply and

6   Plaintiff's TVPRA claim is barred. *Kik Interactive*, 482 F. Supp. 3d at 1249, 1251.

7       **III.   Section 230 Applies to All of Plaintiff's Remaining Claims**

8       Plaintiff's remaining claims are all barred by Section 230 because they would

9   hold Defendants liable as the publishers of third-party content on their website and no

10  statutory exception conceivably applies. The Complaint's Second Claim for Relief

11  alleges that Defendants unlawfully possessed child pornography under 18 U.S.C.

12  § 2252A. Plaintiff predicates this count on Defendants' alleged receipt and

13  distribution of videos depicting Plaintiff made and uploaded by Plaintiff's ex-

14  boyfriend, a third-party user. *See* Compl. ¶ 138. Federal courts have consistently

15  held that such claims against websites for possessing child pornography are barred by

16  Section 230. *Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020); *Bates*, 2006

17  WL 3813758; *see also M.A. ex rel. P.K*, 809 F. Supp. 2d 1054-55 (Section 230 barred

18  claims under 18 U.S.C. § 2255 claim based on a violation of Section 1591).

19      The same is true of Plaintiff's state law claims. Federal courts have consistently

20  held that the same or similar claims against ICSs are barred by Section 230. *See e.g.*,

21  *Bates*, 570 F.3d at 1105-06 (state-law claims for failure to remove sexual content

22  posted by an ex-boyfriend); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 762 (Tex.

23  Ct. App. 2014) ("revenge" pornography similar to California Civil Code § 1708.85);

24  *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (California

25  Unfair Competition Law claims); *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102,

26  1108, 1118–19 (9th Cir. 2007) (same); *Morton v. Twitter, Inc.*, 2021 WL 1181753, at

27  *4 (C.D. Cal. Feb. 19, 2021) (California unjust enrichment claims).

28

## IV.   Plaintiff's Claims Fail For Additional Reasons

As discussed above, all of Plaintiff's claims are barred by Section 230 of the Communications Decency Act.  But even were that not the case, Plaintiff's Claims for Relief all fail for additional reasons.

### A.   The Complaint fails to plead a *prima facie* TVPRA claim

To hold Defendants liable as beneficiaries of commercial sex trafficking, Plaintiff must allege: (1) Defendants knowingly benefitted, (2) from "participat[ing] in a venture," that (3) Defendants "knew or should have known has engaged in" commercial sex trafficking. 18 U.S.C. § 1595(a).  These elements largely overlap with Section 1591, and as explained above (Part II), Plaintiff has failed to plead facts showing that she was a victim of commercial sex trafficking, the existence of a trafficking "venture," that Defendants participated in that venture, or that Defendants "knowingly benefitted" from that participation.

The principal difference between Sections 1591 and 1595 is that a Section 1595 claim can be based on constructive knowledge of the specific trafficking at issue, whereas a violation of Section 1591 requires actual knowledge.  *See Kik Interactive*, 482 F. Supp. 3d at 1251.  But Plaintiff has failed to plead even that. In addition, although some courts have held that "participation in a venture" has different meanings in Sections 1591 and 1595, Plaintiff has failed to plead Defendants participated in trafficking under either standard, let alone trafficking involving her.

### 1.   Defendants had neither actual nor constructive knowledge of Plaintiff's alleged trafficking

As with Section 1591's knowledge requirement, to meet the "constructive knowledge" element of Section 1595, Plaintiff must show that Defendants had constructive knowledge that ***Plaintiff*** was being trafficked; general knowledge that trafficking was afoot will not suffice.  Thus, courts have generally held that victims of commercial sex trafficking cannot sue hotels where they were prostituted based on allegations that the hotels had "only an abstract awareness of sex trafficking in

general." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). "[K]nowledge or willful blindness of a general sex trafficking problem … does not satisfy the *mens rea* requirements of the TVPRA." *Id.*  Accordingly, TVPRA claims like Plaintiff's that fail to "allege facts showing these Defendants knew or should have known of *her* trafficking" specifically must be dismissed. *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) (emphasis added); *see also A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020). Here, Plaintiff has not alleged any facts that would have put Defendants on notice about any trafficking involving *her*.  Rather, she alleges merely that "Defendants knew or should have known that the videos and images featured on their websites depicted sex trafficking." Compl. ¶ 122.

