1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br><br> v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD, D/B/A PORNHUB, MG FREESITES II, LTD, MG CONTENT RT LIMITED, and 9219-1568 QUEBEC, INC. D/B/A MINDGEEK,<br><br>   Defendants. | Case No.: SACV 21-00338-CJC(ADSx)<br><br><br>**ORDER DENYING IN SUBSTANTIAL PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [Dkt. 45]** |

# I. INTRODUCTION

Plaintiff brings this putative class action against Defendants Mindgeek USA Incorporated, Mindgeek S.A.R.L., MG Freesites, LTD, d/b/a Pornhub, MG Freesites II, LTD, MG Content RT Limited, and 9219-1568 Quebec, Inc. d/b/a Mindgeek, alleging that Defendants violated federal sex trafficking and child pornography laws by knowingly posting, enabling the posting of, and profiting from pornographic videos featuring persons under the age of 18.  (Dkt. 42 [First Amended Complaint, hereinafter "FAC"].)  Plaintiff also alleges violations of California state laws, including the state's Trafficking Victims Protection Act, "Revenge Pornography" Law, and Unfair Competition Law.  (FAC ¶¶ 184–97).  Plaintiff also alleges claims for unjust enrichment and intentional infliction of emotional distress.  (*Id.* ¶¶ 198–206.)  Now before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint.  (Dkt. 45 [hereinafter "Mot."].)  For the following reasons, Defendants' motion is **DENIED IN SUBSTANTIAL PART**.

# II. BACKGROUND

Defendants operate popular pornographic websites, such as Pornhub, RedTube, and YouPorn.  (FAC ¶ 38.)  In 2019, Defendants' "flagship" video sharing platform, Pornhub, had roughly 42 billion visits, making Pornhub the eighth most visited website in the United States.  (*Id.* ¶¶ 39–40.)  Plaintiff alleges that victims, activist organizations, law enforcement, press reports, and government agencies have all made Defendants aware that child pornography or Child Sexual Exploitation Material ("CSEM"), such as children being raped and assaulted, appear on their platforms.  (*Id.* ¶¶ 106–35.)  For example, a recent *New York Times* piece explained that many videos on Pornhub feature the rape of unconscious girls, with rapists opening the eyelids of the victims and touching their eyeballs to demonstrate that they were unconscious.  (*Id.* ¶¶ 131–34.)

In her FAC, Plaintiff alleges that Defendants encourage this practice.  Specifically, Plaintiff alleges that Defendants offer video playlists on their platforms with titles such as "less than 18," "the best collection of young boys," and "under-age."  (*Id.* ¶ 81.) Defendants feature videos tagged with the terms "cp," "no18," "young," and "youngster." (*Id.* ¶ 87.)  In at least one instance, visitors to Defendants' platforms have publicly commented that a girl depicted in a video on Defendants' website was "only in ninth grade," but Plaintiff alleges that Defendants chose to advertise the video to receive additional views.  (*Id.*)  Moreover, Plaintiff alleges that when individuals post videos to Pornhub, Defendants direct them on a "How to Succeed" page to use up to 16 tags to describe videos and to select up to eight relevant categories, including ones such as "teen," "school," "babysitter," and "old/young," to make sure the video is visible to the "right" fans.  (*Id.* ¶ 96.)  Defendants also instruct users that indicating that a student is a participant in the video "will entice users to click."  (*Id.* ¶ 97.)  Defendants suggest and promote search terms to their users, such as "young girls," "middle school girls," "middle school sex," "middle schools," and "middle student."  (*Id.* ¶ 103.)  Plaintiff also alleges that searches for terms such as "14yo," "13yo," "girlunder18," and "girl with braces" generate thousands of results on Defendants' platforms.  (*Id.* ¶¶ 101–02.)  Defendants also encourage users to fill out surveys where they may indicate a preference for video categories such as "babysitter," "college," and "school."  (*Id.* ¶ 82.)

While Defendants employ moderators who review each video for approval, Plaintiff alleges that former moderators have admitted that videos depicting "very underage" individuals are approved.  (*Id.* ¶¶ 84, 86.)  For example, Defendants gave the "seal of approval" to 58 videos of someone assaulting a 15-year-old.  (*Id.* ¶ 56.) Defendants have also approved videos that use language such as "I'm 14," "middle schooler," "young teen," and "boy."  (*Id.* ¶ 93.)  Plaintiff also alleges that public comments on videos openly indicate that some use Defendants' platforms to seek child

pornography, with terms like "cp"—a well-known abbreviation for child pornography—"no18," "young," and "youngster." (*Id.* ¶ 87, 95.) Comments on Defendants' platforms also indicate that some use their platforms to trade child pornography with others. (*Id.* ¶ 95.)

Plaintiff also alleges that Defendants have made efforts to evade revealing the full extent of child pornography on their platforms. Defendants use a virtual private network, accept cryptocurrency, use a Tor site, and allow site visitors to use a private messaging system to discuss or send child pornography so that they may evade law enforcement. (*Id.* ¶¶ 58–60.) Moreover, Defendants do not employ tools to verify the age of those depicted in videos posted to their platforms. (*Id.* ¶ 53.) Moreover, Plaintiff alleges that Defendants have publicly acknowledged that implementing age verification tools would be a "disaster" for Defendants' industry, resulting in a 50% reduction in traffic to their websites. (*Id.* ¶¶ 2–3, 53, 73, 140.) In her FAC, Plaintiff alleges that the only time Defendants have addressed child pornography on their platforms was after financial partners, such as Mastercard, stopped accepting payments from Pornhub after independently verifying that Defendants had CSEM on their platforms. (*Id.* ¶¶ 136–38.) As a result, Defendants removed millions of videos from their platforms. (*Id.* ¶¶ 72, 139.)

