DAVIDA BROOK (275370)
dbrook@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
HALLEY W. JOSEPHS (338391)
hjosephs@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100; Fax: (310) 789-3150

AMY GREGORY (Pro Hac Vice)
agregory@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019-6023
Phone: (212) 336-8330; Fax: (212) 336-8340

(*See additional counsel on signature page*)

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),<br><br>Defendants. | Case No. 8:21-cv-00338-CJC-ADS<br><br>*Hon. Cormac J. Carney*<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge:     Hon. Cormac J. Carney<br>Date:      November 13, 2023<br>Time:      1:00 p.m.<br>Location:  Courtroom 9 B<br>                411 West Fourth Street<br>                Santa Ana, CA 92701 |

# TABLE OF CONTENTS

LEGAL STANDARD ........................................................................................ 5

FACTUAL BACKGROUND ............................................................................ 6

ARGUMENT .................................................................................................... 8

I.  Plaintiff Satisfies the Rule 23(a) Requirements ................................. 8

II.  Plaintiff Satisfies Predominance Under Rule 23(b)(3) ...................... 10

A.  Common Evidence Will Prove Plaintiff's 18 U.S.C.
§ 2252A Claim .......................................................... 10

1.  Whether MindGeek Received or Distributed
CSAM Is a Predominating Common Question
with a Common Answer .................................................. 11

2.  CSAM Was Transmitted in Interstate or Foreign
Commerce .................................................................... 11

3.  Whether MindGeek Has the Requisite
Knowledge Is a Predominating Common
Question With A Common Answer ............................... 11

B.  Common Issues Predominate as to the Section 1595
Claim .......................................................................... 14

1.  Common Evidence Shows MindGeek's
Knowing Benefit ........................................................... 14

2.  Common Evidence Shows MindGeek's
Participation in Sex-Trafficking Ventures .................... 14

3.  Common Evidence Shows MindGeek's
Knowledge .................................................................... 15

C.  Common Evidence Will Prove Plaintiff's California
Claims .......................................................................... 16

1.  UCL ............................................................................... 16

2.  California Trafficking Victims Protection Act
("CTVPA") .................................................................... 17

i

D.    Class Members' Injuries Can Be Demonstrated Via Classwide Evidence ........................................................... 17

    1.    Statutory Damages ........................................................... 17

    2.    Compensatory Damages and Restitution ....................... 18

    3.    Punitive Damages .......................................................... 18

III.    A Class Action Is Superior to Other Methods of Adjudication ........................................................................... 19

IV.    The Proposed Alternative Class Should Be Certified ........................ 21

V.    Plaintiff Satisfies the Requirements for an Injunctive Relief Class Under Rule 23(b)(2) ...................................................... 21

CONCLUSION .................................................................................... 22

ii

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................................19

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) .......................................................................18

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...........................................................................20

*Brown v. Abercrombie & Fitch Co.*,
  2015 WL 9690357 (C.D. Cal. July 16, 2015) ....................................................14

*Campbell v. Vitran Express Inc.*,
  2015 WL 7176110 (C.D. Cal. Nov. 12, 2015) ......................................................9

*Cartwright v. Viking Indus., Inc.*,
  2009 WL 2982887 (E.D. Cal. 2009) ..................................................................20

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020) ................................................................................9

*Cohen v. Trump*,
  303 F.R.D. 376 (S.D. Cal. 2014) .......................................................................20

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .............................................................................................17

*Ditullio v. Boehm*,
  662 F.3d 1091 (9th Cir. 2011)............................................................................18

*Doe 1 v. JPMorgan Chase Bank, N.A.*,
  2023 WL 3945773 (S.D.N.Y. June 12, 2023)............................................*passim*

*Doe v. Boland*,
  698 F.3d 877 (6th Cir. 2012)..............................................................................18

*Doe v. Mindgeek USA Inc.*,
  558 F. Supp. 3d 828 (C.D. Cal. 2021) .....................................................3, 14, 17

iii

*Doe v. Mindgeek USA Inc.*,
    574 F. Supp. 3d 760 (C.D. Cal. 2021) ..............................................................3, 16

*Doe v. Peterson*,
    784 F. Supp. 2d 831 (E.D. Mich. 2011).............................................................. 12

*Ellis v. Costco Corp. III*,
    285 F.R.D. 492 (N.D. Cal. 2012)....................................................................4, 19

*Fleites v. MindGeek S.A.R.L.*,
    No. 21-cv-04920 (C.D. Cal.)................................................................................ 20

*Forcellati v. Hyland's, Inc.*,
    2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ...................................................... 9

*Franklin v. Midwest Recovery Sys., LLC*,
    2021 WL 1035121 (C.D. Cal. Feb. 5, 2021)...................................................9, 20

*In re Banc of Cal. Secs. Litig.*,
    326 F.R.D. 640 (C.D. Cal. 2018) .......................................................................... 8

*In re Snap Inc. Sec. Litig.*,
    334 F.R.D. 209 (C.D. Cal. 2019) .......................................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 291 (N.D. Cal. 2010)........................................................................ 11

*In re Toys R Us-Delaware, Inc.*,
    300 F.R.D. 347 (C.D. Cal. 2013) .....................................................................4, 17

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015)........................................................................... 5

*Jane Doe #1 v. MG Freesites, LTD*,
    No. 7:21-cv-002200-LSC (N.D. Ala.) ................................................................ 20

*Jane Doe 30's Mother v. Bradley*,
    64 A.3d 379 (Del. Super. Ct. 2012) .................................................................... 19

*Johnson v. Gen. Mills, Inc.*,
    276 F.R.D. 519 (C.D. Cal. 2011) ........................................................................ 17

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017).............................................................................. 17

iv

*Kasky v. Nike, Inc.*,
 45 P.3d 243 (Cal. 2002) ...................................................................................16

*Leyva v. Medline Indus. Inc.*,
 716 F.3d 510 (9th Cir. 2013)...........................................................................4, 18

