BENJAMIN SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (admitted *pro hac vice*)
Kathleen.massey@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE on behalf of herself and all other similarly situated,<br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219- 1568 QUEBEC, INC. (D/B/A MINDGEEK),<br>　　　　　Defendants. | CASE NO. 8:21-CV-00338-CJC-ADS<br><br>*Assigned to Hon. Cormac J. Carney*<br>Courtroom: 9B<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Hearing: November 13, 2023 1:30 P.M. |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................... 2

    A.    Discovery Confirms Plaintiff's Experience Is Unique and Likely
        to Differ Widely from Others in the Putative Class ............................ 2

    B.    Technology and Human Moderation to Detect and Report CSAM ...... 4

        i.    Cutting Edge Technological Tools to Detect CSAM
            Evolved ...................................................................................... 4

        ii.    Human Moderation, Other Practices, and Reporting
            Evolved ...................................................................................... 5

LEGAL STANDARD ............................................................................................... 7

ARGUMENT ............................................................................................................ 7

I.    The Multitude of Plaintiff-Specific Facts Establishes There Is No
    Qualifying Common Questions, Individual Issues Predominate, and
    Plaintiff's Claim Is Atypical ........................................................................... 7

    A.    Establishing Minority Is an Antecedent Requirement for All
        Claims ................................................................................................... 9

    B.    Sex Trafficking Claims Raise Highly Individualized Issues ................ 9

        1.    Proof of Sex Trafficking ........................................................... 9

        2.    Proof of Secondary Liability ................................................... 11

    C.    The CSAM Possession Claim Is Not Susceptible to Class
        Treatment ............................................................................................ 14

    D.    Plaintiff's Damages Claims Defeat Predominance ............................ 17

II.    Plaintiff Is Not an Adequate Representative. ................................................. 18

III.    A Class Action Is Not a Superior Method of Adjudication. .......................... 18

IV.    Plaintiff's Rule 23(b)(2) Class Fails for Additional Reasons ....................... 20

CONCLUSION ....................................................................................................... 21

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*A.B. v. Marriott Int'l, Inc.*,
   455 F. Supp. 3d 171 (E.D. Pa. 2020)..................................................................13

6

7
*A.D. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 8674205 (E.D. Va. July 22, 2020) .....................................................13

8

9
*Alberghetti v. Corbis Corp.*,
   263 F.R.D. 571 (C.D. Cal. 2010), *aff'd*, 476 F. App'x 154 (9th Cir.
   2012) .................................................................................................................20

10

11
*B.M. v. Wyndham Hotels & Resorts, Inc.*,
   2020 WL 4368214 (N.D. Cal. July 30, 2020) ...................................................11

12

13
*Bowerman v. Field Asset Servs., Inc.*,
   60 F.4th 459 (9th Cir. 2023)...........................................................................7, 8

14

15
*Brown v. DirecTV, LLC*,
   2022 WL 1591325 (C.D. Cal. Mar. 31, 2022) ..................................................19

16

17
*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)................................................................................17, 18

18

19
*Crosby v. Cal. Physicians' Serv.*,
   498 F. Supp. 3d 1218 (C.D. Cal. 2020) (Carney, J.)..........................................8

20

21
*Daimler AG v. A-Z Wheels LLC*,
   498 F. Supp. 3d 1282 (S.D. Cal. 2020) .............................................................15

22

23
*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021)......................................................................11, 13

24

25
*Doe 1 v. JPMorgan Chase Bank, N.A.*,
   2023 WL 3945773 (S.D.N.Y. June 12, 2023)...................................................13

26
*Doe v. Mindgeek USA Inc.*,
   558 F. Supp. 3d 828 (C.D. Cal. 2021)........................................................10, 11

27

28

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

*Doe v. Peterson*,
   784 F. Supp. 2d 831 (E.D. Mich. 2011) ............................................................... 15

*Does 1-6 v. Reddit, Inc.*,
   51 F.4th 1137 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2560 (2023) ................. 13

*Drimmer v. WD-40 Co.*,
   2007 WL 2456003 (S.D. Cal. Aug. 24, 2007), *aff'd*, 343 F. App'x
   219 (9th Cir. 2009) ............................................................................................... 18

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ............................................................................................... 8

*Erickson Prods., Inc. v. Kast*,
   921 F.3d 822 (9th Cir. 2019) ............................................................................... 16

*Fleites v. MindGeek S.A.R.L.*,
   2022 WL 1314035 (C.D. Cal. Feb. 10, 2022) ............................................*passim*

*Gartin v. S & M NuTec LLC*,
   245 F.R.D. 429 (C.D. Cal. 2007) ........................................................................... 9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ............................................................................................. 15

*Green v. Fed. Exp. Corp.*,
   614 F. App'x 905 (9th Cir. 2015) ........................................................................ 10

*Grosz v. Boeing Co.*,
   2003 WL 22971025 (C.D. Cal. Nov. 7, 2003) (Carney, J.), *aff'd*,
   136 F. App'x 960 (9th Cir. 2005) ................................................................... 2, 17

*Hodgers-Durgin v. De La Vina*,
   199 F.3d 1037 (9th Cir. 1999) (*en banc*) ...................................................... 20, 21

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*,
   2021 WL 3878654 (9th Cir. Aug. 31, 2021) ...................................................... 20

*In re Toys R Us*,
   300 F.R.D. 347 (C.D. Cal. 2013) ........................................................................ 17

*Kanter v. Warner-Lambert Co.*,
   265 F.3d 853 (9th Cir. 2001) ............................................................................... 21

*L.H. v. Marriott Int'l, Inc.*,
  604 F. Supp. 3d 1346 (S.D. Fla. 2022)................................................................ 13

*Luvdarts, LLC v. AT & T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013)............................................................................ 16

*Owino v. CoreCivic, Inc.*,
  60 F.4th 437 (9th Cir. 2022), *cert. denied,* 143 S. Ct. 2612 (2023) .................. 13

*Pittmon v. CACI Int'l, Inc.*,
  2022 WL 4596554 (C.D. Cal. Aug. 11, 2022) (Carney, J.) ................................ 7

