1
2
3
4
5
6
7

QUINN EMANUEL URQUHART & SULLIVAN LLP
Michael T. Zeller (SBN 196417)
michaelzeller@quinnemanuel.com
Michael E. Williams (SBN 181299)
michaelwilliams@quinnemanuel.com
Diane Cafferata (SBN 190081)
dianecafferata@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
Phone: (213) 443-3000; Fax: (213) 443-3100

8
9

(*See additional counsel on signature page*)
Attorneys for Defendants

10

## UNITED STATES DISTRICT COURT

11

## CENTRAL DISTRICT OF CALIFORNIA

12

## SOUTHERN DIVISION

13
14
15
16
17
18
19
20
21
22

JANE DOE on behalf of herself and all others similarly situated,

　　　　　　Plaintiff,

v.

MINDGEEK USA INCORPORATED,  MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),

　　　　　　Defendants.

Case No. 8:21-cv-00338-CJC-ADS

*Hon. Cormac J. Carney*

## CLASS ACTION

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

Date:  January 29, 2024
Time:  1:30 p.m.
Courtroom:  9B

23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................ 3

I.   THERE IS NO BASIS TO REQUIRE NOTICE ON MINDGEEK'S WEBSITES ................................................................................... 3

II.  A "GLOBAL" PRESS RELEASE IN MORE THAN A DOZEN LANGUAGES IS WASTEFUL, CONFUSING, AND UNNECESSARY BECAUSE THE STATUTES AT ISSUE DO NOT HAVE EXTRATERRITORIAL APPLICATION ..................................... 7

III. PLAINTIFF'S PROPOSED OPT-OUT PROCEDURES ARE UNNECESSARILY BURDENSOME AND SHOULD BE EXPANDED TO INCLUDE ELECTRONIC ALTERNATIVES ............... 10

IV.  PLAINTIFF'S PROPOSED NOTICES FAIL TO PROVIDE INFORMATION NECESSARY FOR RECIPIENTS TO DETERMINE WHETHER THEY MIGHT BE IN THE CLASS ................ 11

V.   ANY ORDER APPROVING THE NOTICE PLAN SHOULD SPECIFY THAT PLAINTIFF BEARS THE COST ..................................... 14

VI.  TO AVOID CLASS MEMBER CONFUSION, DISSEMINATION OF CLASS NOTICE SHOULD NOT OCCUR UNTIL MINDGEEK'S NINTH CIRCUIT PETITION AND ANY SUBSEQUENT APPEAL IS RESOLVED .................................... 14

     A.   MindGeek's Petition Raises Serious Legal Questions ........................ 15

     B.   The Balance Of Harms And Public Interest Strongly Favor A Stay Of Dissemination Of Class Notice ............................................. 18

VII. THE COURT SHOULD REQUIRE PLAINTIFF'S COUNSEL TO COORDINATE WITH CLASS COUNSEL IN ALABAMA FOR A STANDARDIZED NOTICE PLAN ............................................................. 19

CONCLUSION ...................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652 (E.D. Cal. 2008) .......................................................................... 11

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ................................................................................... 17

*In re: Autozone, Inc.*,
  2016 WL 4208200 (N.D. Cal. Aug. 10, 2016) ...................................................... 4

*Bally v. State Farm Life Ins. Co.*,
  2020 WL 3035781 (N.D. Cal. June 5, 2020) .......................................... 2, 15, 19

*Bennett v. Boyd Biloxi, LLC*,
  2016 WL 3746658 (S.D. Ala. July 8, 2016) ......................................................... 11

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................................................... 16

*Brown v. DirecTV, LLC*,
  2022 WL 1591325 (C.D. Cal. Mar. 31, 2022) ...................................................... 16

*Brown v. Wal-Mart Stores, Inc.*,
  2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) .......................................... 15, 17

*Doe v. MindGeek USA Inc.*,
  2023 WL 8126845 (C.D. Cal. Nov. 17, 2023) ...................................................... 8

*Doe v. Stephen*,
  2022 WL 1700445 (S.D. Iowa Feb. 2, 2022) ........................................................ 4

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ................................................................................................ 14

*Gray v. Golden Gate Nat'l Recreational Area*,
  2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) ...................................................... 15

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2019 WL 718807 (S.D. Cal. Feb. 5, 2019) .......................................................... 5, 6

*Jermyn v. Best Buy Stores, L.P.*,
   2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010)................................................ 6

*Kaufman v. Am. Exp. Travel Related Servs., Inc.*,
   283 F.R.D. 404 (N.D. Ill. 2012) ........................................................... 4

*Kleiner v. First Nat. Bank of Atlanta*,
   99 F.R.D. 77 (N.D. Ga. 1983) ............................................................ 11

*Leiva–Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ............................................................ 15

*Loving v. Princess Cruise Lines, Ltd.*,
   2009 WL 7236419 (C.D. Cal. Mar. 5, 2009) ........................................ 9

*Macarz v. Transworld Sys., Inc.*,
   201 F.R.D. 54 (D. Conn. 2001),
   *on reconsideration* (May 11, 2001)................................................... 14

*Mark v. Gawker Media LLC*,
   2014 WL 5557489 (S.D.N.Y. Nov. 3, 2014) ................................... 3, 4

*Martin v. Weiner*,
   2007 WL 4232791 (W.D.N.Y. Nov. 28, 2007)................................... 5

*Microsoft Corp. v. AT & T Corp.*,
   550 U.S. 437 (2007) ......................................................................... 8

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010) ......................................................................... 8

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
   314 F.R.D. 580 (N.D. Ill. 2016) ........................................................ 6

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ....................................................................... 14

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) ................................................... 2, 10

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   286 F.R.D. 88 (D. D.C. 2012) ......................................................... 15

*Ratha v. Phatthana Seafood Co.*,
   2017 WL 8292391 (C.D. Cal. Dec. 21, 2017) ................................. 10

iii

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

*Reyes v. Educ. Credit Mgmt. Corp.*,
    2017 WL 4640418 (S.D. Cal. Oct. 17, 2017)...............................................15, 19

*Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*,
    2016 WL 3365319 (E.D. La. June 17, 2016) .....................................................20