Moreover, even that allegation of general knowledge is not supported by any facts that would have provided Defendants with knowledge *of trafficking*, as required by the TVPRA. Instead, the Complaint alleges that "Defendants have repeatedly been made aware of the child pornography on their websites by victim's complaints, third-party reporting, advocacy groups, and government investigations." *Id*.  But the Complaint lacks factual allegations that would tie Defendants' supposed knowledge of "child pornography on their websites" to knowledge of commercial sex trafficking.

## 2. Defendants did not participate in a commercial sex trafficking venture with Plaintiff's ex-boyfriend

As many courts—including in this district—have recognized, Section 1595 requires the same kind of overt participation in trafficking as Section 1591.  Plaintiff must allege Defendants engaged in "specific conduct that furthered the sex trafficking venture."  *Noble*, 335 F.Supp.3d at 524; *accord, e.g.*, *Geiss*, 383 F.Supp.3d at 169; *Ratha v. Phatthana Seafood Co.*, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017).  As explained above, Plaintiff fails to plead overt participation. *See supra,* Part II.B.

Plaintiff also fails to satisfy the alternative standard applied by some courts that

**MOTION TO DISMISS**

requires allegations of a "continuous business relationship" between "the sex traffickers *who victimized Plaintiff*" and the defendant sufficient to constitute a "tacit agreement." *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9, 10 (N.D. Cal. Aug. 20, 2020) (emphasis added); *accord S.J. v. Choice Hotels Int'l,* 473 F. Supp. 3d 147, 154 (requiring participation in the "*particular* sex trafficking venture" (emphasis in original)).   The only connection Plaintiff alleges between Defendants and sex traffickers or Plaintiff's ex-boyfriend is that traffickers posted illegal content to Pornhub. But Defendants "cannot be deemed to have participated in all ventures arising out of each post on [their] site." *J.B.*, 2020 WL 4901196, at *10. Indeed, it was this very concern that led Congress to pass Section 230 in the first instance. *Carafano*, 339 F.3d at 1124.

## B.   18 U.S.C. § 2258A does not create a private right of action

Plaintiff's Second Claim for Relief alleging a "failure to report" under 18 U.S.C. § 2258A fails because it is a criminal statute which does not create a private right of action. *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 1856 (2017). Nothing in Section 2258A suggests a congressional intent to create a civil cause of action and the claim should be dismissed.

## C.   Plaintiff has not alleged that Defendants knowingly possessed and distributed CSAM

Plaintiff's Third Claim for Relief under 18 U.S.C. § 2252A should also be dismissed because Plaintiff has not pleaded that Defendants "knowingly receive[d] or distribute[d] any child pornography."   18 U.S.C. § 2252A(a)(2)(A).   The "mere receipt of child pornography" is not prohibited, but rather "the *knowing* receipt of this illegal content" is. *United States v. Dobbs*, 629 F.3d 1199, 1204 (10th Cir. 2011). The defendant must actually know that the performer is underage at the time of receipt or distribution.   *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Persons, like Defendants, "who seek[] out only adult pornography, but without [their] knowledge is sent a mix of adult and child pornography" do not violate 18 U.S.C. §

2252A. *United States v. Myers*, 355 F.3d 1040, 1042 (7th Cir. 2004). Because Plaintiff has not alleged that Defendants knew the videos of her contained CSAM prior to Plaintiff's takedown request, Compl. ¶ 110, and Defendants promptly removed the offending videos, Plaintiff's 18 U.S.C. § 2252A claim must be dismissed.