Plaintiff's FAC also contains allegations that Defendants and child pornographers profit off child pornography. For example, Defendants use their "Modelhub" program to enter into agreements with sex traffickers, featuring videos of trafficked minors in exchange for a part of the proceeds. (*Id.* ¶ 71.) The Modelhub program requires Pornhub to "verify" users seeking to earn a portion of the advertising revenue that Defendants will earn from the verified users' videos. (*Id.* ¶ 48.) Verified users are paid up to 80% of the advertising revenue, depending upon the number of views their video receives. (*Id.* ¶ 48.) Moreover, Plaintiff alleges that Defendants also earn revenue from

child pornography through their fee-based subscription services and by monetizing user data.  (*Id*. ¶¶ 66–70.)

Plaintiff also alleges that Defendants capitalize on the ability of child pornography to drive traffic to their websites.  (*Id*. ¶ 77.)  Even when Pornhub has taken down videos depicting child pornography, Defendants have left "the link, title, and tags" to the video on the site to continue to drive users to its platform.  (*Id*. ¶ 78.)  In one such instance, a prepubescent victim was anally raped (in a video Defendants featured on their platforms), and the video was only removed after the National Center for Missing and Exploited Children reported it to Defendants.  (*Id*.)  Plaintiff alleges that, although Defendants removed the video, they left the link, title, and tags to the video on their website, so those seeking child pornography would continue to visit Defendants' platforms.  (*Id*. ¶¶ 77–79.)

Additionally, Plaintiff alleges that Defendants have profited off child pornography depicting her.  When Plaintiff Jane Doe was 16 years old, her ex-boyfriend filmed the two of them engaged in sexual intercourse without her knowledge or consent.  (*Id*. ¶ 141.)  In December 2019, Plaintiff's ex-boyfriend posted multiple videos of these acts to Defendants' websites, including Pornhub and RedTube.  (*Id*. ¶ 143.)  Plaintiff is visible and identifiable in the videos.  (*Id*.)  Defendants reviewed these videos and approved them for posting, making no efforts to verify Plaintiff's age.  (*Id*. ¶¶ 84, 143.)  Defendants uploaded at least one of the videos to RedTube and featured the video on the front page of the website, where it was viewed 30,000 times.  (*Id*. ¶¶ 146–47.)  Defendants financially benefitted from advertisements that appeared next to the video and from increased traffic to their platforms.  (*Id*. ¶ 146.)  The videos remained on Defendants' websites for nearly a month before Defendants removed them upon Plaintiff's request.  (*Id*. ¶ 149.)  Additionally, Plaintiff alleges that her ex-boyfriend posted more than 500 images and videos on Defendants' websites and others, victimizing other young women.  (*Id*. ¶ 151.)

## III.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

For a plaintiff to survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).  However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. 544, 555 (2007).

## IV.  DISCUSSION

Plaintiff alleges various federal and state law claims against Defendants, including federal and state anti-trafficking claims and other various state law violations. Defendants argue that Plaintiff has failed to state these claims because Defendants are immune from liability under Section 230 of the Communications Decency Act ("CDA"). (Mot. at 6–20.)  With respect to Plaintiff's federal anti-trafficking claim, Plaintiff argues that Defendants have no immunity because of an exception to Section 230 known as the

Allow States to Fight Online Sex Trafficking Act, or "FOSTA."  (Dkt. 49 [Plaintiff's Opposition to Defendants' Motion to Dismiss First Amended Complaint, hereinafter "Opp."] at 10.)  With respect to Plaintiff's other claims, Plaintiff argues that Section 230 immunity does not apply because Defendants materially contributed to the creation of child pornography on their platforms.  (Opp. at 19.)

First, the Court discusses Section 230 immunity and FOSTA.  Specifically, the Court explains what Plaintiff is required to plead to state her federal trafficking claim at the motion to dismiss stage.  Second, the Court analyzes whether Defendants have Section 230 immunity for the remainder of Plaintiff's claims.  Third, the Court evaluates Defendants' non-Section 230 arguments concerning Plaintiff's remaining claims.

## A. Communications Decency Act, Section 230 Immunity

Section 230 of the Communications Decency Act ("CDA") affords Interactive Computer Service Providers ("ICSs") broad immunity from liability for content posted to their websites by third parties.[1]  *Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119, 1123 (9th Cir. 2003).  The statute immunizes ICSs when plaintiffs seek to treat them "as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  That is, Section 230 applies when a plaintiff alleges that the defendant is "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider."  *Gonzalez v. Google LLC*, 2 F.4th 871, 891 (9th Cir. 2021) (ellipsis in original).  "Courts consistently have held that § 230 provides a

---

[1] The parties do not dispute that Defendants qualify as Interactive Computer Service Providers because they operate websites.  Indeed, "[t]oday, the most common interactive computer services are websites." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).

'robust' immunity," *Goddard v. Google, Inc.*, 2008 WL 5245490, at * 2 (N.D. Cal. Dec. 17, 2008) (quoting *Carafano v. Metrosplash.com, Inc*., 339 F.3d 1119, 1123 (9th Cir. 2003)), and "that all doubts 'must be resolved in favor of immunity.'" *Id.* (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008)).   However, there are exceptions to Section 230 immunity, some of which Plaintiff has advanced in this case.

## B. The FOSTA Exception

ICSs cannot use Section 230 immunity to escape liability for everything.   In 2018, Congress enacted an exception to Section 230 immunity known as the Allow States to Fight Online Sex Trafficking Act, or "FOSTA."  *See* 47 U.S.C. § 230(e)(5)(A).   FOSTA exempts certain provisions of the federal Trafficking Victims Protection Reauthorization Act ("TVPRA") from Section 230's immunity.  *Id.* ("[n]othing in [Section 230] . . . shall be construed to impair or limit any claim in a civil action brought under 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title"). In other words, an ICS cannot use Section 230 immunity if the ICS violates federal anti-trafficking laws.   While the parties do not dispute that Defendants are ICSs, they dispute whether FOSTA changes what Plaintiff is required to plead to state a federal trafficking claim.   To evaluate the appropriate pleading requirements, the Court turns to the two provisions of the Trafficking Victims Protection Reauthorization Act that FOSTA mentions: 18 U.S.C. §§ 1595 and 1591.