*Luse v. Sentinel Offender Servs.*,
 LLC, 2017 WL 11629203 (N.D. Ga. Aug. 21, 2017).........................................21

*McCrary v. Elations Co., LLC*,
 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ....................................................20

*Nguyen v. Baxter Healthcare Corp.*,
 275 F.R.D. 596 (C.D. Cal. 2011) .......................................................................20

*Novoa v. GEO Grp., Inc.*,
 2019 WL 7195331 (C.D. Cal. Nov. 26, 2019)...................................................17

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
 31 F.4th 651 (9th Cir. 2022) ..............................................................................10

*Owino v. CoreCivic, Inc.*,
 60 F.4th 437 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2612 (2023)...............2, 17

*Parsons v. Ryan*,
 754 F.3d 657 (9th Cir. 2014)..............................................................................21

*Rapuano v. Trustees of Dartmouth Coll.*,
 334 F.R.D. 637 (D.N.H. 2020)...........................................................................19

*Ridgeway v. Walmart Inc.*,
 946 F.3d 1066 (9th Cir. 2020)............................................................................18

*Spann v. J.C. Penney Corp.*,
 307 F.R.D. 508 (C.D. Cal. 2015) .......................................................................16

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003)..............................................................................10

*Tanedo v. E. Baton Rouge Par. School Bd.*,
 2011 WL 7095434 (C.D. Cal. Dec. 12, 2011) ...................................................15

*Tinsley v. Snyder*,
 922 F.3d 957 (9th Cir. 2019).........................................................................21, 22

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ............................................................. 5

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ........................................................................... 10

*United States v. Budziak*,
    697 F.3d 1105 (9th Cir. 2012) ........................................................... 11

*United States v. Figueroa-Lugo*,
    793 F.3d 179 (1st Cir. 2015) .............................................................. 12

*United States v. Fletcher*,
    946 F.3d 402 (8th Cir. 2019) ............................................................. 11

*United States v. Olander*,
    572 F.3d 764 (9th Cir. 2009) ............................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................. 8

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ............................................................... 8

*Wilson v. Ponce*,
    2021 WL 3494637 (C.D. Cal. Apr. 29, 2021) ............................ 21, 22

*Woods v. Vector Mktg. Corp.*,
    2015 WL 5188682 (N.D. Cal. Sept. 4, 2015) ...................................... 9

**STATUTES**

18 U.S.C. § 1589 ....................................................................................... 2

18 U.S.C. § 1591 ............................................................................... 1, 3, 14

18 U.S.C. § 1595 ................................................................................. *passim*

18 U.S.C. § 2252A ...................................................................... 10, 12, 18

18 U.S.C. § 2255 ................................................................................. *passim*

18 U.S.C. § 2258A ..................................................................................... 1

47 U.S.C. § 230 ................................................................................... 3, 16

vi

Cal. Bus. & Prof. Code § 17200 ............................................................................ 16

Cal. Civ. Code § 52.5 ......................................................................... 1, 4, 17, 18

**RULES**

Federal Rule of Civil Procedure 23 ................................................................ *passim*

This case presents common central questions of fact and law with common answers: for more than a decade, MindGeek has knowingly received and distributed child sexual abuse material (CSAM) and benefitted financially from child sex trafficking on its network of wildly popular pornography websites. Whether MindGeek's conduct violates 18 U.S.C. § 2252A, the federal Trafficking Victims Protection Reauthorization Act (18 U.S.C. §§ 1591, 1595), California's Trafficking Victims Protection Act (Cal. Civ. Code § 52.5), and California's Unfair Competition Law will require the resolution of common issues regarding MindGeek's policies and practices, such as MindGeek's failure to implement basic protections, like age verification; MindGeek's policy of refusing to review content flagged as CSAM unless it had been tagged more than 15 times; and MindGeek's failure until 2020 to report CSAM to the National Center for Missing & Exploited Children (NCMEC).

*First*, the Section 2252A claim requires proof that MindGeek received or distributed CSAM with actual knowledge or willful blindness, which Plaintiff will prove using MindGeek's records. MindGeek's receipt and distribution of CSAM is undisputed. Prior to April 2020, MindGeek uniformly failed to comply with its legal obligation to report any CSAM to the NCMEC. 18 U.S.C. § 2258A. In June 2020, MindGeek conducted an internal, historical audit ("TOS8 Audit") to identify CSAM that had not been reported to NCMEC. TOS8 stands for "Terms of Service 8," which is MindGeek's internal reference for CSAM. The TOS8 Audit identified *tens of thousands* of CSAM MindGeek received and distributed on its websites. The TOS8 Audit records contain titles, how many times the content has been viewed, when it was submitted, who submitted it, and when it was removed. They also describe which tags and categories were used for each of the videos and images. These comprehensive records show that MindGeek's content moderators greenlighted videos for distribution with titles like ████████████████ which was viewed 35,682 times, and ██████████████████ which was viewed 6,953 times over the course of more than three years before it was finally taken down.

Following the TOS8 Audit, MindGeek continued to catalogue the CSAM that its content moderators have received and approved for distribution. As of April 28, 2023, MindGeek identified *38,132* CSAM photos and images that amassed *713 million* views during the class period, including videos with names like ███████ ████████████████████ and ██████████████████ This content has been received and made available for distribution on MindGeek's websites because MindGeek knowingly failed to implement the policies and internal checks that are necessary to limit the proliferation of CSAM.

MindGeek's inadequate policies are demonstrative of MindGeek's actual knowledge and willful blindness and are subject to common proof. For example, common evidence can prove MindGeek:

- Failed to enact basic protections, like age verification, to address the known presence of CSAM on MindGeek's websites;
- provided its content moderators little to no training and in fact instructed them ***not*** to inform their superiors of the prevalence of CSAM; and
- employed a company-wide "flag" system under which content moderators failed to even review CSAM until users flagged the video ***more than 15 times***.

At trial, MindGeek may argue that its policies and practices do not establish "willful blindness," or that the TOS8 Audit documenting MindGeek's CSAM receipt and distribution somehow does not establish actual knowledge. But whether any of that is true turns on MindGeek's conduct and is a common question with a common answer.