*S.J. v. Choice Hotels Int'l, Inc.*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020)................................................................ 11

*Sonneveldt v. Mazda Motor of Am., Inc.*,
  2023 WL 1812157 (C.D. Cal. Jan. 25, 2023)..................................................... 20

*State Farm Mutual Automobile Insurance Co. v. Campbell*,
  538 U.S. 408 (2003) ............................................................................................ 17

*Tilton v. Playboy Entertainment Group, Inc.*
  554 F.3d 1371, 1374-75 (11th Cir. 2009)...................................................... 15, 16

*Ulysse v. Waste Mgmt. Inc.*,
  2013 WL 11327137 (S.D. Fla. Sept. 13, 2013)........................................ 17, 19, 20

*United States v. Figueroa-Lugo*,
  793 F.3d 179 (1st Cir. 2015) .............................................................................. 15

*United States v. Fletcher*,
  946 F.3d 402 (8th Cir. 2019) .............................................................................. 15

*United States v. X-Citement Video, Inc.*,
  513 U.S. 64 (1994) .............................................................................................. 14

*Vargas v. JP Morgan Chase Bank, N.A.*,
  30 F. Supp. 3d 945 (C.D. Cal. 2014).................................................................. 18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..................................................................................... 7, 8, 21

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ................................................................................ 8

iv

*Western States Wholesale, Inc. v. Synthetic Industries, Inc.*,
  206 F.R.D. 271 (C.D. Cal. 2002) ........................................................................ 18

*Wiley v. Am. Fin. Network, Inc.*,
  2023 WL 4681538 (C.D. Cal. July 3, 2023) (Carney, J.) ................................. 12

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................................ 19

**Statutes/Rules**

18 U.S.C. § 1591 ........................................................................................... 1, 10

18 U.S.C. § 1595 ........................................................................................... 1, 20

18 U.S.C. § 2252A ...................................................................................... 1, 14, 15

18 U.S.C. § 2255 ......................................................................................... 15, 20

18 U.S.C § 2258A ............................................................................................... 14

Fed. R. Civ. P. Rule 23 ................................................................................. *passim*

**Other Authorities**

Cal. Civ. Code § 52.5 ........................................................................................ 20

## **PRELIMINARY STATEMENT**

Plaintiff seeks to certify a class of tens of thousands of minors whose images purportedly appeared on any adult content sharing websites operated by Defendants (collectively, "MindGeek") over a period of more than ten years. Such images are generally referred to as child sexual abuse material or CSAM. According to Plaintiff, once she can establish that CSAM appeared on a website, she can prove MindGeek violated the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591 & 1595, and 18 U.S.C. § 2252A (knowingly possessing and distributing CSAM), through pattern and practice evidence of MindGeek's conduct. From that point, Plaintiff posits that class certification is virtually automatic.

Plaintiff is incorrect. This Court has already recognized sex trafficking claims identical to the ones that Plaintiff brings here turn on a multitude of individual factual and legal issues that defy aggregate adjudication. In its Order granting severance of 33 of the 34 original *Fleites* plaintiffs—which Plaintiff here simply ignores—this Court summarized some of these differences:

> The Plaintiffs' individual factual allegations differ greatly in several respects. Some of the key factual differences include: (1) how the underlying conduct featured in the videos occurred . . .; (2) where the underlying conduct occurred; (3) who recorded and posted the videos on MindGeek's platforms (some perpetrators were former romantic partners of the individual Plaintiffs while others were strangers); (4) how the MindGeek Defendants tagged, circulated, or featured the videos; (5) whether the Plaintiffs sought to have the videos removed, (6) how the MindGeek Defendants responded to any such requests to remove the videos; (7) the age of the Plaintiffs when the recordings were made . . .; (8) when the videos were posted; and (9) how long the videos remained on MindGeek's platforms.

*Fleites v. MindGeek S.A.R.L.*, 2022 WL 1314035, at *2 (C.D. Cal. Feb. 10, 2022). The Court further rejected the *Fleites* plaintiffs' argument these individual differences were overcome by MindGeek's alleged conduct, finding "Defendants' alleged pattern and practice does not vitiate the Court's significant concerns about the vast factual distinctions between the individualized circumstances of Plaintiffs' claims." *Id.* at

\*5.  Here, Plaintiff relies on the same alleged pattern and practice.

Plaintiff tries to oversimplify the case to make it appear the presence of CSAM on MindGeek's sites is sufficient to establish her claims, an examination of the required elements and the substantial factual variations in the record demonstrates her claims are uniquely ill-suited for class treatment—determining class membership and liability "for the class would require an endless litany of fact-specific inquiries into the circumstances of each individual class member's claim." *Grosz v. Boeing Co.*, 2003 WL 22971025, at \*9 (C.D. Cal. Nov. 7, 2003) (Carney, J.) (denying certification where alleged pattern and practice did not eliminate the need for individualized liability determinations), *aff'd*, 136 F. App'x 960 (9th Cir. 2005).  For these reasons and those shown below, the Court should deny certification.

## **FACTUAL BACKGROUND**

### A.    **Discovery Confirms Plaintiff's Experience Is Unique and Likely to Differ Widely from Others in the Putative Class**

Plaintiff Jane Doe seeks to certify a sprawling class asserting claims premised on MindGeek's purported involvement in alleged child trafficking and possession of alleged CSAM depicting Plaintiff and the putative class members.  Plaintiff's own circumstances confirm the concerns this Court identified in *Fleites*.  Assessing Plaintiff's individual claims requires a fact-intensive inquiry, and the record demonstrates her experience diverges from that of other members in the putative class.

For example, "the age of the Plaintiffs when the recordings were made"—a central component for each of the claims Plaintiff asserts—will necessarily differ amongst the putative class members.  *See Fleites*, 2022 WL 1314035, at \*2. Plaintiff's circumstances highlight the individual inquiries needed to make such age determinations.  She has no evidence the four videos at issue ████████████ ████████████████████████████████████  Ex. 1, Doe Tr. 79:19-80:6. ████████████████████████████████████████████

1    █████████████████████████████████████████████████████████████████.