*Romero v. Securus Techs., Inc.*,
    383 F. Supp. 3d 1069 (S.D. Cal. 2019) ..............................................................16

*Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*,
    254 F.R.D. 294 (W.D. Tex. 2008).........................................................................6

*In re SFPP Right-of-Way Claims*,
    2017 WL 2378363 (C.D. Cal. May 23, 2017).....................................................16

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ........................................................................11

*Stuart v. State Farm Fire & Cas. Co.*,
    332 F.R.D. 293 (W.D. Ark. 2019)........................................................................6

*United States v. Rosenow*,
    50 F.4th 715 (9th Cir. 2022).............................................................................18

*United States v. Wilson*,
    13 F.4th 961 (9th Cir. 2021).............................................................................18

*Walney v. Swepi LP*,
    2017 WL 319801 (W.D. Pa. Jan. 23, 2017) .......................................................11

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015)................................................................9

*West v. Circle K Stores, Inc.*,
    2006 WL 1652598 (E.D. Cal. June 13, 2006) ....................................................11

*Wheeler v. City of Santa Clara*,
    894 F.3d 1046 (9th Cir. 2018)............................................................................8

*Whitman v. State Farm Life Ins. Co.*,
    2021 WL 5824572 (W.D. Wash. Dec. 8, 2021)............................................15, 19

*In re Wholesale Grocery Prod. Antitrust Litig.*,
    2017 WL 826917 (D. Minn. Mar. 1, 2017).........................................................11

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

*Y.Y.G.M. SA v. Redbubble, Inc.*,
     75 F.4th 995 (9th Cir. 2023) ............................................................................ 17

*Yeoman v. Ikea U.S. W., Inc.*,
     2013 WL 5944245 (S.D. Cal. Nov. 5, 2013) ...................................................... 4

### <u>Statutes</u>

15 U.S.C. §§ 7001, *et seq.* ........................................................................................ 11

18 U.S.C. § 1591 ............................................................................................... 7, 8

18 U.S.C. § 1595 ................................................................................................... 7

18 U.S.C. § 1596 ................................................................................................... 8

18 U.S.C. § 2252 ............................................................................................... 7, 8

18 U.S.C. § 2252A ........................................................................... 8, 9, 17, 18

18 U.S.C. § 2258A ........................................................................................ 17, 18

18 U.S.C. § 2258E ............................................................................................. 18

Cal. Bus. & Prof. Code § 17200, et seq. ................................................................ 9

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

1

## **Other Authorities**

Federal Judicial Center, *Judges Class Action Notice and Claims
Process Checklist & Plain Language Guide* (2010) ............................................7

Joseph Palmore, *How do Rule 23(f) petitions fare in the Ninth
Circuit?*, JD SUPRA (June 22, 2022),
https://www.jdsupra.com/legalnews/how-do-rule-23-f-petitions-
fare-in-the-4676814/ ............................................................................. 16

Manual for Complex Litigation (Fourth) § 21.321 (2004)..................................... 10

F.R.C.P. Rule 23, Advisory Committee Notes........................................................ 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

# PRELIMINARY STATEMENT

MindGeek[1] takes no position on most aspects of plaintiff's proposed notice plan, but submits this limited opposition to address several issues relating to the manner and timing of the notice.[2]

**First,** plaintiff's robust direct and indirect notice plan makes it entirely unnecessary for the Court to force MindGeek to post notice to its own websites. Indeed, plaintiff's expert does not even attempt to quantify any additional "reach" that might be accomplished through such notice.   Plaintiff's only purported justification is that she continued to check MindGeek's sites to see whether her content was reposted; thus, plaintiff surmises other class members may do the same. Assuming that is true, those class members (like plaintiff) likely submitted takedown requests to MindGeek when they first learned their content was posted there.   As such, these class members (like plaintiff) would receive *direct notice* of the class action, making notice through MindGeek's sites superfluous and unnecessarily harmful to MindGeek's business.   Plaintiff's anecdotes fall far short of the justification needed to support this form of notice.

**Second,** plaintiff proposes a global press release through PR Newswire in more than a dozen languages in order to "get[] 'word of mouth' out about this action." Declaration of Gina Intrepido-Bowden at ¶ 37.  But the purpose of notice is to inform class members of their rights and responsibility; not create a media spectacle. Moreover, plaintiff offers no reason notice should be disseminated worldwide when the statutes at issue here do not apply extraterritorially.

**Third,** the demographics of the class—which plaintiff contends skew young— and the digital form of the notice cannot be reconciled with the arcane opt-out procedure plaintiff proposes, which would require class members to craft their own

---

[1]   Except as indicated otherwise (*see* Section II, *infra*), this opposition refers collectively to defendants MindGeek USA Incorporated, MindGeek S.A.R.L., MG Freesites Ltd., MG Freesites II Ltd. MG Content RT Limited, and 9219-1568 Quebec, Inc. as "MindGeek."

[2]   Many of these issues could likely have been addressed outside of formal briefing had plaintiff meaningfully met and conferred before filing her motion.

1

opt-out form, postmark it, and physically mail it to the settlement administrator.  The primary purpose of class notice is to give class members an opportunity to decide whether to stay in the lawsuit or to opt out.  *See, e.g., Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992).  Plaintiff's burdensome opt out process would thwart that purpose, and she offers no reason opt-outs cannot be accomplished with a pre-set form that can be submitted by email or through the administrator's website.

**Fourth,** plaintiff's proposed notices are impermissibly vague and confusing to the extent they (1) fail to identify the websites on which content must have appeared for an individual to be a part of the class; and (2) otherwise suggest the class includes individuals whose content appeared on websites that have never been at issue in this case.  The class notice should be specific to allow recipients to determine whether they might be members of the class.

**Fifth,** although the law is well established that a plaintiff must bear the costs associated with her notice plan, plaintiff's proposed order fails to make this clear. Any order approving class notice should clarify this issue.