### D.    Defendants have not violated Cal. Civ. Code § 1708.85

Plaintiff's Fourth Claim for Relief seeks recovery under California Civil Code § 1708.85. The statute provides a private right of action "against a person who intentionally distributes" private sexually explicit materials "without the other's consent" if "the person knew that the other person had a reasonable expectation that the material would remain private." *Id.*

The statute is intended to address "revenge pornography" situations; it is not targeted at websites that host such content. While such a claim might be possible against Plaintiff's ex-boyfriend, no claim lies against Defendants. The statute expressly prohibits liability where "[t]he distributed material was previously distributed by another person." *Id.* § 1708.85(c)(6). Plaintiff alleges that her ex-boyfriend first posted the videos online in December 2019 and then uploaded them to Pornhub around March of 2020. *See* Compl. ¶¶ 107, 110. Accordingly, Plaintiff has failed to plead a claim under § 1708.85 against Defendants.

### E.    Plaintiff's UCL claim should be dismissed

Plaintiff's California's Unfair Competition Law ("UCL") claim should also be dismissed because Plaintiff lacks standing to bring it. The UCL provides private plaintiffs with a narrow action that "shall be prosecuted exclusively ... by a person who has suffered injury in fact ***and*** has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). In other words, Plaintiff must allege that she has suffered "***economic injury***" "caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (quoting *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 895 (Cal. 2011)) (emphasis in original).

Where, as here, a plaintiff's "allegations are not enough to plausibly allege that Plaintiff suffered the economic injury required for UCL standing," the claim should be dismissed. *Holt v. Facebook, Inc.*, 240 F.Supp.3d 1021, 1036 (N.D. Cal. 2017).

### F. California has no cause of action for "unjust enrichment"

Plaintiff's Sixth Claim for Relief seeks recovery for "unjust enrichment." "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Avakian v. Wells Fargo Bank, N.A.*, 2019 WL 3064426, at \*7 (C.D. Cal. May 10, 2019) (citation omitted), *aff'd,* 827 F. App'x 765, 766 (9th Cir. 2020). "Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." *Myers-Armstrong v. Actavis Totowa, LLC*, 382 F. App'x 545, 548 (9th Cir. 2010) (internal quotation mark omitted). "[T]he mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1593 (2008) (citation omitted). "A restitution order against a defendant … requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Kwikset*, 246 P.3d at 895. Plaintiff has not demonstrated an entitlement to restitution because she has not pleaded that Defendants have gained possession of money or property that more properly belongs to her.

### CONCLUSION

The Court should grant this motion and dismiss the Complaint with prejudice. Where claims "are barred as a matter of law by [Section 230] … allowing for their amendment would be futile" and dismissal with prejudice is the appropriate remedy. *Caraccioli v. Facebook, Inc.*, 167 F.Supp.3d 1056, 1067 (N.D. Cal. 2016).

1    DATED: JUNE 30, 2021            RESPECTFULLY SUBMITTED,

2

3                                        /s/    Benjamin M. Sadun

4                                    BENJAMIN M. SADUN (287533)
                                     benjamin.sadun@dechert.com
5                                    DECHERT LLP
                                     US Bank Tower, 633 West 5th Street,
6                                    Suite 4900
7                                    Los Angeles, CA 90071-2013
                                     Phone: (213) 808-5721; Fax: (213) 808-5760
8

9                                    KATHLEEN N. MASSEY (*admitted pro hac*
10                                   *vice*)
                                     Kathleen.massey@dechert.com
11                                   MARK S. CHEFFO (*pro hac vice*
12                                   *forthcoming*)
                                     mark.cheffo@dechert.com
13                                   DECHERT LLP
14                                   Three Bryant Park
                                     1095 Avenue of the Americas
15                                   New York, NY 10036
                                     Phone: (212) 698-3500; Fax: (212) 698 3599
16                                   *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28