### 1.  Sections 1595 and 1591

Section 1595 of the TVPRA provides trafficking victims with a private right of action to pursue claims against perpetrators of trafficking ("direct liability"), or those who knowingly benefit financially from trafficking ("beneficiary liability").  18 U.S.C. §

1595.  To state a claim under Section 1595 (the civil liability statute), a plaintiff must

allege that the defendant has "constructive knowledge" of the trafficking at issue.  *See id.*

(imposing civil liability against "whoever knowingly benefits, financially or by receiving

anything of value from participation in a venture which that person *knew or should have*

*known* has engaged in an act in violation of this chapter . . .") (emphasis added).  Section

1591 of the TVPRA, on the other hand, is a criminal statute, penalizing the same conduct

when a defendant has actual knowledge of the sex trafficking at issue.  18. U.S.C. §

1591(a).  The FOSTA exemption references both these sections, abrogating Section 230

immunity for civil Section 1595 claims, "*if the conduct underlying the claim constitutes a*

*violation of section 1591*[.]"  47 U.S.C. § 230(e)(5)(A) (emphasis added).

While Plaintiff alleges a Section 1595 claim against Defendants, the crux of the

parties' disagreement, or confusion, is whether Plaintiff is required to allege that

Defendants had constructive knowledge or actual knowledge of Plaintiff's trafficking

when the Defendants are ICSs.  (Mot. 12–19, Opp. at 5–17.)

## 2.  FOSTA's Knowledge Requirement

Specifically, Defendants argue that FOSTA's second phrase—"if the conduct

underlying the claim constitutes a violation of section 1591," 47 U.S.C. ¶ 230(e)(5)(A)—

means that Plaintiff is required to plead facts to establish that Defendants had actual

knowledge that Plaintiff was trafficked.  (Mot. at 12–19.)  According to Defendants,

Section 1591's text and *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016),

require Plaintiff to plead that:  (1) there was a venture that commits an act of commercial

sex trafficking; (2) Defendants knowingly participated in that trafficking through some

overt act that furthers the sex trafficking aspect of the venture; (3) Defendants knowingly

benefited from participation in the sex trafficking venture; and (4) Defendants had actual

knowledge of the specific sex trafficking involving Plaintiff.  (Mot. at 12–13.)  Though

While Plaintiff contends that she alleges enough facts to survive under either the actual knowledge or constructive knowledge standard, she asserts that a Section 1595 claim against an ICS requires only constructive knowledge.  (Opp. 5–10, 13–17.)

This Court agrees with other courts in this Circuit that to state a claim under Section 1595 of the TVPRA against an ICS, a plaintiff must allege facts that show that the defendant: "1) . . . knowingly participated in a venture; 2) . . . received a benefit from its participation; and 3) . . . *knew or should have known* that [p]laintiffs were victims of sex trafficking."  *Doe v. Twitter, Inc.*, 2021 WL 3675207, at *25 (N.D. Cal. Aug. 19, 2021) (emphasis added); *see also J.B. v. G6 Hospitality, LLC*, 2020 WL 4901196, at * 8 (N.D. Cal. Aug. 8, 2020); *J.C. v. Choice Hotels Int'l, Inc.* 2020 WL 3035794, at *1 n.1 (N.D. Cal. June 5, 2020).  That is, when a "plaintiff seeks to impose civil liability under Section 1595 based on a violation of Section 1591(a)(2) . . .[,] the 'known or should have known' language of Section 1595 (rather than the actual knowledge standard of Section 1591)" applies.  *Twitter, Inc.*, 2021 WL 3675207, at * 23; *see also J.B.*, 2020 WL 4901196, *8.  Indeed, "[t]o carry over § 1591's . . . definition would impose a heightened *mens rea* standard inconsistent with the plain language of § 1595."  *J.B.*, 2020 WL 4901196, at *8; *see also J.C.*, 2020 WL 3035794, at *1 n.1.  The Court finds the reasoning of these other courts persuasive.  Accordingly, Plaintiff needs only allege facts to plausibly meet the more lenient requirements of a Section 1595 claim.[2]

---

[2] Defendants rely upon *Doe v. Kik*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) to argue that FOSTA only exempts a subsection of Section 1595 claims—those that meet the criminal *mens rea* standard in Section 1591—from Section 230 immunity because Congress intended to impose a more stringent standard for claims against ICSs.  (Mot. at 12–14.)  Defendants maintain that since Plaintiff cannot meet this more stringent standard, her federal trafficking claims are barred.  (*Id.*)  However, for the reasons explained in *Twitter, Inc.*, 2021 WL 3675207 and *J.B.*, 2020 WL 4901196, the Court respectfully declines to follow the reasoning advanced in *Kik*.

Having resolved the question of what Plaintiff is required to plead to state a Section 1595 claim against an ICS under FOSTA, the Court turns to the specific elements of her Section 1595 claim.

**C. Section 1595 – Federal Trafficking Claim**

Again, to state a Section 1595 claim against an ICS, a plaintiff must allege that the defendant: "1) . . . knowingly participated in a venture; 2) . . . received a benefit from its participation; and 3) . . . knew or should have known that [p]laintiffs were victims of sex trafficking." *Twitter, Inc.*, 2021 WL 3675207, at *25.  The Court analyzes each element in turn.