***Second***, the Section 1595(a) claim also turns on MindGeek's company-wide policies and practices. *See Owino v. CoreCivic, Inc.,* 60 F.4th 437, 445 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2612 (2023) (certifying class action under forced labor section of TVPRA, Section 1589, and California TVPA); *Doe 1 v. JPMorgan Chase*

*Bank, N.A.*, 2023 WL 3945773 (S.D.N.Y. June 12, 2023) (certifying sex trafficking class action under Section 1595). Common evidence demonstrates that MindGeek's conduct satisfies each element of Plaintiff's Section 1595 claim: (1) MindGeek "knowingly benefitted" from (2) "participation in a venture" that MindGeek (3) "knew or should have known" had engaged in a violation of 18 U.S.C. § 1591.

**Knowing Benefit.** MindGeek's knowing benefit is subject to common proof, including (1) MindGeek's common practice of displaying advertisements alongside CSAM on its websites and (2) MindGeek's documents showing the revenue MindGeek generated from those advertisements.

**Participation in a Venture.** Common evidence will demonstrate MindGeek engaged in "a pattern of conduct" that amounted to a "tacit agreement" with traffickers by "generally enabl[ing]" CSAM on its platform, *Doe v. Mindgeek USA Inc.* ("*MindGeek I*"), 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (Carney, J.), including by (1) implementing policies and technological tools designed to encourage anonymity; (2) failing to report CSAM to NCMEC or law enforcement; (3) refusing to implement technological tools to limit CSAM or verify performers' ages; (4) reviewing all CSAM photos and videos received by MindGeek sites and approving 38,132 videos and photos for distribution; (5) using extensive data analytics and playlists, tags, titles, categories to encourage the proliferation of CSAM on its websites; (6) failing to remove CSAM and permitting its reupload; and (7) sharing proceeds with traffickers. All of this evidence is common proof.

**Knew or Should Have Known.** A plaintiff need not demonstrate actual knowledge where, as here, the defendants are ineligible for Section 230 immunity. Nonetheless, common evidence (including the audit) can prove actual knowledge in spades. *Doe v. Mindgeek USA Inc.* ("*MindGeek II*"), 574 F. Supp. 3d 760, 774-75 (C.D. Cal. 2021) (Carney, J.). Common evidence will show that (1) MindGeek content moderators review and approve every video posted to their platforms and allowed 38,132 CSAM photos and images to be posted anyway; (2) MindGeek was

aware of the broad appeal these videos have because of its analytics, which showed the popularity of videos tagged with terms that are commonly associated with CSAM; (3) MindGeek refused to implement basic tools like age verification; and (4) Mindgeek consistently featured CSAM across its websites.

*Third*, Plaintiff will rely on the same common evidence to prove the California TVPA claim, Cal. Civ. Code § 52.5, which requires showing that (1) MindGeek knowingly possessed CSAM, and that (2) the material depicts a person under the age of 18 years personally engaging in or simulating sexual conduct.

*Fourth*, Plaintiff's UCL claim is similarly based on the common evidence that gives rise to MindGeek's unlawful conduct.

If Plaintiff prevails on her claims, damages also are calculable on a class-wide basis. For MindGeek's Section 2252A violation, each class member is entitled to liquidated damages in the amount of $150,000. 18 U.S.C. § 2255. Ex. 2, Mills Decl. ¶¶ 29-30.[1] The same is true of Plaintiff's California TVPA claim, which allows victims to recover statutory damages of $10,000. Cal. Civ. Code § 52.5(b). *Id.* ¶¶ 31-32. While individualized damages issues do not defeat predominance, cases involving statutory damages are particularly appropriate for certification. *See In re Toys R Us-Delaware, Inc.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013) ("Courts have been more willing to find predominance where [the class] seeks only statutory damages."). Both claims also permit plaintiffs to recover punitive damages, which is based on common evidence of MindGeek's "conduct toward the class as a whole." *Ellis v. Costco Corp. III*, 285 F.R.D. 492, 542-44 (N.D. Cal. 2012). As to Plaintiff's claims under the TVPRA and UCL, damages can be calculated once the Court adjudicates liability. Mills Decl. ¶¶ 33-47. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515–

---

[1] All exhibits cited in this memorandum are attached to the Declaration of Halley Josephs. Plaintiff's damages expert, Robert Mills is the Director of Micronomics, an economic research and consulting firm, and has extensive experience quantifying damages in commercial litigation. *See* Ex. 2.

16 (9th Cir. 2013) (reversing denial of certification where "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated").

In sum, Plaintiff's case will rise or fall on common proof, that is, on facts and legal questions common to all members of the Classes. The focus of these claims is on MindGeek's conduct, and thus all present common questions that will generate common answers. Accordingly, the Court should certify the proposed Classes under Federal Rule Civil Procedure 23(b)(3) and 23(b)(2).

## LEGAL STANDARD

To be certified, a proposed class must satisfy all of the prerequisites of Rule 23(a) and at least one of the three prongs of Rule 23(b). *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1132 (9th Cir. 2016). Under Rule 23(a), certification is appropriate if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Plaintiff seeks certification under two prongs of Rule 23(b): a damages class pursuant to Rule 23(b)(3) and an injunctive class pursuant to Rule 23(b)(2). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[A] plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 587 (N.D. Cal. 2015).

5

**FACTUAL BACKGROUND**

MindGeek "is the uncontested market leader in the online and mobile adult entertainment industry." Ex. 3 at 5. Throughout the Class Period, MindGeek received from 486 million to over 5 billion visits each month on Pornhub.com. Ex. 4.