2    Exs. 2, 3; Ex. 1, Doe Tr. 77:10-15.  Nothing in the videos indicates they depicted an

3    underage person (if they did).  None of the videos had titles suggesting the content

4    depicted an underage person. Ex. 1, Doe Tr. at 147:23-149:24.  ██████████████

5    ████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████

7    ████████████████████████  Exs. 4, 5.  Determining whether Plaintiff was

8    underage in this content (as she alleges) will require assessment of each of these facts,

9    and each is of course unique to her.

10         Likewise, the facts surrounding the making and uploading of the videos are

11    necessarily unique to Plaintiff.  *See Fleites*, 2022 WL 1314035, at *2 (noting "how

12    the underlying conduct featured in the videos occurred," and "who recorded and

13    posted the videos on MindGeek's platforms" differed between plaintiffs).  Nothing

14    suggests MindGeek played any role in ████.'s decision to upload the videos. ███████

15    ████████████████████████████████████████████████████████████████████.

16    Ex. 1, Doe Tr. at 100:11-14, 113:11-22; Ex. 6; Ex. 32.  █████████████████████

17    ████████████████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████████████████████

20    ████████████████████████  Ex. 1, Doe Tr. at 94:21-24.  These facts stand in

21    stark contrast to those Plaintiff alleges have befallen the putative class.  *See* TAC at

22    ¶¶ 107-08.

23         The content removal circumstances here are also unique to Plaintiff, and

24    discovery has revealed they depart significantly from the class allegations in her TAC.

25    *See Fleites*, 2022 WL 1314035, at *2 (key factual differences existed with respect to

26    "whether the Plaintiffs sought to have the videos removed," "how the MindGeek

27    Defendants responded to any such requests to remove the videos, and "how long the

28

videos remained on MindGeek's platforms").  Although Plaintiff alleges in her TAC
that when she was made aware of the four videos on Pornhub, she requested removal
and they were "ultimately removed" (TAC ¶ 148), discovery has shown that ███████
███████████████████████████████████████████████, and it removed them
within six *hours* of the request.  Ex. 7; Ex. 1, Doe Tr. 126:19-127:7.  Plaintiff further
acknowledged MindGeek fingerprinted the content to protect against it being
reuploaded, and there is no evidence to suggest any reuploading occurred after
MindGeek took these steps.  Exs. 7, 8; Ex. 1, Doe Tr. 127:9-129:5-11; 133:10-134:7;
136:6-9.

**B.     Technology and Human Moderation to Detect and Report CSAM**

Since prior to the start of the class period, the Pornhub, RedTube, and YouPorn
("Tube Sites") Terms of Service ("TOS") have prohibited "post[ing] any Content that
depicts any person under 18 years of age . . . whether real or simulated."  *See, e.g.*,
Exs. 9, 10, 28.  Those who wish to upload content must create an account and agree
to be bound by the TOS, including the prohibition against the upload of CSAM.  Ex.
12, ███████ 30(b)(6) Tr. 28:10-14, 86:14-20.

In addition to the TOS, MindGeek has used a combination of technology and
human moderation that continues to rapidly advance, such that content uploaded in
2011 was handled using different technology and processes than content today.  *See
Fleites* 2022 WL 1314035, at *5 ("[t]he difficulty of inquiring into Defendants'
practices at varying time periods would compound the already arduous task of wading
through the individualized circumstances.").  As MindGeek's ███████████████
explained, "we continue to try and evolve.  The system today is better than the system
was 10 years ago.  The system 10 years from now will be better than the system that
we have today."  Ex. 13, ███████ Tr. at 218:3-7.

***i.     Cutting Edge Technological Tools to Detect CSAM Evolved***

During the putative class period, MindGeek has integrated, developed, and

improved upon a variety of technological tools designed to detect known and potential CSAM before it is viewable by the public and discourage attempts to upload it.  Ex. 14.  These tools fall into two categories: (i) hash-related tools that create unique digital fingerprints—or hashes—for each piece of content by identifying, extracting, and summarizing characteristic components of the images and that compare the hashes of content sought to be uploaded against databases of hashes for known CSAM; and (ii) artificial intelligence ("AI") tools, which use AI to detect potential CSAM that is not otherwise contained in a known CSAM hash database.  ██████ Decl. ¶ 8.  In 2020, MindGeek enhanced uploader verification using Yoti, a third-party tool, to verify the identities and ages of all Pornhub uploaders.  Ex. 15, Interrog. Objs.  MindGeek also requests identification cards ("IDs") for performers where there is a question about the age of a performer.  Ex. 12, ██████ 30(b)(6) Tr.  61:24-62:9; Ex. 18, ██████ Tr. 203:6-20; Ex. 19.   Sherrie Caltagirone, founder of the Global Emancipation Network, which employs cutting-edge data analytics to human trafficking operations, confirms in her declaration submitted in conjunction with MindGeek's Opposition MindGeek's use of state-of-the-art technologies and moderation.   She explains MindGeek is in fact a leader in combating CSAM.  Caltagirone Decl. ¶ 44.

Although a cornerstone of Plaintiff's motion is that MindGeek should have required the presentation of IDs for all performers, former FBI agent Joseph Fonseca, who spent his 23-year career (including as Atlanta FBI's Crimes Against Children Coordinator) investigating crimes against children, explains that ID-based age verification is not particularly useful in this context and has rarely provided a positive investigative avenue for law enforcement.  Fonseca Decl. ¶ 43.

### ii.   Human Moderation, Other Practices, and Reporting Evolved

After content is subjected to the technological tools in place at the time of upload, and before the content "goes live," it is reviewed by a human moderator to detect potential CSAM.  Ex. 20; Ex. 21.  During the putative class period, the number

1    of moderators also increased—from fewer than 10 when the site first started to

2    approximately 159 presently.  Exs. 22, 23, 24.  Today, the compliance team, including

3    moderation, has approximately 186 people.  ███████  Decl. ¶ 7.  In 2013, the

4    compliance team began regularly auditing live content uploaded to the Tube Sites.