**Sixth,** dissemination of the class notice should await the Ninth Circuit's resolution of MindGeek's petition for review of the Court's certification order. Where a Rule 23(f) petition is pending, courts have consistently recognized "premature notice risks harm to class members who are likely to be confused if certification is reversed." *Bally v. State Farm Life Ins. Co.*, 2020 WL 3035781, at *5 (N.D. Cal. June 5, 2020).  A limited stay of dissemination of the notice—which would not likely slow this action in any way—is appropriate here for the same reasons.

**Finally,** a federal district court in Alabama recently certified an identical class asserting the same federal claims against MindGeek.  To avoid unnecessary class member confusion, the Court should require plaintiff to coordinate with class counsel

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

in Alabama to implement a single, combined notice plan to reach this same group of individuals.

**ARGUMENT**

## I.   THERE IS NO BASIS TO REQUIRE NOTICE ON MINDGEEK'S WEBSITES

Plaintiff proposes a robust notice plan consisting of (1) direct notice using contact information from MindGeek's records; (2) direct notice through partnerships with NCMEC and law enforcement agencies; and (3) indirect notice through targeted media outreach, including on "leading" digital networks, popular social media platforms, and even through audio streaming provider Spotify.  Declaration of Gina Intrepido-Bowden at ¶¶ 6, 10-31.  Plaintiff also proposes supplementing these by posting notice on "popular newsworthy digital platforms such as the New York Times, Reddit, and X." *Id.* at ¶ 35.  Plaintiff's expert opines that this digital media campaign will deliver 190 million digital impressions and that it is expected to reach 70% of the target group. *Id.* at ¶¶ 27, 43.

Despite this broad reach, as a purported "supplement" to this direct and indirect notice campaign, plaintiff's expert also proposes "posting a notice on the Defendants' websites." *Id.* at ¶ 36.  Plaintiff's expert offers *zero* analysis of the efficacy or expected reach of this "supplemental" form of indirect notice. *See generally id.* Plaintiff's proposal to force MindGeek to post notice to its own websites is a transparent and entirely unjustified effort to penalize MindGeek.

Where, as here, a plaintiff's proposed notice program includes robust methods of both direct and indirect notice that are likely to reach class members, courts have rightly rejected attempts to require defendants to post notice to their own websites or places of business, recognizing such additional forms of notice are both unnecessary and "punitive." *See, e.g., Mark v. Gawker Media LLC*, 2014 WL 5557489, at \*3-4 (S.D.N.Y. Nov. 3, 2014) (denying request where the plaintiffs "are likely to be reached and identified by other means," and recognizing "[p]osting a link on their

website extracts a cost from Defendants, and has the potential to appear punitive, while the incremental chance that potential plaintiffs who do not otherwise receive notice would see it and become aware of their rights is small"); *Doe v. Stephen*, 2022 WL 1700445, at \*4-5 (S.D. Iowa Feb. 2, 2022) (denying request that defendant post notice on its website as "unnecessary and redundant" in light of the other forms of notice); *Kaufman v. Am. Exp. Travel Related Servs., Inc.*, 283 F.R.D. 404, 407 (N.D. Ill. 2012) (denying request that defendants "post a link to a settlement web site on their home page"); *Yeoman v. Ikea U.S. W., Inc.*, 2013 WL 5944245, at \*3 (S.D. Cal. Nov. 5, 2013) ("posting notices at each point-of-sale location in each of Ikea's California locations is not practicable and not supported by law").

So too here—plaintiff offers no meaningful justification for her request. Her expert characterizes it as merely a "supplement" to an already robust campaign, and did not analyze the expected additional "reach" that would be accomplished through this "supplemental" notice. Requiring MindGeek to post such notice to its own sites would undoubtedly "extract[] a cost from" MindGeek, *see Gawker*, 2014 WL 5557489 at \*3-4, and would threaten to harm both its "reputation and business," *see Ikea*, 2013 WL 5944245 at \*3. Plaintiff has failed to offer any justification for the harm such notice would inflict on MindGeek.

Apparently recognizing the significant problems with this proposal, plaintiff contends the Court should reject MindGeek's "anticipate[d]" opposition. Mot. at 9-11. However, none of plaintiff's arguments supports this form of notice.

*First,* plaintiff contends she routinely checked MindGeek's website to determine whether her content had been reuploaded and, as a result, she hypothesizes other class members might have done the same. *Id.* at 10. As a threshold matter, plaintiff's anectodal experience cannot fairly be extrapolated to any broader group. *In re: Autozone, Inc.*, 2016 WL 4208200, at \*17 (N.D. Cal. Aug. 10, 2016) (recognizing a "sample must be sufficiently large to provide reliable information about the larger group") (quotation, citation omitted). However, even if it could,

class members who became aware their content was posted to MindGeek's sites—such that they might be checking those sites to see whether their content was reuploaded—are also individuals who are likely to have submitted takedown requests to MindGeek, as plaintiff did.   ECF 168-8.   As a result of plaintiff's takedown request, MindGeek has plaintiff's contact information, such that plaintiff's proposed notice program would result in *direct* notice to plaintiff.   MindGeek has produced <u>*all*</u> such takedown requests (and any accompanying contact information) to plaintiff and she proposes to use this information to provide direct notice to the class. Accordingly, to the extent plaintiff's experience mirrors those of all others—as she now contends—this would mean all class members who "likely continue to look on MindGeek's various websites to ensure their CSAM is no longer posted" are also the same individuals who would receive direct notice of this class action, rendering indirect notice on MindGeek's sites entirely unnecessary.

*Second,* plaintiff cites a handful of cases in which courts have approved such notice, but all are readily distinguishable.   In *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 718807 (S.D. Cal. Feb. 5, 2019), the court approved notice through defendant's website only *after* it disapproved of plaintiff's direct notice plan due to its overinclusivity.   *Id.* at *2.   Here, by contrast, plaintiff proposes a robust direct notice plan, the vast majority of which MindGeek takes no position on.[3]   Moreover, *Hilsley* involved notice posted to a product website where the class members were consumers *of that product*—here, the class does not consist of *users* of MindGeek's website.   Rather, this situation is akin to the *Hilsley* plaintiff's proposal to give notice through defendant's social media accounts.   The court *rejected* that request due to plaintiff's failure to make any showing "whether these accounts would reach

---

[3]   Similarly, *Martin v. Weiner*, 2007 WL 4232791, at *3 (W.D.N.Y. Nov. 28, 2007) involved notice posted to the defendant's website only where notice by publication was the *only* form of notice provided—and, further, the class consisted of individuals who had applied for certain government assistance, and the website notice was intentionally targeted toward those applicants with disabilities who would not see the notice elsewhere. *Id.*

potential class members." *Id.* at \*4.  So too here—plaintiff's expert offers *no* analysis of the potential impact of postings on MindGeek's websites.