**1.  Plaintiff Sufficiently Alleges That Defendants Knowingly Participated in a Venture**.

The first element of a Section 1595 claim is whether Defendants knowingly participated in a sex trafficking venture.  Under the TVPRA, a "venture" is "any group of two or more individuals associated in fact."  18 U.S.C. § 1591(e)(6).  In the absence of direct association with traffickers, Plaintiff must "allege at least a showing of a continuous business relationship between the trafficker and [Defendants] such that it would appear that the trafficker and [Defendants] have established a pattern of conduct or could be said to have a tacit agreement." *M.A. v. Wyndham Hotels Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019); *J.B.*, 2020 WL 4901196, at *9; *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 186 (E.D. Pa. Apr. 22, 2020).

Prior cases detail what is required to sufficiently allege knowing participation in a venture.  In *M.A. v. Wyndham Hotels Resorts Inc.*, the court found the plaintiff had adequately alleged participation in a venture under "§ 1595 by alleging that Defendants rented rooms to people [they]knew or should have known where [sic] engaged in sex

1   trafficking." *M.A.*, 425 F. Supp. 3d at 971.  There, the plaintiff alleged that the

2   "[d]efendants were on notice about the prevalence of sex trafficking generally at their

3   hotels and failed to take adequate steps to train staff in order to prevent its occurrence[.]"

4   *Id.* at 968.  Additionally, the plaintiff alleged a "number of signs . . . [that] should have

5   alerted staff to her situation."  *Id.*  The court explained that "[t]hese [alleged] acts and

6   omissions by Defendants . . . facilitated the sex trafficking venture."  *Id.*  Similarly, in

7   *Doe v. Twitter*, the court found that "general allegations that Twitter enables sex

8   trafficking on its platform"—Twitter makes it hard for users to report child sexual abuse

9   material; permits large amounts of human trafficking on its platform, despite having the

10  ability to monitor it and at least constructive knowledge of its posting on the platform;

11  provides hashtags to help users find child sexual abuse material; rarely removes hashtags

12  that are associated with such material; and has a search suggestion feature that makes it

13  easier for users to find the illicit content—combined with specific allegations about how

14  Twitter failed to remove child pornography videos depicting the plaintiffs, made it

15  plausible that Twitter and the sex traffickers had a "tacit agreement."  *Twitter,* 2021 WL

16  3675207, at *25.

17

18      As in *Twitter,* Plaintiff plausibly alleges that Defendants generally enable child sex

19  trafficking on their platforms and failed to remove the child pornography depicting

20  Plaintiff, sufficiently pleading that Defendants participated in a venture with traffickers.

21  With respect to the general allegations, this case closely mirrors *Twitter.*  Just like the

22  *Twitter* plaintiffs, Plaintiff here alleges that Defendants enable child pornography by

23  permitting large amounts of human trafficking and commercial sexual exploitation

24  material on its platform, despite having the ability to monitor it.  (FAC ¶¶ 56, 78, 146–47

25  [Defendants review, approve, post, and feature videos of children being assaulted or

26  raped]); *id.* ¶¶ 2–3, 53, 56, 72–73, 106–35, 140 [Defendants know about the

27  pervasiveness of child pornography on their platforms but fail to implement age

28

verification technology or take meaningful action to stop it].)[3]  Like *Twitter*, Defendants allegedly make it easy for users to find child pornography.  (*Id.* ¶¶ 77–79, 81, 87, 93, 96, 103 [Defendants offer, approve, and capitalize upon video playlists, tags, titles, categories, and descriptors indicating that videos consist of child pornography, using terms such as "less than 18," "the best collection of young boys," and underage," "cp," "no 18," and "young."]; *id.* ¶¶ 81, 87 [Defendants promote and suggest to users search terms such as "middle school girls," "middle schools," and "middle student"].)   And perhaps more egregious than *Twitter*, Plaintiff alleges that Defendants enable child sex trafficking when they enter into agreements with traffickers to share proceeds of advertisement revenue earned from child pornography videos posted to their websites, (*id.* ¶¶ 66–71), and actively employ tactics to make it difficult for law enforcement to locate traffickers, (*id.* ¶¶ 58–60).

With respect to the specific allegations concerning the videos of Plaintiff, the FAC contains sufficient facts to make it plausible that Defendants were aware the videos of Plaintiff contained child pornography and failed to remove them, thereby creating a venture.[4]  First, Plaintiff alleges that Defendants' moderators reviewed, approved, and uploaded at least one of the child pornography videos of Plaintiff to RedTube.  (*Id.* ¶¶ 84, 86, 146–47.)  Second, when Defendants uploaded one of the videos of Plaintiff to RedTube, (*id.* ¶ 146), the video title contained the word "teen," was tagged with the word "teen," and was categorized as "teen" pornography, (*id.*), indicating how youthful Plaintiff appeared.  Third, Plaintiff alleges that her ex-boyfriend has posted more than

---

[3] According to Plaintiff, the only time Defendants have taken significant action in response to child sex trafficking was after press reports called upon Defendants' financial partners, such as Mastercard, to stop accepting payment from their websites because of the pervasiveness of child sexual exploitation material on their platforms.  (FAC ¶ 136.)  Mastercard launched its own investigation into the claims and substantiated them.  (*Id.*)  According to the FAC, within days of this event, Defendants removed two-thirds of the videos on its platforms.  (*Id.* ¶ 72.)

[4] The Court evaluates whether Defendants knew or should have known that the venture was engaged in sex trafficking under the third element of Plaintiff's Section 1595 claim.

500 images and videos victimizing young women to Defendants' platforms and other websites, (*id.* ¶ 151), with Defendants' approval, (*id.* ¶ 84). Finally, the videos of Plaintiff were on Defendants' platforms for nearly a month before they were removed, providing ample time for Defendants to identify the videos as child pornography and remove them. (*Id.* ¶ 149.)