Until recently, MindGeek had no age verification policy. Ex. 5. The reason, according to Pornhub's own Senior Community Manager was simple: "it costs [MindGeek] money to verify". Ex. 1, Levine Decl. ¶ 151.[2] She went on to say that "Pornhub stands to lose 50%+ of traffic" and called age verification a "disaster." *Id.*

MindGeek's overarching goal of generating content and increasing traffic has led to content moderation policies that focus on "speed, numbers, and multi-tasking" that MindGeek employees admit are "not effective." Ex. 6. MindGeek also failed to implement widely used technological tools designed to identify CSAM, like CSAI Match, PhotoDNA, and Safer by Thorn. Levine Decl. ¶¶ 101-140.

MindGeek's documents demonstrate that management did not want to know the scope of its CSAM problem. Content moderator ████████ was instructed "make sure you are not ccing ████████████ [Director of Product Management] on the csam reports," to which ████████ replied "he doesnt wnat [sic] to know how much cp [child ponography] we have ignored for the past 5 years?". Ex. 7. Content moderators also acknowledged that management did not want the rules enforced. Ex. 8.

MindGeek's website design encourages the proliferation of CSAM. When uploading videos for distribution, users select a category for their video or image from a pre-populated checkbox list created by MindGeek. Levine Decl. ¶¶ 158-159. MindGeek prompts users to associate their content with categories pre-set by MindGeek, including "teen," babysitter," "old/young" and "school." *Id.* MindGeek

---

[2] Plaintiff's expert, Dr. Brian Levine, is a professor at the University of Massachusetts Amherst and the Director of the Cybersecurity Institute. His declaration describes MindGeek's common practices and policies and the common evidence of MindGeek's knowledge of the CSAM on its websites. *See* Ex. 1.

then suggests tags "associated with the categories," offering users "a handy autocomplete with popular tags to choose from" to help "drive search results." *Id.* ¶ 161. By design, words like ██████████████████████████████ and ████ appear in related searches and autocomplete functions on MindGeek's websites. *Id.* ¶ 166.

Once the videos and images are uploaded to MindGeek's websites, they are uniformly displayed alongside advertisements that generate revenue for MindGeek. Ex. 9 at 94:2-5; Ex. 10 at 9.

MindGeek's website design also encourages anonymity for traffickers who upload content and the users who view it. MindGeek has implemented measures like VPNhub, a Tor Onion service, private messaging, and the use of cryptocurrency, which help users evade law enforcement. Levine Decl. ¶¶ 188-207.

Once videos and images are uploaded for distribution, MindGeek has uniform content removal processes. Levine Decl. ¶¶ 64-96. Content is only reviewed if it receives more than 15 flags from users. *Id.* ¶ 65; Ex. 11. MindGeek also permits users to submit content removal requests (CRRs), which are routinely ignored. Levine Decl. ¶ 69 ("this is the 24th complaint I have made").

Until April 2020, MindGeek had a uniform policy of not reporting CSAM to NCMEC or law enforcement. Ex. 12 at 98:19-99:15. In 2020, when MindGeek came under fire for its content removal policies, it began implementing a series of reforms. MindGeek's CEO predicted that with MindGeek's reforms, uploads to Pornhub.com would drop from 25,000 to 2,000 per day. Ex. 13.

One of the reforms was finally reporting to NCMEC the ***tens of thousands*** of records of CSAM that had been received or distributed by MindGeek. In order to report this information to NCMEC, MindGeek performed a comprehensive audit. Levine Decl. ¶¶ 81, 83-85; Ex. 12 at 63:24-64:3, 71:24-72:14; 75:25-76:22. In connection with this audit, MindGeek was able to use its own records to categorize all these videos and images as "TOS8," which is MindGeek's internal code for

7

identifying CSAM. Ex. 12 at 98:19-99:15. MindGeek's detailed records identify the titles, whether the content has been flagged, how many times the content has been viewed, when it was submitted, who submitted it, and when it was removed. Mills Decl. ¶ 14; Exs. 14-17. The records also identify the tags and categories used for the videos and images, which demonstrate the prevalence of tags like "teen" and "young" for the identified CSAM. *Id.* ¶¶ 14, 28.

**ARGUMENT**

## I.   Plaintiff Satisfies the Rule 23(a) Requirements

Rule 23(a)(1), numerosity. Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." "It's generally accepted that when a proposed class has at least forty members, joinder is presumptively impracticable based on numbers alone." *In re Banc of Cal. Secs. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018). MindGeek's records of CSAM documented in its TOS8 spreadsheets demonstrate that there are tens of thousands of class members, which renders joinder impracticable. Exs. 14-17.

Rule 23(a)(2), commonality. "Commonality exists when a plaintiff's claims 'depend upon a common contention' of 'a nature that is capable of class-wide resolution,' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in on stroke.'" *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 226 (C.D. Cal. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "For the purposes of Rule 23(a)(2), 'even a single common question' is sufficient." *Id.* (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)).

Here, there are numerous common questions with common answers including:

- Whether MindGeek received or distributed CSAM;
- Whether MindGeek knew there was a high probability of CSAM on its websites;

- Whether MindGeek took deliberate actions to avoid learning of CSAM on its websites;
- Whether MindGeek knowingly benefitted from sex trafficking ventures;
- Whether MindGeek participated in sex trafficking ventures; and
- Whether MindGeek knew or had reason to know of the existence of sex trafficking ventures.

Courts consistently find commonality satisfied in cases involving a defendant's common practice. *E.g.*, *Campbell v. Vitran Express Inc.*, 2015 WL 7176110, at *4 (C.D. Cal. Nov. 12, 2015) (granting class certification where defendant implemented an unofficial policy of encouraging and denying its drivers their meal and rest breaks); Ex 18 ("the common issue is that our policies . . . do not appear to match our practices").

Rule 23(a)(3)–(a)(4), typicality and adequacy. Plaintiff and her counsel satisfy Rule 23(a)'s typicality and adequacy requirements. Typicality requires that the plaintiff's claims be typical of the claims of the class. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (quotation marks omitted). Plaintiff "must show that: (1) other members have the same or similar injury; (2) the action is based on conduct which is not unique to the named plaintiffs; and (3) other class members have been injured by the same course of conduct." *Franklin v. Midwest Recovery Sys., LLC*, 2021 WL 1035121, at *3 (C.D. Cal. Feb. 5, 2021) (quotation marks omitted). Here, for all classes, the "injuries arise from a common wrong" based on MindGeek's dissemination of CSAM. *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *10 (C.D. Cal. Apr. 9, 2014). Plaintiff is also an adequate representative of the proposed subclasses. She is a California resident and she appeared in videos catalogued in MindGeek's TOS8 Audit records. Exs. 14, 17.