5    Ex. 25; Ex. 18, ████████  Tr. 39:23-40:5; 43:7-10.  Starting in the Spring of 2020, a

6    new Trust & Safety Group (T&S) was formed to improve MindGeek's ability to

7    combat suspected CSAM.

8        In 2020, MindGeek took several steps to re-review live and previously removed

9    content for potential CSAM.  Ex. 26, ██████  30(b)(6) Tr.  64:4-11; 101:3-5.  As part

10    of this effort, MindGeek conducted key word searches of content removal requests

11    (CRR) and comments; re-reviewed user flags that suggested the presence of potential

12    CSAM; searched for titles with newly banned words; and re-reviewed content of

13    previously banned users.  Ex. 12, ███████  30(b)(6) Tr. 96:15-97:3; 105:23-106:7;

14    109:25-110:9, 117 :18-120 :21; Ex. 26, ██████  30(b)(6) Tr. 76:12-22.  MindGeek

15    also scanned all previously uploaded content using the then-available hashing tools to

16    determine if any content matched to databases of known CSAM hashes.  Ex. 26,

17    ██████  30(b)(6) Tr. 76:8-11; 103:2-104:25.

18        While MindGeek has cooperated with law enforcement requests for years, in

19    2020, MindGeek enhanced its reporting of potential CSAM.  ███████  Decl. ¶¶ 9, 16,

20    17.  In March 2020, MindGeek began voluntarily reporting all apparent CSAM—

21    regardless of whether it is in fact CSAM—to the National Center for Missing &

22    Exploited Children ("NCMEC").  Exs. 28, 29.  Although Plaintiff argues that

23    MindGeek should have begun reporting to NCMEC earlier, NCMEC's written

24    guidance has confirmed has stated there is no legal requirement for websites located

25    outside the U.S. (like MindGeek) to do so.  *See* Ex. 27.

26        In June 2020, MindGeek began to reclassify content previously uploaded and

27    new content sought to be uploaded under a designation "TOS08" for potential CSAM.

28

Franklin Decl. ¶¶ 9-15.  The TOS08 list relied upon by Plaintiff is not limited to actual CSAM, but also includes *all* potential CSAM content identified through the efforts described above and external complaints.  This includes content as to which it was not possible to determine whether the content depicts an underage person, as well as duplicate content, content that never went live, and multiple videos depicting the same individuals.  *Id.*

## LEGAL STANDARD

"Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).  Certification is proper only if, after "rigorous analysis"—which may entail some overlap with the merits of Plaintiff's claims—the plaintiff satisfies all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Id.* at 351.

## ARGUMENT

**I.      The Multitude of Plaintiff-Specific Facts Establishes There Is No Qualifying Common Questions, Individual Issues Predominate, and Plaintiff's Claim Is Atypical**

Rule 23(a)(2) requires Plaintiff to show "there are questions of law or fact common to the class."  *Dukes,* 564 U.S. at 368.  To satisfy this requirement, the claims "must depend upon a common contention . . . which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 350.

Plaintiff must also establish that any qualifying common issue predominates over non-common issues.  *See* Fed. R. Civ. P. 23(b)(3).  "Predominance is a similar inquiry to commonality but requires a heightened showing that facts and issues common to the class predominate over any individual issues that might be present."  *Pittmon v. CACI Int'l, Inc.*, 2022 WL 4596554, at *4 (C.D. Cal. Aug. 11, 2022) (Carney, J.).  "[C]lass certification is inappropriate when individualized questions . . . will overwhelm common ones."  *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459,

469 (9th Cir. 2023) (cleaned up) (reversing certification order).

Plaintiff attempts to avoid these requirements by listing six purportedly "common" questions.  Mot. at 8.  However, "'[w]hat matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'"  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (quoting *Dukes*) (vacating finding of commonality) (emphasis in original).  Here, the *answers* to the questions of whether MindGeek "received or distributed CSAM" depicting a particular class member—or "participated in sex trafficking ventures" involving a particular class member—may be issues "central to the validity" of each class member's claim but will necessarily depend on circumstances specific to *that class member*.  *Dukes*, 564 U.S. at 350.

Plaintiff's reference to purported "common practice[s]" does not allow her to evade the "rigorous" inquiry required by Rule 23.  Mot. at 9.  To serve as a basis for certification, an alleged "common practice" must necessarily subject every class member to the unlawful behavior at issue.  *Crosby v. Cal. Physicians' Serv.*, 498 F. Supp. 3d 1218, 1230 (C.D. Cal. 2020) (Carney, J.) (cleaned up) (no commonality because "cannot determine 'in one stroke' whether Defendants' alleged policy was lawful or unlawful as to every class member").  Here, MindGeek's CSAM-related tools and practices evolved, and Plaintiff cannot point to any alleged policy or practice that fell below a requisite legal standard.

Rather, proper consideration of whether questions of law or fact common to class members predominate "begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  Proving the required elements for each of the claims here would necessitate "individualized mini-trials" to establish liability and certification is thus improper.  *See Bowerman*, 60 F.4th at 470.

### A.   Establishing Minority Is an Antecedent Requirement for All Claims

To prevail on any of her claims, or even be a member of any of Plaintiff's proposed classes, Plaintiff and each absent class member must prove they were a minor at the time content depicting them was created.  Plaintiff's own experience illustrates this threshold inquiry is individualized and fact intensive.

Plaintiff does not recall when the four videos at issue were made and has no evidence showing they were made when she was underage.  Ex. 1, Doe Tr. 79:19-80:6.  Although Plaintiff alleges she was 16 years old at the time ▮▮▮ created the videos (TAC ¶ 141), s▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 2; Ex. 1, Doe Tr. 77:10-15) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Ex 3.  In light of these facts—and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ the videos may very well depict Plaintiff after she turned 18. The answer to that question depends on how a jury assesses the facts of each video and Plaintiff's credibility.  The same is true for *every member* of the putative class, and the answer for Plaintiff is not determinative for others.