The same is true of *Jermyn v. Best Buy Stores, L.P.*, 2010 WL 5187746, at \*6 (S.D.N.Y. Dec. 6, 2010)—there, the court *denied* the plaintiff's request to post notice through the defendant's Twitter account because the plaintiff "offered no evidence that class members use Twitter or Best Buy's Twelpforce." *Id.*  Plaintiff here likewise offers no evidence that notice on MindGeek's website will reach the target audience.  And although *Jermyn* did allow notice on the defendant's site, as in *Hilsley*, this was permitted only *after* the court denied every other form of proposed direct notice, and (unlike here) the class consisted of the defendant's customers who were likely to visit the site.  *Id.* at \*6-8.[4]

Plaintiff's reliance on *Stuart v. State Farm Fire & Cas. Co.*, 332 F.R.D. 293 (W.D. Ark. 2019), is also misplaced.  There, the class consisted of the defendant's customers, and the notice on the defendant's website was accessible only "*after* a current customer logs into the payment portal," and would not be "seen by anyone who accessed the website." *Id.* at 296 n. 1.  Indeed, even *the plaintiff* recognized the problematic overbreadth of a notice on the defendant's general, publicly-accessible site, yet that is *exactly* what plaintiff proposes here.  *See id.*

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580 (N.D. Ill. 2016), is even further afield.  That case involved a settlement class and the parties jointly proposed a notice program—the issue of publication on the defendant's website was not disputed. *Id.* at 603.

In sum, plaintiff offers no meaningful justification for her overbroad and burdensome proposal that MindGeek post notices on its own websites, which would be unnecessarily harmful to MindGeek's business.

---

[4]  Likewise, in *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 254 F.R.D. 294, 299-300 (W.D. Tex. 2008), the class consisted of current and former employees and the proposed plan contemplated notice on the defendant's "intranet" where these class members were "likely to seek information about their Telephone Concession Benefits." *Id.*

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

**II.** **A "GLOBAL" PRESS RELEASE IN MORE THAN A DOZEN
LANGUAGES IS WASTEFUL, CONFUSING, AND UNNECESSARY
BECAUSE THE STATUTES AT ISSUE DO NOT HAVE
EXTRATERRITORIAL APPLICATION**

In addition to individual notice and notice by publication—which plaintiff's expert asserts will be more than sufficient to meet the notice guideline developed by the Federal Judicial Conference—plaintiff proposes this lawsuit should be trumpeted globally at the "start of the campaign" with a press release translated into more than a dozen languages.[5]  Declaration of Gina Intrepido-Bowden at ¶ 37.  She offers no reason why this is necessary other than a generalized statement that the press release will "get[] 'word of mouth' out about this action."  *Id.*  But this is a lawsuit; not a theatrical event.  Rule 23 requires notice that will plainly and succinctly inform class members of their rights and responsibility; not serve as a publicity vehicle.

Plaintiff's demand for a global press release is particularly misguided because the certified claims do not have extraterritorial application.  Here, the Court has certified two classes, "a national class," and a "California Subclass."  Mot. at 1.  The national class certifies two federal statutory claims:  one under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591 and 1595, and the other under 18 U.S.C. §§ 2252 and  2252A, which prohibits receiving and distributing child pornography.  The California Subclass contains two additional claims under California law.  *Doe v. MindGeek USA Inc.*, 2023 WL 8126845, *4 (C.D. Cal. Nov. 17, 2023).  For the federal claims, there is a strong "presumption

---

[5] Plaintiff's proposed languages include English, Arabic, Chinese, Czech, French, German, Hebrew, Indonesian, Japanese, Korean, Malay, Polish, Portuguese, Russian, Slovak, Spanish, Thai, and Vietnamese but offers no explanation as to why these languages were chosen.  Mot. at 8.  As the proponent of the plan, plaintiff bears the burden of demonstrating that the demographics of the class warrant notice in a foreign language. *See generally,* Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist & Plain Language Guide,* 4 (2010) (noting that courts should "[c]onsider the demographics of the class to determine whether notice is necessary in Spanish or another language" and that "[t]he number of class members whose native language is not English should guide [the Court] on whether to actively disseminate notice in other languages.").

7

against extraterritoriality." *Microsoft Corp. v. AT & T Corp.,* 550 U.S. 437, 454 (2007) (dismissing RICO claims brought by foreign nationals; explaining that US "law governs domestically but does not rule the world"). The party seeking to apply U.S. law extraterritorially has the heavy burden of overcoming this presumption. *Id.* "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010).

18 U.S.C. § 2252A contains no extraterritoriality provision and accordingly does not apply to acts taken by foreign corporations outside the United States. The TVPRA does provide for limited extraterritorial application, but only in specified circumstances, which do not apply here. 18 U.S.C. § 1596. Under Section 1596, United States courts have extraterritorial jurisdiction over offenses under Section 1591 if—and only if— the alleged offender is a citizen or permanent resident of the United States or is physically present in the United States.[6] That requirement is not satisfied as to any of the foreign MindGeek entities, two of which are the only entities relevant to this action.

Here, the defendants that have owned, operated or provided services for the tubesites during the relevant period are foreign entities. Pornhub, Red Tube, Tube8 and YouPorn are all operated by MG Freesites Ltd, which is organized under the laws of and has its principal place of business in the Republic of Cyprus, not the United States. TAC ¶ 10; Declaration of Andreas Alkiviades Andreou ("Andreou Decl.") at ¶ 5. 9219-1568 Quebec Inc., which provides services to MG Freesites Ltd relating to the operation of those sites, is organized under the laws of the Province of Quebec with its principal place of business in Montreal, Canada. TAC ¶ 13; Andreou Decl.