Plaintiff's general and specific allegations render it plausible that Defendants had "a continuous business relationship" with traffickers and Plaintiff's ex-boyfriend, and that Defendants and traffickers "have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970. Plaintiff therefore sufficiently alleges the first element of her Section 1595 claim.

## 2. Plaintiff Sufficiently Alleges Defendants Knowingly Received A Benefit From Their Participation in the Venture

Plaintiff also adequately alleges the second element of her Section 1595 claim: Defendants knowingly received a benefit from the venture. "To state a claim under section 1595(a) beneficiary theory," Plaintiff "must allege facts from which the Court can reasonably infer that" Defendants "knowingly benefit[ted] financially or by receiving anything of value" from their participation in the venture. *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. Jul. 30, 2020) (internal quotation marks omitted).

Here, Plaintiff alleges that Defendants monetize the posting of child pornography through advertising revenue, fee-based subscription services, and selling user data. (FAC ¶¶ 35, 66–70.) Plaintiff also alleges that Defendants monetized the videos of *her*, pleading in her FAC that advertisements appeared next to the videos depicting her and that one video received 30,000 views, (*id.* ¶¶ 146–47), resulting in increased traffic to

Defendants' web platforms, (*id.* ¶ 145).  Thus, Plaintiff plausibly alleges that Defendants knowingly received benefits from the trafficking venture.[5]

### 3.  Plaintiff Sufficiently Alleges that Defendants Knew Or Should Have Known the Venture Was Engaged in Trafficking

Plaintiff also sufficiently alleges the third element of her Section 1595 claim, that Defendants "knew or should have known that [p]laintiff[] w[as] the victim[] of sex trafficking at the hands of user[] who posted the content[.]"  *Twitter,* 2021 WL 3675207, at * 25.  While Defendants argue that Plaintiff does not allege that they had "actual knowledge" of the sex trafficking at issue, (Mot. at 18–19), Defendants reviewed, approved, and featured the videos of Plaintiff on their platforms, (*see, e.g.,* FAC ¶¶ 84–86, 87, 93, 95); the video depicting Plaintiff that Defendants uploaded to RedTube had the word "teen" in its title and was categorized as teen pornography, (*id.* ¶ 146), indicating how young Plaintiff appeared in the video; and Plaintiff's ex-boyfriend had posted hundreds of videos to Defendants' platforms, victimizing other women, (*id.* ¶ 151).  This was all done, according to Plaintiff, when Defendants had actual knowledge of the pervasiveness of child pornography on their platforms, (*see, e.g., id.* ¶¶ 106–35), and yet they still refused to implement basic protections against posting child

---

[5] While Defendants contend that *Geiss v. Weinstein Co. Holdings LLC* and *Noble v. Weinstein* counsel a different result, the Court is not persuaded by these arguments.  (Mot. at 17–18.)  There, the district courts found that the plaintiffs failed to plead a theory of beneficiary liability under Section 1595 against individuals who worked for Harvey Weinstein's company.  *Geiss v. Weinstein Co. Holdings LLC,* 383 F. Supp. 3d 156, 169 (S.D.N.Y 2019); *Noble v. Weinstein,* 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018).  The courts explained that the benefits these individuals received from working for Harvey Weinstein's company had nothing to do with the allegations that Mr. Weinstein trafficked victims.  *Geiss,* 383 F. Supp. 3d at 169 ("The controlling question . . . is whether H. Weinstein provided any of those benefits to TWC *because of* TWC's facilitation of H. Weinstein's sexual misconduct.  The FAC pleads no facts that would plausibly support such a conclusion."); *Noble,* 335 F. Supp. at 524 (analyzing the participation in a venture element and finding "[w]hat is missing are factual allegations that link [Defendant's] actions to Harvey's 2015 conduct toward [Plaintiff].").  Thus, the plaintiffs' Section 1595 claims could not stand.  *Id.*  Unlike in *Geiss* and *Noble,* Plaintiff here alleges a direct connection between the underlying sex trafficking, posting child pornography depicting Plaintiff, (FAC ¶¶ 141–47), and the benefits Defendants received from their participation in the venture, (*id.* ¶¶ 145–47).

pornography, such as age verification technology, (*id.* ¶¶ 2-3, 53, 73, 140).  Plaintiff has pleaded enough facts at this stage to render it plausible that Defendants, at least, should have known that the videos depicting Plaintiff constituted child pornography and that she was solicited or recruited into such acts.

Nevertheless, Defendants advance three primary arguments as to why Plaintiff does not allege facts to show that she was trafficked in the first place.  (Mot. at 13–14.) First, Defendants argue that Plaintiff fails to allege that she was engaged in a *commercial* sex act, (*id.*), as required by the TVPRA.  *See* 18 U.S.C. 1591(a)(1) (Sex trafficking is "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], [obtain]ing . . . or solicit[ing] by any means a person . . .  in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]").  Defendants contend that for sex trafficking to be commercial, there must be a *quid pro quo* between the sex act and an exchange of something of value.  (*Id.* at 13.) The TVPRA, however, defines a commercial sex act broadly, stating that it is "*any sex act*, on account of which anything of value is given to or received by *any person*."  18 U.S.C. § 1591(e)(3) (emphases added).  And courts have explained that "[t]he statutory language requires that [the defendant] knowingly benefit financially, not that the perpetrator compensate [the defendant] on account of the sex trafficking."  *H.H. v. G6 Hospitality, LLC*, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019).  Indeed, posting child pornography is a commercial sex act. *See Twitter*, 2021 WL 3675207, at *27. Plaintiff sufficiently alleges a commercial sex act here.  She alleges her ex-boyfriend posted child pornography (the sex act).  (FAC ¶¶ 141–45.)  She also alleges Defendants received "[]thing[s] of value" in return for posting child pornography.  (*Id.* ¶¶ 145–46 ["Defendants financially benefitted from Jane Doe's trafficking in the form of increased traffic and advertising revenue."].)