For many of the same reasons, Plaintiff and her counsel will adequately represent the proposed classes. *Woods v. Vector Mktg. Corp.*, 2015 WL 5188682, at *12 (N.D. Cal. Sept. 4, 2015) ("the typicality and adequacy inquiries tend to significantly overlap."). There are no "conflicts of interest with other class members" and Plaintiff will "prosecute the action vigorously on behalf of the class" to seek statutory damages, restitution and compensatory and punitive damages, and injunctive relief. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The same is true of counsel, which has extensive experience in complex class action litigation and the resources for effective representation of the Classes. *See* Declaration of Krysta Kauble Pachman.[3]

## II.    Plaintiff Satisfies Predominance Under Rule 23(b)(3)

Plaintiff's claims raise common questions with common answers that predominate, thus satisfying Rule 23(b)(3). Predominance tests "whether the common, aggregation enabling issues in the case are more prevalent or more important than the non-common, aggregation-defeating individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). In assessing predominance, the court "is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022) (emphasis in original).

### A.    Common Evidence Will Prove Plaintiff's 18 U.S.C. § 2252A Claim

Liability under Section 2252A is established by showing three elements: (1) MindGeek received or distributed child pornography (2) in interstate or foreign commerce (3) with the requisite level of knowledge. 18 U.S.C. § 2252A(a)(2). Because all three of these elements are subject to common proof, each class

---

[3] As described in the Pachman Declaration, Susman Godfrey L.L.P. meets the requirements for appointment as class counsel under Rule 23(g)(1).

member's Section 2252A claim will rise and fall based on *MindGeek's* class-wide conduct—its receipt and distribution of CSAM and knowledge of it —which easily satisfies predominance. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 310 (N.D. Cal. 2010), *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012) (predominance satisfied "because the inquiry necessarily focuses on defendants' conduct, that is, what defendants did, rather than what plaintiffs did" (cleaned up)).

### 1. Whether MindGeek Received or Distributed CSAM Is a Predominating Common Question with a Common Answer

Common evidence shows MindGeek received or distributed child pornography.[4] MindGeek's internal records show that it received and distributed *38,132* CSAM videos and photos on Pornhub.com and Redtube.com. Exs. 14-17. In each case, the records flag the content as violating TOS8, which means MindGeek itself categorized the material as child pornography.

### 2. CSAM Was Transmitted in Interstate or Foreign Commerce

Common evidence establishes that MindGeek received and distributed CSAM using the Internet, which satisfies the interstate or foreign commerce requirement. Levine Decl. ¶¶ 18, 73-100.

### 3. Whether MindGeek Has the Requisite Knowledge Is a Predominating Common Question With A Common Answer

The issue of MindGeek's knowledge presents two additional predominating common questions with common answers. The knowledge element can be satisfied with a showing of "willful blindness"—here, a showing that there was (a) a "high probability" of CSAM on MindGeek websites and (b) MindGeek "took deliberate

---

[4] *United States v. Olander*, 572 F.3d 764, 769 (9th Cir. 2009) ("receive" means, *inter alia*, "take possession of or delivery of," "collect," or "take delivery of (a thing) from another"); *United States v. Budziak*, 697 F.3d 1105, 1109 (9th Cir. 2012) ("distribute" includes "maintain[ing] child pornography in a shared folder" on the Internet knowing "that doing so would allow others to download it" and is synonymous with "dispersed").

actions to avoid learning of that fact." *United States v. Fletcher*, 946 F.3d 402, 408 (8th Cir. 2019); *see also United States v. Figueroa-Lugo*, 793 F.3d 179, 192 (1st Cir. 2015) ("[A] willful blindness instruction is one way in which a jury can permissibly find that a defendant acted knowingly" under 18 U.S.C. § 2252(a)). As set forth below, both elements of willful blindness are common questions, and depend entirely on what MindGeek should have known and what it did to avoid learning it.

**MindGeek's Awareness of the "High Probability" of CSAM**. Whether MindGeek was aware of the high probability of CSAM on its websites is entirely dependent on common proof. MindGeek's "moderators review[ed] every piece of content before it is authorized for public access," Ex. 10 at 7, and repeatedly approved CSAM for distribution on MindGeek's websites. Levine Decl. ¶¶ 25-31, 81-86. MindGeek was notified by law enforcement, victims, and the media of the presence of CSAM on its websites. *Id.* ¶¶ 67-71, 92-95, 156, 174-175. MindGeek also enacted a blanket policy of only checking content that was flagged as "underage" when it received more than 15 flags, leading to more than 183,000 pieces of content flagged "underage" in MindGeek's systems that MindGeek failed to review. *Id.* ¶¶ 64-65. MindGeek's argument that this was not sufficient to put it on notice of the "high probability" of CSAM on its websites is based on common proof that predominates.

**MindGeek's Deliberate Actions to Avoid Learning of CSAM.** MindGeek designed its policies to avoid learning of the presence of CSAM, including:

- Failure to Require Age Verification: MindGeek failed to implement basic protections to avoid receiving or distributing CSAM, including age verification. Levine Decl. ¶¶ 150-154; Ex. 19.[5] *See Doe v. Peterson*, 784 F. Supp. 2d 831, 841 (E.D. Mich. 2011) (denying summary judgment on issue of willful blindness where webmaster did nothing to verify ages of victims).

---

[5] As of September 2022, MindGeek requires age verification from individual uploaders but not for co-performers. Ex. 10 at 8.