MindGeek has an inviolate due process right to hold Plaintiff and each of the absent class members to their proofs for each element of their claims, including minority at the time of filming.  *See Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 442 (C.D. Cal. 2007) (holding procedure whereby class action trial would determine defendants' liability to 2,990 class members based on evidence regarding 41 plaintiffs violates due process).  Plaintiff offers no plan for accomplishing this in a class trial.

### B.   Sex Trafficking Claims Raise Highly Individualized Issues

#### 1.   Proof of Sex Trafficking

Under the TVPRA, "Plaintiffs will have to show that they were trafficked within the meaning of the sex trafficking statute" which is "a fact-specific and plaintiff-specific inquiry."  *Fleites*, 2022 WL 1314035, at *7.  Specifically, to establish a Section 1591 violation for minors, each putative class member would need

to prove (1) that someone "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed]" her; (2) "to engage in a commercial sex act;" (3) while knowing or recklessly disregarding that; (4) she was under 18 years old at the time.  18 U.S.C. § 1591(a).  There are no common answers to the questions these required elements raise.

*First*, determining whether a plaintiff was recruited, enticed, harbored, etc., will depend on each class member's situation.  For example, ███████████████████ ████████████████████████████████████████████████████████████ ████████████  Ex. 1, Doe Tr. 84:14-85:12.  Whether an individual was "recruited" or "enticed" for purposes of a sex-trafficking claim requires investigation and cannot be detected with the information available to MindGeek, even if that information had included Plaintiff's picture ID verification.  *See* Caltagirone Decl. ¶¶ 24-31.  Making this determination for thousands of class members—each in vastly different circumstances—cannot be done on a group basis.

*Second*, each plaintiff must prove the uploader's state of mind with respect to the plaintiff's age.  *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 840 (C.D. Cal. 2021) ("*Mindgeek I*").  Establishing whether a *party* knew or recklessly disregarded a fact is an element that is not amenable to a "common method of proof."  *Green v. Fed. Ex. Corp.*, 614 F. App'x 905, 908 (9th Cir. 2015).  Here, the required proof will turn on the states of mind of thousands of *third parties*, rendering the inquiry exponentially more difficult—while some class members may have been the subject of content created by a boyfriend who might have known their age, others might appear in content created by a total stranger with no such knowledge.  Ex. 30.

*Third*, each plaintiff will need to prove the uploader "had the intent to monetize the videos at the time they were made."  *MindGeek I*, 558 F. Supp. 3d at 840.  Here again, the circumstances and motives behind the creation of each video will "vary widely."  *Fleites*, 2022 WL 1314035, at *4.  ████████████████████████ ████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████ Ex. 6.  MindGeek did not pay

3 ████ any money for the video. ████████ Decl. ¶ 20. ████████████

4 ████████████████████████████████ Ex. 31.  Other class

members will allege very different experiences.  *See*, *e.g.*, *Fleites*, 2022 WL 1314035,

at *2 (Doe No. 1 alleges she "was raped, trafficked, and exploited by a ring of

Hollywood men and New York financiers" from the ages of 7 to 28).

### 2.  Proof of Secondary Liability

In addition to the required showings necessary to prove trafficking occurred, to

hold MindGeek liable, Plaintiff must prove it had the requisite *mens rea* and

participated in the sex trafficking venture.  These required showings give rise to a host

of additional plaintiff-specific issues that are not amenable to class treatment.

*Knowledge of Each Plaintiff's Circumstances Is an Individualized Inquiry*.

Knowledge may be established only by showing MindGeek "knew or should have

known that *[the] plaintiff* was the victim of sex trafficking *at the hands of [the] user*

*who posted the content.*"  *MindGeek I*, 558 F. Supp. 3d at 839 (cleaned up) (emphasis

added).  This element cannot be established by showing MindGeek had a general

awareness of sex trafficking on its sites.  Mot. at 9, 16.  "[K]nowledge or willful

blindness of a general sex trafficking problem . . . does not satisfy the *mens rea*

requirements of the TVPRA."  *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147,

154 (E.D.N.Y. 2020).  Rather, *each class member* is required to show that MindGeek

had knowledge that the venture "violated the TVPRA *as to the plaintiff*."  *Doe #1 v.*

*Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021); *B.M. v. Wyndham Hotels &*

*Resorts, Inc.*, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020) (dismissing TVPRA

claim where the plaintiff failed to "allege facts showing these Defendants knew or

should have known of [his] trafficking" specifically).  By definition, this is an

individualized inquiry.  Plaintiff does not proffer any realistic trial plan for how this

can be done.  She summarily contends the *mens rea* requirement can be established across the class because moderators viewed the videos before they were uploaded and certain videos were tagged or titled with the word "teen."  However, merely viewing a video does not imbue knowledge of the subject's age or circumstances of the subject's participation, and many videos are tagged with the word "teen" and similar tags that do not feature underage content.  *See* Fonseca Decl. ¶¶ 31-32, 36-37.  Here,

████████████████████████████████████████████████

████████████████████████████████████████████████

█████. Ex. 1, Doe Tr. at 147:23-149:20; Ex. 11. ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████   *Id*.  Thus, MindGeek's content moderation process does not establish its *mens rea*.

For the same reasons, resolution of these Plaintiff-specific questions sheds no light on the claims of the absent class members, and she is atypical of the class.  *Wiley v. Am. Fin. Network, Inc.*, 2023 WL 4681538, at *2 (C.D. Cal. July 3, 2023) (Carney, J.).  As Dr. Janine Shelby, a trauma psychologist that works with survivors of sexual abuse, explains in her declaration submitted in conjunction with MindGeek's Opposition: "[t]here is neither a uniform nor universal response among individuals who experience significantly adverse events."  Shelby Decl. ¶ 24.