---

[6] The existence of an exception for U.S. persons further shows that trafficking by non-U.S. persons (e.g., MindGeek or foreign individuals) is subject to the general rule of non-extraterritoriality. *See, e.g., Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018) ("[T]he doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.") (cleaned up).

¶ 6[7].  The only defendant corporation based in or with an office in the United States is MindGeek USA Inc.  *See* TAC ¶¶ 8-13; Andreou Decl. ¶¶ 3, 8.[8]  Plaintiff does not identify anything in the record that even suggests that MindGeek USA Inc. had anything to do with operating the tube site business or any other conduct underlying Plaintiff's claims.  This is not surprising:  MindGeek USA Inc.'s sole function is to distribute DVD-based content pursuant to the terms of one contract, Andreou Decl. at ¶ 4, but the Complaint contains no allegation that content depicting Plaintiff or any putative class member ever appeared on a DVD.

The same analysis applies to the California subclass.  Like the U.S. Supreme Court, the "California[] Supreme Court has made clear that there is a strong presumption against the extra-territorial application of California law."  *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015); *see also Loving v. Princess Cruise Lines, Ltd.*, 2009 WL 7236419, at *8 (C.D. Cal. Mar. 5, 2009) (noting that it is settled that the UCL "§ 17200, et seq., does not have extraterritorial application.").

As foreign nationals cannot sue foreign entities under the TVPRA, § 2252A, or the California statutes for conduct that occurred outside of the United States, there is no need to issue a global press release to "get[] 'word of mouth' out about this action."  Declaration of Gina Intrepido-Bowden at ¶ 37.  They are not members of either class and providing a global press relief in multiple languages can only lead to confusion.  *See, e.g.*, *Ratha v. Phatthana Seafood Co.*, 2017 WL 8292391, *4 (C.D. Cal. Dec. 21, 2017) (noting that the TVPA does not provide a remedy for "offenses wholly occurring in foreign countries, exclusively involving foreign victims, and that were perpetrated by foreign offenders who never set foot in the United States").  Accordingly, the Court should reject Plaintiff's "global press release" plan.

---

[7]  Mindgeek S.a.r.l., which is a holding company without any offices or employees of its own, is organized and exists under the laws of Luxembroug with its sole place of business in Luxembourg. TAC ¶ 9; Andreou Decl. ¶ 7.
[8]  Two of the named defendants, MG Freesites II Ltd. and MG Content RT Limited, have been dissolved with the entire business of both entities being transferred to MG Freesites Ltd.  *See* Answer to TAC, ¶¶ 10-11.

9

### III. PLAINTIFF'S PROPOSED OPT-OUT PROCEDURES ARE UNNECESSARILY BURDENSOME AND SHOULD BE EXPANDED TO INCLUDE ELECTRONIC ALTERNATIVES

The primary purpose of class notice is to allow class members a meaningful opportunity to decide whether to participate in or to opt out of a class action. *Peters*, 966 F.2d at 1486. Because the notice process serves this critical function, the opportunity to opt out should not be unduly restricted. *See* Manual for Complex Litigation (Fourth) § 21.321 (2004) ("The opt-out procedure should be simple and should afford class members a reasonable time in which to exercise their option.").

Here, plaintiff's expert opines the class likely consists of individuals in a younger demographic and created a notice plan that targets those between the ages of 13 and 34. Declaration of Gina Intrepido-Bowden at ¶ 27. Consistent with this, plaintiff's expert proposes a social media-based notice plan with "a heavy emphasis on mobile devices to reach a younger audience." *Id.* at ¶ 30.

Inexplicably, however, plaintiff deviates from this otherwise consistent approach when it comes to opting out—plaintiff proposes that to opt out, class members must draft their own opt-out request, postmark it, and physically mail it to the administrator. *See* Plaintiff's Proposed Order at ¶¶ 10-11. Tellingly, plaintiff's expert offers no opinions on the efficacy or burden of this opt-out proposal.

Permitting opt outs only by snail mail does not reflect the way that people communicate in this century and does not serve the purpose of providing class members with a meaningful opportunity to opt out. For this reason, courts routinely approve notice procedures that permit electronic opt outs. *See, e.g., Walney v. Swepi LP*, 2017 WL 319801, at *16 (W.D. Pa. Jan. 23, 2017) (approving a notice procedure providing for opt-out via email, interactive website, and U.S. Mail); *In re Wholesale Grocery Prod. Antitrust Litig.*, 2017 WL 826917, at *5 (D. Minn. Mar. 1, 2017) ("Courts also approve the use of online forms which allow class members to opt out electronically."); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 331 (C.D. Cal. 2016)

(approving class settlement notice plan that "provides that class members may elect to exclude themselves by completing and submitting online or mailing a simple Opt Out Form, which will be available by phone and on the settlement website").

This is particularly important here, where plaintiff contends the class skews young and plaintiff is otherwise proposing that notice be conveyed digitally.  To the extent this method is appropriate for the notice itself, it should likewise be permitted for purposes of opt out requests.[9]  Specifically, MindGeek proposes that opt outs be permitted by email and through forms submitted on the administrator's website.

At the very least, the notice plan should provide for a standard form that can be filled in and used for opt outs.  MindGeek's proposed form is attached as Exhibits A and B.  Declaration of Michael E. Williams at ¶¶ 2-3; *see, e.g., West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *13 (E.D. Cal. June 13, 2006) (approving form and content of request for exclusion form attached as exhibit); *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 671 (E.D. Cal. 2008) (same); *Kleiner v. First Nat. Bank of Atlanta*, 99 F.R.D. 77, 77 (N.D. Ga. 1983) (similar); *Bennett v. Boyd Biloxi, LLC*, 2016 WL 3746658, at *3 (S.D. Ala. July 8, 2016) (suggesting "a form request of exclusion might be necessary in order to minimize the risk class members unwittingly fail to include all information required of a valid exclusion request").