Second, Defendants maintain that Plaintiff fails to allege that she was recruited, solicited, or enticed into performing the sex acts at issue, (Mot. at 14). Yet Plaintiff, at this stage, plausibly alleges that her ex-boyfriend solicited her into having sex, (*id.* ¶¶ 141, 143 [plaintiff "was induced to perform the sex acts" depicted in the videos]), in reckless disregard of the fact that Plaintiff was under 18, (*id.* ¶¶ 141–47).

Third, Defendants argue that Plaintiff is required, but fails, to allege that her ex-boyfriend had the intent to monetize the videos at the time they were made. (Mot. at 14.) Even if Plaintiff were required to do so, she has. She pleads that some of the videos were made without her knowledge, (*id.* ¶ 141), and her ex-boyfriend has posted hundreds of videos to Defendants' platforms before, (*id.* ¶ 151). Those facts are enough at this stage to plausibly infer that Plaintiff's ex-boyfriend had the intent at the time the videos were made to post child pornography to Defendants' platforms.

Because Plaintiff has sufficiently pleaded all three elements of her Section 1595 claim, Defendants' motion to dismiss Plaintiff's Section 1595 claim is **DENIED**.

**D. Section 230's Applicability to Plaintiff's Other Claims**

Having analyzed Plaintiff's federal anti-trafficking claim and Defendants' arguments concerning FOSTA, the Court turns to Defendants' arguments that Section 230 bars liability for Plaintiff's remaining federal and state law claims, or the non-TVPRA claims. Defendants correctly note that FOSTA only abrogates liability for Plaintiff's TVPRA claim. *See J.B.*, 2020 WL 4901196, at *5–7. According to Defendants, since the remainder of Plaintiff's claims treat Defendants as if they are a "publisher" of the videos depicting Plaintiff, Section 230 immunizes them. (Mot. at 6–7.) It is true that Section 230 applies when a plaintiff alleges that the defendant is "(1) a provider or user of an interactive computer service (2) *whom a plaintiff seeks to treat . . .*

*as a publisher or speaker* (3) of information provided by another information content provider." *Gonzalez*, 2 F.4th at 891 (ellipsis in original) (emphasis added). However, FOSTA is not the only exception to Section 230 immunity, and Plaintiff advances two other theories to argue that her non-TVPRA claims are not barred. (Opp. at 18–22.)

First, Plaintiff argues that Defendants are acting as content *creators* and, as such, cannot claim Section 230 immunity. (Opp. at 19–21.) Second, Plaintiff argues that Defendants do not have Section 230 immunity based upon the ad-revenue sharing theory advanced in the Ninth Circuit's recent decision *Gonzalez v. Google LLC*. (Opp. at 21–22.) For the reasons discussed below, the Court finds that the content-creator exception applies, and therefore it is not necessary to address Plaintiff's ad-revenue sharing theory.

Content creators cannot use Section 230 immunity to escape liability for the unlawfulness of their content. That is, if an ICS is responsible "in whole or in part, for the creation or development" of unlawful content on its platforms, then Section 230 will not bar claims arising from that unlawful content. 47 U.S.C. § 230(f)(3). "[A] website helps to develop unlawful content, and thus falls within the exception to Section 230, if it *contributes materially* to the alleged illegality of the conduct." *Roommates.com*, 521 F.3d at 1168 (emphasis added). And Ninth Circuit precedent establishes that ICSs, like Defendants*,* "can be both a service provider and a content provider." *Id.* at 1162. That is, "[i]f [a website provider] passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider." *Id.* For example, in *Roommates*, the Ninth Circuit found a website provider, Roommates.com, was a service provider and a content *creator* when it required users to elect discriminatory housing preferences. *Id.* Since such requirements materially contributed to the alleged discriminatory conduct at issue, the Ninth Circuit found the website could be held liable for the illegal content. *Id.*

Defendants argue that they are not content creators with respect to child pornography on their websites.  (Mot. 8–12.)  Plaintiff maintains that Defendants are similar to the *Roommates* defendant because, here, Defendants direct users to complete preference surveys, categorize their videos using coded language for child pornography to ensure that content is visible to the "right fans," and instruct users how to title their videos to target individuals interested in child pornography.  (Opp. at 19.)  Defendants retort that under Ninth Circuit precedents such as *Gonzalez*, 2 F.4th at 892, 893; *Roommates.com,* 521 F.3d at 1174, n.37; *Dyroff,* 2017 WL 5665670, at *8, *aff'd,* 934 F.3d 1093 (9th Cir. 2019); *Carafano*, 339 F. 3d at 1121; and *Kimzey v. Yelp! Inc.,* 836 F.3d 1263, 1269 (9th Cir. 2016), a website does not become a creator of content if it fails to edit or block user-generated content, proliferates or disseminates the content, employs content-neutral search technology which enables users to find the offensive conduct, or if the website reposts allegedly illegal content authored by third parties.  (Mot. at 8–12.)

However, the Court finds Defendants' conduct, as Plaintiff alleges, has materially contributed to the creation of child pornography on its platforms.  This case is remarkably like *M.L. v. Craigslist*, *Inc.,* where the district court found that Craigslist, another ICS, could not claim Section 230 immunity when the plaintiff alleged Craigslist was involved in developing and creating advertisements that sex traffickers used to sell their victims on its platform.  *M.L.,* 2020 WL 6434845, at *11.  There, the plaintiff defeated Craigslist's motion to dismiss on Section 230 immunity grounds when she alleged that: (1) traffickers used Craigslist's rules and guidelines to create the content and format of the advertisements; (2) traffickers would pay Craigslist a fee to post the advertisement on Craigslist's erotic services section; (3) Craigslist designed a communication system to allow traffickers and purchasers to communicate anonymously and evade law enforcement; (4) Craigslist developed user interfaces to make it easier for purchasers to find desired trafficking victims; and (5) that Craigslist was aware that this was occurring

but had relationships with traffickers to facilitate the illegal conduct in exchange for payment.  *Id*. at *11–12.