- <u>Failure to Report to NCMEC/Law Enforcement until 2020:</u> Despite its legal obligation to report all instances of CSAM to NCMEC, MindGeek had a common practice of doing just the opposite for years. Levine Decl. ¶¶ 208-218. MindGeek did not begin notifying NCMEC of CSAM until April 2020. Ex. 12 at 20:16-21. The failure to comply with its reporting obligations prevented CSAM from being identified by NCMEC's hash sharing platform, which prevents the content from being uploaded in the future (by MindGeek and other Electronic Service Providers). Levine Decl. ¶ 212. MindGeek also did not report CSAM to law enforcement prior to April 2020. Ex. 12 at 20:16-21, 22:7-10.

- <u>Response to User-Identified CSAM</u>: MindGeek has two ways for users to alert MindGeek to the presence of CSAM: (1) a flag system and (2) content removal requests (CRRs). The flag system includes an option to flag videos as "underage." Ex. 20 at '562. MindGeek's blanket policy was to only review content flagged as underage when it had been flagged more than 15 times and did not filter for underage flags. Ex. 11. MindGeek's decision to adopt an arbitrarily high 15-flag requirement, before MindGeek would do anything about its receipt and distribution of child pornography, is common proof of deliberate ignorance. Levine Decl. ¶¶ 64-65.

- <u>Failure to Employ Technological Tools</u>: Before 2020, MindGeek failed to deploy the technological tools that are widely used for detecting CSAM, including CSAI Match, PhotoDNA, and Safer by Thorn. Levine Decl. ¶¶ 101-132; Ex. 21 at 28:14-29:11.

- <u>Content Moderation Practices</u>: MindGeek had an insufficient number of content moderators throughout the class period. Levine Decl. ¶¶ 32-38; Ex. 22 ("the numbers are not impressive"). These content moderators also received little to no training. Levine Decl. ¶¶ 39-51. MindGeek's documents show that content moderators were instructed not to inform directors of the prevalence of CSAM, Ex. 7, and confirmed MindGeek's management consistently valued "speed and numbers"

over "enforcing strict rules," Ex. 6. These are all broad, company-wide policies that were "disseminated downward from top management to" content moderators. *Brown v. Abercrombie & Fitch Co.*, 2015 WL 9690357, at \*13 (C.D. Cal. July 16, 2015).

All of this evidence of MindGeek's knowledge of CSAM on its websites (including the 38,132 videos and photos catalogued by the TOS8 Audit) is based on common proof: it is focused on MindGeek's conduct and knowledge, which is common evidence that predominates.

### B.    Common Issues Predominate as to the Section 1595 Claim

Plaintiff's TVPRA claim has three elements: MindGeek (1) "knowingly benefits . . . financially or by receiving anything of value" (2) "from participation in a venture" that (3) MindGeek "knew or should have known has engaged in" a violation of 18 U.S.C. § 1591. 18 U.S.C. § 1595(a). Each element of Section 1595 can be proven by common evidence that predominates.

#### 1.    Common Evidence Shows MindGeek's Knowing Benefit

MindGeek's benefit from its participation in sex-trafficking ventures can be proven with common evidence including documents and testimony that (1) advertisements appeared alongside every CSAM video and image; Ex. 9 at 94:2-5; Ex. 10 at 9; and (2) MindGeek's records demonstrating it monetized CSAM through advertising, *see* Mills Decl. ¶¶ 18-28. *See JPMorgan*, 2023 WL 3945773, at \*8. And MindGeek's documents underscore that it was well aware of the connection between the prevalence of CSAM and financial gain. Levine Decl. ¶¶ 150-152, 181-187; Mills Decl. ¶¶ 25-28.

#### 2.    Common Evidence Shows MindGeek's Participation in Sex-Trafficking Ventures

Plaintiff will rely on common evidence to prove MindGeek engaged in "a continuous business relationship" with traffickers "such that it would appear that" the traffickers and MindGeek "have established a pattern of conduct or could be said to have a tacit agreement." *MindGeek I*, 558 F. Supp. 3d at 837. For example,

MindGeek (1) reviewed every photo and video uploaded to its sites and allowed more than 38,132 CSAM videos and photos to be disseminated; Ex. 10 at 7; Ex. 23; Exs. 14-17; (2) posted and featured CSAM on its websites, Levine Decl. ¶¶ 70-71; (3) refused to implement basic protections like age verification or technology-assisted content moderation, *Id.* ¶¶ 101-140, 150-154; (4) offered and approved playlists, tags, titles, categories, and descriptors indicative of CSAM, using terms like ███████ ████████████████████████ and ███████████████ *Id.* ¶¶ 25, 31, 68, 158-173; Ex. 12 at 153:-16-154:4 (describing moderators review titles and tags before approving uploads); (5) used VPN services, Onion services, private messaging, and cryptocurrency to thwart law enforcement, Levine Decl. ¶¶ 188-207; (6) failed to report CSAM to NCMEC, *Id.* ¶¶ 208-218; (7) used extensive data analytics to encourage the continued upload and dissemination of CSAM, *Id.* ¶¶ 174-187; and (8) shared proceeds with traffickers through channel partners and the Model Program, Levine Decl. ¶¶ 62, 71, 203-204. *See JPMorgan*, 2023 WL 3945773, at *8 (certifying class where JPMorgan "participated in [the sex trafficking venture] by providing material banking services for Epstein (among other things)").

MindGeek may argue there are individual differences among the sex trafficking ventures that give rise to class members' Section 1595 claims, but any individualized issues would not be "sufficiently substantial to alter the landscape as to predominance." *Tanedo v. E. Baton Rouge Par. School Bd.*, 2011 WL 7095434, at *8 (C.D. Cal. Dec. 12, 2011) (certifying claim despite differences in class members' backgrounds and communications with defendants). The circumstances of any individual sex trafficking venture are peripheral to MindGeek's overarching conduct of designing a website so that traffickers could distribute CSAM without facing legal consequences while MindGeek reaped the profits.