***Participation In a Trafficking Venture Turns on Each Plaintiff's Circumstances.***  As this Court previously recognized, this is not a case where a "single defendant [] harmed each" of the absent class members "in a nearly identical way."  *Fleites*, 2022 WL 1314035, at *5.  "Plaintiffs' perpetrators are [] not the same individuals [and] Plaintiffs' interactions with the MindGeek Defendants also vary widely."  *Id.*  The "difficulty of inquiring into Defendants' practices at varying time periods would compound the already arduous task of wading through the

individualized circumstances giving rise to Plaintiffs' claims." *Id.*[1]

Nevertheless, Plaintiff argues MindGeek's participation in thousands of discrete trafficking ventures around the world can be presumed because MindGeek failed to prevent some users from posting CSAM to its sites.  Mot. at 14-15.  Courts have rejected this exact argument—namely, that the website operator participated in a sex trafficking venture by providing a platform with inadequate safeguards.  For example, in *Red Roof Inns, Inc.*, the Eleventh Circuit held that "observing something is not the same as participating in it."  21 F.4th at 727.  Thus, a hotel franchisor that knows its facilities might be used for sex trafficking, profits from room rentals, and fails to stop it does not *participate* in a trafficking venture.  *Id.*  This is because "[t]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking."  *L.H. v. Marriott Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) (citation omitted); *see also A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) ("[A] failure to affirmatively prevent or inhibit sex trafficking does not constitute participation."); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020); *Cf. Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (holding that TVPRA claim brought by same Plaintiff as in this case failed because allegations that website "provides a platform where it is easy to share child pornography, highlights subreddits that feature child pornography to sell advertising on those pages, allows users who share child pornography to serve as subreddit moderators, and fails to remove child pornography even when users report

---

[1] This case stands in stark contrast to the cases on which Plaintiff relies—unlike here, each involved a *single* trafficking venture with a standardized *modus operandi*. *Owino v. CoreCivic, Inc.*, 60 F.4th 437 (9th Cir. 2022) (sole defendant operated immigrant detention facilities, which had a written, uniform policy requiring detainees to clean facilities under detention laws), *cert. denied,* 143 S. Ct. 2612 (2023); *Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773 (S.D.N.Y. June 12, 2023) (involved the defendant bank's relationship with a *single* perpetrator (Jeffrey Epstein), whose conduct constituted a single "sex-trafficking venture" using a "common *modus operandi*.").

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

it" were insufficient to show active participation in a sex trafficking venture as required by 18 U.S.C. 1591), *cert. denied*, 143 S. Ct. 2560 (2023).

Here, Plaintiff alleges MindGeek participated in *thousands* of trafficking ventures over the course of a decade, each involving different methods, uploaders, kinds of victims, and interactions between the uploader, victims, and MindGeek. MindGeek's purported participation in each of these thousands of alleged ventures cannot be proven on a class basis.

## C. The CSAM Possession Claim Is Not Susceptible to Class Treatment

To prevail on a possession and distribution claim under 18 U.S.C. § 2252A, each putative class member must prove, among other elements, (1) that they were a minor when depicted in content that appeared on MindGeek's websites; and (2) that MindGeek actually knew they were underage at the time of receipt or distribution. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Plaintiff tacitly concedes these are inherently individualized questions but proposes two work-arounds. Neither vitiates the need for individual proof.

***The TOS08 List Is Not a Proxy For Whether Material Is CSAM or Appeared on a Tube Site.*** Plaintiff's theory that the TOS08 list reflects material "MindGeek itself categorized . . . as child pornography" is simply incorrect. Mot. at 11. As discussed above, the TOS08 list contains a lot more than actual CSAM; it includes potential CSAM as to which it is not possible to determine whether it is CSAM. MindGeek has reported content on the TOS08 list to NCMEC that is not necessarily actual CSAM because NCMEC guidelines call for reporting of content that *appears* to be CSAM, not just actual CSAM. *See* 18 U.S.C § 2258A(a)(2). The TOS08 list also includes content that never went "live" on any of the MindGeek sites. *See* ▮▮▮▮ Decl. ¶ 14. Merely knowing that a video was included on the TOS08 list does not establish that a video is CSAM or that it ever appeared on a MindGeek website.

***"Willful Blindness" Is Not Susceptible to Common Proof.*** Plaintiff all but concedes MindGeek's actual knowledge of specific underage content cannot be demonstrated through classwide proof. Instead, she falls back on her claim that MindGeek was "willfully blind" to all CSAM on its websites, which simply creates other individual issues. Whether blindness is "willful is a heavily fact-dependent inquiry." *Daimler AG v. A-Z Wheels LLC*, 498 F. Supp. 3d 1282, 1287-88 (S.D. Cal. 2020). Tellingly, Plaintiff does not identify any case that has *ever* allowed class-wide proof of willful blindness. This is because willful blindness has "two basic requirements: (1) the defendant must *subjectively believe* that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning *of that fact*." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769-70 (2011) (emphasis added).

Here, the relevant question is whether MindGeek acted "with a conscious purpose to avoid learning [each] [p]laintiff's age." *Doe v. Peterson*, 784 F. Supp. 2d 831, 841 (E.D. Mich. 2011). For example, in *Tilton v. Playboy Entertainment Group, Inc*., the plaintiff brought a claim under § 2252A against a man who had taken explicit pictures of her when she was 17 years old. 554 F.3d 1371, 1374-75 (11th Cir. 2009). The Eleventh Circuit held that to establish willful blindness, the plaintiff would need to show that the defendant "was aware of a high probability that [she] was a minor *when he observed [her]*," which, in turn, would depend on details regarding her age, whether she "looked like an adult," and the context in which the defendant had seen her. *Id.* at 1378 (emphasis added).[2]

Plaintiff's core theory is that MindGeek was willfully blind to CSAM because

---

[2] *United States v. Fletcher*, 946 F.3d 402 (8th Cir. 2019), and *United States v. Figueroa-Lugo*, 793 F.3d 179 (1st Cir. 2015) (cited in Mot. at 12), are inapposite. These were criminal cases requiring the government to prove willful blindness to *some* CSAM. Here, to prosecute separate civil claims, each class member must prove that MindGeek violated § 2252A with respect to her. *See* 18 U.S.C. §§ 2252A(f); 2255(a).

1    "moderators review[ed] every piece of content before it is authorized for public

2    access." Mot. at 12. This makes no sense. Willful blindness involves taking

3    "deliberate actions to ***avoid*** confirming suspicions of criminality." *Luvdarts, LLC v.*

4    *AT & T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) (emphasis added).