## IV.   PLAINTIFF'S PROPOSED NOTICES FAIL TO PROVIDE INFORMATION NECESSARY FOR RECIPIENTS TO DETERMINE WHETHER THEY MIGHT BE IN THE CLASS

Plaintiff's claims in this case have always been premised on MindGeek's "tube" sites—that is, the websites to which user-generated content can be submitted—rather than MindGeek's paysites, which host only studio-generated content.  *See, e.g.,* ECF No. 107 at ¶¶ 44-48 (alleging "individual users—not formal studios—upload[] much of the content and comments available for viewing," and

---

[9]  Although plaintiff proposes that all opt out requests must be signed, this is no barrier to permitting electronic opt outs.  Digital signatures are ubiquitous in the modern world and federal law expressly recognizes their validity.  *See*  15 U.S.C. § 7001, *et seq.*

11

that "users [] participate in the profits from their content"), ¶ 64 (identifying
"YouPorn, RedTube, and Tube8" as other tubesites to which MindGeek allegedly
uploads content), ¶ 143 (alleging plaintiff's content appeared on "Pornhub.com" and
"Redtube.com"); ECF No. 66 at 11-14 (relying on MindGeek's alleged role with
respect to user-uploaded content to allow trafficking claim to proceed), 20 (relying
on allegations concerning content "posted to [MindGeek's] platforms" to allow
plaintiff's CSAM claims to proceed); ECF No. 209 at 8 (finding "CSAM depicting
Plaintiff and putative class members was uploaded to Defendants' websites, and
Plaintiff alleges that Defendants' policies and practices encouraged dissemination of
that CSAM and that Defendants profited from dissemination of that CSAM" for
purposes of commonality determination), 14, 17 (finding "[a]ll putative class
members had their CSAM posted to one of Defendants' websites" and that the
evidence suggests "Defendants knew that users were uploading significant amounts
of CSAM to their websites" for purposes of predominance determination); 18-19
(finding "the core of this litigation is Defendants' content moderation policies and
practices related to CSAM"), 22 (finding "common policies permitted CSAM of the
class to be uploaded to Defendants' sites").  Indeed, the parties agreed to limit the
discovery in this case to include only the following tube sites: Pornhub, Tube8,
Redtube and YouPorn.  Defs.' Obj. and Resps. to Pl's. Second Request for the Prod.
of Docs. at 3.

Plaintiff's proposed class notices, however, fail to specify that content must
have appeared on one of these MindGeek tube sites for an individual to be a part of
plaintiff's class.  Instead, each of plaintiff's proposed notices confusingly leads with
an assertion that a recipient may be a member of the class if he or she "appeared in a
video or image uploaded or viewable on an adult entertainment website," without
specifying what site that might be.  ECF 211-3 (email notice); 211-4 (postcard
notice); 211-5 (digital advertisement notice); 211-6 (Spotify script); 211-7 (third
party email notice); 211-8 (press release); 211-9 (longform notice) (collectively, the

"Proposed Notice Forms").  Nor do the notices otherwise specify which sites might be at issue beyond a vague statement that the class includes those whose content appeared on a website "owned or operated by MindGeek."  *See* Proposed Notice Forms.  Without identifying what those sites are, however, there is no way for recipients to readily determine whether they might be part of the class.  Indeed, plaintiff's proposed "long form" notice is even more confusing, as it references "film companies" owned by MindGeek, even though the claims at issue here have nothing to do with such film production companies.  ECF 211-9 at 5.

The purpose of Rule 23's notice requirement is to give class members an opportunity to decide whether to exclude themselves before their rights are impacted, consistent with the requirements of due process.  *See* Federal Rules of Civil Procedure 23, Advisory Committee Notes (recognizing notice "is not merely discretionary" and class members must be given "an opportunity to secure exclusion from the class . . . to fulfill requirements of due process").  To serve this function, at the very least, any such notice must enable a recipient to determine whether he or she might be a member of the class and thus whether there is any need to exercise their exclusion rights.  This is particularly true where, as here, plaintiff's notice plan includes *indirect* notice by publication, such that distribution is necessarily not limited to only those who are actually class members.

By failing to identify the websites on which content must have appeared for an individual to be a part of the class, plaintiff's proposed notice falls short of Rule 23's requirements.  The Court should instead approve the notices attached to this opposition as Exhibits C through L[10], which identify the sites on which content must appear for an individual to be a part of the class.  Declaration of Michael E. Williams at ¶¶ 4-15; *see, e.g., Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 64 (D. Conn. 2001), *on reconsideration* (May 11, 2001) (rejecting overbroad notice on the basis

---

[10] The Exhibits include both clean versions and blacklined versions against each of plaintiff's proposed notices.

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

that it would "confuse the recipients and encourage responses by non-class members") (quotation, citation, alteration omitted).

## V.     ANY ORDER APPROVING THE NOTICE PLAN SHOULD SPECIFY THAT PLAINTIFF BEARS THE COST

The law is clear that the plaintiff bears the cost of notice to the class.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178–79 (1974) ("Where, as here, the relationship between the parties is truly adversary, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit.").  *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978) (same).  Plaintiff does not appear to dispute this, but her proposed order is silent in this regard.  Any order approving the notice plan should make clear, consistent with Supreme Court precedent, that plaintiff bears the cost of the notice.

## VI.    TO AVOID CLASS MEMBER CONFUSION, DISSEMINATION OF CLASS NOTICE SHOULD NOT OCCUR UNTIL MINDGEEK'S NINTH CIRCUIT PETITION AND ANY SUBSEQUENT APPEAL IS RESOLVED

MindGeek timely petitioned the Ninth Circuit for review of the Court's class certification order in accordance with Federal Rule of Civil Procedure 23(f).  *See* MindGeek Pet. Permission to Appeal, 23-3909 ECF 1.1.  The petition remains pending and its outcome could alter the form in which this action proceeds.

Under these circumstances, courts routinely stay dissemination of class notice until the petition and any appeal are resolved, recognizing premature notice risks confusion and harm to the class members.  *See, e.g., Bally*, 2020 WL 3035781 at *5 ("premature notice risks harm to class members who are likely to be confused if certification is reversed"); *Reyes v. Educ. Credit Mgmt. Corp.*, 2017 WL 4640418, at *4 (S.D. Cal. Oct. 17, 2017) (staying dissemination of class notice pending resolution of Rule 23(f) petition to avoid risk of class member confusion); *Whitman v. State Farm Life Ins. Co.*, 2021 WL 5824572, at *1 (W.D. Wash. Dec. 8, 2021) (same); *In*

*re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D. D.C. 2012) (public interest warrants not proceeding with class notice while a Rule 23(f) petition is pending).