As in *M.L.*, Plaintiff alleges that Defendants: (1) established guidelines for categories, tags, and titles that Defendants direct traffickers to create and promote child pornography to target the "right" fans, (FAC ¶¶ 96–97); (2) know that child pornography is repeatedly posted to its platforms, (*id*. ¶¶ 78, 106–35); (3) share the proceeds of such content with traffickers Defendants have relationships with, (*id*. ¶¶ 35, 66–71); (4) use a VPN and a Tor site to anonymize web traffic, making it difficult for law enforcement to locate child pornography producers (*id*. ¶¶ 59–60); and (5) developed a private messaging system so that traffickers can exchange child pornography on their websites and evade law enforcement, (*id*. ¶ 58).[6]  These facts, coupled with the other allegations in Plaintiff's FAC that Defendants curate video playlists with titles such as "less than 18," "the best collection of young boys," and "under-age," (*Id*. ¶ 81), clearly indicate Defendants' role in the development of child pornography on their platforms.

This conduct goes far beyond the neutral tools the Ninth Circuit has protected within the ambit of Section 230 immunity.  Indeed, the neutral tools the Ninth Circuit has protected are those that "did not 'encourage the posting of [unlawful] content' by merely providing a means for users to publish [what] they created."  *Gonzalez*, 2 F.4th at 893 (quoting *Roommates*, 521 F.3d at 1171).  But Plaintiff alleges that Defendants' guidance and directions to users call directly for child pornography.  The suggestion that Defendants merely provide a neutral platform for third parties to post whatever they like simply cannot be squared with allegations that aspects of Defendants' platforms facilitate

---

[6] Defendants' argument that Plaintiff's allegations are insufficient because she has not pleaded how Defendants created the videos depicting *her* is not persuasive.  Plaintiff alleges general, widespread practices detailing how Defendants materially contribute to the creation of child pornography and that the videos depicting her constitute child pornography.  Viewing these allegations in the light most favorable to the non-moving party, as the Court must at the motion to dismiss stage, Plaintiff plausibly alleges that those widespread practices applied to videos depicting her.

both the dissemination of child pornography (which is unlawful in and of itself, *see* 18 U.S.C. § 2252A) *and* the development of child pornography.  Simply stated, at this stage, Section 230 will not bar Plaintiff's remaining claims.

## E.  Plaintiff's Remaining Claims

Having analyzed Defendants' Section 230 immunity arguments, the Court turns to Defendants' other objections regarding Plaintiff's non-TVPRA claims.  (Opp. at 22–25.)

### 1.  18 U.S.C. § 2258A – Duty to Report Sexual Abuse Material

As Defendants correctly note, Section 2258A, which imposes a duty to report child sexual abuse material, "does not purport to establish a private right of action."  *Twitter, Inc.*, 2021 WL 3675207, at *29.  Instead, it makes it a crime to "knowing[ly] and willful[ly] fail[]" to report child pornography.  *Id.*  Because Section 2258A does not provide for a private right of action, the Court will grant Defendants' motion to dismiss this claim.  Moreover, since Plaintiff cannot plead facts to create a private right of action, the Court finds amendment would be futile.  *See Mohsin v. California Dep't of Water Res.*, 52 F. Supp. 3d 1006, 1011 (E.D. Cal. 2014) ("Finding that no cause of action can exist, the Court dismisses [the claim] without leave to amend.").  Accordingly, Plaintiff's Section 2558A claim is **DISMISSED WITH PREJUDICE**.

### 2.  18 U.S.C. § 2252A – Receipt and Distribution of Child Pornography

Defendants maintain that Plaintiff does not allege sufficient facts to show that Defendants knowingly received or distributed child pornography, as required to state a claim under 18 U.S.C. § 2252A.  (Mot. at 22–23.)  The Court disagrees.  Plaintiff alleges that Defendants were told repeatedly by law enforcement agencies, victims, advocacy

groups, press reports, and government agencies about the prevalence of child pornography on their websites.  (FAC ¶¶ 106–35.)  Plaintiff also alleges that Defendants curate content and develop platforms to help users share and distribute child pornography.  (*Id.* ¶¶ 58–60, 81, 96.)  Further, Plaintiff alleges that users of Defendants' platforms openly discuss trading child pornography and identify certain videos as child pornography in public comments.  (*Id.* ¶ 95.)  And, according to Plaintiff, Defendants' moderators knowingly reviewed, approved, and featured child pornography videos on their platforms, including videos of Plaintiff.  (*Id.* ¶¶ 84–87, 93, 146–47.)  At the motion to dismiss stage, that is enough to plausibly allege that Defendants knowingly received and distributed child pornography.  Accordingly, Defendants' motion to dismiss Plaintiff's 18 U.S.C. § 2252A claim is **DENIED**.