### 3. Common Evidence Shows MindGeek's Knowledge

Whether MindGeek "knew or recklessly disregarded" the fact that ventures were engaged in trafficking also can be proven with common evidence. MindGeek

content moderators review and approve every video posted to their platforms to evaluate whether the content contains CSAM and intentionally allowed 38,132 CSAM photos and images to be posted anyway. Levine Decl. ¶¶ 25-31, 73-77. MindGeek maintained this policy because it was aware of the broad appeal these videos have, Mills Decl. ¶ 26 (referring to "teen" as a top rated category year after year); refused to implement basic tools like age verification because it would impact MindGeek's profits, Levine Decl. ¶¶ 150-154; and they consistently featured CSAM across its websites. *Id.* ¶¶ 68, 70-71, 81-85.

MindGeek may argue that Plaintiff must demonstrate actual knowledge (which is also satisfied) for the TVPRA claim. This, too, is a common question with a common answer. The actual knowledge standard does not apply where MindGeek is a content creator and therefore not afforded the protections of Section 230. *MindGeek II*, 574 F. Supp. 3d at 767-72, 774-75. And whether MindGeek is a content creator raises yet another slew of common questions with common answers. The "core inquiry behind whether an ICS is a content creator is whether defendants have taken action to encourage unlawful content and employ features to make a material contribution to such content." *Id.* at 772. The answer to this question turns on common evidence about MindGeek's conduct and the design and functionality of MindGeek's websites. Levine Decl. ¶¶ 73-77, 97-100, 101-136, 150-207.

### C. Common Evidence Will Prove Plaintiff's California Claims

#### 1. UCL

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Here, Plaintiff advances a claim under the unlawful prong. "By defining unfair competition to include any '*unlawful* ... business act or practice,' the UCL permits violations of other laws to be treated as unfair competition that is independently actionable." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002) (quoting Cal. Bus. & Prof. Code § 17200 (emphasis in original)). Plaintiff's UCL claim therefore turns on the same common evidence underlying

16

Plaintiff's other claims. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 521-22 (C.D. Cal. 2015) (certifying UCL claim "under the 'unlawful' prong" that incorporates other statutory violations because "common questions predominate with respect to those [other] claims"); *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 523 (C.D. Cal. 2011) (Carney, J.) (denying motion for decertification on UCL claim).

### 2. California Trafficking Victims Protection Act ("CTVPA")

As with the Section 2252A and TVPRA claims, common issues and proof predominate as to whether MindGeek "knowingly featured child pornography on [its] platforms" and "had intent to distribute child pornography when [it] reviewed, approved, and disseminated" CSAM featuring class members in violation of Cal. Civ. Code § 52.5. *MindGeek I*, 558 F. Supp. 3d at 843; *see supra* at 10-16. The question is whether "company-wide policies and practices violated the law and the rights of class members, or they didn't." *Owino*, 60 F.4th at 445; *see also Novoa v. GEO Grp., Inc.*, 2019 WL 7195331, at *16 (C.D. Cal. Nov. 26, 2019) ("Plaintiffs have shown commonality and, where needed, predominance, for their TVPA and CTVPA claims" based on company-wide practices causing forced labor).

### D. Class Members' Injuries Can Be Demonstrated Using Classwide Evidence

The forms of monetary relief that Plaintiff requests are all "'capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34-35 (2013)).

### 1. Statutory Damages

Plaintiff's statutory damages requests for the Section 2252A and Section 52.5 claims are common and certifiable. *See Toys R Us*, 300 F.R.D. at 377 (predominance more readily satisfied where class seeks statutory damages). Any victim of Section 2252A "who suffers personal injury as a result of such violation" is entitled to

"liquidated damages in the amount of $150,000." 18 U.S.C. § 2255. "The point of a minimum-damages requirement [in Section 2255] is to allow victims of child pornography to recover *without* having to endure potentially damaging damages hearings. Were it otherwise, a fresh damages hearing might inflict fresh wounds, *increasing* the child's suffering *and* increasing the compensatory damages to which she is entitled." *Doe v. Boland*, 698 F.3d 877, 882 (6th Cir. 2012) (emphasis in original). Similarly, Plaintiff's claim under California's Trafficking Victims Protection Act allows victims to recover statutory damages of $10,000. Cal. Civ. Code § 52.5(b).

### 2.    Compensatory Damages and Restitution

As to Plaintiff's federal TVPRA and UCL claims, Mr. Mills describes a means for calculating compensatory damages and restitution after the Court makes a determination as to liability. Mills Decl. ¶¶ 33-47. *See Leyva*, 716 F.3d at 515–16 ("damages could feasibly and efficiently be calculated once the common liability questions are adjudicated"); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) (certifying UCL class where plaintiffs presented a method for calculating restitution). Any individualized damages calculations do not defeat class action treatment. "Time and time again, [the Ninth Circuit] has reaffirmed the principle that the need for individual damages calculations does not doom a class action." *Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1086–87 (9th Cir. 2020) (citations omitted); *see also JPMorgan*, 2023 WL 3945773, at *10 (individualized damages for Section 1595 claims did not defeat certification).

### 3.    Punitive Damages

Punitive damages are similarly a common issue. Punitive damages are available for Plaintiff's Section 2252A, TVPRA, and California TVPA claims. 18 U.S.C. § 2252A(f)(2)(B); *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011) (confirming availability of punitive damages for federal civil sex trafficking claim); Cal. Civ. Code § 52.5(a). Plaintiff will rely on common evidence of MindGeek's

18

conduct to support punitive damages. *See supra* at 10-16. Because "the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, . . . the focus of a punitive damages claim is not on facts unique to each class member, but on the defendant's conduct toward the class as a whole." *Ellis*, 285 F.R.D. at 542-44 (certifying Rule 23(b)(3) class including claim for punitive damages).