5    Having moderators manually review the content before it goes live on the websites to

6    screen for—and eliminate—inappropriate content is the antithesis of taking deliberate

7    actions to avoid finding out what the videos depict. The crux of Plaintiff's argument

8    is that MindGeek could have done more to detect and remove CSAM, such as by

9    having more moderators, using more technology sooner, reporting content to NCMEC

10   sooner, and requiring IDs for all performers. Mot. at 12-14. But a website cannot be

11   deemed willfully blind merely because it could have implemented additional

12   detection measures. A platform's responsibility for third-party content must "be

13   evaluated in the context of a system's current architecture," not what additional

14   measures they could have taken. *Luvdarts, LLC*, 710 F.3d at 1071. Thus, Plaintiff's

15   allegation that MindGeek "proceeded with the development and operation of the[ir]

16   [] networks indifferent to the risk of" illegal content does not establish that it "took

17   deliberate actions" to avoid learning about it. *Id.* at 1073.

18   Finally, both actual knowledge and willful blindness are lacking with respect

19   to Plaintiff's videos for a variety of reasons. Once Plaintiff made a take-down request

20   for the videos on Pornhub, they were removed within hours. Ex. 7; Ex. 1, Doe Tr.

21   127:3-7. *See Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 834-35 (9th Cir. 2019)

22   (holding that promptly removing "infringing photos when … asked" undermines

23   theory of willful blindness). There was also nothing about Plaintiff's videos that

24   created a "high probability" that they were CSAM; ███████████████████

25   ████████████████████████████████████████████████████████████

26   *See Tilton*, 554 F.3d at 1374-75 (no willful blindness where plaintiff was 17 years old

27   and "looked like an adult"). Nothing about the contents or metadata for the videos

28

1   suggests they depicted an underage individual.  *See also* Exs. 34-36.

2   **D.    Plaintiff's Damages Claims Defeat Predominance**

3   Plaintiff bears the burden of providing the Court with a methodology that

4   accurately calculates damages across the entire class.  *Comcast Corp. v. Behrend*, 133

5   S. Ct. 1426, 1433 (2013).  Although Plaintiff alleges she and the class have suffered

6   "serious harm" and purports to seek recompense for claimed "physical, psychological,

7   financial, and reputational" damage, she has not even attempted to meet her burden

8   of providing a model that would allow calculation of such damages across the class.

9   *See* TAC ¶¶ 147, 171, 176.  Her claimed damages expert, Robert Mills, admitted he

10  is not qualified to assess any of these injuries.  Ex. 33, Mills Tr. 29:15-30:19; 34:14-

11  35:23.  Unable to provide the Court with a damages model, she simply abandons these

12  claims, opting instead for liquidated damages on behalf of the entire class, thus further

13  showing her inadequacy as a class representative.  *See infra* at § II.[3]

14  Plaintiff's decision to jettison her actual damages claims does not, however,

15  eliminate the individual inquiries that arise from the relief she seeks.  Plaintiff also

16  seeks punitive damages but offers no method by which any such amount could be

17  demonstrated.  In *State Farm v. Campbell*, the Supreme Court admonished that

18  punitive damages must bear a sufficient nexus to the actual and potential harm to the

19  individual plaintiff.  538 U.S. 408, 422 (2003).  Courts agree that punitive damages

20  cannot be awarded without first establishing individualized harm.  *Grosz*, 2003 WL

21  22971025, at *8 ("Even after a pattern or practice liability finding, there must be a

22  finding of individual harm to each individual before punitive damages can be

23  awarded"); *Ulysse v. Waste Mgmt. Inc.*, 2013 WL 11327137, at *2 (S.D. Fla. Sept. 13,

24  _____

25  [3] In arguing that her pursuit of only statutory damages overcomes the insurmountable hurdles her actual damages claims would present, Plaintiff cites *In re Toys R Us*, 300

26  F.R.D. 347, 377 (C.D. Cal. 2013).  Mot. at 17.  In *Toys*, however, the FACTA plaintiffs had not sustained any actual damages.  *Id*.  Thus, the class representative's

27  decision not to pursue such claims did not raise adequacy issues.  The decision to elect

28  actual or statutory damages is an individual's personal choice, not Plaintiff's.

2013) (punitive damages are "inherently individualized").[4]

## II.      Plaintiff Is Not an Adequate Representative.

To try to increase the odds that she will get a class—any class—certified, Plaintiff has chosen not to pursue compensation for the physical and emotional damages she alleges the absent class members sustained.  But in *Drimmer v. WD-40 Co.*, the court found the named plaintiff was inadequate for exactly this reason.  The court reasoned the plaintiff cannot maintain a class action without  "seeking *all available* remedies for the class members."  2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007), *aff'd*, 343 F. App'x 219 (9th Cir. 2009) (emphasis added).  That the named plaintiff structured his claims to facilitate certification confirmed he "holds different priorities and litigation incentives than a typical class member."  *Id.*  Likewise, in *Western States Wholesale, Inc. v. Synthetic Industries, Inc.*, the court found the plaintiff was an inadequate representative because he tailored the remedies he sought to avoid predominance issues.  206 F.R.D. 271, at  277 (C.D. Cal. 2002).  The court explained, "[a] class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class."  *Id.*

Here, Plaintiff gives lip service to recovery of compensatory damages for physical and emotional distress, but her damages expert admittedly makes no attempt to show how such "damages are capable of measurement on a classwide basis."  *Comcast*, 133 S. Ct. at 1433.  She has thus abandoned these claims.  In doing so, she has created a disabling adequacy problem.

## III.     A Class Action Is Not a Superior Method of Adjudication.

Class certification is unwarranted as Plaintiff has failed to show how "the class action is superior to other available methods for fairly and efficiently adjudicating the

---

[4] Plaintiff's UCL claim is entirely derivative of her trafficking and possession claims and thus cannot be proven by common evidence for the same reasons discussed above. *See Vargas v. JP Morgan Chase Bank, N.A.*, 30 F. Supp. 3d 945, 952-53 (C.D. Cal. 2014).

controversy."  Fed. R. Civ. P. 23(b)(3).  A class action is not superior if class action complexities outweigh the benefits of a single trial on common issues, or if each member must litigate numerous, substantial separate issues for individual recovery. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).  The evidence makes clear both are true here.