As in *Bally*, *Reyes*, *Whitman*, *In re Rail Freight*, and numerous other cases, the relevant factors likewise warrant a limited stay here. *See Whitman*, 2021 WL 5824572 at *1 (a stay is a matter of discretion and may be appropriate where an appeal raises "serious legal questions" and the balance of harms between the moving and non-moving parties tips in favor of a stay).

### A. MindGeek's Petition Raises Serious Legal Questions

To issue a stay, the Court need not agree MindGeek "is more likely than not . . . [to] succeed on the merits" of its appeal—rather, it is sufficient for MindGeek to show the appeal raises "serious legal questions." *Gray v. Golden Gate Nat'l Recreational Area*, 2011 WL 6934433, at *1 (N.D. Cal. Dec. 29, 2011). *See also Leiva–Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011). "Serious legal questions" include those for which "guidance from the Ninth Circuit" would advance resolution of the litigation, including in instances where guidance is needed to resolve an intra-circuit split. *See Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *2-3 (N.D. Cal. Nov. 15, 2012).

Here, MindGeek's petition is still pending and is likely to be ruled upon in short order.[11] Were the Ninth Circuit to grant the petition, this would necessarily mean the appeal raises "serious legal questions." *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1074 (S.D. Cal. 2019) ("The Ninth Circuit's acceptance of [defendant's] Rule 23(f) petition for appeal demonstrates that serious legal questions are at issue."). On the other hand, to the extent the Ninth Circuit denies MindGeek's

---

[11] The Ninth Circuit decides Rule 23(f) petitions in around 85 days on average. *See* Joseph Palmore, *How do Rule 23(f) petitions fare in the Ninth Circuit?*, JD SUPRA (June 22, 2022), https://www.jdsupra.com/legalnews/how-do-rule-23-f-petitions-fare-in-the-4676814/. MindGeek filed its petition on December 1. Based on the average time for the Ninth Circuit to rule on a Rule 23(f) petition, MindGeek's petition is likely to be resolved by February (within a month after the scheduled hearing on plaintiff's motion).

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

petition, any stay of distribution of class notice would result in minimal delay. Accordingly, MindGeek respectfully submits the Court should await the Ninth Circuit's resolution of MindGeek's petition, which will necessarily address whether it raises "serious legal questions."

However, to the extent the Court reaches the issue, MindGeek's petition raises at least three "serious legal questions."

**First,** there is an intra-circuit split with respect to the scope of the Ninth Circuit's decision in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) and the appropriate role of claims administrators in class actions. Here, the Court found "class members may self-identify," including with respect to the required showing of their status as minors at the time content was uploaded to MindGeek's sites, and concluded "defendants may challenge the claims of absent class members during the claims administration process." ECF 209 at 15. However, other courts in this Circuit have rejected use of claims administrators to resolve substantive elements of class members' claims. *See, e.g., In re SFPP Right-of-Way Claims,* 2017 WL 2378363, at *14 (C.D. Cal. May 23, 2017) (where issue presents a "threshold liability concern … the Court itself—not claims administrators—must rule on them"); *Brown v. DirecTV, LLC,* 2022 WL 1591325, at *4 (C.D. Cal. Mar. 31, 2022) (where issue presented was "an essential element of Plaintiffs' claims, for which Plaintiffs carry the burden of proof," proposal to use a claims administrator was "unworkable"). *See also In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (rejecting use of a "claims administrator's review of contested forms" when there is a "challenge to plaintiff's ability to prove an element of liability").

MindGeek's appeal will provide an opportunity for the Ninth Circuit to give guidance on this issue and resolve this intra-circuit split. *See Brown*, 2012 WL 5818300 at *2-3 (intra-circuit split of authority presented a "serious legal question").

**Second,** MindGeek's appeal raises a "serious legal question" with respect to the showing necessary to demonstrate "willful blindness" under 18 U.S.C. § 2258A.

The Ninth Circuit has not yet had occasion to address "willful blindness" in the context of this statute.  However, in other circumstances it has held "general awareness" of illegal activity does not equate to willful blindness of *specific* illegal activity.  *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1002 (9th Cir. 2023) (in trademark infringement case, the court held "willful blindness requires the defendant to be aware of specific instances of infringement or specific infringers," and "[g]eneral knowledge of infringement on the defendant's platform … is not enough to show willful blindness").

Here, the Court found plaintiff could demonstrate MindGeek was "willfully blind" to the fact that specific content was CSAM because MindGeek allegedly "knew that users were uploading significant amounts of CSAM," such that MindGeek had "general awareness of CSAM on its sites."  ECF 209 at 16-17.  Thus, there is an open question as to the proper standard for finding "willful blindness" under section 2252A and whether it requires MindGeek's knowledge of specific instances of CSAM on its platform, consistent with the Ninth Circuit's decision in *Redbubble*.  Because this issue is "not 'clear cut,' and guidance from the Ninth Circuit" would aid in resolution of this litigation, it presents another "serious legal question." *See Brown*, 2012 WL 5818300 at *3.

**Third,** MindGeek's appeal raises a serious legal question with respect to the liability implications associated with reporting CSAM to NCMEC.  Congress chose not to impose on websites a requirement to affirmatively "search, screen, or scan" for "apparent violations … of federal child pornography laws." *United States v. Wilson*, 13 F.4th 961, 964 (9th Cir. 2021) (citing 18 U.S.C. §§ 2258A(f), 2258E); *accord United States v. Rosenow*, 50 F.4th 715, 730 (9th Cir. 2022) ("Mandated *reporting* is different than mandated *searching*.").  At the same time, section 2258A requires certain providers to report content to NCMEC if the provider has "actual knowledge" of an "apparent violation" of section 2252A.  18 U.S.C. § 2258A(a)(1)(A), (a)(2)(A).