### 3.  California Civil Code § 52.5 – California's Trafficking Victims Protection Act

California Civil Code Section 52.5 grants victims of human trafficking, as defined in California Penal Code Section 236.1, a private cause of action.  Cal. Civ. Code § 52.5.  While Plaintiff alleges that she is entitled to relief under Section 52.5, Defendants argue that Section 236.1 of California's Trafficking Victims Protection Act ("CTVPA"), which defines human trafficking, is narrower than the federal TVPRA because Plaintiff has not pleaded Defendants had the requisite intent under Section 236.1.  (Mot. at 24.)  Under the CTVPA, Plaintiff sufficiently pleads the requisite intent if she plausibly alleges that Defendants had the intent to distribute, possess, prepare, publish, produce, develop, duplicate, or print matter depicting sexual conduct by a minor in violation of California Penal Code Section 311.1.  Plaintiff correctly notes that her FAC alleges Defendants knowingly feature child pornography on their platforms, (*see, e.g.,* FAC ¶¶ 78, 104–35), and therefore it is plausible that Defendants had the intent to distribute child pornography when they reviewed, approved, and disseminated videos of Plaintiff engaged in sexual

intercourse when she was under the age of 18.  (*Id.* ¶¶ 84, 141, 143, 146–47, 149, 151.)
Thus, Defendants' motion to dismiss Plaintiff's state trafficking claim is **DENIED**.

### 4.   California Civil Code § 1708.85 – Distribution of Private Sexually Explicit Material

Defendants argue that to state a claim under California Civil Code § 1708.85,
Plaintiff must allege that Defendants "intentionally distribute" private sexually explicit
materials "without the other's consent" if "the person knew that the other person had a
reasonable expectation that the material would remain private."  (Mot. at 23.)  Defendants
argue that the statute expressly prohibits liability where "[t]he distributed material was
previously distributed by another person."  Cal. Civ. Code § 1708.85(c)(6).  Defendants
maintain that since Plaintiff alleges that her videos were posted online in December 2019,
but not uploaded to Pornhub until March 2020, that Plaintiff cannot state a claim under
this statute.  (Mot. at 23.)   However, the Court agrees with Plaintiff that she plausibly
alleges, at this stage, that videos of her were distributed in December 2019 on
Defendants' platforms.  (Opp. at 23, FAC ¶ 143.)  As such, Defendants' motion to
dismiss Plaintiff's claim under California Civil Code § 1708.85 is **DENIED**.

### 5.   California Business and Professions Code § 17200 – Unfair Competition Law

The Court agrees with Defendants that Plaintiff has failed to allege standing to
bring a claim under California's Unfair Competition Law because she alleges no financial
injury as a result of Defendants' unfair business practices.  (Mot. at 23–24.)  While
Plaintiff points to her allegations stating she was forced to seek therapy as a result of
Defendants' practices, no financial losses, such as whether Plaintiff paid for therapy, are
in her FAC.  Since Plaintiff could allege additional facts concerning her financial harm,
the Court **DISMISSES** Plaintiff's claim under California's Unfair Competition Law with
**LEAVE TO AMEND**.

### 6.  Unjust Enrichment/Restitution

California courts are split on whether unjust enrichment is an independent cause of action or simply a general principle underlying several different causes of action that entitles a plaintiff to restitution.  *Compare Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("There is no cause of action in California for unjust enrichment."), *with Lectodryer v. Seoulbank*, 77 Cal. App. 4th 723 (2000) (affirming jury verdict in favor of plaintiff in suit for unjust enrichment); *and Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996) (recognizing that plaintiff may advance standalone claim for unjust enrichment).  Like many other courts in this district, the Court believes that unjust enrichment is not a separate cause of action in California.  *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mrtg., Sales Practices, and Prods. Liab. Litig.*, 2010 WL 4867562, at *39 (C.D. Cal. Nov. 30, 2010); *In re DirecTV Early Cancellation Litig.*, 2010 WL 3633079, at *27 (C.D. Cal. Sept. 7, 2010).  Plaintiff's argument that the Court may treat this cause of action as one for restitution will not cure the pleading deficiency.  (Opp. at 24–25.)  Plaintiff must plead a cause of action that "give[s] rise to a right to restitution[.]"  *See McBride v.* Boughton, 123 Cal. App. 4th 379, 388 (2004).  Plaintiff has not made clear which cause of action gives rise to her right to restitution but may do so in an amended complaint.  Thus, Plaintiff's unjust enrichment claim is **DISMISSED WITH LEAVE TO AMEND**.

### 7.  Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff has failed to plead that Defendants possessed the necessary intent to sustain her intentional infliction of emotional distress claim.  (Mot. at 25.)  Plaintiff argues that she need only plead enough facts to render it plausible that Defendants showed a "reckless disregard of the probability of causing emotional distress" concerning Plaintiff.  (Opp. at 25 (quoting *Hughes v. Pair*, 209 P.3d 963, 976 (Cal.

2009).)  Here, Plaintiff alleges that Defendants callously disregarded pleas to remove child pornography from their websites, (FAC ¶¶ 85, 92, 94, 112–13, 119, 130-35), refused to implement age verification technology, (*id.* ¶¶ 2–3, 53, 73, 140), reviewed and approved videos depicting Plaintiff in sexual acts when she was 16, (*id.* ¶¶ 84, 141–47), and featured those videos on the front page of one of their platforms where it was viewed 30,000 times, (*id.* ¶¶ 146-47).  Thus, Plaintiff plausibly alleges that Defendants showed a callous disregard towards the emotional distress such conduct would cause Plaintiff. Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim is therefore **DENIED**.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED IN SUBSTANTIAL PART**.  The Court **DISMISSES** Plaintiff's claim under 18 U.S.C. § 2258A **WITH PREJUDICE**.  The Court **DISMISSES** Plaintiff's claims under California Business and Professions Code § 17200 and Plaintiff's unjust enrichment claim **WITH LEAVE TO AMEND**.  The Court **DENIES** Defendants' motion to dismiss the remainder of Plaintiff's claims under 18 U.S.C. § 1595, 18 U.S.C. § 2252A, Cal. Civ. Code §§ 1708.85, 52.5, and Plaintiff's intentional infliction of emotional distress claim.


DATED:      September 3, 2021

HON. CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

-25-