**III.   A Class Action Is Superior to Other Methods of Adjudication.**

Determining whether a class action is superior requires the Court to consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Courts have recognized that a class action under Rule 23(b)(3) is superior for the adjudication of claims, as in this case, involving sexual abuse because it avoids re-traumatization of victims. *JPMorgan*, 2023 WL 3945773, at *11 ("intensely personal nature of the claims at stake" provides a "an equal or greater" "interest in class-wide adjudication" than in individual cases, particularly where "[o]n behalf of the class, Jane Doe has borne the burdens of turning over highly sensitive documents and communications in discovery" and a "class action would also spread the risk and expense of litigating against a tenacious and well-resourced adversary across the class"); *Rapuano v. Trustees of Dartmouth Coll.*, 334 F.R.D. 637, 653 (D.N.H. 2020) ("[A] classwide resolution is particularly attractive here given the unlikelihood that individual class members would pursue individual suits" arising out of professors' creation of a "sexually hostile education environment for female students"); *Jane Doe 30's Mother v. Bradley*, 64 A.3d 379, 383-85 (Del. Super. Ct. 2012).

A class action under Rule 23(b)(3) is also superior when it will achieve "economies of time, effort, and expense" while promoting "uniformity of decisions

as to persons similarly situated." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). In a case with tens of thousands of class members, as here, "a class action promotes efficiency and judicial economy." *Franklin*, 2021 WL 1035121, at *8. It would be inefficient and cost prohibitive to litigate thousands of individual proceedings rather than on a class-wide basis. Superiority is also satisfied where, as here, "the majority of the evidence" in the case "will be common to all class members, and can largely occur from an examination of [the defendant's] records." *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 596, 603 (C.D. Cal. 2011) (Carney, J.).

As to related litigation, there is a class action pending in *Jane Doe #1 v. MG Freesites, LTD*, No. 7:21-cv-002200-LSC (N.D. Ala.) and an individual action pending before this Court in *Fleites v. MindGeek S.A.R.L.*, No. 21-cv-04920 (C.D. Cal.). But courts often hold related litigation does not weigh against the superiority of class treatment where, as here, certification "will reduce litigation costs and promote greater efficiency." *Cohen v. Trump*, 303 F.R.D. 376, 390 (S.D. Cal. 2014) (certifying RICO claims despite two related cases); *Cartwright v. Viking Indus., Inc.*, 2009 WL 2982887, *15 (E.D. Cal. 2009) (certifying a class for CLRA, UCL, fraudulent concealment, unjust enrichment, and warranty claims regardless of a concurrent state court class action certified for warranty claim).

As to manageability, the Ninth Circuit has made clear that Rule 23 does not "condition class certification on [a plaintiff's] proffer of an administratively feasible way to identify putative class members." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017). "In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description" of the class. *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) (citation omitted). Here, class membership is based on objective criteria

and notice is administratively feasible. *See* Ex. 24, Declaration of Gina Intrepido-Bowden.

## IV.     The Proposed Alternative Class Should Be Certified

The Court alternatively should certify the two narrower Subclasses defined in the Notice of Motion: the TOS8 Audit Subclass and California TOS8 Audit Subclass. The documents referenced in the TOS8 Audit subclass definitions are the specific records MindGeek produced in this litigation that explicitly identify videos and photos MindGeek itself categorized, following the TOS8 Audit, as CSAM that it received and distributed on its websites and reported it as such to the NCMEC.

## V.     Plaintiff Satisfies the Requirements for an Injunctive Relief Class Under Rule 23(b)(2)

For an injunctive relief class under Rule 23(b)(2), the plaintiff must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2)'s requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 971-72 (9th Cir. 2019)( citation omitted); *see also Wilson v. Ponce*, 2021 WL 3494637, at *6 (C.D. Cal. Apr. 29, 2021) ("It is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole.") (cleaned up) (citation omitted).

The central focus of this case is MindGeek's policies and practices, which makes the case well-suited for certification under Rule 23(b)(2). *Parsons v. Ryan,* 754 F.3d 657, 688 (9th Cir. 2014) (certification under Rule 23(b)(2) appropriate where "all members of the putative class . . . are allegedly exposed to a substantial risk of serious harm by a specified set of centralized . . . policies and practices of uniform . . . application"); *Luse v. Sentinel Offender Servs.*, LLC, 2017 WL

11629203, at *5 (N.D. Ga. Aug. 21, 2017) (proposed relief "will prevent similar conduct on behalf of the Injunctive Class, thereby remedying on a class wide basis any injury Defendants' alleged conduct would cause current and future Class members").

Courts routinely certify Rule 23(b)(2) classes where liability turns on defendant's policies and practices that are applicable to each class member. *B.K.*, 922 F.3d at 971 (affirming certification of Rule 23(b)(2) class based on "a specified set of centralized [] policies and practices"); *Wilson*, 2021 WL 3494637, at *6 (certification under Rule 23(b)(2) warranted where plaintiffs request "mandating the adoption and uniform implementation" of practices affecting all class members). Here, all members of the proposed class face the substantial harm that their CSAM will continue to be distributed on MindGeek's websites. Plaintiff therefore seeks injunctive relief that would enjoin MindGeek from uploading visual depictions of sexually explicit content onto its websites without obtaining government-issued identification confirming that all performers are over the age of eighteen.

## CONCLUSION

Plaintiff respectfully requests that the Court certify the Child Victim Class and California Child Victim Subclass, or the Alternative Classes, under Rule 23(b)(3) and Rule 23(b)(2), appoint Plaintiff as class representative, and appoint Susman Godfrey L.L.P. as class counsel.

Dated:  August 21, 2023

DAVIDA BROOK
KRYSTA KAUBLE PACHMAN
HALLEY W. JOSEPHS
AMY B. GREGORY
SUSMAN GODFREY L.L.P.

STEVE COHEN (*Pro Hac Vice*)
SCohen@pollockcohen.com
POLLOCK COHEN LLP
60 Broad St., 24th Floor
New York, NY 10004
Phone: (212) 337-5361

By  /s/ *Krysta Kauble Pachman*

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Krysta Kauble Pachman
Attorney for Plaintiff

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,946 words, which complies with the word limit of L.R. 11-6.1.

/s/ *Krysta Kauble Pachman*
Krysta Kauble Pachman

24