**First**, the Court has already recognized the unmanageability of only 34 plaintiffs in its order granting MindGeek's motion to sever:  "Given the sheer number of claims and issues presented, the Court also shares Defendants' concerns that trial would be unmanageable . . . ."  *Id.* at *8.  *Fleites*, 2022 WL 1314035, at *2.   .

**Second**, Plaintiff and her counsel have presented no workable trial plan to explain how they intend to resolve—classwide—the many individual issues her claims present.  Plaintiff has not even explained how class membership—which requires proof that individuals were depicted in content uploaded to a MindGeek site and were underage when the content was created—can be determined without the need for mini-trials.  *See Ulysse*, 2013 WL 11327137, at *4.  That a class member appeared in content uploaded to a MindGeek site and was underage when it was created are threshold elements of Plaintiff's claims subject to *proof*—they cannot simply be delegated to a claims administrator.  *See Brown v. DirecTV, LLC*, 2022 WL 1591325, at *4 (C.D. Cal. Mar. 31, 2022) (claims administration process to fill in the gaps is "unworkable").

**Third**, Plaintiff's class definition—which includes every male or female who was under the age of 18 when they appeared in a video uploaded to a MindGeek website—is fatally overbroad.  It contains no geographical limitation and would apparently sweep in class members that suffered their injuries in multiple foreign countries.  *Cf. Fleites*, 2022 WL 1314035, at *7 (recognizing that the attempt to bring claims by foreign plaintiffs in U.S. courts raises multiple legal and factual issues).  In fact, under Plaintiff's overbroad definition, ███ and other abusers would be included

in the class because they too were minors when they created the videos.  Such an amorphous and overbroad class definition creates intractable manageability problems. *See Sonneveldt v. Mazda Motor of Am., Inc.*, 2023 WL 1812157, at *5 (C.D. Cal. Jan. 25, 2023) ("Common issues do not predominate when a class is overbroad and necessarily includes members without claims.") (citing *Mazza*, 666 F.3d at 596).

**Finally**, further compounding these manageability concerns, Plaintiff has not shown why a class action is even necessary.  The statutes under which Plaintiff seeks class relief allow recovery of substantial statutory and punitive damages as well as attorneys' fees for a successful litigant.  18 U.S.C. § 2255(a); 18 U.S.C. § 1595(a); Cal. Civ. Code § 52.5.  There is thus adequate incentive for individuals to pursue any claims they may have.  *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 582 (C.D. Cal. 2010) (no superiority where "it is not clear that the class action procedure is 'superior' to individual litigation. . . . prevailing parties are entitled to attorneys' fees. . . ."), *aff'd*, 476 F. App'x 154 (9th Cir. 2012); *Ulysee*, 2013 WL 11327137, at *6 (no superiority where plaintiffs were entitled to compensatory and punitive damages up to $300,000 per plaintiff and attorney's fees were available).

## IV.   Plaintiff's Rule 23(b)(2) Class Fails for Additional Reasons

Because Plaintiff has failed to satisfy Rule 23(a)'s commonality, adequacy, and typicality requirements, she cannot proceed with an injunctive relief class.  Plaintiff's injunctive relief class also fails for numerous additional reasons.

**First**, Plaintiff lacks standing to seek injunctive relief, unable to show a concrete and particularized risk of future injury that rises above the speculative or subjective.  *See Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (*en banc*) (putative class representatives lacked standing to represent injunctive relief class where they feared future improper traffic stops by border patrol based on past stops); *In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, 2021 WL 3878654, at *3 (9th Cir. Aug. 31, 2021) (no harm or imminence for injunctive relief).  Here, Plaintiff

does not even address the risk of future injury.  But the record is clear.  Plaintiff's videos have been removed, fingerprinted and reported to NCMEC to protect against re-uploading.  This occurred over two years ago, and Plaintiff is not aware that any videos depicting her have been re-uploaded to any of MindGeek's sites. Ex. 1, Doe Tr. 136:3-22; Ex. 7.  Plaintiff's speculation that this might change does not support standing.  *De La Vina*, 199 F.3d 1044-45.

*Second*, this case is not about injunctive relief. Plaintiff seeks substantial statutory, compensatory, and punitive damages.  Mot. at 17-19; Under *Dukes*, a class that is primarily seeking damages cannot be certified under Rule 23(b)(2).  *Dukes*, 564 U.S. at 360-61 (Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled…to an individualized award of monetary damages."); *accord Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 860 (9th Cir. 2001) (no (b)(2) class where the "award of monetary damages . . . [is the] essential goal").

## **CONCLUSION**

For these reasons, Plaintiff's Motion for Class Certification should be denied.

DATED: October 9, 2023          RESPECTFULLY SUBMITTED,


              /s/ *Kathleen N. Massey*
              KATHLEEN N. MASSEY (*pro hac vice*)
              Kathleen.Massey@dechert.com
              DECHERT LLP
              Three Bryant Park
              1095 Avenue of the Americas
              New York, NY 10036
              Phone: (212) 698-3500; Fax: (212) 698 3599

              QUINN EMANUEL URQUHART &
              SULLIVAN, LLP
              Michael T. Zeller (CA Bar No. 196417)
              michaelzeller@quinnemanuel.com
              Michael E. Williams (CA Bar No. 181299)
              michaelwilliams@quinnemanuel.com

1
2
3
4
5
6
7
8
9

Diane Cafferata (CA Bar No. 190081)
dianecafferata@quinnemanuel.com
Robert Becher (CA Bar No. 193431)
robertbecher@quinnemanuel.com
Thomas Nolan (CA Bar No. 238213)
thomasnolan@quinnemanuel.com
Mari F. Henderson (CA Bar No. 307693)
marihenderson@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendants*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASE NO. 8:21-CV-00338
**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6-1.

/s/ *Chip Boisvert*
Chip Boisvert

23