Given the absence of a requirement to search for apparent violations, penalizing providers for reporting apparent CSAM to NCMEC will simply cause providers not to look for CSAM.  This would thwart Congress's intent to combat the proliferation of CSAM through the NCMEC reporting requirement.   18 U.S.C. § 2258A(a)(1)(A) (statute enacted "to reduce the proliferation of online child sexual exploitation and to prevent the online sexual exploitation of children").

However, that is precisely the unintended consequence of the Court's finding that MindGeek's "reporting on the issue [of CSAM], will prove whether [MindGeek was] willfully blind."  ECF 209 at 15.  Under this rubric, nearly every major website could be exposed to class-wide liability under section 2252A simply for attempting to detect apparent CSAM and reporting it to NCMEC.[12]  Because there is no legal obligation to search for CSAM, *see* § 2258A(f), the Order discourages website operators from engaging in CSAM detection efforts in order to avoid what would be tantamount to strict liability for the receipt and distribution of child pornography. Ninth Circuit guidance is needed to clarify the potential for liability premised on reporting requirements.  Accordingly, this also presents a "serious legal question."

## B.     The Balance Of Harms And Public Interest Strongly Favor A Stay Of Dissemination Of Class Notice

To determine whether a stay is appropriate, a court must also consider (1) whether "irreparable harm" will occur in the absence of a stay; (2) any harm that will be suffered by the non-moving party if the stay is granted; and (3) "whether a stay will serve the public interest."  *Whitman*, 2021 WL 5824572 at *1.

Where, as here, a limited stay of dissemination of class notice is sought pending resolution of a Rule 23(f) petition and any subsequent appeal, nearly every court within the Ninth Circuit to consider this issue has determined "[t]he balance of hardships 'tips sharply' in favor of a stay vis a vis this potential injury," and that

---

[12]   Indeed, as plaintiff's expert recognized, Facebook and Microsoft, for example, made over 15 million and 123,000 reports of apparent CSAM in 2019, respectively. ECF 125-2 at ¶ 213.

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**

"there is a public interest" in granting such a limited stay. *Bally*, 2020 WL 3035781 at *5. The reason is simple: "premature notice risks harm to class members who are likely to be confused if certification is reversed." *Id.*; *see also, e.g., Reyes*, 2017 WL 4640418 at *4 ("there is potential irreparable harm to the class if notice is prematurely disseminated. It is important to recognize that this is a harm *to class members* because of the potential confusion it can cause"); *Whitman*, 2021 WL 5824572 at *1 ("sending the notice now risks harm to class members who likely would be confused if the Ninth Circuit reversed this Court's certification decision").[13]

This is particularly true where, as here, MindGeek's petition is still pending. As shown above, the Ninth Circuit decides Rule 23(f) petitions in around 85 days on average. *Supra* n. 7. To the extent the Ninth Circuit denies MindGeek's petition, any stay of dissemination of class notice would result in minimal delay. On the other hand, were the Ninth Circuit to grant the petition, the risk of class member confusion resulting from the possibility of reversal on appeal would increase substantially. Accordingly, the Court should stay dissemination of the notice pending resolution of MindGeek's Rule 23(f) petition and any subsequent appeal.

## VII. THE COURT SHOULD REQUIRE PLAINTIFF'S COUNSEL TO COORDINATE WITH CLASS COUNSEL IN ALABAMA FOR A STANDARDIZED NOTICE PLAN

Shortly after this Court certified the current classes, a district court in the Northern District of Alabama certified an identical class of individuals alleging many of the same claims against MindGeek. *See Doe v. MG Freesites, LTD, et al.*, 7:21-cv-00220-LSC (N.D. Ala.); *compare* N.D. Ala. Order Granting Plaintiff's Mot. for Class Cert., ECF 148 at 53 (certifying class of "[a]ll persons who were under the age of 18 when they appeared in a video or image that has been made available for viewing on any website owned or operated by [MindGeek] anytime from February 12, 2011, through the present.") *with* C.D. Cal Order Granting Plaintiff's Mot. for

---

[13]   Indeed, this is true of every case MindGeek could locate that addresses this issue.

19

Class Cert., ECF 209 at 5 (certifying class of "[a]ll persons who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by MindGeek from February 19, 2011, through the present.")

While MindGeek would be open to some level of coordination between the two cases, especially on the classwide notice, as things currently stand, class members may receive different notices, including different opt out procedures, leading to subsantial confusion.  For example, would a class member who wished to opt out be required to submit an opt out in both cases or just one?  This is very confusing and runs a real risk of class members who intended to opt out of both cases only filing in one case because they did not fully appreciate that there were two competing cases.

To avoid confusion arising from two competing notice plans targeted toward the same class of individuals, the Court should require plaintiff to coordinate with class counsel in the Alabama *Doe* case to create a single, combined and standarized notice plan that is consistent across both classes.  This will ensure consistency to avoid confusion.  *See, e.g., Reyes v. Julia Place Condominiums Homeowners Ass'n, Inc.*, 2016 WL 3365319, at *5 (E.D. La. June 17, 2016) (approving single form of notice for two separate classes because "a single notice will adequately describe the nature of this action and provide sufficient information for class members to make an informed decision").

## CONCLUSION

For the reasons shown above, the Court should stay dissemination of notice until MindGeek's petition to the Ninth Circuit is resolved.  Further, any notice plan should (1) not require MindGeek to post notice to its own websites; (2) exclude any "global" PR news release; (3) permit electronic opt outs; (4) require that any notice specify the websites at issue; (5) specify that plaintiff bears the cost of notice; and

1  (6) require that plaintiff coordinate with counsel in the Alabama *Doe* case to

2  implement a single, consolidated notice plan.

3

4

5  Dated: January 8, 2024                    Respectfully submitted,

6

7

8                                            Michael T. Zeller
                                             Michael E. Williams
9                                            Diane Cafferata
                                             QUINN EMANUEL URQUHART
10                                           & SULLIVAN LLP

11

12

13

14                                           Hayden Coleman
                                             Kathleen N. Massey
15                                           DECHERT LLP

16

17

18

19

20

21

22

23

24

25

26

27

28

21

**OPPOSITION TO MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE**