# PLAINTIFF'S EXHIBIT 1

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 2

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 3

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 4

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 5

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 6

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 7

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 8

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 9

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 10

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 11

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 12

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 13

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 14

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 15

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 16

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 17

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 18

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 19

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 20

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 21

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 22

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 23

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 24

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 25

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 26

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 27

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 28

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 29

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 30

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 31

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 32

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 33

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 34

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 35

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 36

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 37

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 38

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 39

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 40

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 41

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 42

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 43

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 44

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 45

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 46

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 47

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 48

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 49

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 50

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 51

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 52

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 53

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT
# 54

# DOCUMENT PROPOSED
# TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 55

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 56

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 57

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 58

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 59

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 60

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 61

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 62

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 63

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 64

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 65

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 66

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL + ELECTRONIC VERSION LODGED MANUALLY

# PLAINTIFF'S EXHIBIT 67

DAVIDA BROOK (275370)
dbrook@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
HALLEY JOSEPHS (338391)
hjosephs@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100; Fax: (310) 789-3150

TAMAR LUSZTIG (*Pro Hac Vice*)
tlusztig@susmangodfrey.com
AMY B. GREGORY (*Pro Hac Vice*)
agregory@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019-6023
Phone: (212) 336-8330; Fax: (212) 336-8340

(*See additional counsel on signature page)*

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| JANE DOE on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),<br><br>Defendants. | Case No. 8:21-cv-00338<br><br>**CLASS ACTION**<br><br>**THIRD AMENDED COMPLAINT FOR VIOLATION OF FEDERAL SEX TRAFFICKING LAWS**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1. Plaintiff brings this proposed class action for damages and injunctive relief on behalf of herself and all persons who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Defendants in the last ten years.

2. As alleged below, over the course of the last decade, Defendants have knowingly benefited financially from thousands—if not millions—of videos posted to their various websites featuring victims who had not yet reached the age of majority. Rather than address this horrifying and pervasive trend, for years, Defendants took almost no action, refusing to so much as institute any semblance of an age-verification, or other, policy that would prevent the uploading of this deeply problematic content.

3. The reason for Defendants' inaction is simple: greed. As Pornhub's own Senior Community Manger publicly acknowledged via a Reddit post, **age verification would be a "disaster"** for Pornhub because it **"costs us money to verify"** and would result in a **50% reduction in traffic**.






11462298v1/016926

4. In short, Defendants chose to prioritize their profits over the safety and welfare of children across the globe.

5. Defendants' decision is not only upsetting, it is illegal. As the Trafficking Victims Protection Reauthorization Act ("TVPRA") makes clear, it is unlawful for any person or entity to knowingly (whether because it knew or should have known) benefit financially from sex trafficking, which includes any instance where a person under the age of 18 is caused to engage in a commercial sex act. That is precisely what Defendants have done here—on an incredible scale.

## THE PARTIES

6. Plaintiff Jane Doe is an individual who is now the age of majority under U.S. and California law. She is a United States citizen who resided within this judicial district at all relevant times alleged herein. She is also a victim of child sex trafficking and child pornography, as alleged herein.

7. Plaintiff Jane Doe requests that this Court permit her to proceed under a pseudonym. Plaintiff's anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature given that the allegations detailed herein relate to Plaintiff's experience as a victim of child sex trafficking and child pornography. Plaintiff's sensitive and personal experiences were not the result of any voluntary undertaking on her part, and neither the public, nor the Defendants, will be prejudiced by Plaintiff's identity remaining private.

8. Defendant MindGeek USA Incorporated is a corporation organized and existing under the laws of the state of Delaware, with an established place of business located at 23000 West Empire Avenue, 7th Floor, Burbank, California 91504. Upon information and belief, defendant can be served with process by serving its registered agent for service of process in the State of California, CT Corporation System, 818 W. 7th Street, Suite 930, Los Angeles, CA. 90017. Upon information and belief, MindGeek USA Incorporated is a wholly owned subsidiary of MindGeek S.A.R.L.,

either directly or through intermediary companies also under the control MindGeek S.A.R.L.

9. Defendant MindGeek S.A.R.L. is a foreign entity (a Société à responsabilité limitée) organized and existing under the laws of Luxembourg and conducting business in the United States, including in this District. Although incorporated in Luxembourg, MindGeek S.A.R.L.'s principal place of business is Montreal, Canada, and has satellite offices in, among other places, Los Angeles, California.

10. Defendant MG Freesites, Ltd. (d/b/a Pornhub) is a company incorporated in the Republic of Cyprus and conducting business in the United States, including in this District. Upon information and belief, MG Freesites, Ltd. is a wholly owned subsidiary of MindGeek S.A.R.L., either directly or through intermediary companies that are also under the control of MindGeek S.A.R.L. Upon information and belief, MG Freesites, Ltd. is predominantly under the control of and operated by directors, officers, and employees working in MindGeek's offices in the United States and Canada, with little business operations being conducted within the Republic of Cyprus.

11. Defendants MG Freesites II, Ltd. is a company incorporated under the laws of the Republic of Cyprus conducting business throughout the United States, including within this District.

12. Defendant MG Content RT Limited is a company organized under the laws of Ireland conducting business throughout the United States, including within this District.

13. Defendant 9219-1568 Quebec, Inc. (d/b/a MindGeek) is a company organized and existing under the laws of Canada with a principal place of business located in Montreal, though it conducts business throughout the United States, including within this District.

14. Herein, "Defendants" or "MindGeek" refers to MindGeek S.A.R.L., MG Freesites, Ltd., MG Freesites II, Ltd., MG Content RT Limited, 9219-1568 Quebec, Inc., MindGeek USA Incorporated, and all of their parents, subsidiaries and affiliates.

15. Defendants have incorporated dozens of subsidiaries and related companies around the world, the details of which are unknown to the Class at this time. However, all the MindGeek entities operate as a single business enterprise, commingling their funds and other assets to shelter and avoid liabilities and to hide the identity of their owners, and are jointly and severally liable in this action as alter egos of one another.

16. Plaintiff is unaware of any MindGeek-related entity that does not act at the direction of the MindGeek enterprise operated by Defendants.

**JURISDICTION AND VENUE**

17. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

18. The claims asserted herein arise under 18 U.S.C. § 1595(a). Pursuant to Section 1595(a), "an individual who is a victim of a violation of this chapter" may bring a civil action in "an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

19. The court may properly exercise personal jurisdiction over all Defendants. Each of the Defendants maintains minimum contacts with this District, such that maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.

20. Defendants have offices in this State and this District, conducting business directly related to the websites at issue in this case. Specifically, MindGeek USA Incorporated is a corporation organized and existing under the laws of the state of Delaware, with an established place of business located at 23000 West Empire Avenue, 7th Floor, Burbank, California 91504. According to recent papers filed with

the California Secretary of State, MindGeek USA Incorporated also maintains a business, mailing, and street address at 21800 Oxnard Street, Suite 150, Woodland Hills, California 91367. Collectively, Defendants transmit millions upon millions of videos and images to and from this State on an annual basis. And according to analytics Defendants recently posted on Pornhub.com, Los Angeles, California is the fourth city by volume of Pornhub.com usage.

21. Defendants have also purposefully availed themselves of this Court's jurisdiction, including in the case of MindGeek S.A.R.L. and MindGeek USA, Inc., by having litigated in this District. *See Preservation Technologies, LLC v. MindGeek USA, Inc. and MindGeek S.A.R.L.*, Case No. 2:17-cv-08906-DOC-JPR (C.D. Cal.).

22. Jurisdiction is further appropriate under 18 U.S.C. §1596, which provides for jurisdiction over any offender, in addition to any "domestic or extra-territorial jurisdiction otherwise provided by law," where the offender is "present in the United States, irrespective of the nationality of the alleged offender."

23. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action was brought. Venue is also appropriate in this district because defendant MindGeek USA, Inc. maintains a place of business in this district.

## I. SEX TRAFFICKING AND CHILD PORNOGRAPHY ON THE INTERNET

24. Sex trafficking and the proliferation of child pornography are rapidly growing problems in the United States. Human trafficking is a 150-billion-dollar industry. Out of an estimated 40.3 million victims, 25% are children.[1]

25. The rise of the Internet and e-commerce has facilitated the rapid growth of the market for child pornography online. The Internet and digital technologies

[1] https://coil.com/p/RileyQ/Child-Trafficking-What-You-Need-To-Know/mj4WEwhW7

have created new models for sexual exploitation and trafficking, which are hidden and protected by cryptocurrency, laundered money, foreign Internet servers and anonymous messaging applications. The Child Rescue Coalition alone has identified 71 million unique IP addresses worldwide sharing and downloading sexually explicit images and videos of children.[2]

26. The Internet is the number one platform for customers to buy and sell sex with children in the United States. Many sex buyers use the Internet to identify and connect with sellers and victims. Traffickers, in turn, use online networks, social media, websites, and dating tools to disguise their identities while identifying potential victims, which reduces traffickers' chances of being caught by law enforcement.

27. Americans are some of the top consumers and producers of child pornography. According to the U.S. Department of Justice, "Federal law defines child pornography as any visual depiction of sexually explicit conduct involving a minor (persons less than 18 years old)."

28. According to the National Center for Missing & Exploited Children ("NCMEC"), their cyber tip line has received more than 50 million reports of suspected child exploitation from 1998 through 2019, with 18.4 million reports in 2018 alone. The vast majority of these reports contain child sexual exploitation material ("CSEM"), most of which is on the Internet. North America now hosts 37% of child sexual exploitation content and children under the age of 10 now account for 22% of online porn consumption among those under the age of 18, while 10-14 year-olds make up 36%.[3]

29. The link between sexual exploitation and pornographic videos is undeniable. According to an article by Melissa Farley, 49 percent of sexually

---

[2] *Id.*
[3] https://www.prnewswire.com/news-releases/enough-is-enough-calls-on-doj-to-investigate-mindgeek-for-a-trifecta-of-potential-us-law-violations-child-abuse-material-trafficking-videos-and-obscene-content-301196447.html

exploited women say pornographic videos of them were made while they were being sold for sex.[4]

30. Survivors of CSEM are significantly impacted—emotionally, mentally, and physically—as a result of their abuse, and experience continuing and pervasive symptoms such as feelings of shame and humiliation, powerlessness, hopelessness, fear, anger, anxiety, and depression, as well as sleeping disturbances, body image disturbances, self-harm behaviors, eating disorders, and suicidal ideation. According to one study, survivors of CSEM are likely to be re-victimized and to receive blackmail and threats as a result of their initial victimization via CSEM.[5]

## II. <u>THE TVPA AND TVPRA</u>

31. In response to the growing problem of sex trafficking, in 2000, Congress passed the Trafficking Victims Protection Act ("TVPA"), which laid the groundwork for the federal response to human trafficking.

32. In 2003, Congress reauthorized the TVPA and passed the Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003) ("TVPRA"). Under the TVPRA, trafficking victims can sue their traffickers in federal court.

33. In 2008, Congress amended the TVPRA to make it easier for victims of trafficking violations to bring civil suits. First, the civil remedy was expanded to include enterprise liability. It was likewise expanded to include anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Second, Congress expanded the statute's reach to include extraterritorial jurisdiction for certain

---

[4] "Renting an Organ for Ten Minutes: What Tricks Tell Us about Prostitution, Pornography, and Trafficking," in *Pornography: Driving the Demand in International Sex Trafficking*, ed. David E. Guinn and Julie DiCaro (Bloomington, IN: Xlibris, 2007), 145.

[5] https://protectchildren.ca/pdfs/C3P_SurvivorsSurveyFullReport2017.pdf

trafficking offenses. *Id.* The statute of limitations is ten years, or ten years after the victim turned 18 if the victim was a minor. *See id.* § 1595(c).

34. Commercialization of sex acts involving minors is a violation of the TVPRA. Under the TVPRA,

> (a)Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. §1591(a). Under §1595(a), not only perpetrators who act "knowingly" under §1591, but also "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter" is civilly liable.

35. Defendants knowingly benefit from CSEM on their websites. By encouraging sensational and illegal content to be posted on their websites, Defendants receive substantial advertising revenues. By encouraging and benefitting from CSEM, Defendants participate in the venture and indeed facilitate the conduct of sex traffickers, including those sex traffickers who deal specifically with children and child pornography.

36. In 2018, in response to platforms such as those run by Defendants knowingly allowing human trafficking to occur and profiting from it, Congress passed the Allow States and Victims to Fight Online Sex Trafficking Act/Stop Enabling Sex Traffickers Act (FOSTA/SESTA). Pornhub and other tube sites run by Defendants previously sought to use Section 230 of the Communications Decency Act to whitewash their liability. FOSTA/SESTA was enacted to close that perceived loophole, including for website BackPage.com, which "for years, ha[d] been accused of accepting classified ads promoting prostitution which allegedly resulted in sex trafficking of . . . minors."[6] Because "section 230" was "never intended to provide legal protection to websites that unlawfully promote and facilitate . . . traffickers," and—under the purported shield of Section 230—websites had been "reckless in allowing the sales of sex trafficking victims and ***have done nothing to prevent the trafficking of children***," Congress "clarifi[ed]" Section 230. PL 115-164, 132 Stat 1253 (2018) (emphasis added).

37. The statute now makes it clear that websites and other platforms may be held liable for, among other things, knowingly assisting, facilitating, or supporting sex trafficking, and clarifies the Communications Decency Act's Section 230 safe harbors to authorize enforcement of federal or state sex trafficking laws.

## III. DEFENDANTS' BUSINESS MODEL

38. Defendants constitute a series of privately held companies that operate many popular pornographic websites, including, among others, Pornhub, RedTube, and YouPorn. Defendants also operate many adult film production companies, including Brazzers, Digital Playground, Men.com, Reality Kings, Sean Cody, and WhyNotBi.com.

39. As explained by Defendants' leadership in a recently authored letter to the Canadian Parliament:

[6] https://www.forbes.com/sites/larrymagid/2018/04/06/doj-seizes-backpage-com-weeks-after-congress-passes-sex-trafficking-law/?sh=42687f0350ba

> Our flagship video sharing platform is Pornhub. Created in 2007, Pornhub is a leading free, ad-supported, adult content hosting and streaming website, offering visitors the ability to view content uploaded by verified users, models, and third-party adult entertainment companies. Pornhub Premium, our subscription service, provides subscribers with additional exclusive studio-produced content in an ad-free environment.[7]

40. In 2019, Pornhub had roughly 42 billion visits, an average of 115 million visits per day. This made Pornhub the eighth most visited website in the United States, falling just behind such household names as: Google.com (1st), YouTube.com (2nd), Facebook.com (3rd), Amazon.com (4th), Yahoo.com (5th), Twitter.com (6th), and Instagram.com (7th). And beating out such other household names as: Wikipedia.org, Zillow.com, and Zoom.us.[8]

41. Further, according to analytics Defendants have posted on Pornhub.com, the United States is the top country by volume of Pornhub.com usage and, Los Angeles, California is the fourth city by volume of the same.

42. Defendants' leadership, of course, is aware of its massive success. In their letter to Canadian Parliament, Defendants' executives wrote:

> Demand for online adult entertainment is as old as the internet. Demand for MindGeek's content rivals that of some of the largest social media platforms. For example, in 2020, Pornhub averaged over 4 million unique user sessions per day in Canada alone, equivalent to over 10% of the adult Canadian population.[9]

[7] https://www.ourcommons.ca/Content/Committee/432/ETHI/Brief/BR11079307/br-external/MindGeek-e.pdf
[8] https://www.similarweb.com/top-websites/united-states/
[9] https://www.ourcommons.ca/Content/Committee/432/ETHI/Brief/BR11079307/br-external/MindGeek-e.pdf

### A. Defendants' Business Embraces User-Generated Uploads of Commercial Sex Acts

43. The most popular feature on Pornhub is a searchable library. As of December 1, 2020, Pornhub had about 14,000,000 pornographic videos in its free video library.

44. Pornhub and many of the other websites operated by Defendants are "tube sites." Meaning, Pornhub's interface is similar to YouTube, with individual users—not formal studios—uploading much of the content and comments available for viewing.

45. Pornhub depends heavily on this community of user-creators. Until recently, in order to upload a video or image to Pornhub, all a user need do was create an account, click on the upload button next to the search bar, upload their content, and decide whether the content should be shown in standard or high definition.[10]

46. The process takes less than ten minutes. A user can post any video or image of any person doing anything without any consequences. The user does not have to demonstrate that he or she owns the copyrights in the content, that those depicted in the content have consented, or that those depicted in the content are of majority age.

47. Defendants make it easy for users to upload to its network of websites to maximize their exposure, which includes Pornhub , Redtube, and YouPorn.

48. Defendants also have mechanisms for users to participate in the profits from their content. For example, to the extent a user is hoping to participate in the earnings from their uploads to Pornhub, Pornhub has a Model Program, in which users get "verified" by Pornhub staff and are paid a percentage of the ad revenue made on their verified content. Participating users are paid as much as 80% of the

[10] https://help.pornhub.com/hc/en-us/articles/229817547-How-do-I-upload-videos-

advertising revenue generated by their videos, based on the number of video views and performance of the advertisements by clicks, user country, and sales.[11]

49. Getting verified in Pornhub's Model Program only requires a user to upload a photo purportedly of himself or herself showing their username. In describing verification, Pornhub encouraged users to "prove that you are real, stand out and attract more attention from other Pornhub community users!" But all that is needed is a Pornhub account, an avatar uploaded to the user's account, and a verification image. The verification image requires only that the user hold up a photo with his or her username and pornhub.com written on it (or written on the user's body). Pornhub requires that the video show a picture of the user's face and required that the user not wear a mask or sunglasses in the picture.

50. The below are actual examples given by Pornhub showing all that has been required for a user to become verified with Pornhub's "Model Program."




51. In order to sign up in Pornhub's Model Hub program, a user is not even required to list his or her birthdate. If a user clicks through the signup process, he or she is only alerted if they fail to note their gender on the Model Hub application.

52. Indeed, Pornhub lists many reasons on their site why a Model Hub Verification Image might be rejected. The fact that an applicant may not be 18 years old is not one of the reasons. The only reasons described on Pornhub's site are: (1)

[11] https://help.pornhub.com/hc/en-us/articles/360046090414-Earnings-and-Payments

the photo does not show a person, (2) the photo does not show a username, (3) the photo does not say "pornhub.com," (4) the model's face is not in the photo, (5) the text is illegible, (6) the text is digital (vs. handwritten), (7) the applicant tries to be verified using a gender other than what is listed on their application, and (8) the applicant tries to be verified as a couple when the applicant is a single person:




53. In short, no age verification exists. The only time age is even referenced in the process is when Pornhub requires a user to check a box indicating that they are over the age of 18 when uploading their photograph. Defendants take no action to confirm the age of the model applicant in the submission process.

54. There is also the other problem that even if a Model Hub applicant posted a legitimate photo of themselves where they were over the age of 18 in order to obtain Pornhub's "verification" checkmark, there is nothing to stop Model Hub users from uploading videos of someone else who is not over the age of 18.

55. For "verified" Model Hub users, the name is obviously deceptive, as the only thing MindGeek verifies is that someone can hold up a piece of paper with writing on it. There is no requirement to use government-issued identification. And

the verification process has nothing to do with the people **appearing** in the videos or images, whose age, as described more below, also went entirely unverified.

56. Clearly, the so-called "verification" process associated with Modelhub does nothing to protect victims of child sex trafficking. Pornhub acknowledged as much when it admitted to giving its "seal of approval" for 58 videos in which a 15-year-old girl was repeatedly assaulted, allowing Pornhub and the victim's traffickers to profit from her repeated rape.




57. Another way in which MindGeek stands out is that, until very recently, any user of MindGeek could also download videos and images from its websites. This meant that even if victims could convince a website to take down a video depicting child pornography, their videos were frequently uploaded anew and/or recirculated on other websites by users who had already downloaded the content.

58. Defendants permit their users to send each other private, direct messages. Users use such private, direct messages to send each other information about how to access CSEM. Defendants also permit users to create their own private

folders to privately upload and share videos and images—including CSEM—privately.[12]

59. Defendants also created their own VPN to make it even more difficult for law enforcement to locate traffickers. Pornhub also supports the use of cryptocurrency on its site.[13]

60. Pornhub has also created a tor site to anonymize web traffic and prevent law enforcement from tracking users' activities.[14]

**B. Defendants Create and Produce Their Own Content**

61. In addition to permitting users to upload content to Defendants' websites, Defendants create and produce their own content. In a 2017 interview, MindGeek's Fabian Thylmann acknowledged that Pornhub was producing and creating content, especially live content, noting that "in terms of money making, live content can't be copied and it can't be stolen in the end because it's all on the live at that point so it's not interesting anymore so therefore that is a huge driver for the business and it's a very important one and it completely changes the kind of hosting you need and so on."[15]

62. When asked "Does that also mean . . . ***you've got to go more upstream into the production end*** of it it's not just distribution and serving it's ***creating*** the content now if it's all live, is that a fair assumption in terms of business model evolution?" Mr. Thylmann responded, "Yes, I mean to make money either way to make real good money you need to either way, or even back then I just had a good mix of it so this was the strength of Manwin that it had the mix of both creation and and and tube sites but it's getting more and more important today so the big companies the real money makers in the business if

---

[12] *See, e.g.*, https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf
[13] https://www.theverge.com/2018/5/24/17382144/pornhub-launches-vpn-vpnhub
[14] https://www.pcmag.com/news/pornhub-is-now-available-as-a-tor-site-to-protect-users-privacy
[15] https://youtu.be/lLKW9PNQAbM

you look at a single websites they are without a question the live things and not necessarily the ones that have the traffic. They make obviously good money but if you look at the amount of money that the live systems make it's a lot better, so so that's the more important part."[16]

63. "Teen" is one of Defendants' top live content categories.

64. Defendants also upload content from Pornhub to other websites, including YouPorn, RedTube, and Tube8. Indeed, for users in Defendants' revenue-sharing Model Program, Defendants automatically upload content from Pornhub to their other websites such as YouPorn, RedTube, and Tube8, and share revenue from advertisements on videos on those cites with their users.




65. Defendants own a number of other sites, including movie studios, reality sites, and managed sites, including Brazzers, Babes.com, Reality Kings, Digital Playground, Twistys, Men, Mofos.com, mydirtyhobby, SexTube, .webcam, Wicked, Lesbea.com, and Playboy.[17]

---

[16] *Id.*

[17] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf

## C. Defendants Knowingly Benefit From Child Sex Trafficking

### 1. Defendants Have Earned Enormous Profits

66. Defendants make money from trafficking with premium subscriptions, advertising, and selling user data.

67. For $9.99/month, users can pay for a "premium" subscription, which lets them access content behind a paywall that is different from the content free users can see.[18]

68. Defendants also sell banner and sidebar advertisements, as well as advertisements that appear before and after videos.[19] Defendants place those advertisements on videos featuring CSEM.[20]

69. Defendants generate substantial advertising revenue by hosting advertisements on their sites using their TrafficJunky ad network and other sites, which receive billions of ad impressions on a daily basis.

70. Defendants also harvest and monetize vast amounts of user data that they share with advertisers and other companies.[21]

71. Defendants also make deals with sex traffickers by featuring videos of trafficked minors in exchange for a cut of the proceeds. For example, Pornhub takes a cut of users' earnings from the Modelhub program. Under the Modelhub program, which had 98,000 "amateur" models in 2019, "verified" users can sell their videos and Pornhub takes a 35% cut of all sales. Models can also select to include their videos on Pornhub Premium and earn a share of revenue from video views. They can create subscription services of their fans, called a "Fan Club," for which Pornhub takes a 20% cut of revenue, and can also make "custom clips" in response to requests

---

[18] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf
[19] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf
[20] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf
[21] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf

by "fans," for which Pornhub takes a 35% cut of all sales. Models can also receive direct "tips" on their Pornhub or Modelhub profile, and Pornhub takes a 20% cut of all tip revenue.[22]

72. There's no question that financial considerations drive the content on MindGeek's websites. MindGeek collects money from ads featured with its unpaid videos, and shares some of that revenue with the users that post the content. It also collects subscriptions from premium users of its websites. Those subscriptions generated $1.3 billion in revenue between 2012 and 2018.[23] Following an investigation from the *New York Times* revealing the extent of child pornography featured on Pornhub's website, multiple financial institutions, including Visa, Mastercard, and Discover, stopped processing transactions for Pornhub. Within days, Pornhub removed 10 million videos, nearly two-thirds of the videos on its site. After the *New York Times* investigation, MindGeek's auditor, Grant Thornton, resigned.[24]

73. Pornhub has since made modifications to its website, like limiting content to that posted only by "verified" users in its Model Hub program. Of course, as described above, restricting content on Pornhub to only "verified" users is meaningless because Pornhub has no age verification process in place to confirm that "verified" users are over the age of 18. Nor does Pornhub have a mechanism in place to confirm that the user posting the video or photograph is the same as the user depicted in the video or photograph.

74. In April 2021, Pornhub published its first "transparency report," detailing its supposed efforts to, for example, locate and remove CSEM from its website.[25] In that report, Pornhub claims to use a variety of automated image-

[22] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf

[23] https://www.irishtimes.com/business/economy/grant-thornton-resigns-as-auditor-to-firms-owned-by-pornhub-operator-1.4480517

[24] *Id.*

[25] https://help.pornhub.com/hc/en-us/articles/1260803955549-Transparency-Report

recognition technologies used for detecting child pornography. Companies like Pornhub are legally required to report CSEM to NCMEC, which maintains a database of known CSEM.[26, 27] From that database, NCMEC creates unique "hashes" that represent the CSEM, and can be used with image-recognition technologies to automatically identify other instances (or near instances) of those same images and videos.[28] For example, "PhotoDNA is able to compare the attributes of any given images with those of illegal images to seek out matches," and "much of the process is entirely automated and hands-off."[29]

75. PhotoDNA has been available, for free, to qualified organizations since 2014.[30] On information and belief, Defendants did not begin using PhotoDNA, or any other well-known and long-available image-recognition technologies to identify and remove CSEM, until it disclosed that use for the first time in the 2021 Pornhub "transparency report."

**2. Defendants Facilitate Child Sex Trafficking By Encouraging Users To Target Underage Content**

76. In an effort to attract attention and revenues (for themselves and Defendants), users post content that generates traffic. Often this content is child pornography.

77. Defendants also capitalize on the ability of CSEM to drive traffic to their sites. Even after the National Center for Missing and Exploited Children has called for the removal of CSEM, Defendants have left the links to the videos on their sites (with only the videos removed) to continue to drive web traffic.

---

[26] https://www.justice.gov/opa/pr/acting-ag-and-five-country-statement-temporary-derogation-eprivacy-directive-combat-child
[27] https://en.wikipedia.org/wiki/PhotoDNA
[28] https://en.wikipedia.org/wiki/PhotoDNA
[29] https://betanews.com/2015/07/17/microsoft-photodna-weeds-out-illegal-child-porn-and-abuse-images/
[30] https://en.wikipedia.org/wiki/PhotoDNA

78. In one instance, a prepubescent victim was anally raped in a video featured on Pornhub. The video was uploaded to the site three times. There is documented evidence the video was reported but Pornhub did not act until someone reported the content to National Center for Missing and Exploited Children. Even after Pornhub was forced to remove the video, it left the link, title, and tags on the site to continue to drive traffic.[31]




79. This is not an isolated incident. There are countless other examples where Pornhub has left up links, titles and tags to videos for which NCMEC demanded removal.[32]

[31] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf

[32] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf




80. Pornhub also "featured" a video called "Hidden camera – girls in the toilet at the prom 2," which was clearly intended to target users interested in CSEM.[33]

81. Defendants knowingly participate in and capitalize on this user interest. In December of 2020, searches of Pornhub for terms like "girlsunder18" or "14yo" lead to more than 100,000 videos.[34] What's more, Pornhub has recently offered playlists with names like "less than 18," "the best collection of young boys," and "under---age" in an effort to entice users who would like to see, and/or upload, content featuring underage victims.[35] Pornhub also allows members with names like "13yoboyteen" to post videos.[36] And Defendants have intentionally deleted words from video titles that describe criminal content, but left the actual videos on its site.

82. Defendants also use the massive quantity of data they collect about their users to facilitate the distribution of child pornography. By collecting data about its users, Defendants are able to track users' preferences. When a user signs up to for a

[33] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf

[34] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html

[35] *Id.*

[36] *Id.*

Pornhub account, he or she is directed to fill out a survey describing their preferences, including hair, color, body art, ethnicity, and breast size. The user describes their sex, sexual preference, and whether they are single or part of a couple. The user is also presented with dozens of Pornhub categories to choose from, including "babysitter," "college," and "school" categories. Pornhub also recommends that users sign up to follow certain channels, "pornstars," and community members to better target the content they receive. And, of course, Pornhub asks whether a user prefers to view "professional" or "homemade" videos. Pornhub then uses this information to target users with videos that suit their preferences.

83. Even for users who don't voluntarily provide all of this data to Pornhub, Pornhub acquires a significant amount of data. Whenever a user views a page on Pornhub, the website automatically receives their IP address, how full their battery is, what browser version they are using, their time zone, their system fonts, their screen resolution, and what plugins they have installed.[37] This allows Pornhub to create a digital fingerprint that tracks users over time and across websites. As Pornhub learns more about its users' preferences, it suggests videos it thinks they will like. So if a user indicates a preference for child pornography, Pornhub intentionally directs that user to its illegal content.

[37] https://www.vice.com/en/article/kzmmpa/pornhub-xhamster-data-about-you

84. Besides the entirely inadequate verification process described above, until very recently, Defendants' only "protection" against the posting of underage content and other illegal content is that they hire certain moderators who view "every video and photo uploaded to Pornhub."




85. Although Defendants claim the goal of content moderation is to locate and prevent the streaming of child pornography and other illegal material, the truth is that "the goal for a content moderator is to let as much content as possible go through" because Defendants' focus is maximizing revenue.[38]

86. Former Pornhub moderators have confirmed that videos of "very underage" victims were approved because of the pressure to view as many videos as possible, upwards of 1,200 videos per shift.

[38] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html




87. By way of example, in one video, the comments indicated that the girl featured in the video was "only in ninth grade" and the tags used in advertising the video contained the phrases "cp," "no18," "young," and "youngster." Not only was this video on Pornhub's website, but this was a "featured video," which means that Pornhub chose to advertise this video as a means to get additional views.




88. Defendants' profit-maximizing goal is made plain by the following: Despite the fact that 1.36 million new hours of video are uploaded each year to Pornhub, Defendants employ only 80 moderators across all of its websites worldwide.[39] By contrast, Facebook has 15,000 moderators.[40]

89. On information and belief, only around ten people on Defendants' moderator team are working at any given time throughout the day. They also lack any specialized training.

90. Looking just at the year 2019, according to Pornhub there were approximately 18,000 videos uploaded to that website daily, with an average length of approximately 11 minutes each.[41] Assuming each of the 10 moderators were focused solely on Pornhub, and worked a full 8-hour shift, they would be required to review 1,800 11-minute videos every day, where they are screening for not just child pornography but other inappropriate content such as bestiality and even murder.

[39] *Id.*
[40] *Id.*
[41] https://www.pornhub.com/insights/2019-year-in-review

That's 19,800 minutes upload every day, meaning a single moderator is somehow required to view 2,475 minutes per hour.

91. Defendants know that that is an impossible task, and that it necessarily leads to moderators quickly fast forwarding through, or even skipping videos/images entirely.

92. But Defendants' business model profits from sexual videos and images featuring underage victims, and Defendants' claim that it acts "swiftly and promptly" when users violate its Terms of Service is belied by the many stories of victims whose photos and videos have been streamed on Pornhub for years with no action.

93. Moderators have reviewed and approved videos with CSEM, including videos that say "I'm 14" and have tags like "middle schooler," "young teen," "boy," and "uncut boy."[42]




[42] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf

94. Notably, on Pornhub's Modelhub page, Defendants advertise their ability to use DMCA and fingerprinting to protect pirating of videos. Meaning, when it comes to preserving revenue, Defendants have long since demonstrated both an interest and technical ability to monitor and protect against access. Despite being fully aware of the problem of child trafficking, until very recently, Defendants did not employ similarly advanced methods to filter for underage or other illegal content.[43]

**3. Child Sex Trafficking is Distributed and Monetized on Pornhub**

95. Countless videos have been labeled on Pornhub as "CP," which is a well-known abbreviation for child porn, sometimes featured in the title of the video that was reviewed by moderators. There are also many examples of users offering to trade child porn with one another on the site.[44]

[43] https://www.pornhub.com/partners/models?_ga=2.200643118.1816855087.1613736072-62734983.1613736072

[44] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf


TEEN
CP:
(LINK ON
5,876 VIEWS 66%
From: pornoaye
Pornstars:
Categories: Blowjob, Handjob, Hardcore, Pussy Licking, Teen
Tags: kink, teenager, young, teen, tiny teen, 18 year old, small girl, small teen, small tits
Production: Homemade
Added on: 1 year ago
"CP" = "Child Pornography" link in title of the video
Pornhub
All Comments
Login or Sign Up now to post a comment!
1 year ago
Trade cp?
3 weeks ago
U have any one?
3 months ago
You have?
8 months ago
If anyone wants to trade cp hit me up
8 months ago
Hi I wanna trade pics boys or girls on Kik or Snapchat I'm 14
woahitsavagina
4 months ago
ILLEGAL
holidaymarie
Looking for something younger?
rtnm@hotmail.com
Real user comment on Pornhub advertising CSAM
pornhub.com
Pornhub
2 months ago
PM for to trade links
2 months ago
Write me
3 months ago
Anyone dm cp link
3 months ago
Cp trade
If anyone wants to trade cp hit me up
1 year ago
how does this work?
1 year ago
Anyone wanna trade with links? Pm me name. Oh and S2r
2 months ago
CP link?
2 months ago
PM for to trade links
2 months ago
TRAFFICKINGHUB
A MOVEMENT TO HOLD PORNHUB ACCOUNTABLE

#### 4. Defendants Have Admitted That Videos Featuring Underage Persons Are Some Of The Most Popular/Sought-After Content In Its Entire Library

96. In its explanation of "How to Succeed," on Defendants' Pornhub website, Defendants direct users to use up to 16 tags that describe the video and performers; select up to 8 relevant categories; when applicable, use niche specific categories to ensure content is visible to the "right" fans; write a creative title that describes the scene, and add a stage name to the title of the video. These tactics are all designed to generate as much traffic as possible. The more sensational the video, the more likely it is to be streamed and generate revenues. Defendants' categories demonstrate how it is specifically targeting viewers who are interested in child pornography, with categories like "teen," "school," "babysitter" and "old/young."[45] On the page explaining video categories, Defendants acknowledged that Teen is one of its most popular categories.[46]

97. Defendants' description of what titles to use similarly reflects their instructions to users to make titles "enticing" so that "users will be curious enough to click!"[47] For example, in its explanation of a bad vs. good title selection, Defendants describe how adding that a student is a participant in the video will entice users to click.[48]

### D. <u>Defendants Know That Its Websites Are Known For Child Sex Trafficking Activity</u>

98. This is not a situation where Defendants can credibly claim ignorance. There are numerous ways in which Defendants have been made aware of the fact that its websites have become a go-to home for child pornography and sex trafficking.

---

[45] https://help.pornhub.com/hc/en-us/articles/115007986887-Video-Categories
[46] *Id.*
[47] https://help.pornhub.com/hc/en-us/articles/115007986747-Video-Titles
[48] *Id.*

### 1. The Presence Of Child Sex Trafficking Is Obvious From Language On Defendants' Own Websites

99. To start, Defendants need go no further than the language used on their own websites.

100. For example, until very recently, a simple search of Pornhub revealed countless examples of the presence—and indeed aggressive marketing—of underage pornography.

101. As just one example, the *New York Times* recently reported that, as of December 4, 2020, a search on Pornhub for "girlunder18" led to more than 100,000 videos.[49]

102. Similarly, as of December 4, 2020, a search on Pornhub for "14yo" led to more than 100,000 videos.[50] And a search for "13yo" led to approximately 155,000 videos.[51] "Girl with braces" turned up 1,913 videos and suggested to also try searching for "exxxtra small teens."[52]

103. Promoted and suggested search terms on Pornhub demonstrate that Pornhub is enabling sex trafficking. In 2020, promoted and suggested search terms on Pornhub included "young girls," "middle school girls," "middle school sex," "middle schools," and "middle student."[53]

---

[49] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape trafficking.html

[50] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape trafficking.html

[51] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape trafficking.html

[52] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape trafficking.html

[53] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf




104. The *Sunday Times* similarly reported that, as of November 2019, while Pornhub had blocked users from searching terms such as "underage" and "child porn", synonyms including "jailbait", "very young girl", and "lolita" could still be used to locate content.[54]

105. Beyond the searches, Defendants have allowed members with usernames such as "13yoboyteen" to post videos to Pornhub, and recently promoted "playlists" with names such as "less than18," "the best collection of young boys" and "under—age."

**2. The Presence of Child Sex Trafficking Has Been Brought to Defendants' Attention by Law Enforcement**

106. Defendants have been made aware of sex trafficking involving their content partners, including GirlsDoPorn and Czech Casting.

107. GirlsDoPorn was a popular content partner of Pornhub where victims of sex trafficking were widely distributed and monetized. Even as of October 2020,

[54] https://www.thetimes.co.uk/article/unilever-and-heinz-pay-for-ads-on-pornhub-the-worlds-biggest-porn-site-knjzlmwzv

after GirlsDoPorn boss Michael Pratt was charged with federal sex trafficking crimes, a user could search "GDP" on Pornhub and find over 300 videos.[55]

108. Similarly, Czech police recently arrested the owners of another Pornhub partner channel, Czech Casting, for sex trafficking. Czech AV, the company running the channel, had almost one billion views on Pornhub.[56] The women were mostly college students.[57]

### 3. The Presence Of Child Sex Trafficking Has Been Brought To Defendants' Attention Via Victims

109. Victims and their families have also notified Defendants of the presence of child pornography on their websites.

110. Serena Fleites. Ms. Fleites, aged just 14, was recorded in a sexually explicit video that was then uploaded to PornHub.[58] In testimony before the House of Commons ethics committee, she explained; "The titles would always be something like 'preteen,' 'young teen.'"

111. Ms. Fleites further testified that it took Pornhub more than a week to remove the video, which it only agreed to do after she was asked multiple times to prove that it was, in fact, her video and that she was underage. As she put it: "It was very obvious it was a child in the video . . . Even if I wasn't the girl in that video, they could still tell that was a child in that video and they were still dragging out that process."[59]

---

[55] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf

[56] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf

[57] https://praguemorning.cz/czech-casting-women-lured-by-modeling-gigs-manipulated-into-porn/

[58] https://www.thestar.com/news/canada/2021/02/01/child-porn-victim-testifies-during-day-1-of-pornhub-discussions-at-committee.html

[59] https://www.thestar.com/news/canada/2021/02/01/child-porn-victim-testifies-during-day-1-of-pornhub-discussions-at-committee.html

112. There are countless instances of users reporting CSEM to Pornhub, with Pornhub failing to take action.[60]




113. MindGeek users have left repeated comments on videos on Defendants' website indicating that the videos feature CSEM. Defendants have discouraged users to report CSEM on their websites to law enforcement authorities.[61]

[60] https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf
[61] *See, e.g.*, https://financialservices.house.gov/uploadedfiles/hhrg-117-ba10-wstate-mickelwaitl-20210325.pdf


ENABLING & FACILITATING BAD ACTORS
IGNORING CLEAR WARNING SIGNS FROM USERS
In 2019, 11.5 million comments were made by users about videos on Pornhub.
Many of these comments express distress or concern, flagging what appears to be actual crimes filmed in the videos. Many also demonstrate sadistic, misogynistic, and violent attitudes of malevolent and predatory sexual behavior.
REAL USER COMMENTS ON PORNHUB
code147 2 years ago
is this girl even old enough to be up on this type of videos??? that dude looks like a prick.... feeding on the innocent.... this c***d abuse!!! really!
Zeb50 3 years ago
Lool at this face at 5:40, it's says "Free me please, enough of that".
I can't jerk on that, even if she is gorgeous.
Ridiculous depressing channel :/
luvsasianwhores 3 months ago
Best part. He should have pulled her hair, choked her a bit the rougher then better. Torture these little fucktoys
I probably could do without the crying.
0 Reply
[redacted]
Whoa she looks like she's 12.
bluelight6742
Jfc she looks like she's 14
somewhat_angery
SHE LOOKS WAY UNDE***E SMH
TRAFFICKINGHUB.COM
A CAMPAIGN TO HOLD PORNHUB ACCOUNTABLE


ENABLING & FACILITATING BAD ACTORS
IGNORING CLEAR WARNING SIGNS FROM USERS
In 2019, 11.5 million comments were made by users about videos on Pornhub.
Many of these comments express distress or concern, flagging what appears to be actual filmed crime including CSAM, trafficking and rape.
REAL USER COMMENTS ON PORNHUB
seanmahem 3 years ago
She looks like 14 and I love it
20 • Reply
pornfire2017 1 year ago
its a c***d porn
0 Reply
vitomod 2 years ago
I honestly believe this is too young. No matter what country
35 • Reply
Minecraftmachine 6 months ago
She is actually 15.. I know this girl in real life and i also know her dad..
6 • Reply
jongen18 1 year ago
i know she looks 13 or someting
2 • Reply
zxanaxxz 5 days ago
Wtf she's like 15
0 • Reply
M26f28m 1 year ago
disgusting she looks like a c***d. remove that shit
42 Reply
Post nut clarity hit and now I'm crying for the girl I just got off to.
0 Reply
[redacted] 8 months ago
Whoa she looks like she's 12.
14 Reply
[redacted] 2 months ago
Wait that's illegal
4 • Reply
[redacted] 7 months ago
Had to make an account just to say how SICK this is!! KNOW sex trafficking when you see it. She's young, inexperienced and doesn't even seem to understand what is happening to her, yet alone like it. Take this SH*T down!!
23 • Reply
TRAFFICKINGHUB.COM
A CAMPAIGN TO HOLD PORNHUB ACCOUNTABLE




114. Indeed, although Defendants are required to report CSEM to NCMEC, Defendants have utterly failed to report known instances of CSEM. For example, NCMEC publishes an annual report of reports of incidents of apparent CSEM, and although Defendants' websites were rife with CSEM at that time, MindGeek and PornHub made zero reports in 2019.[62]

### 4. The Presence Of Child Sex Trafficking Has Been Brought To Defendants' Attention Via Third-Party Reporting

115. Numerous media outlets have also notified Defendants of the presence of child pornography on their websites.

116. In October of 2018, numerous print outlets ranging from the *New York Post*[63] to the *Mercury News*[64] reported that an investigation was launched after a high school student recognized his classmate—a 14-year-old girl—in a video uploaded to

[62] https://www.missingkids.org/gethelpnow/cybertipline
[63] https://nypost.com/2018/10/26/videos-on-pornhub-showed-female-teacher-having-sex-with-teen-girl-cops/
[64] https://www.mercurynews.com/2018/10/26/pornhub-videos-lead-to-redwood-city-womans-arrest/

Pornhub. The video depicted the young girl being sexually assaulted by a substitute teacher. The classmate notified the principal, who in turn contacted authorities.

117. Just one month later, in November 2019, the *Sunday Times* of London published an investigation in which it questioned Pornhub's claim that it "bans content showing under-18s and removes it swiftly."[65] It reported that, in just minutes of searching on the website, it was able to find dozens of examples of illegal material. Including an entire account called "Candid teen asses," devoted to posting covertly filmed "creepshots" of girls in their school uniforms.[66] And then there were the videos featuring victims as young as three years old.[67]

118. Many of the videos the newspaper located had more than 350,000 views, and had had been on the platform for years.[68]

119. Even after the *Sunday Times* flagged certain specific videos for Defendants, three of the worst clips remained on Pornhub some 24 hours later.[69]

120. In September 2020, a man in Tuscaloosa was charged with monetizing child exploitation on Pornhub, producing porn involving a 16-year-old girl.[70] The video was on Pornhub for two years and viewed 2,447 times before it was finally taken down.

121. In 2018, Dawn Gianni sexually assaulted a 14-year-old girl and the videos were uploaded to Pornhub. [71]

---

[65] https://www.thetimes.co.uk/article/unilever-and-heinz-pay-for-ads-on-pornhub-the-worlds-biggest-porn-site-knjzlmwzv
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] https://abc3340.com/news/local/pornhub-account-tied-to-tuscaloosa-mans-arrest-for-producing-porn-with-a-minor#:~:text=Court%20records%20show%2027%2Dyear,with%20bond%20set%20at%20%2475%2C000.
[71]https://www.mercurynews.com/2018/10/26/pornhub-videos-lead-to-redwood-city-womans-arrest/

122. News reports also indicated that images of Megan Guthrie when she was 17 years old were featured on Pornhub and her name was trending on the site.[72]

123. More recently, *New York Times* columnist Nicholas Kristof wrote a lengthy article entitled: "The Children of Pornhub: Why does Canada allow this company to profit off videos of exploitation and assault?" That article is described in more detail below.

**5. The Presence of Child Sex Trafficking Has Been Brought To Defendants' Attention Via Advocacy Groups**

124. Numerous advocacy groups have devoted significant resources to bringing attention to the ubiquitous problem of child pornography on Defendants' various websites.

125. The Internet Watch Foundation, which assesses and works to remove from the internet child sexual abuse images and videos every year, reported that it found 118 instances of child sexual abuse imagery on Pornhub between 1 January 2017, and 29 October 2019.[73]

126. TraffickingHub has also launched a worldwide campaign to bring attention to Defendants' bad acts, including gathering over 2 million signatures for a petition to shut down Pornhub and hold its executives accountable for aiding trafficking.[74]

**6. The Presence of Child Sex Trafficking Has Been Brought to Defendants' Attention Via Government-Led Investigations**

127. The governments of multiple countries have also become involved in this issue, launching investigations into the Pornhub's wrongdoing.

128. In the United States, Senator Ben Sasse wrote to U.S. Attorney General Bill Barr, calling for a federal investigation into Pornhub and its owner MindGeek

---

[72] https://www.buzzfeed.com/cameronwilson/tiktok-underage-nudes-leaked-harassment

[73] *https://www.iwf.org.uk/news/pornhub-data-out-of-context-tells-us-nothing*

[74] https://traffickinghub.com/

for their involvement in streaming videos of raped and exploited women and children. In his letter he explained:

> In several notable incidents over the past year, Pornhub made content available worldwide showing women and girls that were victims of trafficking being raped and exploited. Indeed, the problem of Pornhub streaming content featuring women and children victims of sex trafficking reached the point in November that Paypal cut off services for Pornhub, refusing to facilitate this abuse any longer… Pornhub must not escape scrutiny. I therefore request that the Department open an investigation into Pornhub and its parent entity MindGeek Holding SARL for their involvement in this disturbing pipeline of exploiting children and other victims and survivors of sex trafficking.[75]

129. The same calls for action are being heard in Canada, where Canadian Members of Parliament from four parties sent an open letter to Canada's Minister of Justice, Attorney General David Lametti, along with Prime Minister Justin Trudeau, demanding a government response to what is happening on Pornhub.[76]

**E. The *New York Times* Investigation**

130. Despite their apparent knowledge of this growing problem, for over a decade, Defendants took no action.

131. Then, in December 2020, Nicholas Kristof of the *New York Times* published a detailed investigation that chronicled all the ways Pornhub monetizes child rapes and revenge pornography.[77] "The site is infested with rape videos,"

[75] https://www.sasse.senate.gov/public/_cache/files/06557325-43d1-4aed-8e34-27cf8cbdfb13/3-10-20-sasse-letter-to-ag-barr.pdf
[76] https://twitter.com/ArnoldViersen/status/1331647921692041216?s=20
[77] https://www.nytimes.com/2020/12/04/opinion/sunday/pornhub-rape-trafficking.html

Kristof wrote. "It monetizes child rapes, revenge pornography, spy cam videos of women showering, racist and misogynist content, and footage of women being asphyxiated in plastic bags."

132. Kristof wrote that there are more than 6.8 million new videos posted on Pornhub each year, many of which depict child abuse.

133. The story referenced a woman named Cali who was forced to appear in pornographic videos beginning at the age of nine, many of which ended up on Pornhub and regularly reappear there. Kristof described how he came across many videos on Pornhub featuring unconscious girls, with rapists opening the eyelids of the victims and touching their eyeballs to demonstrate that they were, in fact, unconscious.

134. Kristof wrote: "In the last few days as I was completing this article, two new videos of prepubescent girls being assaulted were posted, along with a sex video of a 15-year-old girl who was suicidal after it went online. I don't see how good-faith moderators could approve any of these videos."

135. Of course, the problem is that the moderators are not acting in good faith. They are trying to get as much content through as possible to ensure traffic, because traffic equals profits.

**F. Financial Institutions Cut Ties with Defendants**

136. Kristof's article called for Visa, Mastercard, and American Express to suspend cooperation with Pornhub. Mastercard launched its own investigation into Kristof's claims and said it found them to be substantiated. In a statement, Mastercard said: "The use of our cards at Pornhub is being terminated. Our investigation over the past several days has confirmed violations of our standards prohibiting unlawful content on their site. As a result, and in accordance with our

policies, we instructed the financial institutions that connect the site to our network to terminate acceptance."[78]

137. Visa followed suit. Although its investigation is ongoing, Visa suspended Pornhub's acceptance privileges while its investigation is underway and instructed the financial institutions who serve Defendants to suspend processing of payments through the Visa network.[79]

138. Discover also cut ties with Pornhub. "We require our financial institution partners to monitor for and prevent card acceptance at merchants that allow illegal or any other prohibited activities that violate our operating standards," Discover said in a statement. "When Discover determines merchants are offering prohibited activity, we promptly terminate card acceptance through the offending merchant's financial institution."[80]

**G. <u>Defendants Remove Millions of Videos from Their Sites</u>**

139. Within days of the financial institutions cutting ties with Pornhub, Defendants finally took some action. Most notably, they removed all content previously uploaded to its Pornhub website by unverified users, bringing the total number of videos on that one site down from 13 million to 4 million.[81] On information and belief, they did nothing, however, to confirm that any of the individuals featured in any of the 4 million videos that remained on the website were of consenting adults.

140. Defendants also announced that they were removing the ability for users to download content from Pornhub (with the exception of paid downloads from the "verified" Model Program), along with other changes. Despite these announcements,

---

[78] https://www.cnn.com/2020/12/14/business/mastercard-visa-discover-pornhub/index.html

[79] *Id.*

[80] *Id.*

[81] https://www.theguardian.com/technology/2020/dec/14/pornhub-purge-removes-unverified-videos-investigation-child-abuse

as evidenced in paragraphs 47-54 above, nothing substantive appears to have changed because the Model Program has no age verification requirement.[82]

## IV. JANE DOE'S EXPERIENCE AS A VICTIM OF DEFENDANTS' SEX TRAFFICKING

141. Jane Doe was in high school when her boyfriend created four videos of the two of them engaging in sexual intercourse. She was sixteen years old at the time the videos were recorded, and some of the videos were recorded without her knowledge let alone consent. She was induced to perform the sex acts depicted in the videos.

142. The relationship ended when Jane Doe's boyfriend pushed her out of his moving car onto the street, dragging her until she was able to free herself.

143. After the relationship ended, Jane Doe learned from a mutual friend that her ex-boyfriend has posted multiple videos online of the two of them engaging in sexual intercourse. Jane Doe is clearly identifiable in the videos, which were posted to various websites, including Pornhub.com and Redtube.com, from the period of December 2019 to the present.

144. The postings were accompanied by crude, disparaging, misogynistic and/or racist remarks.

145. After allowing the videos to be uploaded to Pornhub, Defendants loaded at least one of the videos to Redtube. The video contained the name "teen" in the title, was tagged with the word "teen" and was categorized as "teen" porn to enable users who were interested in child pornography to locate the video. The video has been viewed more than 30,000 times and was featured alongside Traffic Junky advertisements.

146. What's more, not only did Defendants upload this video to Redtube, they actually *featured* it on the front page of Redtube in order to drive traffic.

[82] https://www.pornhub.com/blog/11422

147. The circulation of the videos and images has caused Ms. Doe great anxiety, distress and sleeplessness. She has had recurring thoughts of contemplating suicide and feelings of hopelessness, resulting in withdrawing from school and seeking therapy. Ms. Doe has spent money on counseling resulting from her distress.

148. The videos were on Pornhub for nearly a month before Jane Doe was made aware of them. Ms. Doe immediately reached out to Pornhub to have the videos taken down on March 26, 2020. While Pornhub ultimately removed the videos, they warned Ms. Doe: "We have taken it upon ourselves to fingerprint the content with Vobile on your behalf. This should effectively block future uploads of the videos. Please note that we offer no guarantee. We do not operate the Vobile service. Furthermore we recommend that you educate yourself on their services and the limitations of digital fingerprinting technology."

149. Apparently it is on Ms. Doe to ensure that the videos are never uploaded anew to Pornhub, or any of Defendants' numerous other websites, again.

150. Jane Doe No. 1's trafficker has victimized other young women as well. After law enforcement authorities arrested her trafficker, they located more than 500 images and videos that had been uploaded to Pornhub, Redtube, and other websites.

151. Defendants financially benefitted from Jane Doe No. 1's trafficking in the form of increased traffic and advertising revenue.

152. Defendants made money on the videos featuring Ms. Doe's image and likeness without her permission or consent.

153. Ms. Doe suffered economic injury because she was not compensated for Defendants' use of her image and likeness for commercial gain.

## CLASS ACTION ALLEGATIONS

154. Plaintiff brings this action on her own behalf, and on behalf of a class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The Class is defined as:

all persons who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Defendants in the last ten years.

155. Plaintiff also brings this action on behalf of: all persons residing in California who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Defendants in the last ten years (the "California Subclass").

156. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are many thousand members of the Class. Absent members of the Class may be notified of the pendency of this action using a form of notice similar to that customarily used in purchaser class actions.

157. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class were similarly affected by Defendants' wrongful common course of conduct complained of herein.

158. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

159. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendants knowingly benefitted from child trafficking;

(b) Whether user-generated uploads on Defendants' websites feature underage victims;

(c) Whether Defendants knew or should have known that there were videos and/or images of underage victims on its websites; and

(d) Whether Defendants' age verification system prevents users from uploading child pornography.

(e) Whether Defendants have earned profits from child trafficking;

160. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it virtually impossible as a practical matter for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM FOR RELIEF

## TRAFFICKING VICTIMS PROTECTION ACT

## 18 U.S.C. §§ 1591, 1595

**(Against All Defendants)**

161. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

162. Defendants knowingly used the instrumentalities of interstate commerce to violate 18 U.S.C. § 1595.

163. Defendants knowingly benefit from child trafficking by benefitting financially from videos/images viewable on their websites that depict victims who are underage. Defendants make substantial profits with almost three billion ad impressions each day, many of which are attributable to content posted of underage victims.

164. Defendants recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, or solicit videos and images depicting CSEM on their websites.

165. Defendants knew or should have known that the videos and images featured on their websites depicted CSEM. Defendants have repeatedly been made

aware of the child pornography on their websites by victim's complaints, third-party reporting, advocacy groups, and government investigations. Defendants knew or should have known that their websites are known for child sex trafficking based on all of this information.

166. Defendants monetized child trafficking on their websites through revenues generated by subscriptions and advertisements.

167. Rather than take action to combat the problem of child sex trafficking, Defendants intentionally catered their websites to facilitate sex trafficking and make it easier for traffickers to monetize underage victims in commercial sex acts.

168. Defendants not only maintained affiliations with sex traffickers by enabling the posting of child pornography on their websites, they have strengthened those affiliations by making it easier to connect traffickers with those who want to view child pornography. Defendants create playlists that target those interested in child pornography; feature categories on their websites that target users interested in child pornography; instructs users to describe their videos using categories like "teen" to drive traffic; and decline to take down child pornography that generates significant streams.

169. Defendants have repeatedly featured victims who have not attained the age of 18 years in videos/images on its websites. The victims have engaged in commercial sex acts because all of the videos featured on its websites generate revenue for Defendants and/or traffickers and depict sex acts.

170. Defendants had a reasonable opportunity to observe the victims featured on its websites, including because their moderators had the opportunity to view all of the content posted thereon.

171. Defendants' conduct has harmed the Class by causing physical, psychological, financial, and reputational harm.

## SECOND CLAIM FOR RELIEF

## RECEIPT AND DISTRIBUTION OF CHILD PORNOGRAPHY

## 18 U.S.C. §§ 2252A, 2255

**(Against All Defendants)**

172. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

173. Defendants knowingly and intentionally offer, operate, maintain and advertise child pornography on their websites. Defendants also knowingly and intentionally encourage traffic on their websites and encourage advertisers to purchase advertisement space thereon.

174. Defendants knowingly received and distributed child pornography depicting Plaintiff and the Class on their websites in violation of 18 U.S.C. § 2252A. Accordingly, Plaintiff and the Class are entitled to bring a civil action under 18 U.S.C. §§ 2252A(f), 2255(a).

175. Defendants' receipt and distribution of child pornography occurred in or affected interstate or foreign commerce.

176. As a proximate result of Defendants' violation of 18 U.S.C. § 2252A, Plaintiff and the Class have suffered serious harm including, without limitation, physical, psychological, financial, and reputational harm.

177. Defendants' conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights and the Class' rights and Plaintiff and the Class are entitled to injunctive relief, compensatory, liquidated, statutory and punitive damages, and the costs of maintaining this action. 18 U.S.C. §§ 2252A(f), 2255(a).

178. Defendants' liability for knowingly violating 18 U.S.C. § 2252A is not limited by 47 U.S.C. § 230 because nothing in Section 230 "shall be construed to impair the enforcement of [] chapter [ ] 110 (relating to sexual exploitation of children) [ ] or any other Federal criminal statute." 47 U.S.C. § 230(e)(1).

**THIRD CLAIM FOR RELIEF**

**DISTRIBUTION OF PRIVATE SEXUALLY EXPLICIT MATERIALS, CAL. CIV. CODE § 1708.85**

**(Against All Defendants)**

**(On behalf of California Subclass)**

179. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

180. Defendants intentionally distributed child pornography.

181. Plaintiff and the Class did not consent to the online distribution of the videos and images depicting them.

182. Defendants knew Plaintiff and the Class had a reasonable expectation that the videos depicting them would remain private.

183. The videos depicted on Pornhub exposed intimate body parts of Plaintiff and the Class.

184. Plaintiff and the Class were harmed by Defendants' knowing and intentional distribution of child pornography and Defendants' conduct was a substantial factor in causing harm to Plaintiff and the Class.

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**

**Cal. Bus. & Prof. Code § 17200**

**(Against All Defendants)**

**(On behalf of California Subclass)**

185. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

186. Defendants have violated the UCL by engaging in unlawful, unfair, and fraudulent business acts and practices.

187. Defendants knowingly had inadequate age verification systems in place that enabled users to upload child pornography to Defendants' websites.

Case 8:21-cv-00338-WLH-ADS Document 318-1 Filed 05/08/24 Page 116 of 330 Page ID #:11405

188. Defendants profited by selling advertising space to display advertisements alongside Plaintiff's and the Class's videos, images, and likenesses without their consent (or the consent of their parents or legal guardians).

189. Defendants profited by featuring Plaintiff's and the Class's videos, images, and likenesses without their consent to drive user traffic to their websites.

190. Defendants' conduct constitutes an unlawful, unfair, and fraudulent business act and practice.

191. Plaintiff and the Class have a financial interest in the use of their videos, images, and likenesses.

192. As a result of Defendants' use of their videos, images, and likenesses without their consent, Plaintiff and the Class lost money to which they were entitled.

193. As a result of Defendants' use of her videos, image, and likeness without their consent, Plaintiff and the Class suffered financial harm in the form of costs for therapy.

194. Plaintiff and the Class seek restitution of all amounts to which Defendants have been unjustly enriched as a result of their unlawful, unfair, and/or fraudulent acts.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA'S TRAFFICKING VICTIMS PROTECTION ACT**

**Cal. Civ. Code § 52.5**

**(On behalf of California Subclass)**

195. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

196. By knowingly maintaining and profiting from CSEM on its websites, Defendants have caused minors to engage in commercial sex acts.

197. Defendants intend to, and do, distribute CSEM, which depicts minors engaged in and/or simulating sexual conduct, through their websites.

198. Defendants' websites are available all over the country, including in California.

## SIXTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

199. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

200. Defendants' conduct toward Plaintiff and the Class, as described herein, was outrageous and extreme.

201. A reasonable person would not expect a company like Defendants to knowingly tolerate child sex trafficking and pornography on its websites. Defendants' callous indifference to the child sexual abuse occurring on its websites goes beyond all possible bounds of decency.

202. Defendants acted with reckless disregard of the likelihood that Plaintiff and the Class would suffer emotional distress, including humiliation and anxiety. Defendants knew, or recklessly disregarded, that Plaintiff and the Class were harmed by the illegal CSEM featuring them on Defendants' websites, but did nothing to help them, and instead tacitly encouraged the proliferation of CSEM on its websites.

203. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class suffered severe emotional distress and are accordingly entitled to appropriate damages.

204. No reasonable person in Plaintiff's situation would be able to adequately endure the distress engendered by Defendants' profit-driven indifference to, and encouragement of, her plight.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment, as follows:

A. Determine that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff's counsel as Class counsel;

Case 8:21-cv-00338-WLH-ADS Document 118-1 Filed 05/05/23 ... Page 118 of 330 Page ID #:2651

B. Award injunctive relief sufficient to bring Defendants' policies in compliance with applicable law.

C. Award compensatory, liquidated, statutory, and punitive damages, disgorgement, and restitution in favor of Plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of defendants' violations of the law, in an amount to be proven at trial, including prejudgment interest thereon.

D. Award Plaintiff and the Class reasonable attorneys' fees, costs and expenses incurred in this action, including expert fees.

E. Award such other and further relief as the Court may deem just and proper.

Dated: May 5, 2023

DAVIDA BROOK
KRYSTA KAUBLE PACHMAN
TAMAR LUSZTIG
HALLEY JOSEPHS
AMY B. GREGORY
SUSMAN GODFREY L.L.P.

STEVE COHEN (*Pro Hac Vice*)
scohen@pollockcohen.com
POLLOCK COHEN LLP
60 Broad Street, 24th Fl.
New York, NY 10004
Phone: (212) 337-5361

By /s/ *Krysta Kauble Pachman*
Krysta Kauble Pachman

*Attorneys for Plaintiff*

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury of all of the claims asserted in this complaint so triable.

Dated: May 5, 2023

DAVIDA BROOK
KRYSTA KAUBLE PACHMAN
TAMAR LUSZTIG
HALLEY JOSEPHS
AMY B. GREGORY
SUSMAN GODFREY L.L.P.

STEVE COHEN
POLLOCK COHEN LLP

By /s/ *Krysta Kauble Pachman*
Krysta Kauble Pachman

*Attorneys for Plaintiff*

# PLAINTIFF'S EXHIBIT 68

BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*
MINDGEEK USA INCORPORATED,
MINDGEEK S.A.R.L., MG FREESITES
LTD (D/B/A PORNHUB), MG FREESITES II
LTD, MG CONTENT RT LIMITED,
AND 9219- 1568 QUEBEC, INC. (D/B/A MINDGEEK)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JANE DOE on behalf of herself and all other similarly situated,<br>Plaintiffs,<br><br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES LTD (D/B/A PORNHUB), MG FREESITES II LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),<br>Defendants. | CASE NO. 8:21-CV-00338-CJC-ADS<br><br>Judicial Officer: Cormac J. Carney<br><br>**DEFENDANTS' ANSWER AND JURY DEMAND TO PLAINTIFF'S THIRD AMENDED COMPLAINT** |

Defendants MindGeek USA Inc., MindGeek S.à r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd (collectively "Defendants"), by and through their undersigned counsel, hereby respond to Plaintiff's Third Amended Complaint ("TAC") as follows:

**INTRODUCTORY STATEMENT**

Many of the allegations of the TAC are vague, conclusory, and/or contain terms which are undefined and susceptible to different meanings. In particular, the TAC is replete with references to, summaries of, and purported quotations from various documents, including newspaper articles, congressional testimony, and an unsubstantiated advocacy presentation purporting to discuss and/or characterize activity that occurred on one or more of the websites operated by MG Freesites Ltd. Because much of the information concerning this alleged activity is anonymized, incomplete, and largely concerns a database of millions of pieces of content, Defendants reserve the right to amend and/or supplement this Answer to the extent further investigation or discovery reveals additional information.

The comments and objections in this Introductory Statement are incorporated into each numbered paragraph of this Answer.

**ANSWER TO ALLEGATIONS REGARDING**

**THE NATURE OF THE ACTION**

1. Defendants acknowledge that Plaintiff is seeking to maintain a class action for damages and injunctive relief but deny that she is entitled to same. Plaintiff's claims, being in writing, speak for themselves. Defendants deny that they are liable for any alleged injuries and that Plaintiff is in any way entitled to damages or other relief. Any remaining or inconsistent allegations are denied.

2. Denied.

3. Denied. To the extent the allegations of Paragraph 3 contain excerpts of an online discussion, those excerpts are incomplete, are out of context, and do not

address age verification of individuals appearing in content on any websites operated by MG Freesites Ltd.

4. Denied.

5. The allegations of Paragraph 5 state legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Paragraph 5 fairly characterizes the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Any remaining or inconsistent allegations are denied.

**ANSWER TO ALLEGATIONS REGARDING THE PARTIES**

6. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

7. The allegations of Paragraph 7 state legal conclusions and/or are not directed to Defendants and therefore do not require a response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

8. Defendants admit that MindGeek USA Incorporated is a corporation organized and existing under the laws of the state of Delaware, with an established place of business in California. MindGeek USA Incorporated's registered agent for service of process in the State of California is CT Corporation System. MindGeek USA Incorporated is an indirect subsidiary of MindGeek S.à r.l. Any remaining or inconsistent allegations are denied.

9. Defendants admit that MindGeek S.à r.l. is a foreign holding company organized and existing under the laws of Luxembourg with its sole place of business in Luxembourg. Any remaining or inconsistent allegations are denied.

10. Defendants admit that MG Freesites Ltd is a private limited company incorporated in Cyprus and is an indirect subsidiary of MindGeek S.à r.l. Any remaining or inconsistent allegations are denied.

11. Denied. MG Freesites II Ltd has been dissolved and the entire business of MG Freesites II Ltd was transferred to MG Freesites Ltd.

12. Denied. MG Content RT Limited has been dissolved and the entire business of MG Content RT Limited was transferred to MG Freesites Ltd.

13. Defendants admit that 9219-1568 Quebec, Inc. is a company organized and existing under the laws of the Province of Quebec with its principal place of business in Montreal, Canada. Any remaining or inconsistent allegations are denied.

14. Defendants admit that Plaintiff refers in the TAC to MindGeek USA Incorporated, MindGeek S.à r.l., MG Freesites Ltd, MG Freesites II, Ltd, 9219-1568 Quebec Inc., MG Content RT Ltd, and all of their parents, subsidiaries and affiliates as "Defendants" or "MindGeek." It is denied that such characterization is reasonable, accurate, or appropriate and also denied that unidentified "parents, subsidiaries and affiliates" may be defined as part of "MindGeek." Defendants do not file this Answer on behalf of any entities other than those specifically named as parties hereto.

15. Denied.

16. The allegations of Paragraph 16 state legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of Plaintiff's allegations regarding her knowledge.

**ANSWER TO ALLEGATIONS REGARDING**

**JURISDICTION AND VENUE**

17. The allegations of Paragraph 17 state legal conclusions to which no response is required.

18. The allegations of Paragraph 18 state legal conclusions to which no response is required.

19. The allegations of Paragraph 19 state legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 19 are denied with respect to MindGeek S.à r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd.

20. Defendants admit that MindGeek USA Incorporated is a corporation organized and existing under the law of the state of Delaware that has a place of business at 21800 Oxnard Street, Suite 150, Woodland Hills, CA 91367. Defendants also admit that based on information available from May 2019 Los Angeles, California was at that time the fourth highest city for daily traffic to Pornhub. Defendants admit that MG Freesites Ltd operates websites that host millions of videos and images that may be viewed in California. Any remaining or inconsistent allegations are denied.

21. The allegations of Paragraph 21 state legal conclusion to which no response is required. To the extent a response is required, Defendants admit that MindGeek S.à r.l. and MindGeek USA Inc. were defendants in *Preservation Technologies, LLC v. MindGeek USA, Inc. and MindGeek S.A.R.L.*, Case No. 2:17-cv—08906-DOC-JPR (C.D. Cal.).

22. The allegations of Paragraph 22 state legal conclusions to which no response is required.

23. The allegations of Paragraph 23 state legal conclusions to which no response is required. To the extent a response is required, Defendants admit that MindGeek USA Inc. maintains a place of business in California. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding where the events giving rise to Plaintiff's claims occurred.

**ANSWER TO ALLEGATIONS OF FACT**

24. Defendants admit that CSEM is a global problem. To the extent the allegations of Paragraph 24 purport to quote or characterize the document

referenced, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

25. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. To the extent the allegations of Paragraph 25 purport to quote or characterize the document referenced, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

26. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

27. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. To the extent the allegations of Paragraph 27 purport to quote or characterize an unidentified document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

28. The allegations of Paragraph 28 purport to quote or characterize the referenced document. That document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

29. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the link between sexual exploitation and pornographic videos. To the extent the allegations of Paragraph 29 purport to quote or characterize an article by Melissa Farley, that article, being in writing speaks for

itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

30. Defendants have a zero tolerance policy for CSEM. Defendants are unequivocally committed to combating CSEM and have instituted an industry-leading trust and safety policy to identify and eradicate illegal material from the community. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 30. To the extent the allegations of Paragraph 30 purport to quote or characterize the referenced study, that study, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

31. Defendants admit that Congress passed the TVPA in 2000 and deny the remaining allegations of Paragraph 31.

32. Defendants admit that Congress passed the TVPRA in 2003. The remaining allegations of Paragraph 32 state legal conclusions to which no response is required.

33. Defendants admit that Congress amended the TVPRA in 2008. The remaining allegations of Paragraph 33 state legal conclusions to which no response is required. To the extent the allegations of Paragraph 33 purport to quote or characterize the TVPRA, that document, being in writing, speaks for itself. To the extent a response is required, Defendants deny that Paragraph 33 fairly characterizes the TVPRA.

34. The allegations of Paragraph 34 state legal conclusion to which no response is required. To the extent the allegations of Paragraph 34 purport to quote or characterize the TVPRA, that document, being in writing, speaks for itself. To the extent a response is required, Defendants deny that Paragraph 34 fairly characterizes the TVPRA.

35. Denied.

36. Defendants admit that Congress passed the Allow States and Victims to Fight Online Sex Trafficking/Stop Enabling Sex Traffickers Act ("FOSTA/SESTA") in 2018. To the extent the allegations of Paragraph 36 purport to quote or characterize the referenced article or Section 230, those documents, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegation are denied.

37. The allegations of Paragraph 37 state legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Paragraph 37 fairly characterizes FOSTA/SESTA.

38. Defendants admit that they are privately held companies. Defendants also admit that MG Freesites Ltd operates adult entertainment websites, including Pornhub, RedTube, and YouPorn. Any remaining or inconsistent allegations are denied.

39. Defendants admitted that the quoted language is an excerpt from a letter to the Canadian Parliament and that that letter, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

40. Admitted, except that to the extent the allegations of Paragraph 40 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself.

41. Defendants admit that in 2019, the United States was the country with the highest daily traffic to Pornhub and that based on information from May 2019, Los Angeles, California was at that time the city with the fourth highest daily traffic to Pornhub. Any remaining or inconsistent allegations are denied.

42. Defendants admitted that the quoted language is an excerpt from a letter to the Canadian Parliament and that that letter, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

43. Defendants admit Pornhub had approximately 13,740,000 adult entertainment videos in its free searchable library on or around December 1, 2020. Any remaining or inconsistent allegations are denied.

44. Defendants admit that Pornhub, operated by MG Freesites Ltd, is considered a "tube site," meaning Pornhub allows lawful content to be uploaded from verified uploaders. Defendants also admit that account holders are able to comment on content on Pornhub. Any remaining and inconsistent allegations are denied.

45. Denied.

46. Denied.

47. Denied.

48. Defendants admit that Pornhub has a Model Program. To become a member of the Model Program, an individual must become a verified uploader which requires that individual to: (i) create a user name and password, provide an email address, and agree to the site's terms of service, including the site's privacy policy; (ii) provide government-issued identification and a set of live photographs of himself or herself (i.e. one taken in real time by the computer or smartphone's camera); and (iii) agree to the term of service that states that the user is at least 18 years old by checking an opt-in box during the user-verification process. Members of Pornhub's Model Program who have complied with all the requirements for becoming a verified uploader may upload lawful content of themselves as free-to-view videos that earn ad revenue. At the time of upload, the Model Program member must confirm that (i) they have the consent of those depicted in the content and (ii) the uploader has collected one piece of photo ID from any additional

performer who appears in the video as well as a photo of the additional performer holding their ID. Plaintiff does not allege that she or her ex-boyfriend were members of Pornhub's Model Program. Any remaining or inconsistent allegations are denied.

49. Denied. Defendants admit that to become a member of Pornhub's Model Program an individual must be a verified uploader. To become a verified uploader an individual must: (i) create a user name and password, provide an email address, and agree to the site's terms of service, including the site's privacy policy; (ii) provide government-issued identification and a set of live photographs of himself or herself (*i.e.* one taken in real time by the computer or smartphone's camera); and (iii) agree to the term of service that states that the user is at least 18 years old by checking an opt-in box during the user-verification process. To the extent the allegations of Paragraph 49 purport to quote or characterize an unidentified document, that document, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

50. Denied.

51. Denied.

52. Denied. Defendants admit that one step in the process to become a Pornhub Model Program member requires an individual to provide a set of live photographs of himself or herself (*i.e.* one taken in real time by the computer or smartphone's camera). But that is not the step in the process that confirms the age of the applicant. A Model Program applicant must also provide government-issued identification and agree to the term of service that states that the user is at least 18 years old by checking an opt-in box during the user-verification process. To the extent the allegations of Paragraph 52 purport to quote or characterize an unidentified document, that document, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Defendants admit that since mid-December 2020, MG Freesites Ltd does not allow content from any of the websites it operates to be downloaded. The limitations on the downloading of content are designed to prevent inappropriate content being re-uploaded to Defendants' websites or further disseminated by third parties. Defendants also admit that all content uploaded to Pornhub is screened using automated detection technologies including fingerprinting tools that rely on a unique digital fingerprint to match a video or photograph to those already identified in databases including suspected CSEM. Those tools include YouTube's CSAI Match, Microsoft's Photo DNA, Vobile's MediaWise, and MindGeek's own tool, Safeguard. Any suspected CSEM identified by Pornhub's moderation process or as a result of a flag or take down request is fingerprinted using MindGeek's fingerprinting tools, and the digital fingerprint is transmitted to Microsoft, YouTube, and Vobile to be added to their databases. The fingerprinting process prevents the same content from being uploaded to Pornhub and any third-party platforms that use these technologies. Defendants lack knowledge or information sufficient to form a belief as to the truth of allegations regarding what any individual did with the content they downloaded. Any remaining or inconsistent allegations are denied.

58. Defendants admit that Pornhub account holders can send each other private messages and can create folders that can be shared with other Pornhub account holders. Folders can only contain content that has been through Pornhub's moderation process. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations. To the extent the allegations of Paragraph 58 purport to quote or characterize the referenced document, that

document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Further, the author of that document, Laila Mickelwait, is the founder of Traffickinghub and also the spokesperson for Exodus Cry, a far-right organization that opposes legal pornography and which has been disavowed by media outlets and other organizations. The document itself is an advocacy piece prepared by Ms. Mickelwait in her admitted crusade to shut down Pornhub and MindGeek. Any remaining or inconsistent allegations are denied.

59. Defendants admit that the VPNHUB app was created and that the use of cryptocurrency is permitted on Pornhub. To the extent the allegations of Paragraph 59 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

60. Defendants admit that a tor site was created. To the extent the allegations of Paragraph 60 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

61. Defendants admit that verified uploaders are allowed to upload to Pornhub lawful content that complies with Pornhub's terms of service. To the extent that Paragraph 61 purports to quote from an interview given by Fabian Thylmann in 2017, Mr. Thylmann was not affiliated with Pornhub or MindGeek at that time and was not speaking on behalf of any Defendant. Mr. Thylmann's interview speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

62. Paragraph 62 purports to quote from an interview given by Fabian Thylmann in 2017. Mr. Thylmann was not affiliated with Pornhub or MindGeek at that time and was not speaking on behalf of any Defendant. That interview speaks for itself. Any remaining or inconsistent allegations are denied.

63. Denied.

64. Denied. Content that is uploaded to Pornhub is not automatically uploaded to any other MindGeek website or mobile application, except Thumbzilla.com. Thumbzilla.com is not a tube site; it has never been possible for users to upload directly to that website. In addition, verified uploaders who are members of the Model Program can opt to have their content uploaded to other sites during the upload process.

65. Denied.

66. Denied.

67. Defendants admit that account holders can opt to subscribe to premium websites that offer access to content that is different from the content available on free sites. To the extent the allegations of Paragraph 67 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

68. Defendants admit that advertisements appear on websites operated by MG Freesites Ltd. To the extent the allegations of Paragraph 68 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

69. Defendants admit that revenue is generated from advertisements placed on websites operated by MG Freesites Ltd. Any remaining or inconsistent allegations are denied.

70. Denied.

71. Denied except that Defendants admit that members of Pornhub's Model Program who have complied with all of the requirements for becoming a verified uploader and who at the time of upload certify they have consent, release records, and valid government photo IDs for all performers appearing in the video, are allowed to upload content to Pornhub and receive advertising share revenue. Models are encouraged to have co-performers sign the Co-Performer Agreements provided on Pornhub.com. Models are advised that that they may be contacted to provide copies of co-performer IDs and signed agreements for auditing purposes or in response to external concerns. To the extent the allegations of Paragraph 71 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

72. Defendants admit that revenue is generated from advertisements that appear on websites operated by MG Freesites Ltd. Further, members of Pornhub's Model Program who have complied with all the requirements for becoming a verified uploader may upload lawful content of themselves that complies with Pornhub's terms of service as free-to-view videos that earn ad revenue. Defendants also admit that subscription fees are collected for access to premium websites. Defendants also admit that in and around December 2020, Visa, Mastercard, and Discover stopped processing transactions involving Pornhub and that Pornhub removed all user-generated content on its site from unverified user accounts, which amounted to approximately 10 million videos. To the extent the allegations of Paragraph 72 purport to quote or characterize the referenced document, that

document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

73. Denied, except that Defendants admit that MG Freesites Ltd has made modifications to Pornhub since December 2020.

74. Defendants admit that Pornhub published its first Transparency Report in April 2021 and that document, being a writing, speaks for itself. Defendants also admit that Pornhub uses several different automated detection technologies to help moderate content before it can be published; that Pornhub reports suspected CSEM to NCMEC; that NCMEC maintains hash databases of suspected CSEM; and that PhotoDNA is an image-recognition technology. To the extent the allegations of Paragraph 74 purport to quote or characterize the referenced documents, those documents, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

75. Denied. To the extent the allegations of Paragraph 75 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

76. Denied.

77. Denied.

78. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged, except that Defendants admit that a video with the title provided in the referenced document was uploaded and subsequently removed from Pornhub on multiple occasions. To the extent the allegations of Paragraph 78 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to

form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

79. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. Further to the extent the referenced document purports to provide examples of instances where links were left on Pornhub, the examples provided are of search results on Google, not Pornhub.

80. Denied.

81. Denied. Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process. Pornhub account holders can create and title their own playlists which they can elect to make viewable to other Pornhub users. The only content that can be included in a playlist is content that has gone through Pornhub's moderation process. Defendants also admit that Pornhub maintains a list of banned terms that are not permitted to be used in any content titles, searches, or comments. These fields are subject to banned terms prevention software, as well as review by moderators.

82. Denied except that Defendants admit that to create an unverified account on Pornhub users are asked to provide an email address, a username, and a password. Users are then invited to provide details about their gender expression and sexual preferences, and pornography preferences. Users are also able to provide their birthdate, location, nickname, relationship status and a biography. This information is used to deliver content that is consistent with the user's indicated preferences and to enable the social features of the platform.

83. Denied except that Defendants admit that by using Pornhub, users agree to Pornhub's terms of service and privacy policy which address the information collected by Pornhub. The information captured by Pornhub includes the website

activity data and any other information supplied by the user including information such as email addresses, pages visited, search history, browser and operating system information, devices used to access Pornhub, time zone settings, and IP address information. This information, as well as the information referred to in paragraph 82 above, is used to deliver content that is consistent with the user's indicated preferences and to enable the social features of the platform.

84. Denied except that Defendants admit that except that Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process.

85. Denied.

86. The allegations of Paragraph 86 purport to quote or characterize an unidentified statement, which statement, if in writing, speaks for itself.

87. Denied. To the extent the allegations of Paragraph 87 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

88. Denied. To the extent Paragraph 88 purports to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

89. Denied.

90. Denied except that Defendants admit that in 2019 approximately 6.83 million videos or 1.36 million hours of videos were uploaded to Pornhub and that Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service,

before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process.

91. Denied.

92. Denied.

93. Defendants admit that, despite Pornhub's moderation process, content violating Pornhub's terms of service, including suspected CSEM, may make its way onto the website for public viewing. When content on Pornhub is flagged, the content is immediately examined and suspended immediately if the reviewer determines there is any risk that it might be suspected CSEM. When content on Pornhub is reported as suspected CSEM using a content removal form or by a Trusted Flagger, and the report includes the URL, the content is automatically disabled before it even reaches a reviewer. In both cases, an investigation follows, which includes examination of the documentation on file from the uploader, and possible requests for additional documents. If there is insufficient evidence to demonstrate that the individual depicted in the content was 18 or older at the time the content was produced, the content is permanently removed from the platform and protocols for reporting and protecting against future uploads are engaged. To the extent the allegations of Paragraph 93 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

94. Denied except that Defendants admit that MG Freesites Ltd provides DMCA take-down services relying on fingerprinting as well as other services and technologies in its moderation process for all content submitted to Pornhub.

95. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matter asserted. The term "CP" is a banned term that is not permitted to be used in any content titles, searches, or comments on websites

operated by MG Freesites Ltd. To the extent the allegations of Paragraph 95 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

96. Denied except that the page on Pornhub that the allegations of Paragraph 96 purport to quote or characterize is a document, which being in writing, speaks for itself.

97. Denied except that Defendants admit that Pornhub suggests that users make their titles "enticing, witty, or funny so users will be curious enough to click!" To the extent the allegations of Paragraph 97 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

98. Denied.

99. Paragraph 99 does not contain any factual allegation that requires a response. To the extent there are allegations requiring a response, they are denied.

100. Denied.

101. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

102. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

103. Denied. To the extent the allegations of Paragraph 103 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

104. Defendants admit that the Sunday Times published an article entitled *Unilever and Heinz pay for ads on Pornhub* on November 3, 2019. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

105. Denied. Defendants admit that Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process. Pornhub account holders can create and title their own playlists which they can elect to make viewable to other Pornhub users. The only content that can be included in a playlist is content that has gone through Pornhub's moderation process.

106. Defendants admit that they are aware that GirlsDoPorn and Czech Casting have been accused of sex trafficking and that both entities were members of the content partner program on Pornhub. Any remaining or inconsistent allegations are denied.

107. Denied. Content created by GirlsDoPorn was removed from Pornhub as of October 14, 2019. To the extent the allegations of Paragraph 107 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

108. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. To the extent the allegations of Paragraph 108 purport to quote or characterize the referenced documents, those documents, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

109. Defendants admit that Pornhub receives takedown requests from users, third parties, law enforcement, and the public. Any remaining or inconsistent allegations are denied.

110. To the extent Paragraph 110 purports to quote or characterize the referenced document and testimony, that document and transcript being in writing speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

111. To the extent Paragraph 111 purports to quote or characterize the referenced document or testimony, that document and transcript being in writing speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

112. Denied. To the extent Paragraph 112 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

113. Denied. To the extent Paragraph 113 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

114. Denied except Defendants admit that MG Freesites Ltd made no reports to NCMEC in 2019. To the extent Paragraph 114 purports to quote or characterize the referenced document, that document being in writing speaks for itself.

115. Defendants admit that Pornhub receives notification of suspected CSEM from users, third parties, law enforcement, and the public. Any remaining or inconsistent allegations are denied.

116. Defendants admit that the New York Post and the Mercury News each published articles on October 26, 2018. Those publications, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

117. Defendants admit that the Sunday Times published an article on November 3, 2019. That publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

118. Defendants admit that the Sunday Times published an article on November 3, 2019. That publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

119. Defendants admit that the Sunday Times published an article on November 3, 2019. That publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

Case 8:21-cv-00338-WLH-ADS Document 181-1 Filed 01/10/25 Page 143 of 330 Page ID #:4576

120. Defendants admit that a video uploaded to Pornhub by the individual identified in the referenced article was available for approximately two years, had 2,447 views, and has been removed from the website. To the extent paragraph 120 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

121. Paragraph 121 purports to quote or characterize the referenced document. That document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

122. Paragraph 122 purports to quote or characterize the referenced document. That document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

123. Defendants admit that Nicholas Kristof is a New York Times columnist and that he wrote the opinion article *The Children of Pornhub*. Any remaining or inconsistent allegations are denied.

124. Defendants admit that there are numerous advocacy groups dedicated to combatting child pornography on the internet. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the amount of resources used by these advocacy groups in any of their work. Any remaining or inconsistent allegations are denied.

125. Defendants admit that the Internet Watch Foundation is an organization whose stated goal is to eliminate child sexual abuse imagery online. To the extent Paragraph 125 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or

information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

126. Defendants admit that Traffickinghub is an advocacy group founded by Laila Mickelwait, the author of the document upon which Plaintiff relies for the majority of her allegations, and that Traffickinghub and Ms. Mickelwait's central purpose is to shut down Pornhub and MindGeek. Any remaining or inconsistent allegations are denied.

127. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

128. Paragraph 128 purports to quote or characterize the referenced document. That document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

129. To the extent Paragraph 129 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

130. Denied.

131. Denied. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

132. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof.

The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

133. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

134. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

135. Denied.

136. To the extent Paragraph 136 purports to quote or characterize the New York Times opinion article written by Nicholas Kristof, the article being in writing, speaks for itself. To the extent Paragraph 136 purports to quote or characterize a statement by Mastercard, that statement being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

137. To the extent Paragraph 137 purports to quote or characterize the referenced document, the document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

138. To the extent Paragraph 138 purports to quote or characterize the referenced document, the document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

139. Denied, except that Defendants admit that in December 2020 Pornhub removed all user-generated content from unverified user accounts on its website bringing the total number of videos available on Pornhub down from approximately 13.7 million to approximately 4 million. To the extent Paragraph 139 purports to quote or characterize the referenced document, the document being in writing speaks for itself.

140. Denied, except that Defendants admit that since mid-December 2020, MG Freesites Ltd does not allow content from any of the websites it operates to be downloaded. Any remaining or inconsistent allegations are denied.

141. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

142. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

143. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

144. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

145. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

146. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

147. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

148. Defendants admit that MG Freesites Ltd received a request on March 26, 2020 for the removal of four videos, that the videos were removed within hours and fingerprinted, that the user who uploaded the videos was banned, that the videos were reported to NCMEC, and that MG Freesites Ltd cooperated with law enforcement in its pursuit of the user who posted the videos. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the balance of the matters alleged. To the extent Paragraph 149 purports to quote or characterize an unidentified document, that document being in writing speaks for itself.

149. Denied. MG Freesites Ltd fingerprints content it is made aware of that includes suspected CSEM and endeavors to prevent the re-upload of such content by, among other things, comparing subsequent content sought to be uploaded against databases of previously removed and fingerprinted content.

150. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

151. Denied.

152. Denied.

153. The allegations of Paragraph 153 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 153 are denied.

## ANSWER TO CLASS ACTION ALLEGATIONS

154. Defendants admit that Plaintiff purports to being a class action and that Plaintiff purports to define the members in her purported class action. Defendants deny that a class action is appropriate. Any remaining or inconsistent allegations are denied.

155. Defendants admit that Plaintiff purports to being a class action and that Plaintiff purports to define the members in her purported class action. Defendants deny that a class action is appropriate. Any remaining or inconsistent allegations are denied.

156. The allegations of Paragraph 156 state legal conclusions and therefore do not require a response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

157. The allegations of Paragraph 157 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 157 are denied.

158. The allegations of Paragraph 158 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 158 are denied.

159. The allegations of Paragraph 159 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 159 are denied.

160. The allegations of Paragraph 160 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 160 are denied.

## **ANSWER TO FIRST CLAIM FOR RELIEF**

### **Trafficking Victims Protection Act**

### **18 U.S.C. §§ 1591, 1595**

161. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein. By way of further response, all of Plaintiff's claims should be dismissed for the reasons set forth in Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First

Amended Complaint with Prejudice (Dkt. # 45-1), their Reply Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint and Response to Plaintiff's Objections to Request for Judicial Notice (Dkt. #53) and in their Memorandum of Points and Authorities in Support of Defendants' Motion for Reconsideration of the Order Denying Defendants' Motion to Dismiss or, in the Alternative, for § 1292(b) Certification (Dkt. #73-1), as well as the Reply Memorandum filed in support of that motion (Dkt. #77). Since Plaintiff has not substantively amended her allegations in support of this claim, Defendants are not burdening the Court with a renewed motion as to it. Rather, Defendants incorporate by reference the reasons for dismissal set forth in the above-referenced filings and preserve all rights to appeal from the Court's September 3, 2021 Order Denying in Substantial Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #66) and otherwise relative to those arguments. Nothing in this pleading should be construed as a waiver of such rights.

162. The allegations of Paragraph 162 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 162 are denied.

163. Denied.

164. Denied.

165. Denied, except that Defendants admit that despite Pornhub's moderation process, content violating Pornhub's terms of service, including suspected CSEM, may make its way onto the website for public viewing. When content on Pornhub is flagged, the content is immediately examined and suspended immediately if the reviewer determines there is any risk that it might be potential CSEM. When content on Pornhub is reported as suspected CSEM using a content removal form or by a Trusted Flagger, and the report includes the URL, the content is automatically disabled before it even reaches a reviewer. In both cases, an investigation follows,

which includes examination of the documentation on file from the uploader, and possible requests for additional documents. If there is insufficient evidence to demonstrate that the individual depicted in the content was 18 or older at the time the content was produced, the content is permanently removed from the platform and protocols for reporting and protecting against future uploads are engaged.

166. Denied.

167. Denied.

168. Denied.

169. Denied.

170. Denied.

171. The allegations of Paragraph 171 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 171 are denied.

## ANSWER TO SECOND CLAIM FOR RELIEF

## Receipt and Distribution of Child Pornography

## 18 U.S.C. § 2252A

172. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

173. Denied.

174. Denied.

175. The allegations of Paragraph 175 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 175 are denied.

176. The allegations of Paragraph 176 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 176 are denied.

177. The allegations of Paragraph 177 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 177 are denied.

178. The allegations of Paragraph 178 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 178 are denied.

## ANSWER TO THIRD CLAIM FOR RELIEF

## Distribution of Private Sexually Explicit Materials, Cal. Civ. Code § 1708.85

179. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

180. Denied.

181. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

182. The allegations of Paragraph 182 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 182 are denied.

183. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

184. The allegations of Paragraph 184 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 184 are denied.

## ANSWER TO FOURTH CLAIM FOR RELIEF

## Violation of California's Unfair Competition Law ("UCL")

## Cal. Bus. & Prof. Code § 17200

185. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

186. The allegations of Paragraph 186 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 186 are denied.

187. Denied.

188. Denied.

189. Denied.

190. The allegations of Paragraph 190 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 190 are denied.

191. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

192. Denied.

193. Denied.

194. The allegations of Paragraph 194 state legal conclusions and therefore do not require a response. To the extent a response is required, Defendants acknowledge that Plaintiff is seeking restitution but deny that she is entitled to same. Defendants deny that they are liable for any alleged injuries and that Plaintiff is in any way entitled to damages or other relief. Any remaining or inconsistent allegations are denied.

**ANSWER TO FIFTH CLAIM FOR RELIEF**

**Violation of California's Trafficking Victims Protection Act**

**Cal. Civ. Code § 52.5**

195. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

196. The allegations of Paragraph 196 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 196 are denied.

197. The allegations of Paragraph 197 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 197 are denied.

198. Admitted insofar as MG Freesites Ltd operates websites that are available all over the country, including in California. Any remaining or inconsistent allegations are denied.

**ANSWER TO SIXTH CLAIM FOR RELIEF**

**Intentional Infliction of Emotional Distress**

199. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

200. The allegations of Paragraph 200 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 200 are denied.

201. The allegations of Paragraph 201 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 201 are denied.

202. The allegations of Paragraph 202 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 202 are denied.

203. The allegations of Paragraph 203 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 203 are denied.

204. The allegations of Paragraph 204 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 204 are denied.

**RESPONSE TO "PRAYER FOR RELIEF"**

Defendants deny that Plaintiff is entitled to the relief enumerated in the "PRAYER FOR RELIEF", including its subparts, or to any relief whatsoever.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendants demand a trial by jury on all issues so triable.

**STATEMENT OF AFFIRMATIVE DEFENSES**

Defendants undertake the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated below. As and for its affirmative and other defenses, Defendants state as follows:

**FIRST DEFENSE**

Plaintiff's Third Amended Complaint fails to state facts sufficient to constitute a claim or claims upon which relief can be granted against Defendants.

**SECOND DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by 47 U.S.C. § 230(c)(1) and (e)(3).

**THIRD DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by 47 U.S.C. § 230(c)(2).

**FOURTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the protections of the First and Fourteenth Amendments to the United States Constitution and any freedom of speech protections afforded by the California Constitution.

**FIFTH DEFENSE**

Plaintiff's claims against Defendant are barred, in whole or in part, by the doctrine of unclean hands.

**SIXTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the failure to join one or more necessary parties.

**SEVENTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, because any injuries Plaintiff suffered were not directly or proximately caused by any act or omission by Defendants.

**EIGHTH DEFENSE**

Plaintiff is not entitled to relief because the injuries alleged, if any, were caused by the intervening and/or unlawful acts of third parties.

**NINTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, because the alleged acts or omissions were not committed by agents or employees of Defendants or, to the extent Defendants' agents or employees did commit any of the alleged acts or omissions, it was outside the scope of authority conferred by Defendants and not ratified by Defendants.

**TENTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, because any damage, loss, or liability alleged by Plaintiff must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Defendants, including third parties such as Plaintiff's alleged traffickers, and others who may have published sexually explicit images of Plaintiff, under the principles of proportionate responsibility, equitable allocation, recoupment, set-off, and/or comparative fault.

**ELEVENTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the applicable statute of limitations.

**TWELFTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the doctrines of laches, waiver, or estoppel.

**THIRTEENTH DEFENSE**

None of MindGeek USA Inc., MindGeek S.à r.l., or 9219-1568 Quebec Inc., operate, manage, maintain, supervise or control the day-to-day operations of any website on which images of Plaintiff may have appeared, and therefore, are not liable for the Plaintiff's alleged damages.

**FOURTEENTH DEFENSE**

MG Freesites II Ltd and MG Content RT Ltd have been dissolved and their entire businesses were transferred to MG Freesites Ltd. Therefore, they are not liable for the Plaintiff's alleged damages.

**FIFTEENTH DEFENSE**

Plaintiff's claims against Defendants fail to establish that any officer, director, or managing agent of Defendants acted with malice, oppression, or fraud, or directed, knew, or approved of an employee's malice, oppression, fraud, or duress as required to justify the imposition of punitive damages under California Civil Code sections 3294 or 52.5(b).

**SIXTEENTH DEFENSE**

Plaintiff's claims against Defendant fail to establish that Defendants acted with intentional and outrageous conduct, as required to justify the imposition of punitive damages under federal common law.

**SEVENTEENTH DEFENSE**

With respect to Plaintiff's claims for punitive damages, Defendants specifically incorporate by reference any and all standards of limitation regarding the determination and/or enforceability of punitive damage awards which arose in the decisions of *BMW of No. America v. Gore*, 116 U.S. 1589 (1996); *Cooper*

*Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 438 (2003), and their progeny.

**EIGHTEENTH DEFENSE**

With respect to Plaintiff's claims for punitive damages, any such damages claims are in violation of and are barred by the Constitution of the United States and any relevant comparable state constitutional provisions, including but not limited to, the Due-Process and Equal Protection Clauses contained in the Fifth and Fourteenth Amendments; the Excessive Fines Clause of the Eighth Amendment; and the Tenth Amendment.

**NINETEENTH DEFENSE**

Defendants intend to rely upon any additional defenses that become available during the course of investigation and/or discovery and reserves the right to amend its Answer to assert those defenses.

WHEREFORE, Defendants request that Plaintiff's Third Amended Complaint be dismissed in its entirety with prejudice, that judgment be entered in favor of Defendants, that Defendants be awarded costs and, to the extent provided by law, attorneys' fee, and any such other relief as the Court may deem proper.

DATED: May 17, 2023

RESPECTFULLY SUBMITTED,

/s/ *Kathleen N. Massey*
KATHLEEN N. MASSEY (*admitted pro hac vice*)
DECHERT LLP

*Attorneys for Defendants*
MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES LTD (D/B/A PORNHUB), MG FREESITES II LTD, MG CONTENT RT LIMITED, AND 9219- 1568 QUEBEC, INC. (D/B/A MINDGEEK)

# PLAINTIFF'S EXHIBIT 69

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 70

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 71

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 72

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 73

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 74

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 75

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 76

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 77

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 78

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 79

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 80

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 81

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

JANE DOE on behalf of herself and all others similarly situated,

Plaintiff,

v.

MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),

Defendants.

Case No. 8:21-CV-00338-CJC-ADS

*Hon. Cormac J. Carney*

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6)**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Defendants MindGeek USA Inc., MindGeek S.à.r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd (collectively "Defendants") respond and object to the Topics of Examination set forth in Exhibit A of Plaintiff's Notice of Deposition Pursuant to Rule 30(b)(6) ("Topic or Topics").

Defendants make these responses and objections in good faith, based on presently available information and documentation, and without prejudice to Defendants' rights to conduct further investigation and utilize any additional evidence that may be developed. Defendants' discovery and investigations are ongoing and not complete as of the date of these responses and objections. Defendants do not waive any right to modify or supplement their responses and objections to any Topic and expressly reserve all such rights. Moreover, Defendants' response that it will testify to information is not an admission that such information is relevant or admissible. Defendants

reserve the right to contend that the requested information is inadmissible, irrelevant, immaterial, or otherwise objectionable.

**GENERAL OBJECTIONS AND OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

Defendants assert the following General Objections and Objections to Definitions and Instructions. Each response to a Topic is subject to, and is limited in accordance with, the following General Objections and Objections to Definitions and Instructions, which are incorporated therein as if fully set forth and are not waived or in any way limited by the Specific Responses and Objections set forth below.

1. Defendants object to the Topics, including the Definitions and Instructions, to the extent that they purport to impose obligations on Defendants that are broader than, inconsistent with, not authorized under, or not reasonable pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Central District of California (hereinafter, the "Applicable Rules"). Defendants will respond to Topics in accordance with the Applicable Rules.

2. Defendants object to producing or providing information that is protected from disclosure by the attorney-client privilege, the work product doctrine, joint-defense privilege, the self-investigative privilege, or any other legally recognized privilege, immunity, or exemption (collectively, "Privileged Information"). Privileged Information will not be knowingly disclosed. Any disclosure of Privileged Information in response to any Topic is inadvertent and not intended to waive any privileges or protections. Defendants reserve the right to demand that Plaintiff return or destroy any Privileged Information inadvertently produced, including all copies and summaries thereof. Defendants will withhold Privileged Information in response to the Topics.

3. Defendants object to the Topics, including the Definitions and Instructions, to the extent that they are overbroad or unduly burdensome, or call for the production of information or material

not relevant to any party's claim or defense and not proportional to the needs of the case because they are not limited to events or issues related to Plaintiff's claims, including but not limited to the extent they seek discovery regarding websites other than those on which Plaintiff alleges content depicting her was uploaded (Pornhub.com and RedTube.com).

4. Defendants object to the Topics, including the Definitions and Instructions, including but not limited to the definition of "You," "Your", or "MindGeek" on the grounds that they are overbroad, unduly burdensome, and not proportional to the needs of the case because they seek information about or that is in the possession, custody, or control not only of Defendants but also of "any corporate parent, subsidiary, or affiliate of any of the [Defendants], and any officer, employee, agent, representative, or person acting or purporting to act on behalf of any of the aforementioned entities, or any of their corporate parents, subsidiaries, or affiliated entities." Defendants will provide information in the possession, custody or control of the Defendants named in this lawsuit.

5. Defendants object to Plaintiff's definition of "Tube Websites" as unduly burdensome and not proportional to the needs of the case because it includes websites and brands that have nothing to do with any claim or defense in this action. Defendants will respond to this topic as if the term "Tube Websites" means Pornhub, RedTube, YouPorn, and Tube8 which were operated by Defendant MG Freesites Ltd.

6. Defendants object to the Topics of Examination, including the Definitions and Instructions, to the extent they purport to require Defendants to provide "all" information or "any" information relating to a given subject matter as overbroad, unduly burdensome, not proportional to the needs of the case.

7. Defendants object to the definition of "Employee" as overbroad, unduly burdensome and not proportional to the needs of the case to the extent it includes contractors, volunteers, interns, lobbyists, or "other agents and/or representatives" and further objects to the extent this definition purports to call for the production of information which is not in Defendants' possession, custody, or control.

8. Defendants object to the Topics, including the Definitions and Instructions, to the extent that they are overbroad or unduly burdensome, or call for the production of material not relevant to any party's claim or defense and not proportional to the needs of the case in that they seek information dating back ten years, which is not an appropriate time period tied to the claims at issue. Subject to and without waiving any objections, for Topics that may extend back to February 2011, Defendants will make reasonably diligent efforts to provide testimony dating back to that time.

9. With respect to all Topics, Defendants object to the extent the Topics are vague, ambiguous, overbroad, and not reasonably specific, and therefore do not provide Defendants with sufficient information to allow for preparation of a witness. Where Defendants agree to designate a witness on a Topic, Defendants understand that the witness will be prepared to speak on that Topic generally, such as processes and procedures related to the Topic, decisions generally made, and/or actions generally taken related to the Topic. Defendants will not produce witnesses to testify regarding every document, conversation, communication, potential action, or idea on any Topic because that is not the appropriate scope of a corporate representative deposition.

## SPECIFIC RESPONSE AND OBJECTIONS

**TOPIC NO. 1:**

The operations of MindGeek's Tube Websites, including but not limited to identification of all Tube Websites owned by MindGeek, processes for how content is uploaded, displayed, downloaded, and removed from each Tube Website, including how MindGeek documents such

activities, and processes for content being uploaded or otherwise propagated from one Tube Website to another Tube Website.

**RESPONSE TO TOPIC NO. 1:**

In addition to the General Objections set forth above, Defendants further object to this Topic as compound and overly broad. Defendants further object that the term "operations" and the phrase "documents such activities" are vague and ambiguous. Defendants further object to this Topic because the information it seeks is more appropriately sought through another form of discovery that is less burdensome and more appropriate for the information sought.

Subject to and without waiving any and all objections, Defendants have produced documents identifying their tube sites. Interpreting the remainder of this Topic as related to the technical operations of Defendants' tube sites, Defendants will produce Ibrahim Sabbagh who can testify as to the processes for how content is uploaded, displayed, downloaded, and removed from Pornhub.com and RedTube.com, including how such activities are documented, and the processes for content being uploaded or otherwise propagated from one tube site to another.

**TOPIC NO. 2:**

MindGeek's policies and practices regarding user accounts, including requirements for users to create an account for Tube Websites, requirements for users to view content on Tube Websites, age and identity verification policies and practices, and policies and practices to ban user accounts.

**RESPONSE TO TOPIC NO. 2:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case as policies and practices regarding user accounts and "requirements for users to view content" on Defendants' tube sites are not issues in this case.

Subject to and without waiving any and all objections, and based on meeting and conferring with Plaintiff, Defendants will produce Andreas Ignatiou who can testify regarding Defendants' requirements for creating user or uploader accounts on Pornhub and Redtube, age and identity verification policies and practices for uploaders on Pornhub and Redtube, and policies and practices to ban user accounts.

**TOPIC NO. 3:**

The use and development of MindGeek's virtual private network (VPN) service.

**RESPONSE TO TOPIC NO. 3:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case. There are no allegations in this case that Plaintiff's content was uploaded through use of MindGeek's VPN service. Moreover, the technological development of MindGeek's VPN service is unrelated to any claim at issue in this litigation.

Subject to and without waiving any and all objections, Defendants are willing to meet and confer with Plaintiff regarding the scope of this Topic.

**TOPIC NO. 4:**

The use and development of Tor Browser and TOR Onion Services for MindGeek's Tube Websites.

**RESPONSE TO TOPIC NO. 4:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this

case. Defendants further object to the extent this Topic purports to suggest that Defendants developed the Tor Browser or Tor Onion Services.

Subject to and without waiving any and all objections, Defendants do not use Tor Onion Services and therefore will not produce a witness on this topic. Defendants will produce Ibrahim Sabbagh who can testify regarding Defendants' tube sites availability on Tor Browser.

**TOPIC NO. 5:**

The creation, development, and application of MindGeek's terms of service, including any changes in terms of service.

**RESPONSE TO TOPIC NO. 5:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case as it is not appropriately limited to the terms of service related to allegations in this case. Defendants also object to the extent this Topic calls for testimony protected from disclosure by the attorney-client privilege or work product doctrine regarding the creation and development of Defendants' terms of service.

Subject to and without waiving any and all objections, Defendants will produce Andreas Ignatiou and Lauren Herbert Franklin who can testify regarding the creation, development and application of MindGeek's terms of service regarding the prohibition on uploading underage content to Pornhub.com and RedTube.com.

**TOPIC NO. 6:**

MindGeek's policies, manuals, practices, processes, and rules for moderating, monitoring, formatting, reviewing, screening or removing content on its Tube Websites; the identity and responsibilities of employees involved in creating and implementing those policies, manuals,

practices, processes, and rules; and actions taken to implement or comply with those policies, manuals, practices, processes, and rules.

**RESPONSE TO TOPIC NO. 6:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case to the extent it seeks testimony regarding formatting of content. Defendants further object on the grounds that the terms "policies," "manuals," "practices," "processes," "rules," "moderating," "monitoring," "reviewing," and "screening," are vague, undefined and duplicative.

Subject to and without waiving any and all objections, Defendants will produce Andreas Ignatiou who can testify regarding MindGeek's policies and procedures for moderating and removing content on Pornhub.com and RedTube.com and Moustapha Moughrabi who can testify regarding MindGeek's policies and procedures for monitoring or auditing content on Pornhub.com and RedTube.com. These witnesses will also testify regarding the identity and responsibilities of employees involved in creating and implementing those policies and procedures, and actions taken to implement or comply with those policies and procedures.

**TOPIC NO. 7:**

MindGeek's contracts, agreements, non-disclosure agreements, and compensation for moderators responsible for reviewing content uploaded to MindGeek's Tube Websites.

**RESPONSE TO TOPIC NO. 7:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case.

**TOPIC NO. 8:**

MindGeek's policies and practices for hiring, retaining, training, and terminating moderators responsible for reviewing content uploaded to MindGeek's Tube Websites.

**RESPONSE TO TOPIC NO. 8:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that information regarding "hiring" is overly broad, unduly burdensome, and not proportional to the needs of this case.

Subject to and without waiving any and all objections, Defendants will produce Andreas Ignatiou who can testify regarding MindGeek's policies and practices for training and evaluating the performance of moderators responsible for moderating content uploaded to Pornhub.com and RedTube.com.

**TOPIC NO. 9:**

MindGeek's policies and practices concerning human moderators reviewing "every single piece of content" posted to its Tube Websites, as stated by Mr. Feras Antoon before the Canadian Parliament on February 5, 2021.

**RESPONSE TO TOPIC NO. 9:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that Mr. Antoon's comments before the Canadian Parliament on February 5, 2010, speak for themselves. In addition, this Topic is duplicative of Topic No. 6.

**TOPIC NO. 10:**

The meaning of each field of information contained within the following documents produced by MindGeek in this matter:

MindGeek_00336419;
MindGeek_00336420

**RESPONSE TO TOPIC NO. 10:**

Subject to and without waiving any and all objections, Defendants will produce Lauren Franklin who can testify regarding the information contained within MindGeek_00336419 and MindGeek_00336420.

**TOPIC NO. 11:**

MindGeek's policies and practices regarding technology-assisted content moderation, including but not limited to the use and/or development and implementation dates of the following technologies on its Tube Websites described at https://help.pornhub.com/hc/en-us/categories/4419836212499-Our-Commitment-to-Trust-and-Safety:

CSAI Match
Google Content Safety API
PhotoDNA
MediaWise
Safer
Instant Image Identifier
NCMEC Hash Sharing
Internet Watch Foundation Hash List
Safeguard
MindGeek's proprietary age estimation technology.

**RESPONSE TO TOPIC NO. 11:**

In addition to the General Objections set forth above, Defendants further object to the extent this Topic seeks testimony regarding the development of any of the identified technological tools, especially those that Defendants did not develop. Subject to and without waiving any and all objections, Defendants will produce Lauren Herbert Franklin who can testify regarding the use and implementation of the identified technological tools on Pornhub.com and RedTube.com. Defendants are willing to meet and confer with Plaintiff regarding whether or to what extent additional testimony specific to the development of Defendants' proprietary technology is necessary.

**TOPIC NO. 12:**

The internal or external review or audit of MindGeek's catalog of content for CSAM, non-consensual, prohibited, or illegal content, including the process by which MindGeek identified and labeled the content in MindGeek_00336419 and MindGeek_00336420 with the TOS8 violation tag.

**RESPONSE TO TOPIC NO. 12:**

In addition to the General Objections set forth above, Defendants object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case to the extent the Topic calls for information on non-consensual, prohibited, or illegal content other than CSAM. Defendants further object to the terms "external review" and "audit" as vague and undefined. Defendants further object to this Topic on the grounds that it assumes facts not in evidence, specifically that content identified in MindGeek_00336419 and MindGeek_00336420 was identified as part of an "external review or review." Defendants further object to this Topic as duplicative of Topic 6's request for testimony on monitoring or auditing and Topic 10.

Subject to and without waiving any and all objections, and after meeting and conferring with Plaintiff, Defendants will produce Andreas Ignatiou and Lauren Herbert Franklin who can testify regarding efforts to review or audit content for CSAM in 2020 and 2021.

**TOPIC NO. 13:**

The basis for the decision to remove all unverified content from MindGeek's Tube Websites in or about December 2020 and the steps taken to remove that content.

**RESPONSE TO TOPIC NO. 13:**

Subject to and without waiving any and all objections, Defendants will produce a witness who can testify regarding MindGeek's decision to remove unverified content from Pornhub.com and RedTube.com and the steps taken to remove that content.

**TOPIC NO. 14:**

MindGeek's knowledge of CSAM content on its Tube Websites.

**RESPONSE TO TOPIC NO. 14:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is vague, ambiguous, overbroad, unduly burdensome, and calls for a legal conclusion. Defendants further respond that they are willing to meet and confer with Plaintiff regarding the scope of this Topic.

**TOPIC NO. 15:**

MindGeek's knowledge of and response to the *New York Times* article "The Children of Pornhub" by Nicholas Kristof dated December 4, 2020, including any changes in policies or practices following publication of the article.

**RESPONSE TO TOPIC NO. 15:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it assumes facts not in evidence, specifically that any policies or practices were changed following publication of the article. Defendants also object to the extent this Topic calls for testimony protected from disclosure by the attorney-client privilege or work product doctrine. Defendants also object to the Topic as duplicative to the extent it seeks information regarding policies and practices which is covered by Topic No. 6.

Subject to and without waiving any and all objections, Defendants will produce a witness Braden Bulloch who can testify to MindGeek's knowledge of and response to the *New York Times* article "The Children of Pornhub" by Nicholas Kristof dated December 4, 2020.

**TOPIC NO. 16:**

The acquisition of MindGeek by Ethical Capital Partners, including communications with Ethical Capital Partners concerning the prevention, existence, identification, and removal of CSAM from MindGeek's Tube Websites.

**RESPONSE TO TOPIC NO. 16:**

In addition to the General Objections set forth above, Defendants also object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for documents that are neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case given that all communications with ECP significantly post-date the filing of this Action. Defendants also object to the Topic as duplicative of Topic No. 6.

**TOPIC NO. 17:**

MindGeek's testimony, letters, and production of documents to the Canadian Parliament's Standing Committee on Access to Information, Privacy, and Ethics in February 2021.

**RESPONSE TO TOPIC NO. 17:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case to the extent it seeks testimony about an investigation by a foreign government body. Defendants also object on the grounds that MindGeek's testimony, letters, and production of documents to the Canadian Parliament's Standing Committee are documents that speak for themselves and have been produced in this action or are publicly available. To the extent this Topic requests testimony regarding the preparation of documents, communications, or testimony provided to the Canadian Parliament's Standing Committee, Defendants object on the grounds such information is protected from disclosure by the attorney-client privilege and attorney work product doctrines.

**TOPIC NO. 18:**

MindGeek's communications with and reporting policies and practices to the National Center for Missing & Exploited Children.

**RESPONSE TO TOPIC NO. 18:**

In addition to the General Objections set forth above, Defendants also object on the grounds that this Topic is overbroad, unduly burdensome, and calls for documents that are neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case to the extent it seeks information regarding communications beyond those related to any content depicting Plaintiff. Defendants further object to the extent information sought by this Topic implicates the production of personal identifying information and sensitive personal information concerning individuals who are not parties to this case. Defendants also object to this Topic to the extent it purports to seek testimony regarding specific communications because that is not the appropriate scope of a corporate representative deposition. Subject to and without waiving any and all objections, Defendants will produce Lauren Herbert Franklin who can testify regarding MindGeek's policies and practices regarding reporting to and general process for communicating with the National Center for Missing & Exploited Children in 2020 and 2021.

**TOPIC NO. 19:**

MindGeek's communications with and reporting policies and practices to law enforcement, including the Department of Justice, Federal Bureau of Investigation, police, and any other law enforcement agency in the United States or international law enforcement agency.

**RESPONSE TO TOPIC NO. 19:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case to the extent it is not related to any law enforcement investigation into the content that Plaintiff

alleges depicts her. Defendants further object to the extent information sought by this Topic implicates the production of personal identifying information and sensitive personal information concerning individuals who are not parties to this case. Defendants also object to this Topic to the extent it purports to seek testimony regarding specific communications because that is not the appropriate scope of a corporate representative deposition.

Subject to and without waiving any and all objections, Defendants will produce Lauren Herbert Franklin who can testify regarding MindGeek's policies and practices for interacting with, responding to inquiries from, and generally communicating with law enforcement.

**TOPIC NO. 20:**

MindGeek's communications with legislators and regulators in the United States and Canada regarding CSAM on its Tube Websites.

**RESPONSE TO TOPIC NO. 20:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case, including to the extent it is not properly tailored to such communications in the United States.

Subject to and without waiving any and all objections, to the extent there were any communications with legislators or regulators in the United States regarding CSAM on Defendants' tube sites, Defendants will produce David Cooke on this Topic.

**TOPIC NO. 21:**

MindGeek's communications with third parties regarding CSAM on its Tube Websites.

**RESPONSE TO TOPIC NO. 21:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case. Defendants further object to the term "third parties" as vague, ambiguous, and undefined. Defendants also object to this Topic to the extent it purports to seek testimony regarding specific communications because that is not the appropriate scope of a corporate representative deposition.

**TOPIC NO. 22:**

MindGeek's Model Program, including revenue generation for videos through the Model Program.

**RESPONSE TO TOPIC NO. 22:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case because Plaintiff does not allege that she was a member of the Model Program or depicted in content uploaded by a member in that program.

Subject to and without waiving any and all objections, Defendants will produce Braden Bulloch who can testify regarding the monetization of videos as part of the Model Program.

**TOPIC NO. 23:**

MindGeek's TrafficJunky service, including revenue streams from TrafficJunky advertisements, how TrafficJunky optimizes ad placement, how TrafficJunky bills advertisers, metrics used to set pricing for ad campaigns, and the pricing for ad campaigns.

**RESPONSE TO TOPIC NO. 23:**

In addition to the General Objections set forth above, Defendants further object to the term "TrafficJunky" service as vague and ambiguous. Defendants also object to this Topic on the grounds that information related to how TrafficJunky bills advertisers, the metrics used to set pricing for ad campaigns, and the pricing for ad campaigns is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case. Subject to and without waiving any and all objections, Defendants will produce Graham Collie who can testify regarding the general business of TrafficJunky including TrafficJunky's revenue streams and procedures regarding ad placement.

**TOPIC NO. 24:**

MindGeek's monthly advertising revenue for each of its Tube Websites.

**RESPONSE TO TOPIC NO. 24:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case. Defendants further object to this Topic because the information it seeks is more appropriately sought through another form of discovery that is less burdensome and more appropriate for the information sought. In fact, Plaintiffs have made a request to Defendants already to produce the information that is the subject of this Topic and Defendants have produced responsive documents for Pornhub.com and RedTube.com.

**TOPIC NO. 25:**

MindGeek's monthly viewership metrics for each of its Tube Websites, including (a) the number of users who visit each Tube Website each month; (b) the total amount of time users spent on each Tube Website in each month; (c) the average number of pages visited per visit on each Tube Website for each month; and (d) the average duration of each visit on each Tube Website for each month.

**RESPONSE TO TOPIC NO. 25:**

In addition to the General Objections set forth above, Defendants further object to this Topic because the information it seeks is more appropriately sought through another form of discovery that is less burdensome and more appropriate for the information sought. In fact, Plaintiffs have made a request to Defendants already to produce the information that is the subject of this Topic and Defendants have produced responsive documents for Pornhub.com and RedTube.com.

**TOPIC NO. 26:**

MindGeek's document retention policies and practices; the steps taken to preserve documents and information potentially relevant to this or any related litigation or investigation; the steps taken to locate and produce documents and information in response to Plaintiff's discovery requests or any other litigation or investigative preservation notice, subpoena, or information request; and documents and information responsive to those requests that once existed but no longer do and, if so, why.

**RESPONSE TO TOPIC NO. 26:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the ground that it calls for information protected by attorney-client privilege and attorney work product. Defendants also object to this Topic on the grounds that it is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case because information, documents and discovery requests related to any other litigation or investigation are unrelated and have no relationship to this case.

**TOPIC NO. 27:**

MindGeek's storage, location, and access to its internal document filing system and central repositories, including as they relate to financial statements, TrafficJunky, ModelHub, manuals and guidelines for content moderators, CSAM policies and practices, and terms and service for each Tube Site.

**RESPONSE TO TOPIC NO. 27:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that the terms "storage," "location" and "access" are vague and undefined. Defendants also object to this Topic on the grounds that is overbroad, unduly burdensome, and calls for information that is neither relevant to the claims or defenses at issue in this case nor proportional to the needs of this case because Plaintiff does not allege that she was a member of the Model Program or depicted in content uploaded by a member in that program and Defendants' financial statements are neither relevant nor proportional.

Defendants are willing to meet and confer with Plaintiff to discuss the scope of this Topic.

**TOPIC NO. 28:**

The factual bases for the affirmative defenses asserted by MindGeek in its Answer to Plaintiff's Third Amended Complaint and any other of MindGeek's defenses.

**RESPONSE TO TOPIC NO. 28:**

In addition to the General Objections set forth above, Defendants further object to this Topic on the grounds that it is as premature as discovery is still ongoing, and Plaintiff has not yet produced significant documents and information pertinent to Defendants' defenses. Defendants also object to this Topic on the grounds that it calls for legal conclusions, information protected by attorney-client privilege and attorney work product.

Dated: August 3, 2023

Respectfully submitted,

DECHERT LLP

*s/Kathleen N. Massey*
KATHLEEN N. MASSEY (admitted pro hac vice)
kathleen.massey@dechert.com
DECHERT LLP

Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

BENJAMIN SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

**CERTIFICATE OF SERVICE**

I certify that on this date, I caused a true and correct copy of the foregoing to be served by electronic mail on all counsel in this case.

DATED: August 3, 2023

*s/Michelle Hart Yeary*
Michelle Hart Yeary

# PLAINTIFF'S EXHIBIT 82

# INTENTIONALLY LEFT BLANK

# PLAINTIFF'S EXHIBIT 83

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 84

Case 8:21-cv-00338-CJC-ADS Document 31 Filed 05/03/21 Page 1 of 37 Page ID #:181

BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
MARK S. CHEFFO (*pro hac vice forthcoming*)
mark.cheffo@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*
MINDGEEK USA INCORPORATED,
MINDGEEK S.A.R.L., MG FREESITES
LTD (D/B/A PORNHUB), MG FREESITES II
LTD, MG CONTENT RT LIMITED,
AND 9219- 1568 QUEBEC, INC. (D/B/A MINDGEEK)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

JANE DOE on behalf of herself and all other similarly situated,
Plaintiffs,

v.

MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES LTD (D/B/A PORNHUB), MG FREESITES II LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),
Defendants.

CASE NO. 8:21-CV-00338-CJC-ADS

Judicial Officer: Cormac J. Carney

**DEFENDANTS' ANSWER AND JURY DEMAND TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants MindGeek USA Inc., MindGeek S.à r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd (collectively "Defendants"), by and through their undersigned counsel, hereby respond to Plaintiff's First Amended Complaint ("FAC") as follows:

**INTRODUCTORY STATEMENT**

Many of the allegations of the FAC are vague, conclusory, and/or contain terms which are undefined and susceptible to different meanings. In particular, the FAC is replete with references to, summaries of, and purported quotations from various documents, including newspaper articles, congressional testimony, and an unsubstantiated advocacy presentation purporting to discuss and/or characterize activity that occurred on one or more of the websites operated by MG Freesites Ltd. Because much of the information concerning this alleged activity is anonymized, incomplete, and largely concerns a database of millions of pieces of content, Defendants reserve the right to amend and/or supplement this Answer to the extent further investigation or discovery reveals additional information.

The comments and objections in this Introductory Statement are incorporated into each numbered paragraph of this Answer.

**ANSWER TO ALLEGATIONS REGARDING THE NATURE OF THE ACTION**

1. Defendants acknowledge that Plaintiff is seeking to maintain a class action for damages and injunctive relief but deny that she is entitled to same. Plaintiff's claims, being in writing, speak for themselves. Defendants deny that they are liable for any alleged injuries and that Plaintiff is in any way entitled to damages or other relief. Any remaining or inconsistent allegations are denied.

2. Denied.

3. Denied. To the extent the allegations of Paragraph 3 contain excerpts of an online discussion, those excerpts are incomplete, are out of context, and do not

address age verification of individuals appearing in content on any websites operated by MG Freesites Ltd.

4. Denied.

5. The allegations of Paragraph 5 state legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Paragraph 5 fairly characterizes the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Any remaining or inconsistent allegations are denied.

**ANSWER TO ALLEGATIONS REGARDING THE PARTIES**

6. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

7. The allegations of Paragraph 7 state legal conclusions and/or are not directed to Defendants and therefore do not require a response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

8. Defendants admit that MindGeek USA Incorporated is a corporation organized and existing under the laws of the state of Delaware, with an established place of business in California. MindGeek USA Incorporated's registered agent for service of process in the State of California is CT Corporation System. MindGeek USA Incorporated is an indirect subsidiary of MindGeek S.à r.l. Any remaining or inconsistent allegations are denied.

9. Defendants admit that MindGeek S.à r.l. is a foreign holding company organized and existing under the laws of Luxembourg with its sole place of business in Luxembourg. Any remaining or inconsistent allegations are denied.

10. Defendants admit that MG Freesites Ltd is a private limited company incorporated in Cyprus and is an indirect subsidiary of MindGeek S.à r.l. Any remaining or inconsistent allegations are denied.

11. Denied. As of December 10, 2020, MG Freesites II Ltd was dissolved. The entire business of MG Freesites II Ltd was transferred to MG Freesites Ltd.

12. Defendants admit that MG Content RT Limited is a company organized under the laws of Ireland. Any remaining or inconsistent allegations are denied.

13. Defendants admit that 9219-1568 Quebec, Inc. is a company organized and existing under the laws of the Province of Quebec with its principal place of business in Montreal, Canada. Any remaining or inconsistent allegations are denied.

14. Defendants admit that Plaintiff refers in the FAC to MindGeek USA Incorporated, MindGeek S.à r.l., MG Freesites Ltd, MG Freesites II, Ltd, 9219-1568 Quebec Inc., MG Content RT Ltd, and all of their parents, subsidiaries and affiliates as "Defendants" or "MindGeek." It is denied that such characterization is reasonable, accurate, or appropriate and also denied that unidentified "parents, subsidiaries and affiliates" may be defined as part of "MindGeek." Defendants do not file this Answer on behalf of any entities other than those specifically named as parties hereto.

15. Denied.

16. The allegations of Paragraph 16 state legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of Plaintiff's allegations regarding her knowledge.

**ANSWER TO ALLEGATIONS REGARDING JURISDICTION AND VENUE**

17. The allegations of Paragraph 17 state legal conclusions to which no response is required.

18. The allegations of Paragraph 18 state legal conclusions to which no response is required.

19. The allegations of Paragraph 19 state legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 19 are denied with respect to MindGeek S.à r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd.

20. Defendants admit that MindGeek USA Incorporated is a corporation organized and existing under the law of the state of Delaware that has a place of business at 21800 Oxnard Street, Suite 150, Woodland Hills, CA 91367. Defendants also admit that based on information available from May 2019 Los Angeles, California was at that time the fourth highest city for daily traffic to Pornhub. Defendants admit that MG Freesites Ltd operates websites that host millions of videos and images that may be viewed in California. Any remaining or inconsistent allegations are denied.

21. The allegations of Paragraph 21 state legal conclusion to which no response is required. To the extent a response is required, Defendants admit that MindGeek S.à r.l. and MindGeek USA Inc. were defendants in *Preservation Technologies, LLC v. MindGeek USA, Inc. and MindGeek S.A.R.L.*, Case No. 2:17-cv—08906-DOC-JPR (C.D. Cal.).

22. The allegations of Paragraph 22 state legal conclusions to which no response is required.

23. The allegations of Paragraph 23 state legal conclusions to which no response is required. To the extent a response is required, Defendants admit that MindGeek USA Inc. maintains a place of business in California. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding where the events giving rise to Plaintiff's claims occurred.

**ANSWER TO ALLEGATIONS OF FACT**

24. Defendants admit that CSEM is a global problem. To the extent the allegations of Paragraph 24 purport to quote or characterize the document

referenced, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

25. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. To the extent the allegations of Paragraph 25 purport to quote or characterize the document referenced, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

26. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

27. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. To the extent the allegations of Paragraph 27 purport to quote or characterize an unidentified document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

28. The allegations of Paragraph 28 purport to quote or characterize the referenced document. That document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

29. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the link between sexual exploitation and pornographic videos. To the extent the allegations of Paragraph 29 purport to quote or characterize an article by Melissa Farley, that article, being in writing speaks for

itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

30. Defendants have a zero tolerance policy for CSEM. Defendants are unequivocally committed to combating CSEM and have instituted an industry-leading trust and safety policy to identify and eradicate illegal material from the community. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 30. To the extent the allegations of Paragraph 30 purport to quote or characterize the referenced study, that study, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

31. Defendants admit that Congress passed the TVPA in 2000 and deny the remaining allegations of Paragraph 31.

32. Defendants admit that Congress passed the TVPRA in 2003. The remaining allegations of Paragraph 32 state legal conclusions to which no response is required.

33. Defendants admit that Congress amended the TVPRA in 2008. The remaining allegations of Paragraph 33 state legal conclusions to which no response is required. To the extent the allegations of Paragraph 33 purport to quote or characterize the TVPRA, that document, being in writing, speaks for itself. To the extent a response is required, Defendants deny that Paragraph 33 fairly characterizes the TVPRA.

34. The allegations of Paragraph 34 state legal conclusion to which no response is required. To the extent the allegations of Paragraph 34 purport to quote or characterize the TVPRA, that document, being in writing, speaks for itself. To the extent a response is required, Defendants deny that Paragraph 34 fairly characterizes the TVPRA.

35. Denied.

36. Defendants admit that Congress passed the Allow States and Victims to Fight Online Sex Trafficking/Stop Enabling Sex Traffickers Act ("FOSTA/SESTA") in 2018. To the extent the allegations of Paragraph 36 purport to quote or characterize the referenced article or Section 230, those documents, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegation are denied.

37. The allegations of Paragraph 37 state legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Paragraph 37 fairly characterizes FOSTA/SESTA.

38. Defendants admit that they are privately held companies. Defendants also admit that MG Freesites Ltd operates adult entertainment websites, including Pornhub, RedTube, and YouPorn. Any remaining or inconsistent allegations are denied.

39. Defendants admitted that the quoted language is an excerpt from a letter to the Canadian Parliament and that that letter, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

40. Admitted, except that to the extent the allegations of Paragraph 40 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself.

41. Defendants admit that in 2019, the United States was the country with the highest daily traffic to Pornhub and that based on information from May 2019, Los Angeles, California was at that time the city with the fourth highest daily traffic to Pornhub. Any remaining or inconsistent allegations are denied.

42. Defendants admitted that the quoted language is an excerpt from a letter to the Canadian Parliament and that that letter, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

43. Defendants admit Pornhub had approximately 13,740,000 adult entertainment videos in its free searchable library on or around December 1, 2020. Any remaining or inconsistent allegations are denied.

44. Defendants admit that Pornhub, operated by MG Freesites Ltd, is considered a "tube site," meaning Pornhub allows lawful content to be uploaded from verified uploaders. Defendants also admit that account holders are able to comment on content on Pornhub. Any remaining and inconsistent allegations are denied.

45. Denied.

46. Denied.

47. Denied.

48. Defendants admit that Pornhub has a Model Program. To become a member of the Model Program, an individual must become a verified uploader which requires that individual to: (i) create a user name and password, provide an email address, and agree to the site's terms of service, including the site's privacy policy; (ii) provide government-issued identification and a set of live photographs of himself or herself (i.e. one taken in real time by the computer or smartphone's camera); and (iii) agree to the term of service that states that the user is at least 18 years old by checking an opt-in box during the user-verification process. Members of Pornhub's Model Program who have complied with all the requirements for becoming a verified uploader may upload lawful content of themselves as free-to-view videos that earn ad revenue. At the time of upload, the Model Program member must confirm that (i) they have the consent of those depicted in the content and (ii) the uploader has collected one piece of photo ID from any additional

performer who appears in the video as well as a photo of the additional performer holding their ID. Plaintiff does not allege that she or her ex-boyfriend were members of Pornhub's Model Program. Any remaining or inconsistent allegations are denied.

49. Denied. Defendants admit that to become a member of Pornhub's Model Program an individual must be a verified uploader. To become a verified uploader an individual must: (i) create a user name and password, provide an email address, and agree to the site's terms of service, including the site's privacy policy; (ii) provide government-issued identification and a set of live photographs of himself or herself (*i.e.* one taken in real time by the computer or smartphone's camera); and (iii) agree to the term of service that states that the user is at least 18 years old by checking an opt-in box during the user-verification process. To the extent the allegations of Paragraph 49 purport to quote or characterize an unidentified document, that document, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

50. Denied.

51. Denied.

52. Denied. Defendants admit that one step in the process to become a Pornhub Model Program member requires an individual to provide a set of live photographs of himself or herself (*i.e.* one taken in real time by the computer or smartphone's camera). But that is not the step in the process that confirms the age of the applicant. A Model Program applicant must also provide government-issued identification and agree to the term of service that states that the user is at least 18 years old by checking an opt-in box during the user-verification process. To the extent the allegations of Paragraph 52 purport to quote or characterize an unidentified document, that document, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Defendants admit that since mid-December 2020, MG Freesites Ltd does not allow content from any of the websites it operates to be downloaded, with the exception of paid downloads of lawful content posted by verified uploaders who have provided express consent to having their content downloaded. The limitations on the downloading of content are designed to prevent inappropriate content being re-uploaded to Defendants' websites or further disseminated by third parties. Defendants also admit that all content uploaded to Pornhub is screened using automated detection technologies including fingerprinting tools that rely on a unique digital fingerprint to match a video or photograph to those already identified in databases including suspected CSEM. Those tools include YouTube's CSAI Match, Microsoft's Photo DNA, Vobile's MediaWise, and MindGeek's own tool, Safeguard. Any suspected CSEM identified by Pornhub's moderation process or as a result of a flag or take down request is fingerprinted using MindGeek's fingerprinting tools, and the digital fingerprint is transmitted to Microsoft, YouTube, and Vobile to be added to their databases. The fingerprinting process prevents the same content from being uploaded to Pornhub and any third-party platforms that use these technologies. Defendants lack knowledge or information sufficient to form a belief as to the truth of allegations regarding what any individual did with the content they downloaded. Any remaining or inconsistent allegations are denied.

58. Defendants admit that Pornhub account holders can send each other private messages and can create folders that can be shared with other Pornhub account holders. Folders can only contain content that has been through Pornhub's moderation process. Defendants lack knowledge or information sufficient to form a

belief as to the truth of the remaining allegations. To the extent the allegations of Paragraph 58 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Further, the author of that document, Laila Mickelwait, is the founder of Traffickinghub and also the spokesperson for Exodus Cry, a far-right organization that opposes legal pornography and which has been disavowed by media outlets and other organizations. The document itself is an advocacy piece prepared by Ms. Mickelwait in her admitted crusade to shut down Pornhub and MindGeek. Any remaining or inconsistent allegations are denied.

59. Defendants admit that the VPNHUB app was created and that the use of cryptocurrency is permitted on Pornhub. To the extent the allegations of Paragraph 59 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

60. Defendants admit that a tor site was created. To the extent the allegations of Paragraph 60 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

61. Defendants admit that verified uploaders are allowed to upload to Pornhub lawful content that complies with Pornhub's terms of service. To the extent that Paragraph 61 purports to quote from an interview given by Fabian Thylmann in 2017, Mr. Thylmann was not affiliated with Pornhub or MindGeek at that time and was not speaking on behalf of any Defendant. Mr. Thylmann's interview speaks for itself. Defendants lack knowledge or information sufficient to form a belief

regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

62. Paragraph 62 purports to quote from an interview given by Fabian Thylmann in 2017. Mr. Thylmann was not affiliated with Pornhub or MindGeek at that time and was not speaking on behalf of any Defendant. That interview speaks for itself. Any remaining or inconsistent allegations are denied.

63. Denied.

64. Denied. Content that is uploaded to Pornhub is not automatically uploaded to any other MindGeek website or mobile application, except Thumbzilla.com. Thumbzilla.com is not a tube site; it has never been possible for users to upload directly to that website. In addition, verified uploaders who are members of the Model Program can opt to have their content uploaded to other sites during the upload process.

65. Denied.

66. Denied.

67. Defendants admit that account holders can opt to subscribe to premium websites that offer access to content that is different from the content available on free sites. To the extent the allegations of Paragraph 67 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

68. Defendants admit that advertisements appear on websites operated by MG Freesites Ltd. To the extent the allegations of Paragraph 68 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief

Case 8:21-cv-00338-WLH-ADS Document 318-2 Filed 05/08/24 Page 208 of 330 Page ID #:10194

regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

69. Defendants admit that revenue is generated from advertisements placed on websites operated by MG Freesites Ltd. Any remaining or inconsistent allegations are denied.

70. Denied.

71. Denied except that Defendants admit that members of Pornhub's Model Program who have complied with all of the requirements for becoming a verified uploader and who have at the time of upload (i) confirmed they have the consent of those depicted in the video and (ii) have produced one piece of photo ID from any additional performer who appears in the video as well as a photo of the additional performer holding their ID are allowed (a) to sell the video on Modelhub provided it is lawful and complies with Pornhub's terms of service, with Pornhub receiving a portion of the proceeds from such sales; (b) to allow the video available for sale on Modelhub to also be viewable on Pornhub Premium for which the member receives per-view compensation; (c) to create a subscription service, known as a Fan Club, where members can offer subscribers exclusive lawful content that complies with Pornhub's terms of service, with Pornhub receiving 20% of the subscription fees; and (d) to receive tips from Pornhub account holders, with Pornhub receiving 20%. To the extent the allegations of Paragraph 71 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

72. Defendants admit that revenue is generated from advertisements that appear on websites operated by MG Freesites Ltd. Further, members of Pornhub's Model Program who have complied with all the requirements for becoming a verified uploader may upload lawful content of themselves that complies with

Pornhub's terms of service as free-to-view videos that earn ad revenue. Defendants also admit that subscription fees are collected for access to premium websites. Defendants also admit that in and around December 2020, Visa, Mastercard, and Discover stopped processing transactions involving Pornhub and that Pornhub removed all user-generated content on its site from unverified user accounts, which amounted to approximately 10 million videos. To the extent the allegations of Paragraph 72 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

73. Denied, except that Defendants admit that MG Freesites Ltd has made modifications to Pornhub since December 2020.

74. Defendants admit that Pornhub published its first Transparency Report in April 2021 and that document, being a writing, speaks for itself. Defendants also admit that Pornhub uses several different automated detection technologies to help moderate content before it can be published; that Pornhub reports suspected CSEM to NCMEC; that NCMEC maintains hash databased of suspected CSEM; and that PhotoDNA is an image-recognition technology. To the extent the allegations of Paragraph 74 purport to quote or characterize the referenced documents, those documents, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

75. Denied. To the extent the allegations of Paragraph 75 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

76. Denied.

Case 8:21-cv-00338-CJC-ADS Document 318-2 Filed 05/08/24 Page 210 of 330 Page ID #:30196

77. Denied.

78. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged, except that Defendants admit that a video with the title provided in the referenced document was uploaded and subsequently removed from Pornhub on multiple occasions. To the extent the allegations of Paragraph 78 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

79. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. Further to the extent the referenced document purports to provide examples of instances where links were left on Pornhub, the examples provided are of search results on Google, not Pornhub.

80. Denied.

81. Denied. Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process. Pornhub account holders can create and title their own playlists which they can elect to make viewable to other Pornhub users. The only content that can be included in a playlist is content that has gone through Pornhub's moderation process. Defendants also admit that Pornhub maintains a list of banned terms that are not permitted to be used in any content titles, searches, or comments. These fields are subject to banned terms prevention software, as well as review by moderators.

82. Denied except that Defendants admit that to create an unverified account on Pornhub users are asked to provide an email address, a username, and a password. Users are then invited to provide details about their gender expression

and sexual preferences, and pornography preferences. Users are also able to provide their birthdate, location, nickname, relationship status and a biography. This information is used to deliver content that is consistent with the user's indicated preferences and to enable the social features of the platform.

83. Denied except that Defendants admit that by using Pornhub, users agree to Pornhub's terms of service and privacy policy which address the information collected by Pornhub. The information captured by Pornhub includes the website activity data and any other information supplied by the user including information such as email addresses, pages visited, search history, browser and operating system information, devices used to access Pornhub, time zone settings, and IP address information. This information, as well as the information referred to in paragraph 82 above, is used to deliver content that is consistent with the user's indicated preferences and to enable the social features of the platform.

84. Denied except that Defendants admit that except that Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process.

85. Denied.

86. The allegations of Paragraph 86 purport to quote or characterize an unidentified statement, which statement, if in writing, speaks for itself.

87. Denied. To the extent the allegations of Paragraph 87 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

88. Denied. To the extent Paragraph 88 purports to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants

lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

89. Denied.

90. Denied except that Defendants admit that in 2019 approximately 6.83 million videos or 1.36 million hours of videos were uploaded to Pornhub and that Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service, before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process.

91. Denied.

92. Denied.

93. Defendants admit that, despite Pornhub's moderation process, content violating Pornhub's terms of service, including suspected CSEM, may make its way onto the website for public viewing. When content on Pornhub is flagged, the content is immediately examined and suspended immediately if the reviewer determines there is any risk that it might be suspected CSEM. When content on Pornhub is reported as suspected CSEM using a content removal form or by a Trusted Flagger, and the report includes the URL, the content is automatically disabled before it even reaches a reviewer. In both cases, an investigation follows, which includes examination of the documentation on file from the uploader, and possible requests for additional documents. If there is insufficient evidence to demonstrate that the individual depicted in the content was 18 or older at the time the content was produced, the content is permanently removed from the platform and protocols for reporting and protecting against future uploads are engaged. To the extent the allegations of Paragraph 93 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants

lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

94. Denied except that Defendants admit that MG Freesites Ltd provides DMCA take-down services relying on fingerprinting as well as other services and technologies in its moderation process for all content submitted to Pornhub.

95. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matter asserted. The term "CP" is a banned term that is not permitted to be used in any content titles, searches, or comments on websites operated by MG Freesites Ltd. To the extent the allegations of Paragraph 95 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

96. Denied except that the page on Pornhub that the allegations of Paragraph 96 purport to quote or characterize is a document, which being in writing, speaks for itself.

97. Denied except that Defendants admit that Pornhub suggests that users make their titles "enticing, witty, or funny so users will be curious enough to click!" To the extent the allegations of Paragraph 97 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

98. Denied.

99. Paragraph 99 does not contain any factual allegation that requires a response. To the extent there are allegations requiring a response, they are denied.

100. Denied.

101. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020. The publication, being in

writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

102. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

103. Denied. To the extent the allegations of Paragraph 103 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

104. Defendants admit that the Sunday Times published an article entitled *Unilever and Heinz pay for ads on Pornhub* on November 3, 2019. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

105. Denied. Defendants admit that Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process. Pornhub account holders can create and title their own playlists which they can elect to make viewable to other Pornhub users. The only content that can be included in a playlist is content that has gone through Pornhub's moderation process.

106. Defendants admit that they are aware that GirlsDoPorn and Czech Casting have been accused of sex trafficking and that both entities were members of the

content partner program on Pornhub. Any remaining or inconsistent allegations are denied.

107. Denied. Content created by GirlsDoPorn was removed from Pornhub as of October 14, 2019. To the extent the allegations of Paragraph 107 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

108. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. To the extent the allegations of Paragraph 108 purport to quote or characterize the referenced documents, those documents, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

109. Defendants admit that Pornhub receives takedown requests from users, third parties, law enforcement, and the public. Any remaining or inconsistent allegations are denied.

110. To the extent Paragraph 110 purports to quote or characterize the referenced document and testimony, that document and transcript being in writing speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

111. To the extent Paragraph 111 purports to quote or characterize the referenced document or testimony, that document and transcript being in writing speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

112. Denied. To the extent Paragraph 112 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

113. Denied. To the extent Paragraph 113 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

114. Denied except Defendants admit that MG Freesites Ltd made no reports to NCMEC in 2019. To the extent Paragraph 114 purports to quote or characterize the referenced document, that document being in writing speaks for itself.

115. Defendants admit that Pornhub receives notification of suspected CSEM from users, third parties, law enforcement, and the public. Any remaining or inconsistent allegations are denied.

116. Defendants admit that the New York Post and the Mercury News each published articles on October 26, 2018. Those publications, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

117. Defendants admit that the Sunday Times published an article on November 3, 2019. That publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

118. Defendants admit that the Sunday Times published an article on November 3, 2019. That publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any

hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

119. Defendants admit that the Sunday Times published an article on November 3, 2019. That publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

120. Defendants admit that a video uploaded to Pornhub by the individual identified in the referenced article was available for approximately two years, had 2,447 views, and has been removed from the website. To the extent paragraph 120 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

121. Paragraph 121 purports to quote or characterize the referenced document. That document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

122. Paragraph 122 purports to quote or characterize the referenced document. That document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

123. Defendants admit that Nicholas Kristof is a New York Times columnist and that he wrote the opinion article *The Children of Pornhub*. Any remaining or inconsistent allegations are denied.

124. Defendants admit that there are numerous advocacy groups dedicated to combatting child pornography on the internet. Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations concerning the amount of resources used by these advocacy groups in any of their work. Any remaining or inconsistent allegations are denied.

125. Defendants admit that the Internet Watch Foundation is an organization whose stated goal is to eliminate child sexual abuse imagery online. To the extent Paragraph 125 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

126. Defendants admit that Traffickinghub is an advocacy group founded by Laila Mickelwait, the author of the document upon which Plaintiff relies for the majority of her allegations, and that Traffickinghub and Ms. Mickelwait's central purpose is to shut down Pornhub and MindGeek. Any remaining or inconsistent allegations are denied.

127. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

128. Paragraph 128 purports to quote or characterize the referenced document. That document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

129. To the extent Paragraph 129 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

130. Denied.

131. Denied. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

132. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

133. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

134. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

135. Denied.

136. To the extent Paragraph 136 purports to quote or characterize the New York Times opinion article written by Nicholas Kristof, the article being in writing, speaks for itself. To the extent Paragraph 136 purports to quote or characterize a statement by Mastercard, that statement being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the

truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

137. To the extent Paragraph 137 purports to quote or characterize the referenced document, the document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

138. To the extent Paragraph 138 purports to quote or characterize the referenced document, the document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

139. Denied, except that Defendants admit that in December 2020 Pornhub removed all user-generated content from unverified user accounts on its website bringing the total number of videos available on Pornhub down from approximately 13.7 million to approximately 4 million. To the extent Paragraph 139 purports to quote or characterize the referenced document, the document being in writing speaks for itself.

140. Denied, except that Defendants admit that since mid-December 2020, MG Freesites Ltd does not allow content from any of the websites it operates to be downloaded, with the exception of paid downloads of lawful content posted by verified uploaders who have provided express consent to having their content downloaded. Any remaining or inconsistent allegations are denied.

141. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

142. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

143. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

144. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

145. Denied.

146. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

147. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

148. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

149. Defendants admit that MG Freesites Ltd received a request on March 26, 2020 for the removal of four videos, that the videos were removed within hours and fingerprinted, that the user who uploaded the videos was banned, that the videos were reported to NCMEC, and that MG Freesites Ltd cooperated with law enforcement in its pursuit of the user who posted the videos. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the balance of the matters alleged. To the extent Paragraph 149 purports to quote or characterize an unidentified document, that document being in writing speaks for itself.

150. Denied. MG Freesites Ltd fingerprints content it is made aware of that includes suspected CSEM and endeavors to prevent the re-upload of such content by, among other things, comparing subsequent content sought to be uploaded against databases of previously removed and fingerprinted content.

151. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

152.

## ANSWER TO CLASS ACTION ALLEGATIONS

153. Defendants admit that Plaintiff purports to being a class action and that Plaintiff purports to define the members in her purported class action. Defendants deny that a class action is appropriate. Any remaining or inconsistent allegations are denied.

154. Defendants admit that Plaintiff purports to being a class action and that Plaintiff purports to define the members in her purported class action. Defendants deny that a class action is appropriate. Any remaining or inconsistent allegations are denied.

155. The allegations of Paragraph 154 state legal conclusions and therefore do not require a response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

156. The allegations of Paragraph 155 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 155 are denied.

157. The allegations of Paragraph 156 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 156 are denied.

158. The allegations of Paragraph 157 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 157 are denied.

159. The allegations of Paragraph 158 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 158 are denied.

**ANSWER TO FIRST CLAIM FOR RELIEF**

**Trafficking Victims Protection Act**

**18 U.S.C. §§ 1591, 1595**

160. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

161. The allegations of Paragraph 160 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 160 are denied.

162. Denied.

163. Denied.

164. Denied, except that Defendants admit that despite Pornhub's moderation process, content violating Pornhub's terms of service, including suspected CSEM, may make its way onto the website for public viewing. When content on Pornhub is flagged, the content is immediately examined and suspended immediately if the reviewer determines there is any risk that it might be potential CSEM. When content on Pornhub is reported as suspected CSEM using a content removal form or by a Trusted Flagger, and the report includes the URL, the content is automatically disabled before it even reaches a reviewer. In both cases, an investigation follows, which includes examination of the documentation on file from the uploader, and possible requests for additional documents. If there is insufficient evidence to demonstrate that the individual depicted in the content was 18 or older at the time the content was produced, the content is permanently removed from the platform and protocols for reporting and protecting against future uploads are engaged.

165. Denied.

166. Denied.

167. Denied.

168. Denied.

169. Denied.

170. The allegations of Paragraph 169 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 169 are denied.

**ANSWER TO SECOND CLAIM FOR RELIEF**

**Violation of Duty to Report Child Sexual Abuse Material**

**18 U.S.C. § 2258A**

170.--176. No response is required to Paragraphs 170-176 because Plaintiff's claim under 18 U.S.C. §2258A has been dismissed with prejudice. (Dkt. #66).

**ANSWER TO THIRD CLAIM FOR RELIEF**

**Receipt and Distribution of Child Pornography**

**18 U.S.C. § 2252A**

177. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

178. Denied.

179. Denied.

180. The allegations of Paragraph 180 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 180 are denied.

181. The allegations of Paragraph 181 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 181 are denied.

182. The allegations of Paragraph 182 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 182 are denied.

183. The allegations of Paragraph 183 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 183 are denied.

184.

**ANSWER TO FOURTH CLAIM FOR RELIEF**

**Distribution of Private Sexually Explicit Materials, Cal. Civ. Code § 1708.85**

185. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

186. Denied.

187. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

188. The allegations of Paragraph 187 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 187 are denied.

189. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

190. The allegations of Paragraph 189 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 189 are denied.

**ANSWER TO FIFTH CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code § 17200**

190.—193. No response is required to Paragraphs 190-173 because Plaintiff's claim under Cal. Bus. & Prof. Code §17200 has been dismissed without prejudice and has not been repleaded. (Dkt. #66).

**ANSWER TO SIXTH CLAIM FOR RELIEF**

**Violation of California's Trafficking Victims Protection Act**

**Cal. Civ. Code § 52.5**

194. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

195. The allegations of Paragraph 195 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 195 are denied.

196. The allegations of Paragraph 196 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 196 are denied.

197. Admitted insofar as MG Freesites Ltd operates websites that are available all over the country, including in California. Any remaining or inconsistent allegations are denied.

**ANSWER TO SEVENTH CLAIM FOR RELIEF**

**Unjust Enrichment**

198.—200. No response is required to Paragraphs 198-200 because Plaintiff's claim for unjust enrichment has been dismissed without prejudice and has not been repleaded. (Dkt. #66).

**ANSWER TO EIGHTH CLAIM FOR RELIEF**

**Intentional Infliction of Emotional Distress**

201. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

202. The allegations of Paragraph 202 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 202 are denied.

203. The allegations of Paragraph 203 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 203 are denied.

204. The allegations of Paragraph 204 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 204 are denied.

205. The allegations of Paragraph 205 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 205 are denied.

206. The allegations of Paragraph 2-6 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 206 are denied.

## RESPONSE TO "PRAYER FOR RELIEF"

Defendants deny that Plaintiff is entitled to the relief enumerated in the "PRAYER FOR RELIEF", including its subparts, or to any relief whatsoever.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendants demand a trial by jury on all issues so triable.

## STATEMENT OF AFFIRMATIVE DEFENSES

Defendants undertake the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated below. As and for its affirmative and other defenses, Defendants state as follows:

## FIRST DEFENSE

Plaintiff's First Amended Complaint fails to state facts sufficient to constitute a claim or claims upon which relief can be granted against Defendants.

**SECOND DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by 47 U.S.C. § 230(c)(1) and (e)(3).

**THIRD DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by 47 U.S.C. § 230(c)(2).

**FOURTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the protections of the First and Fourteenth Amendments to the United States Constitution and any freedom of speech protections afforded by the California Constitution.

**FIFTH DEFENSE**

Plaintiff's claims against Defendant are barred, in whole or in part, by the doctrine of unclean hands.

**SIXTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the failure to join one or more necessary parties.

**SEVENTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, because any injuries Plaintiff suffered were not directly or proximately caused by any act or omission by Defendants.

**EIGHTH DEFENSE**

Plaintiff is not entitled to relief because the injuries alleged, if any, were caused by the intervening and/or unlawful acts of third parties.

**NINTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, because the alleged acts or omissions were not committed by agents or employees of Defendants or, to the extent Defendants' agents or employees did commit any of the

alleged acts or omissions, it was outside the scope of authority conferred by Defendants and not ratified by Defendants.

**TENTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, because any damage, loss, or liability alleged by Plaintiff must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Defendants, including third parties such as Plaintiff's alleged traffickers, and others who may have published sexually explicit images of Plaintiff, under the principles of proportionate responsibility, equitable allocation, recoupment, set-off, and/or comparative fault.

**ELEVENTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the applicable statute of limitations.

**TWELFTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the doctrines of laches, waiver, or estoppel.

**THIRTEENTH DEFENSE**

Neither MindGeek USA Inc., MindGeek S.à r.l., 9219-1568 Quebec Inc., or MG Content RT Ltd operate, manage, maintain, supervise or control the day-to-day operations of any website on which images of Plaintiff may have appeared, and therefore, are not liable for the Plaintiff's alleged damages.

**FOURTEENTH DEFENSE**

MG Freesites II Ltd has been dissolved and its entire business was transferred to MG Freesites Ltd, and therefore, it is not liable for the Plaintiff's alleged damages.

**FIFTEENTH DEFENSE**

Plaintiff's claims against Defendants fail to establish that any officer, director, or managing agent of Defendants acted with malice, oppression, or fraud, or directed, knew, or approved of an employee's malice, oppression, fraud, or duress as required to justify the imposition of punitive damages under California Civil Code sections 3294 or 52.5(b).

**SIXTEENTH DEFENSE**

Plaintiff's claims against Defendant fail to establish that Defendants acted with intentional and outrageous conduct, as required to justify the imposition of punitive damages under federal common law.

**SEVENTEENTH DEFENSE**

With respect to Plaintiff's claims for punitive damages, Defendants specifically incorporate by reference any and all standards of limitation regarding the determination and/or enforceability of punitive damage awards which arose in the decisions of *BMW of No. America v. Gore*, 116 U.S. 1589 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 438 (2003), and their progeny.

**EIGHTEENTH DEFENSE**

With respect to Plaintiff's claims for punitive damages, any such damages claims are in violation of and are barred by the Constitution of the United States and any relevant comparable state constitutional provisions, including but not limited to, the Due-Process and Equal Protection Clauses contained in the Fifth and Fourteenth Amendments; the Excessive Fines Clause of the Eighth Amendment; and the Tenth Amendment.

**NINETEENTH DEFENSE**

Defendants intend to rely upon any additional defenses that become available during the course of investigation and/or discovery and reserves the right to amend its Answer to assert those defenses.

WHEREFORE, Defendants request that Plaintiff's First Amended Complaint be dismissed in its entirety with prejudice, that judgment be entered in favor of Defendants, that Defendants be awarded costs and, to the extent provided by law, attorneys' fee, and any such other relief as the Court may deem proper.

DATED: SEPTEMBER 24, 2021 RESPECTFULLY SUBMITTED,

/s/ *Benjamin Sadun*
BENJAMIN SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
Kathleen.massey@dechert.com
MARK S. CHEFFO (*pro hac vice forthcoming*)
mark.cheffo@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*

# PLAINTIFF'S EXHIBIT 85

BENJAMIN M. SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808-5760

KATHLEEN N. MASSEY (*admitted pro hac vice*)
kathleen.massey@dechert.com
MARK S. CHEFFO (*pro hac vice forthcoming*)
mark.cheffo@dechert.com
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

*Attorneys for Defendants*
MINDGEEK USA INCORPORATED,
MINDGEEK S.A.R.L., MG FREESITES
LTD (D/B/A PORNHUB), MG FREESITES II
LTD, MG CONTENT RT LIMITED,
AND 9219- 1568 QUEBEC, INC. (D/B/A MINDGEEK)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JANE DOE on behalf of herself and all other similarly situated,<br>Plaintiffs,<br><br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES LTD (D/B/A PORNHUB), MG FREESITES II LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),<br>Defendants. | CASE NO. 8:21-CV-00338-CJC-ADS<br><br>Judicial Officer: Cormac J. Carney<br><br>**DEFENDANTS' ANSWER AND JURY DEMAND TO PLAINTIFF'S SECOND AMENDED COMPLAINT** |

Defendants MindGeek USA Inc., MindGeek S.à r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd (collectively "Defendants"), by and through their undersigned counsel, hereby respond to Plaintiff's Second Amended Complaint ("SAC") as follows:

## INTRODUCTORY STATEMENT

Many of the allegations of the SAC are vague, conclusory, and/or contain terms which are undefined and susceptible to different meanings. In particular, the SAC is replete with references to, summaries of, and purported quotations from various documents, including newspaper articles, congressional testimony, and an unsubstantiated advocacy presentation purporting to discuss and/or characterize activity that occurred on one or more of the websites operated by MG Freesites Ltd. Because much of the information concerning this alleged activity is anonymized, incomplete, and largely concerns a database of millions of pieces of content, Defendants reserve the right to amend and/or supplement this Answer to the extent further investigation or discovery reveals additional information.

The comments and objections in this Introductory Statement are incorporated into each numbered paragraph of this Answer.

## ANSWER TO ALLEGATIONS REGARDING THE NATURE OF THE ACTION

1. Defendants acknowledge that Plaintiff is seeking to maintain a class action for damages and injunctive relief but deny that she is entitled to same. Plaintiff's claims, being in writing, speak for themselves. Defendants deny that they are liable for any alleged injuries and that Plaintiff is in any way entitled to damages or other relief. Any remaining or inconsistent allegations are denied.

2. Denied.

3. Denied. To the extent the allegations of Paragraph 3 contain excerpts of an online discussion, those excerpts are incomplete, are out of context, and do not

address age verification of individuals appearing in content on any websites operated by MG Freesites Ltd.

4. Denied.

5. The allegations of Paragraph 5 state legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Paragraph 5 fairly characterizes the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Any remaining or inconsistent allegations are denied.

**ANSWER TO ALLEGATIONS REGARDING THE PARTIES**

6. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

7. The allegations of Paragraph 7 state legal conclusions and/or are not directed to Defendants and therefore do not require a response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

8. Defendants admit that MindGeek USA Incorporated is a corporation organized and existing under the laws of the state of Delaware, with an established place of business in California. MindGeek USA Incorporated's registered agent for service of process in the State of California is CT Corporation System. MindGeek USA Incorporated is an indirect subsidiary of MindGeek S.à r.l. Any remaining or inconsistent allegations are denied.

9. Defendants admit that MindGeek S.à r.l. is a foreign holding company organized and existing under the laws of Luxembourg with its sole place of business in Luxembourg. Any remaining or inconsistent allegations are denied.

10. Defendants admit that MG Freesites Ltd is a private limited company incorporated in Cyprus and is an indirect subsidiary of MindGeek S.à r.l. Any remaining or inconsistent allegations are denied.

11. Denied. As of December 10, 2020, MG Freesites II Ltd was dissolved. The entire business of MG Freesites II Ltd was transferred to MG Freesites Ltd.

12. Defendants admit that MG Content RT Limited is a company organized under the laws of Ireland. Any remaining or inconsistent allegations are denied.

13. Defendants admit that 9219-1568 Quebec, Inc. is a company organized and existing under the laws of the Province of Quebec with its principal place of business in Montreal, Canada. Any remaining or inconsistent allegations are denied.

14. Defendants admit that Plaintiff refers in the SAC to MindGeek USA Incorporated, MindGeek S.à r.l., MG Freesites Ltd, MG Freesites II, Ltd, 9219-1568 Quebec Inc., MG Content RT Ltd, and all of their parents, subsidiaries and affiliates as "Defendants" or "MindGeek." It is denied that such characterization is reasonable, accurate, or appropriate and also denied that unidentified "parents, subsidiaries and affiliates" may be defined as part of "MindGeek." Defendants do not file this Answer on behalf of any entities other than those specifically named as parties hereto.

15. Denied.

16. The allegations of Paragraph 16 state legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge and information sufficient to form a belief as to the truth of Plaintiff's allegations regarding her knowledge.

**ANSWER TO ALLEGATIONS REGARDING**

**JURISDICTION AND VENUE**

17. The allegations of Paragraph 17 state legal conclusions to which no response is required.

18. The allegations of Paragraph 18 state legal conclusions to which no response is required.

19. The allegations of Paragraph 19 state legal conclusions to which no response is required. To the extent a response is required, the allegations of Paragraph 19 are denied with respect to MindGeek S.à r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd.

20. Defendants admit that MindGeek USA Incorporated is a corporation organized and existing under the law of the state of Delaware that has a place of business at 21800 Oxnard Street, Suite 150, Woodland Hills, CA 91367. Defendants also admit that based on information available from May 2019 Los Angeles, California was at that time the fourth highest city for daily traffic to Pornhub. Defendants admit that MG Freesites Ltd operates websites that host millions of videos and images that may be viewed in California. Any remaining or inconsistent allegations are denied.

21. The allegations of Paragraph 21 state legal conclusion to which no response is required. To the extent a response is required, Defendants admit that MindGeek S.à r.l. and MindGeek USA Inc. were defendants in *Preservation Technologies, LLC v. MindGeek USA, Inc. and MindGeek S.A.R.L.*, Case No. 2:17-cv—08906-DOC-JPR (C.D. Cal.).

22. The allegations of Paragraph 22 state legal conclusions to which no response is required.

23. The allegations of Paragraph 23 state legal conclusions to which no response is required. To the extent a response is required, Defendants admit that MindGeek USA Inc. maintains a place of business in California. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding where the events giving rise to Plaintiff's claims occurred.

**ANSWER TO ALLEGATIONS OF FACT**

24. Defendants admit that CSEM is a global problem. To the extent the allegations of Paragraph 24 purport to quote or characterize the document

referenced, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

25. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. To the extent the allegations of Paragraph 25 purport to quote or characterize the document referenced, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

26. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

27. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. To the extent the allegations of Paragraph 27 purport to quote or characterize an unidentified document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

28. The allegations of Paragraph 28 purport to quote or characterize the referenced document. That document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

29. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the link between sexual exploitation and pornographic videos. To the extent the allegations of Paragraph 29 purport to quote or characterize an article by Melissa Farley, that article, being in writing speaks for

itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

30. Defendants have a zero tolerance policy for CSEM. Defendants are unequivocally committed to combating CSEM and have instituted an industry-leading trust and safety policy to identify and eradicate illegal material from the community. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged in Paragraph 30. To the extent the allegations of Paragraph 30 purport to quote or characterize the referenced study, that study, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

31. Defendants admit that Congress passed the TVPA in 2000 and deny the remaining allegations of Paragraph 31.

32. Defendants admit that Congress passed the TVPRA in 2003. The remaining allegations of Paragraph 32 state legal conclusions to which no response is required.

33. Defendants admit that Congress amended the TVPRA in 2008. The remaining allegations of Paragraph 33 state legal conclusions to which no response is required. To the extent the allegations of Paragraph 33 purport to quote or characterize the TVPRA, that document, being in writing, speaks for itself. To the extent a response is required, Defendants deny that Paragraph 33 fairly characterizes the TVPRA.

34. The allegations of Paragraph 34 state legal conclusion to which no response is required. To the extent the allegations of Paragraph 34 purport to quote or characterize the TVPRA, that document, being in writing, speaks for itself. To the extent a response is required, Defendants deny that Paragraph 34 fairly characterizes the TVPRA.

35. Denied.

36. Defendants admit that Congress passed the Allow States and Victims to Fight Online Sex Trafficking/Stop Enabling Sex Traffickers Act ("FOSTA/SESTA") in 2018. To the extent the allegations of Paragraph 36 purport to quote or characterize the referenced article or Section 230, those documents, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegation are denied.

37. The allegations of Paragraph 37 state legal conclusions to which no response is required. To the extent a response is required, Defendants deny that Paragraph 37 fairly characterizes FOSTA/SESTA.

38. Defendants admit that they are privately held companies. Defendants also admit that MG Freesites Ltd operates adult entertainment websites, including Pornhub, RedTube, and YouPorn. Any remaining or inconsistent allegations are denied.

39. Defendants admitted that the quoted language is an excerpt from a letter to the Canadian Parliament and that that letter, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

40. Admitted, except that to the extent the allegations of Paragraph 40 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself.

41. Defendants admit that in 2019, the United States was the country with the highest daily traffic to Pornhub and that based on information from May 2019, Los Angeles, California was at that time the city with the fourth highest daily traffic to Pornhub. Any remaining or inconsistent allegations are denied.

42. Defendants admitted that the quoted language is an excerpt from a letter to the Canadian Parliament and that that letter, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

43. Defendants admit Pornhub had approximately 13,740,000 adult entertainment videos in its free searchable library on or around December 1, 2020. Any remaining or inconsistent allegations are denied.

44. Defendants admit that Pornhub, operated by MG Freesites Ltd, is considered a "tube site," meaning Pornhub allows lawful content to be uploaded from verified uploaders. Defendants also admit that account holders are able to comment on content on Pornhub. Any remaining and inconsistent allegations are denied.

45. Denied.

46. Denied.

47. Denied.

48. Defendants admit that Pornhub has a Model Program. To become a member of the Model Program, an individual must become a verified uploader which requires that individual to: (i) create a user name and password, provide an email address, and agree to the site's terms of service, including the site's privacy policy; (ii) provide government-issued identification and a set of live photographs of himself or herself (i.e. one taken in real time by the computer or smartphone's camera); and (iii) agree to the term of service that states that the user is at least 18 years old by checking an opt-in box during the user-verification process. Members of Pornhub's Model Program who have complied with all the requirements for becoming a verified uploader may upload lawful content of themselves as free-to-view videos that earn ad revenue. At the time of upload, the Model Program member must confirm that (i) they have the consent of those depicted in the content and (ii) the uploader has collected one piece of photo ID from any additional

performer who appears in the video as well as a photo of the additional performer holding their ID. Plaintiff does not allege that she or her ex-boyfriend were members of Pornhub's Model Program. Any remaining or inconsistent allegations are denied.

49. Denied. Defendants admit that to become a member of Pornhub's Model Program an individual must be a verified uploader. To become a verified uploader an individual must: (i) create a user name and password, provide an email address, and agree to the site's terms of service, including the site's privacy policy; (ii) provide government-issued identification and a set of live photographs of himself or herself (*i.e.* one taken in real time by the computer or smartphone's camera); and (iii) agree to the term of service that states that the user is at least 18 years old by checking an opt-in box during the user-verification process. To the extent the allegations of Paragraph 49 purport to quote or characterize an unidentified document, that document, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

50. Denied.

51. Denied.

52. Denied. Defendants admit that one step in the process to become a Pornhub Model Program member requires an individual to provide a set of live photographs of himself or herself (*i.e.* one taken in real time by the computer or smartphone's camera). But that is not the step in the process that confirms the age of the applicant. A Model Program applicant must also provide government-issued identification and agree to the term of service that states that the user is at least 18 years old by checking an opt-in box during the user-verification process. To the extent the allegations of Paragraph 52 purport to quote or characterize an unidentified document, that document, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Defendants admit that since mid-December 2020, MG Freesites Ltd does not allow content from any of the websites it operates to be downloaded, with the exception of paid downloads of lawful content posted by verified uploaders who have provided express consent to having their content downloaded. The limitations on the downloading of content are designed to prevent inappropriate content being re-uploaded to Defendants' websites or further disseminated by third parties. Defendants also admit that all content uploaded to Pornhub is screened using automated detection technologies including fingerprinting tools that rely on a unique digital fingerprint to match a video or photograph to those already identified in databases including suspected CSEM. Those tools include YouTube's CSAI Match, Microsoft's Photo DNA, Vobile's MediaWise, and MindGeek's own tool, Safeguard. Any suspected CSEM identified by Pornhub's moderation process or as a result of a flag or take down request is fingerprinted using MindGeek's fingerprinting tools, and the digital fingerprint is transmitted to Microsoft, YouTube, and Vobile to be added to their databases. The fingerprinting process prevents the same content from being uploaded to Pornhub and any third-party platforms that use these technologies. Defendants lack knowledge or information sufficient to form a belief as to the truth of allegations regarding what any individual did with the content they downloaded. Any remaining or inconsistent allegations are denied.

58. Defendants admit that Pornhub account holders can send each other private messages and can create folders that can be shared with other Pornhub account holders. Folders can only contain content that has been through Pornhub's moderation process. Defendants lack knowledge or information sufficient to form a

belief as to the truth of the remaining allegations. To the extent the allegations of Paragraph 58 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Further, the author of that document, Laila Mickelwait, is the founder of Traffickinghub and also the spokesperson for Exodus Cry, a far-right organization that opposes legal pornography and which has been disavowed by media outlets and other organizations. The document itself is an advocacy piece prepared by Ms. Mickelwait in her admitted crusade to shut down Pornhub and MindGeek. Any remaining or inconsistent allegations are denied.

59. Defendants admit that the VPNHUB app was created and that the use of cryptocurrency is permitted on Pornhub. To the extent the allegations of Paragraph 59 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

60. Defendants admit that a tor site was created. To the extent the allegations of Paragraph 60 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

61. Defendants admit that verified uploaders are allowed to upload to Pornhub lawful content that complies with Pornhub's terms of service. To the extent that Paragraph 61 purports to quote from an interview given by Fabian Thylmann in 2017, Mr. Thylmann was not affiliated with Pornhub or MindGeek at that time and was not speaking on behalf of any Defendant. Mr. Thylmann's interview speaks for itself. Defendants lack knowledge or information sufficient to form a belief

regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

62. Paragraph 62 purports to quote from an interview given by Fabian Thylmann in 2017. Mr. Thylmann was not affiliated with Pornhub or MindGeek at that time and was not speaking on behalf of any Defendant. That interview speaks for itself. Any remaining or inconsistent allegations are denied.

63. Denied.

64. Denied. Content that is uploaded to Pornhub is not automatically uploaded to any other MindGeek website or mobile application, except Thumbzilla.com. Thumbzilla.com is not a tube site; it has never been possible for users to upload directly to that website. In addition, verified uploaders who are members of the Model Program can opt to have their content uploaded to other sites during the upload process.

65. Denied.

66. Denied.

67. Defendants admit that account holders can opt to subscribe to premium websites that offer access to content that is different from the content available on free sites. To the extent the allegations of Paragraph 67 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

68. Defendants admit that advertisements appear on websites operated by MG Freesites Ltd. To the extent the allegations of Paragraph 68 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief

Case 8:21-cv-00338-CJC-ADS Document 318-1 Filed 05/08/24 Page 246 of 330 Page ID #:31413

regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

69. Defendants admit that revenue is generated from advertisements placed on websites operated by MG Freesites Ltd. Any remaining or inconsistent allegations are denied.

70. Denied.

71. Denied except that Defendants admit that members of Pornhub's Model Program who have complied with all of the requirements for becoming a verified uploader and who have at the time of upload (i) confirmed they have the consent of those depicted in the video and (ii) have produced one piece of photo ID from any additional performer who appears in the video as well as a photo of the additional performer holding their ID are allowed (a) to sell the video on Modelhub provided it is lawful and complies with Pornhub's terms of service, with Pornhub receiving a portion of the proceeds from such sales; (b) to allow the video available for sale on Modelhub to also be viewable on Pornhub Premium for which the member receives per-view compensation; (c) to create a subscription service, known as a Fan Club, where members can offer subscribers exclusive lawful content that complies with Pornhub's terms of service, with Pornhub receiving 20% of the subscription fees; and (d) to receive tips from Pornhub account holders, with Pornhub receiving 20%. To the extent the allegations of Paragraph 71 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

72. Defendants admit that revenue is generated from advertisements that appear on websites operated by MG Freesites Ltd. Further, members of Pornhub's Model Program who have complied with all the requirements for becoming a verified uploader may upload lawful content of themselves that complies with

Pornhub's terms of service as free-to-view videos that earn ad revenue. Defendants also admit that subscription fees are collected for access to premium websites. Defendants also admit that in and around December 2020, Visa, Mastercard, and Discover stopped processing transactions involving Pornhub and that Pornhub removed all user-generated content on its site from unverified user accounts, which amounted to approximately 10 million videos. To the extent the allegations of Paragraph 72 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

73. Denied, except that Defendants admit that MG Freesites Ltd has made modifications to Pornhub since December 2020.

74. Defendants admit that Pornhub published its first Transparency Report in April 2021 and that document, being a writing, speaks for itself. Defendants also admit that Pornhub uses several different automated detection technologies to help moderate content before it can be published; that Pornhub reports suspected CSEM to NCMEC; that NCMEC maintains hash databased of suspected CSEM; and that PhotoDNA is an image-recognition technology. To the extent the allegations of Paragraph 74 purport to quote or characterize the referenced documents, those documents, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

75. Denied. To the extent the allegations of Paragraph 75 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

76. Denied.

77. Denied.

78. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged, except that Defendants admit that a video with the title provided in the referenced document was uploaded and subsequently removed from Pornhub on multiple occasions. To the extent the allegations of Paragraph 78 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

79. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. Further to the extent the referenced document purports to provide examples of instances where links were left on Pornhub, the examples provided are of search results on Google, not Pornhub.

80. Denied.

81. Denied. Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process. Pornhub account holders can create and title their own playlists which they can elect to make viewable to other Pornhub users. The only content that can be included in a playlist is content that has gone through Pornhub's moderation process. Defendants also admit that Pornhub maintains a list of banned terms that are not permitted to be used in any content titles, searches, or comments. These fields are subject to banned terms prevention software, as well as review by moderators.

82. Denied except that Defendants admit that to create an unverified account on Pornhub users are asked to provide an email address, a username, and a password. Users are then invited to provide details about their gender expression

and sexual preferences, and pornography preferences. Users are also able to provide their birthdate, location, nickname, relationship status and a biography. This information is used to deliver content that is consistent with the user's indicated preferences and to enable the social features of the platform.

83. Denied except that Defendants admit that by using Pornhub, users agree to Pornhub's terms of service and privacy policy which address the information collected by Pornhub. The information captured by Pornhub includes the website activity data and any other information supplied by the user including information such as email addresses, pages visited, search history, browser and operating system information, devices used to access Pornhub, time zone settings, and IP address information. This information, as well as the information referred to in paragraph 82 above, is used to deliver content that is consistent with the user's indicated preferences and to enable the social features of the platform.

84. Denied except that Defendants admit that except that Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process.

85. Denied.

86. The allegations of Paragraph 86 purport to quote or characterize an unidentified statement, which statement, if in writing, speaks for itself.

87. Denied. To the extent the allegations of Paragraph 87 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

88. Denied. To the extent Paragraph 88 purports to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants

lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

89. Denied.

90. Denied except that Defendants admit that in 2019 approximately 6.83 million videos or 1.36 million hours of videos were uploaded to Pornhub and that Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service, before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process.

91. Denied.

92. Denied.

93. Defendants admit that, despite Pornhub's moderation process, content violating Pornhub's terms of service, including suspected CSEM, may make its way onto the website for public viewing. When content on Pornhub is flagged, the content is immediately examined and suspended immediately if the reviewer determines there is any risk that it might be suspected CSEM. When content on Pornhub is reported as suspected CSEM using a content removal form or by a Trusted Flagger, and the report includes the URL, the content is automatically disabled before it even reaches a reviewer. In both cases, an investigation follows, which includes examination of the documentation on file from the uploader, and possible requests for additional documents. If there is insufficient evidence to demonstrate that the individual depicted in the content was 18 or older at the time the content was produced, the content is permanently removed from the platform and protocols for reporting and protecting against future uploads are engaged. To the extent the allegations of Paragraph 93 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants

lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

94. Denied except that Defendants admit that MG Freesites Ltd provides DMCA take-down services relying on fingerprinting as well as other services and technologies in its moderation process for all content submitted to Pornhub.

95. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matter asserted. The term "CP" is a banned term that is not permitted to be used in any content titles, searches, or comments on websites operated by MG Freesites Ltd. To the extent the allegations of Paragraph 95 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

96. Denied except that the page on Pornhub that the allegations of Paragraph 96 purport to quote or characterize is a document, which being in writing, speaks for itself.

97. Denied except that Defendants admit that Pornhub suggests that users make their titles "enticing, witty, or funny so users will be curious enough to click!" To the extent the allegations of Paragraph 97 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Any remaining or inconsistent allegations are denied.

98. Denied.

99. Paragraph 99 does not contain any factual allegation that requires a response. To the extent there are allegations requiring a response, they are denied.

100. Denied.

101. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020. The publication, being in

writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

102. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

103. Denied. To the extent the allegations of Paragraph 103 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

104. Defendants admit that the Sunday Times published an article entitled *Unilever and Heinz pay for ads on Pornhub* on November 3, 2019. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

105. Denied. Defendants admit that Pornhub screens each piece of content uploaded to its website for suspected CSEM, non-consensual content, and other content that violates Pornhub's terms of service before it is made available to the public. Pornhub uses a combination of technological tools and human moderators in this process. Pornhub account holders can create and title their own playlists which they can elect to make viewable to other Pornhub users. The only content that can be included in a playlist is content that has gone through Pornhub's moderation process.

106. Defendants admit that they are aware that GirlsDoPorn and Czech Casting have been accused of sex trafficking and that both entities were members of the

content partner program on Pornhub. Any remaining or inconsistent allegations are denied.

107. Denied. Content created by GirlsDoPorn was removed from Pornhub as of October 14, 2019. To the extent the allegations of Paragraph 107 purport to quote or characterize the referenced document, that document, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

108. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged. To the extent the allegations of Paragraph 108 purport to quote or characterize the referenced documents, those documents, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

109. Defendants admit that Pornhub receives takedown requests from users, third parties, law enforcement, and the public. Any remaining or inconsistent allegations are denied.

110. To the extent Paragraph 110 purports to quote or characterize the referenced document and testimony, that document and transcript being in writing speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

111. To the extent Paragraph 111 purports to quote or characterize the referenced document or testimony, that document and transcript being in writing speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

112. Denied. To the extent Paragraph 112 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

113. Denied. To the extent Paragraph 113 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others.

114. Denied except Defendants admit that MG Freesites Ltd made no reports to NCMEC in 2019. To the extent Paragraph 114 purports to quote or characterize the referenced document, that document being in writing speaks for itself.

115. Defendants admit that Pornhub receives notification of suspected CSEM from users, third parties, law enforcement, and the public. Any remaining or inconsistent allegations are denied.

116. Defendants admit that the New York Post and the Mercury News each published articles on October 26, 2018. Those publications, being in writing, speak for themselves. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

117. Defendants admit that the Sunday Times published an article on November 3, 2019. That publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

118. Defendants admit that the Sunday Times published an article on November 3, 2019. That publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any

hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

119. Defendants admit that the Sunday Times published an article on November 3, 2019. That publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

120. Defendants admit that a video uploaded to Pornhub by the individual identified in the referenced article was available for approximately two years, had 2,447 views, and has been removed from the website. To the extent paragraph 120 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

121. Paragraph 121 purports to quote or characterize the referenced document. That document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

122. Paragraph 122 purports to quote or characterize the referenced document. That document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

123. Defendants admit that Nicholas Kristof is a New York Times columnist and that he wrote the opinion article *The Children of Pornhub*. Any remaining or inconsistent allegations are denied.

124. Defendants admit that there are numerous advocacy groups dedicated to combatting child pornography on the internet. Defendants lack knowledge or

information sufficient to form a belief as to the truth of the allegations concerning the amount of resources used by these advocacy groups in any of their work. Any remaining or inconsistent allegations are denied.

125. Defendants admit that the Internet Watch Foundation is an organization whose stated goal is to eliminate child sexual abuse imagery online. To the extent Paragraph 125 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

126. Defendants admit that Traffickinghub is an advocacy group founded by Laila Mickelwait, the author of the document upon which Plaintiff relies for the majority of her allegations, and that Traffickinghub and Ms. Mickelwait's central purpose is to shut down Pornhub and MindGeek. Any remaining or inconsistent allegations are denied.

127. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

128. Paragraph 128 purports to quote or characterize the referenced document. That document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

129. To the extent Paragraph 129 purports to quote or characterize the referenced document, that document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

130. Denied.

131. Denied. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

132. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

133. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

134. Defendants admit that the New York Times published an opinion article entitled *The Children of Pornhub* on December 4, 2020, written by Nicholas Kristof. The publication, being in writing, speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

135. Denied.

136. To the extent Paragraph 136 purports to quote or characterize the New York Times opinion article written by Nicholas Kristof, the article being in writing, speaks for itself. To the extent Paragraph 136 purports to quote or characterize a statement by Mastercard, that statement being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the

truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

137. To the extent Paragraph 137 purports to quote or characterize the referenced document, the document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

138. To the extent Paragraph 138 purports to quote or characterize the referenced document, the document being in writing speaks for itself. Defendants lack knowledge or information sufficient to form a belief regarding the truth of any hearsay statements attributed to others. Any remaining or inconsistent allegations are denied.

139. Denied, except that Defendants admit that in December 2020 Pornhub removed all user-generated content from unverified user accounts on its website bringing the total number of videos available on Pornhub down from approximately 13.7 million to approximately 4 million. To the extent Paragraph 139 purports to quote or characterize the referenced document, the document being in writing speaks for itself.

140. Denied, except that Defendants admit that since mid-December 2020, MG Freesites Ltd does not allow content from any of the websites it operates to be downloaded, with the exception of paid downloads of lawful content posted by verified uploaders who have provided express consent to having their content downloaded. Any remaining or inconsistent allegations are denied.

141. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

142. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

143. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

144. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

145. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

146. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

147. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

148. Defendants admit that MG Freesites Ltd received a request on March 26, 2020 for the removal of four videos, that the videos were removed within hours and fingerprinted, that the user who uploaded the videos was banned, that the videos were reported to NCMEC, and that MG Freesites Ltd cooperated with law enforcement in its pursuit of the user who posted the videos. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the balance of the matters alleged. To the extent Paragraph 149 purports to quote or characterize an unidentified document, that document being in writing speaks for itself.

149. Denied. MG Freesites Ltd fingerprints content it is made aware of that includes suspected CSEM and endeavors to prevent the re-upload of such content by, among other things, comparing subsequent content sought to be uploaded against databases of previously removed and fingerprinted content.

150. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the matters alleged.

151. Denied.

152. Denied.

153. The allegations of Paragraph 153 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 153 are denied.

**ANSWER TO CLASS ACTION ALLEGATIONS**

154. Defendants admit that Plaintiff purports to being a class action and that Plaintiff purports to define the members in her purported class action. Defendants deny that a class action is appropriate. Any remaining or inconsistent allegations are denied.

155. Defendants admit that Plaintiff purports to being a class action and that Plaintiff purports to define the members in her purported class action. Defendants deny that a class action is appropriate. Any remaining or inconsistent allegations are denied.

156. The allegations of Paragraph 156 state legal conclusions and therefore do not require a response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

157. The allegations of Paragraph 157 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 157 are denied.

158. The allegations of Paragraph 158 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 158 are denied.

159. The allegations of Paragraph 159 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 159 are denied.

160. The allegations of Paragraph 160 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 160 are denied.

**ANSWER TO FIRST CLAIM FOR RELIEF**

**Trafficking Victims Protection Act**

**18 U.S.C. §§ 1591, 1595**

161. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein. By way of further response, Plaintiff's First Claim for Relief should be dismissed for the reasons set forth in Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint with Prejudice (Dkt. # 45-1), their Reply Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint and Response to Plaintiff's Objections to Request for Judicial Notice (Dkt. #53) and in their Memorandum of Points and Authorities in Support of Defendants' Motion for Reconsideration of the Order Denying Defendants' Motion to Dismiss or, in the Alternative, for § 1292(b) Certification (Dkt. #73-1), as well as the reply to be filed in support of that motion. Since Plaintiff has not substantively amended her allegations in support of this claim, Defendants are not burdening the Court with a renewed motion as to it. Rather, Defendants incorporate by reference the reasons for dismissal set forth in the above-referenced filings and preserve all rights to appeal from the Court's September 3, 2021 Order Denying in Substantial Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #66) and otherwise relative to those arguments. Nothing in this pleading should be construed as a waiver of such rights.

162. The allegations of Paragraph 162 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 162 are denied.

163. Denied.

164. Denied.

165. Denied, except that Defendants admit that despite Pornhub's moderation process, content violating Pornhub's terms of service, including suspected CSEM, may make its way onto the website for public viewing. When content on Pornhub is flagged, the content is immediately examined and suspended immediately if the reviewer determines there is any risk that it might be potential CSEM. When content on Pornhub is reported as suspected CSEM using a content removal form or by a Trusted Flagger, and the report includes the URL, the content is automatically disabled before it even reaches a reviewer. In both cases, an investigation follows, which includes examination of the documentation on file from the uploader, and possible requests for additional documents. If there is insufficient evidence to demonstrate that the individual depicted in the content was 18 or older at the time the content was produced, the content is permanently removed from the platform and protocols for reporting and protecting against future uploads are engaged.

166. Denied.

167. Denied.

168. Denied.

169. Denied.

170. Denied.

171. The allegations of Paragraph 171 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 171 are denied.

**ANSWER TO SECOND CLAIM FOR RELIEF**

**Receipt and Distribution of Child Pornography**

**18 U.S.C. § 2252A**

172. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein. By way of further response, Plaintiff's Second Claim for Relief should be dismissed for the reasons set forth in Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint with Prejudice (Dkt. # 45-1), their Reply Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint and Response to Plaintiff's Objections to Request for Judicial Notice (Dkt. #53) and in their Memorandum of Points and Authorities in Support of Defendants' Motion for Reconsideration of the Order Denying Defendants' Motion to Dismiss or, in the Alternative, for § 1292(b) Certification (Dkt. #73-1), as well as the reply to be filed in support of that motion. Since Plaintiff has not substantively amended her allegations in support of this claim, Defendants are not burdening the Court with a renewed motion as to it. Rather, Defendants incorporate by reference the reasons for dismissal set forth in the above-referenced filings and preserve all rights to appeal from the Court's September 3, 2021 Order Denying in Substantial Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #66) and otherwise relative to those arguments. Nothing in this pleading should be construed as a waiver of such rights.

173. Denied.

174. Denied.

175. The allegations of Paragraph 175 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 175 are denied.

176. The allegations of Paragraph 176 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 176 are denied.

177. The allegations of Paragraph 177 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 177 are denied.

178. The allegations of Paragraph 178 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 178 are denied.

## ANSWER TO THIRD CLAIM FOR RELIEF

### Distribution of Private Sexually Explicit Materials, Cal. Civ. Code § 1708.85

179. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein. By way of further response, Plaintiff's Third Claim for Relief should be dismissed for the reasons set forth in Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint with Prejudice (Dkt. # 45-1), their Reply Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint and Response to Plaintiff's Objections to Request for Judicial Notice (Dkt. #53) and in their Memorandum of Points and Authorities in Support of Defendants' Motion for Reconsideration of the Order Denying Defendants' Motion to Dismiss or, in the Alternative, for § 1292(b) Certification (Dkt. #73-1), as well as the reply to be filed in support of that motion. Since Plaintiff has not substantively amended her allegations in support of this claim, Defendants are not burdening the Court with a renewed motion as to it. Rather, Defendants incorporate by reference the reasons for dismissal set forth in the above-referenced filings and preserve all rights to appeal from the Court's September 3, 2021 Order Denying in Substantial Part Defendants' Motion to

Dismiss Plaintiff's First Amended Complaint (Dkt. #66) and otherwise relative to those arguments. Nothing in this pleading should be construed as a waiver of such rights.

180. Denied.

181. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

182. The allegations of Paragraph 182 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 182 are denied.

183. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

184. The allegations of Paragraph 184 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 184 are denied.

**ANSWER TO FOURTH CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code § 17200**

185. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein.

186. The allegations of Paragraph 186 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 186 are denied.

187. Denied.

188. Denied.

189. Denied.

190. The allegations of Paragraph 190 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 190 are denied.

191. Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters alleged.

192. Denied.

193. Denied.

194. The allegations of Paragraph 194 state legal conclusions and therefore do not require a response. To the extent a response is required, Defendants acknowledge that Plaintiff is seeking restitution but deny that she is entitled to same. Defendants deny that they are liable for any alleged injuries and that Plaintiff is in any way entitled to damages or other relief. Any remaining or inconsistent allegations are denied.

**ANSWER TO FIFTH CLAIM FOR RELIEF**

**Violation of California's Trafficking Victims Protection Act**

**Cal. Civ. Code § 52.5**

195. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein. By way of further response, Plaintiff's Fifth Claim for Relief should be dismissed for the reasons set forth in Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint with Prejudice (Dkt. # 45-1), their Reply Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint and Response to Plaintiff's Objections to Request for Judicial Notice (Dkt. #53) and in their Memorandum of Points and Authorities in Support of Defendants' Motion for Reconsideration of the Order Denying Defendants' Motion to Dismiss or, in the Alternative, for § 1292(b) Certification (Dkt. #73-1), as well as the reply to be filed in support of that motion.

Since Plaintiff has not substantively amended her allegations in support of this claim, Defendants are not burdening the Court with a renewed motion as to it. Rather, Defendants incorporate by reference the reasons for dismissal set forth in the above-referenced filings and preserve all rights to appeal from the Court's September 3, 2021 Order Denying in Substantial Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #66) and otherwise relative to those arguments. Nothing in this pleading should be construed as a waiver of such rights.

196. The allegations of Paragraph 196 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 196 are denied.

197. The allegations of Paragraph 197 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 197 are denied.

198. Admitted insofar as MG Freesites Ltd operates websites that are available all over the country, including in California. Any remaining or inconsistent allegations are denied.

**ANSWER TO SIXTH CLAIM FOR RELIEF**

**Intentional Infliction of Emotional Distress**

199. Defendants incorporate by reference the preceding paragraphs of this Answer as if fully set forth herein. By way of further response, Plaintiff's Sixth Claim for Relief should be dismissed for the reasons set forth in Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint with Prejudice (Dkt. # 45-1), their Reply Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the First Amended Complaint and Response to Plaintiff's Objections to Request for Judicial Notice (Dkt. #53) and in their Memorandum of Points and

Authorities in Support of Defendants' Motion for Reconsideration of the Order Denying Defendants' Motion to Dismiss or, in the Alternative, for § 1292(b) Certification (Dkt. #73-1), as well as the reply to be filed in support of that motion. Since Plaintiff has not substantively amended her allegations in support of this claim, Defendants are not burdening the Court with a renewed motion as to it. Rather, Defendants incorporate by reference the reasons for dismissal set forth in the above-referenced filings and preserve all rights to appeal from the Court's September 3, 2021 Order Denying in Substantial Part Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. #66) and otherwise relative to those arguments. Nothing in this pleading should be construed as a waiver of such rights.

200. The allegations of Paragraph 200 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 200 are denied.

201. The allegations of Paragraph 201 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 201 are denied.

202. The allegations of Paragraph 202 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 202 are denied.

203. The allegations of Paragraph 203 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 203 are denied.

204. The allegations of Paragraph 204 state legal conclusions and therefore do not require a response. To the extent a response is required, the allegations of Paragraph 204 are denied.

**RESPONSE TO "PRAYER FOR RELIEF"**

Defendants deny that Plaintiff is entitled to the relief enumerated in the "PRAYER FOR RELIEF", including its subparts, or to any relief whatsoever.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Defendants demand a trial by jury on all issues so triable.

**STATEMENT OF AFFIRMATIVE DEFENSES**

Defendants undertake the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated below. As and for its affirmative and other defenses, Defendants state as follows:

**FIRST DEFENSE**

Plaintiff's Second Amended Complaint fails to state facts sufficient to constitute a claim or claims upon which relief can be granted against Defendants.

**SECOND DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by 47 U.S.C. § 230(c)(1) and (e)(3).

**THIRD DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by 47 U.S.C. § 230(c)(2).

**FOURTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the protections of the First and Fourteenth Amendments to the United States Constitution and any freedom of speech protections afforded by the California Constitution.

**FIFTH DEFENSE**

Plaintiff's claims against Defendant are barred, in whole or in part, by the doctrine of unclean hands.

**SIXTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the failure to join one or more necessary parties.

**SEVENTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, because any injuries Plaintiff suffered were not directly or proximately caused by any act or omission by Defendants.

**EIGHTH DEFENSE**

Plaintiff is not entitled to relief because the injuries alleged, if any, were caused by the intervening and/or unlawful acts of third parties.

**NINTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, because the alleged acts or omissions were not committed by agents or employees of Defendants or, to the extent Defendants' agents or employees did commit any of the alleged acts or omissions, it was outside the scope of authority conferred by Defendants and not ratified by Defendants.

**TENTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, because any damage, loss, or liability alleged by Plaintiff must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Defendants, including third parties such as Plaintiff's alleged traffickers, and others who may have published sexually explicit images of Plaintiff, under the principles of proportionate responsibility, equitable allocation, recoupment, set-off, and/or comparative fault.

**ELEVENTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the applicable statute of limitations.

**TWELFTH DEFENSE**

Plaintiff's claims against Defendants are barred, in whole or in part, by the doctrines of laches, waiver, or estoppel.

**THIRTEENTH DEFENSE**

Neither MindGeek USA Inc., MindGeek S.à r.l., 9219-1568 Quebec Inc., or MG Content RT Ltd operate, manage, maintain, supervise or control the day-to-day operations of any website on which images of Plaintiff may have appeared, and therefore, are not liable for the Plaintiff's alleged damages.

**FOURTEENTH DEFENSE**

MG Freesites II Ltd has been dissolved and its entire business was transferred to MG Freesites Ltd, and therefore, it is not liable for the Plaintiff's alleged damages.

**FIFTEENTH DEFENSE**

Plaintiff's claims against Defendants fail to establish that any officer, director, or managing agent of Defendants acted with malice, oppression, or fraud, or directed, knew, or approved of an employee's malice, oppression, fraud, or duress as required to justify the imposition of punitive damages under California Civil Code sections 3294 or 52.5(b).

**SIXTEENTH DEFENSE**

Plaintiff's claims against Defendant fail to establish that Defendants acted with intentional and outrageous conduct, as required to justify the imposition of punitive damages under federal common law.

**SEVENTEENTH DEFENSE**

With respect to Plaintiff's claims for punitive damages, Defendants specifically incorporate by reference any and all standards of limitation regarding the determination and/or enforceability of punitive damage awards which arose in the decisions of *BMW of No. America v. Gore*, 116 U.S. 1589 (1996); *Cooper*

*Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 438 (2003), and their progeny.

**EIGHTEENTH DEFENSE**

With respect to Plaintiff's claims for punitive damages, any such damages claims are in violation of and are barred by the Constitution of the United States and any relevant comparable state constitutional provisions, including but not limited to, the Due-Process and Equal Protection Clauses contained in the Fifth and Fourteenth Amendments; the Excessive Fines Clause of the Eighth Amendment; and the Tenth Amendment.

**NINETEENTH DEFENSE**

Defendants intend to rely upon any additional defenses that become available during the course of investigation and/or discovery and reserves the right to amend its Answer to assert those defenses.

WHEREFORE, Defendants request that Plaintiff's Second Amended Complaint be dismissed in its entirety with prejudice, that judgment be entered in favor of Defendants, that Defendants be awarded costs and, to the extent provided by law, attorneys' fee, and any such other relief as the Court may deem proper.

DATED: October 14, 2021

RESPECTFULLY SUBMITTED,

/s/ *Benjamin Sadun*
BENJAMIN SADUN (287533)
KATHLEEN N. MASSEY (*admitted pro hac vice*)
MARK S. CHEFFO (*pro hac vice forthcoming*)
DECHERT LLP

*Attorneys for Defendants*
MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES LTD (D/B/A PORNHUB), MG FREESITES II LTD, MG CONTENT RT LIMITED, AND 9219- 1568 QUEBEC, INC. (D/B/A MINDGEEK)

# PLAINTIFF'S EXHIBIT 86

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JANE DOE on behalf of herself and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219- 1568 QUEBEC, INC. (D/B/A MINDGEEK),<br><br>Defendants. | Case No. 8:22-CV-01016-DMG-PVC<br><br>*Hon. Dolly M. Gee* |

**DEFENDANTS' RULE 26(a)(1) INITIAL DISCLOSURES**

Pursuant to Fed. R. Civ. P. 26(a)(1), Defendants MindGeek USA Inc., MindGeek S.à.r.l., MG Freesites Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd (collectively "Defendants") by and through their counsel of record, make these initial disclosures based upon the information reasonably available at this time. Defendants do not intend these disclosures to be a waiver or limitation of any privilege, immunity, or other right. Nor are they intended to be a waiver or limitation of any objection Defendants may have to the admissibility of any of the disclosed information. Defendants reserve the right to supplement these responses and disclosures as they learn more about the nature of Plaintiff's allegations and as their ongoing investigation progresses.

## I. INDIVIDUALS LIKELY TO HAVE INFORMATION THAT DEFENDANTS MAY USE TO SUPPORT THEIR DEFENSES

Defendants' investigation in this action is ongoing. Moreover, the precise nature of Plaintiff's allegations and alleged injuries remain unclear. Accordingly, Defendants may not be aware of the identity of all individuals likely to have discoverable information that Defendants may use to support their defenses. Subject to these limitations, and reserving the right to supplement this response, Defendants identify the following individuals who may be contacted through undersigned counsel for Defendants:

**A.** Andreas Ignatiou, who is likely to have information regarding Defendants' process and procedures for content moderation and violations of Defendants' terms of service.

**B.** Lauren Herbert, who is likely to have information regarding the reporting of content purported to contain child sexual abuse material to the National Center for Missing and Exploited Children, which, in turn, provides information to law enforcement.

**C.** David Cooke, who is likely to have information regarding Defendants' work with advocacy groups, non-profit organizations, and other third parties who work toward combatting child sexual abuse.

**D.** Tanya Prince, who is likely to have information regarding the removal child sexual abuse material from Defendants' websites.

**E.** Moustapha Moughrabi, who is likely to have information regarding compliance with, enforcement of, and violations of Defendants' terms of service.

In addition to the foregoing individuals, other individuals or entities may have discoverable information that Defendants may use to support its defenses, including other current or former employees with positions similar to those referenced above, as well as (i) Plaintiff; (ii) the individual who uploaded the content at issue to Defendants' websites; (iii) Plaintiff's friends, family members, coworkers, and healthcare providers; (iv) any witness necessary to authenticate documents; (v) all witnesses identified by Plaintiff or any other party; and (vi) any 30(b)(6) representative of Defendants.

By indicating the general subject matter of the information that these individuals and/or entities may possess, Defendants do not limit their right to call any individual or entity listed to testify concerning other issues or subjects. Defendants expressly reserve their rights to modify and supplement this list based upon investigation and discovery in this matter and to identify other relevant individuals as necessary. Defendants' further reserve their right to identify and call as witnesses persons identified in Plaintiff's initial disclosures.

## II. DOCUMENTS AND INFORMATION THAT DEFENDANTS MAY USE TO SUPPORT DEFENSES

Although Defendants reserve the right to supplement this response as Plaintiff discloses the nature of her allegations and as Defendants receive discovery

from Plaintiff and continues their investigation in this action, Defendants may use documents and information reasonably accessible from Defendants' facilities and offices to support their defenses including:

1. information from Defendants' internal databases pertaining to the upload of content depicting Plaintiff to Defendants' websites;

2. information from Defendants' internal databases pertaining to the removal of content depicting Plaintiff from Defendants' websites;

3. information from Defendants' internal databases and documents related to requests to remove content depicting Plaintiff from Defendants' websites;

4. information from Defendants' internal databases regarding the user and/or account that uploaded content depicting Plaintiff to Defendants' websites;

5. documents regarding Defendants' terms of service and compliance with same; and

6. documents regarding Defendants' policies and procedures for content moderation, performer verification, and compliance with terms of service.

By listing any of the foregoing documents and information, Defendants do not concede that any such documents and information are admissible and reserve the right to object to the admissibility of any of them. Defendants do not intend to waive any objections to production based upon attorney-client privilege, work product protection, or any other applicable privilege, immunity, or grounds. Defendants reserve the right to identify additional categories of documents and/or information at a later date based upon further investigation and discovery.

## III. DAMAGES

Defendants have not asserted any claims in this action and are not currently seeking damages.

## IV. INSURANCE AGREEMENTS

Defendants will produce to Plaintiff copies of the insurance agreement(s) under which an insurance business may be liable to satisfy all or part of a judgment that may be entered against Defendants in this action or to indemnify or reimburse for payments made to satisfy any such judgment.

DATED: JULY 1, 2022

RESPECTFULLY SUBMITTED,

/s/ *Kathleen N. Massey*

KATHLEEN N. MASSEY (*pro hac vice*)
kathleen.massey@dechert.com
MARK S. CHEFFO
mark.cheffo@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Phone: (212) 698-3500; Fax: (212) 698 3599

BENJAMIN SADUN (287533)
benjamin.sadun@dechert.com
DECHERT LLP
US Bank Tower, 633 West 5th Street,
Suite 4900
Los Angeles, CA 90071-2013
Phone: (213) 808-5721; Fax: (213) 808 5760

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on this day, I served a true and correct copy of the foregoing Defendants' Rule 26(a)(1) Initial Disclosures on the following via electronic mail:

Amy Gregory (agregory@sumangodfrey.com)
Davida Brook (dbrook@susmangodfrey.com)
Krysta Kauble Pachman (kpachman@susmangodfrey.com)
Arun Subramanian (asubramanian@susmangodfrey.com)
Tamar Lusztig (tlusztig@susmangodfrey.com)
Halley Josephs (hjosephs@susmangodfrey.com)
Susman Godfrey L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067

Steve Cohen
Pollock Cohen LLP
60 Broad Street, 24th Fl.
New York, NY 10004
scohen@pollockcohen.com

*Counsel for Plaintiff*

Dated: July 1, 2022

*/s/ Michelle Hart Yeary*
Michelle Hart Yeary
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
michelle.yeary@dechert.com

*Attorney for Defendants*

# PLAINTIFF'S EXHIBIT 87

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 88

JS-5

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JANE DOE on behalf of herself and all other similarly situated,<br>Plaintiffs,<br><br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES LTD (D/B/A PORNHUB), MG FREESITES II LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),<br>Defendants. | CASE NO. 8:21-CV-00338-CJC-ADS<br><br>Judicial Officer: Cormac J. Carney<br><br>**ORDER LIFTING STAY AND ENTERING AMENDED SCHEDULING ORDER [98]** |

The Court, having reviewed the Parties' Joint Motion to Lift the Stay Entered Pursuant to 18 U.S.C. § 1595(b) and Issue an Amended Scheduling Order now ORDERS as follows:

[1] The stay entered on December 28, 2021 (Dkt. #97) pursuant to 18 U.S.C. § 1595(b) is hereby lifted.

[2] All discovery, including discovery motions, shall be completed by March 1, 2024. Discovery motions must be filed and heard prior to this date.

[3] The parties shall have until June 3, 2024 to file and have heard all other motions, including motions to join or amend the pleadings.

[4] A pretrial conference will be held on **Monday, August 5, 2024 at 03:00 PM**. Full compliance with Local Rule 16 is required.

[5] The case is set for a **jury trial, Tuesday, August 20, 2024 at 08:30 AM.**

[6] The parties are referred to ADR Procedure No. 3 – Private Mediation. The parties shall have until March 15, 2024 to conduct settlement proceedings. The parties shall file with the Court a Joint Status Report no later than five (5) days after the ADR proceeding is completed advising the Court of their settlement efforts and status.

[7] Plaintiff shall have until December 4, 2023 to file and have heard any class certification motion.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Order on counsel for the parties in this matter.

**IT IS SO ORDERED.**

DATED: March 6, 2023

Cormac J. Carney
United States District Judge

# PLAINTIFF'S EXHIBIT 89

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

JANE DOE on behalf of herself and all others similarly situated,

Plaintiff,

v.

MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),

Defendants.

Case No. 8:21-cv-00338-CJC-ADS

*Hon. Cormac J. Carney*

**ORDER RE OUTSTANDING DISCOVERY AND OUT-OF-TIME DEPOSITIONS**

The Court, having reviewed the Parties' Joint Stipulation re Out-of-Time Depositions, now ORDERS as follows:

[1] Good cause exists for extending the discovery cut-off for the limited purposes of requiring Defendants to comply with the Discovery Order, and permitting Plaintiff to take the depositions identified herein that MindGeek has offered or will offer out of time;

[2] Good cause further exists for extending the discovery cut-off for the limited purpose of permitting Defendants to have until March 15, 2024 to produce documents responsive to RFP Nos. 27, 34, 36, 58, and 59; and documents from the custodial file of Karim El Marazi;

[3] Plaintiff and Defendants shall have until March 29, 2024, or another date mutually agreed to by the parties, to complete the depositions mentioned herein.

All other dates in the Amended Scheduling Order shall remain unchanged.

**IT IS SO ORDERED.**

DATED: March 6, 2024

Hon. Cormac J. Carney
United States District Judge

# PLAINTIFF'S EXHIBIT 90

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 91

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:21-cv-00338 CJC (ADSx) Date: March 1, 2024

Title: *Jane Doe v. MindGeek et al.*

---

Present: The Honorable Autumn D. Spaeth, United States Magistrate Judge

| Kristee Hopkins | None Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings: (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY (DKT. NO. 239)**

## I. BACKGROUND

Before the Court is Plaintiff Jane Doe's ("Plaintiff") Motion to Compel Discovery (the "Motion") filed on February 7, 2024, against Defendants MindGeek USA Inc., MindGeek S.a.r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd, and 9219-1568 Quebec Inc. (d/b/a Mindgeek) ("Defendants"). (Dkt. No. 239.) The Motion includes a Joint Stipulation pursuant to Local Rule 37 and both parties filed supplemental briefs. (Dkt. Nos. 239-2, 251, 252.) The Court held a hearing on the Motion on February 28, 2024, (the "Hearing") at which counsel for the parties appeared. (Dkt. No. 262.) At the conclusion of the Hearing, the Court took this matter under submission. For the reasons discussed below, the Motion is granted in part and denied in part.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering various factors. FED. R. CIV. P. 26(b)(1). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Alves v. Riverside Cnty., 339 F.R.D. 556, 559 (C.D. Cal. 2021) (quotations and citations omitted); Table de France, Inc. v. DBC Corp.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:21-cv-00338 CJC (ADSx) Date: March 1, 2024

Title: *Jane Doe v. MindGeek et al.*

No. EDCV 19-423-JGB-KKx, 2019 WL 6888043, *5 (C.D. Cal. 2019). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." Alves, 339 F.R.D. at 559 (quotations and citations omitted).

## III. DISCUSSION

Based on the parties' briefing and statements made during the Hearing, the Court understands the following issues are still in dispute: (i) production of past and future discovery from two other cases—Fleites v. MindGeek S.A.R.L, No. 21-4920 (C.D. Cal.) ("Fleites") and Doe Nos. 1 & 2 v. MG Freesites, LT, et al., N o. 21-220 (N.D. Ala.) (the "Alabama Action" and, together with Fleites, the "Other Cases")—through Requests For Production ("RFP") Nos. 33–36 and 78; (ii) production of acquisition documents through RFP Nos. 6, 27, 58–60, and 62; (iii) production of documents in Kareem El Marazi's custodial file; and (iv) deposition scheduling. (Dkt. No. 239-2; Dkt. No. 251 at 3 n.1; Dkt. No. 251-1.) The Court addresses and rules on each issue in turn below.

### A. Discovery From the Other Cases

Through several RFPs, Plaintiff's Motion seeks to compel Defendants to produce all past and future discovery from the Other Cases, including Defendants' document productions, deposition transcripts, interrogatory responses, and third-party productions. Some courts in this circuit have frowned upon "cloned discovery" that requests "all documents produced or received during other litigation or investigations." See King Cnty. V. Merrill Lynch & Co., No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011). Courts have allowed discovery when the previous litigation and the present case have significant factual and legal overlap and involve the same legal claims. Rumble, Inc. v. Google LLC, 2023 WL 3751797, at *8 (N.D. Cal. May 31, 2023) (granting motion to compel past document productions in related litigations with significant factual and legal overlap); Schneider v. Chipotle Mexican Grill, 2017 WL 1101799, at *3–4 (N.D. Cal. Mar. 24, 2017) (granting motion to compel past productions in prior lawsuit that asserted claims under same Florida statute, except for category of documents unrelated to present case). But this does not mean that the "similarities are . . . enough to require a *carte blanche* production of all documents" from the prior litigation. Chen v. Ampco Sys. Parking, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:21-cv-00338 CJC (ADSx) Date: March 1, 2024

Title: *Jane Doe v. MindGeek et al.*

**1. Defendants' Document Productions**

First, through RFP Nos. 33 and 35, Plaintiff seeks all of Defendants' past and future productions in the Other Cases. Plaintiff argues Defendants' past productions are plainly relevant, and future productions will necessarily be relevant, because those cases concern allegations that MindGeek knowingly received and distributed CSAM and violated federal sex trafficking laws. Defendants argue that they have already given Plaintiff their past productions from the Alabama Action (except two irrelevant documents), as well as all custodial documents and some noncustodial and financial documents from Fleites.

The Court finds Plaintiff has not met her burden to establish relevance and these requests are not proportional to the needs of this case. The Motion does not explain with sufficient detail what document requests and productions made to date in the Other Cases are relevant to the claims or defenses in this case. The Motion uses vague general terms and only references two RFPs from jurisdictional discovery in Fleites. Plaintiff does not sufficiently explain how documents produced in response to those RFPs are relevant to the claims here. The Motion likewise does not provide any detail regarding the Alabama Action.

As for Defendants' future productions in the Other Cases, the Motion does not explain what future productions made in those cases will be relevant. It is unclear how Plaintiff could establish relevance of future unknown document productions. See, e.g., Goro v. Flowers Foods, Inc., 2019 WL 6252499, at *18 (S.D. Cal. Nov. 22, 2019) ("The propounding party cannot meet its burden to establish relevance, as [they are] not in a position to even know what they are actually asking for. There could be a number of reasons why documents appropriately requested and provided in another case—even if the subject matter of those cases seem to overlap—would be irrelevant or burdensome to provide in another case."); In re Volkswagen "Clean Diesel Mktg., Sales Pracs., and Prod. Liab. Litig., 2017 WL 4680242, at *1–2 (N.D. Cal. Oct. 18, 2017) (rejecting plaintiffs' attempt to gain complete access to separate MDL production based on overlap of claims because this would "expand the scope of discovery beyond that allowed by the Federal Rules"); cf. Munoz v. PHH Corp., 2013 WL 684388, at *5 (E.D. Cal. Feb. 22, 2013) (ordering production from related investigation where plaintiffs made efforts to narrow requests to 13 of 33 RFPs in related cases).

The Motion is **DENIED** with respect to RFP Nos. 33 and 35.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:21-cv-00338 CJC (ADSx) Date: March 1, 2024

Title: *Jane Doe v. MindGeek et al.*

**2. Deposition Transcripts, Interrogatory Responses, and Third-Party Productions**

Second, through RFP Nos. 34 and 36, Plaintiff seeks to compel Defendants to produce all past and future deposition transcripts, interrogatory responses, and third-party productions from the Other Cases. The parties largely assert the same arguments as discussed above.

With respect to interrogatory responses and third-party productions, the Court finds Plaintiff fails to show relevance and these requests are not proportional to the needs of this case. The Motion uses vague general terms and references only two interrogatories from jurisdictional discovery in Fleites. Plaintiff does not sufficiently explain how Defendant's responses thereto are relevant to the claims here. The Motion does not identify any third parties or explain how their productions in the Other Cases are relevant. Again, it is unclear how Plaintiff can establish relevance of future unknown interrogatory responses and third-party productions.

With respect to the deposition transcripts requested by RFP Nos. 34 and 36, the Court finds the past and future transcripts for deponents in the Other Cases are relevant to the extent those deponents are also deponents or witnesses in this case. In addition, as for RFP No. 78, which requests transcripts and exhibits from depositions of 19 individuals "in any litigation" without limitation, this request is extremely overbroad.

The Motion is **DENIED** for RFP Nos. 34 and 36 to the extent they seek interrogatory responses and third-party productions.

The Motion is **GRANTED** for RFP Nos. 34 and 36 to the extent they seek deposition transcripts of deponents who are also deponents or witnesses in this case.

The Motion is **DENIED** with respect to RFP No. 78.

**B. <u>Acquisition Documents</u>**

Through RFP Nos. 6, 27, 58, 59, 60, and 62, Plaintiff seeks to compel Defendants to produce certain acquisition documents. Plaintiff seeks documents pertaining to Ethical Capital Partner's ("ECP") acquisition of MindGeek, including ECP transaction documents, due diligence documents, documents pertaining to ECP's valuation of MindGeek, documents regarding the executive leadership at MindGeek as of the date of ECP's acquisition, and documents relating to other potential acquirers. She argues that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:21-cv-00338 CJC (ADSx) Date: March 1, 2024

Title: *Jane Doe v. MindGeek et al.*

these documents relate to the ECP transaction and other third parties considering acquiring MindGeek, which is relevant to showing what Defendants represented regarding CSAM, its value in light of CSAM litigation, and the deal structure. Defendants argues that they were not a party to any valuation or the transaction documents whereby third-party ECP purchased MindGeek's shares from other third parties. Defendants argue further that these requests are not relevant because this acquisition was a change of ownership (not operations) that post-dated the class actions against Defendants. Finally, Defendants argue ECP has already provided virtually everything Plaintiff seeks and is in the process of providing even more.

With respect to **RFP Nos. 6, 60, and 62,** the Motion is **DENIED**, as Plaintiff has not shown relevance.

With respect to **RFP Nos. 27, 58, and 59,** the Motion is **GRANTED** as these RFPs seek relevant documents. Defendants have not met their burden of showing why the Motion should be denied as to these RFPs. The Court **ORDERS** Defendants to produce responsive documents by no later than March 15, 2024, or a date mutually agreed to by the parties.

**C. <u>Additional Custodial Files</u>**

Next, Plaintiff seeks to compel Defendants to produce documents responsive to her discovery requests in the custodial file for Kareem El Marazi. Defendants argue that Plaintiff has not shown relevance for El Marazi's files.

The Court disagrees. El Marazi is the Chief Product Officer. His name shows up on approximately 9,000 documents based on Plaintiff's search terms. And Defendants admit that they have produced 5,700 of those documents through other custodians. This suggests that the remaining documents in El Marazi's custodial file likely include relevant and responsive information.

The Motion is **GRANTED** with respect to the custodial file for El Marazi. The Court **ORDERS** Defendants to produce documents in this file that are responsive to Plaintiff's discovery requests by no later than March 15, 2024, or a date mutually agreed to by the parties.

**D. Depositions**

Finally, Plaintiff seeks an order compelling Defendants to produce El Marazi for an individual deposition, Matt Kilicci for a full individual deposition, and a corporate representative for thirteen Rule 30(b)(6) deposition topics that Defendants have failed to designate a corporate witness for. The Court addresses the individual depositions and Rule 30(b)(6) deposition separately.

First, Plaintiff argues that Matt Kilicci and El Marazi's depositions seek relevant information, but Defendants have been stonewalling. It appears the parties have been discussing deposition scheduling for several deponents, including Kilicci and El Marazi, since June 2023. Plaintiff asked Defendants for deposition dates multiple times in June, August, and again in her meet-and-confer efforts in January 2024. She noticed dates of her own choosing for El Marazi on February 14, which MindGeek rejected.

Since Plaintiff filed this Motion, Defendants have agreed to provide dates and produce most of the individual deponents. But Defendants oppose El Marazi's deposition entirely and, as the Court learned for the first time at the Hearing, Defendants refuse to produce Kilicci for a full day of deposition. Defendants argue that Plaintiff has not shown relevance of El Marazi's testimony, and that they objected in October 2023 to his deposition as exceeding the number of depositions (10) permitted by the Federal Rules. Defendants argued at the Hearing that Kilicci's deposition should not be a full day because Plaintiff has already exceeded the deposition limit.

The Court finds these depositions are relevant and Defendants have failed to meet their burden of showing why this discovery should not be allowed. El Marazi's testimony is relevant for the same reasons his custodial file is relevant. Defendants do not dispute the relevance of Kilicci's testimony. And Defendants do not evidence their objections to these individual depositions. Defendants attempt to stand on objections made in October 2023, but they failed to attach those objections to the Joint Stipulation. As presented, the briefing and evidence shows the parties discussed depositions for several individuals for months, and Defendants started cooperating with setting those depositions, even beyond the deposition limit, after Plaintiff filed her Motion—except for El Marazi's deposition.

Second, Plaintiff argues that Defendants are similarly stonewalling properly noticed Rule 30(b)(6) topics. Plaintiff served a Rule 30(b)(6) deposition notice on Defendant on June 20, 2023. Defendants designated representatives for only 5 topics and refused to designate a corporate representative for the remaining 13 topics. In the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:21-cv-00338 CJC (ADSx) Date: March 1, 2024

Title: *Jane Doe v. MindGeek et al.*

Joint Stipulation, Defendants do not address their failure to designate a corporate representative. Rather, in their supplemental brief, Defendants argue that they objected to these topics and that Plaintiff's meet-and-confer letter only mentioned "deposition scheduling" and not the propriety of her Rule 30(b)(6) topics.

Rule 30(b)(6) is clear. "The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Id. If a party fails to designate a Rule 30(b)(6) witness, or if the response provided is evasive or incomplete, the propounding party may bring a motion to compel. See Fed. R. Civ. P. 37(a); Ludlow v. Flowers Foods, Inc., 2019 WL 10058829, at *2 (S.D. Cal. Sept. 24, 2019).

The Court similarly finds that Plaintiff's Motion demonstrates the undesignated topics seek relevant information, and that Defendants failed to meet their burden of showing why this discovery should be prohibited. In her Motion, Plaintiff attached the Rule 30(b)(6) notice and identified the undesignated topics, which appear to seek relevant information. Defendants again do not evidence or sufficiently explain their objections. And their assertion that the meet-and-confer only concerned "deposition scheduling," not the propriety of the undesignated topics themselves, is semantical. A refusal to designate a corporate representative for properly noticed topics must be supported by some substantive reason that challenges the propriety of topics. Plaintiff's meet-and-confer efforts pressed Defendants for their reasons to no avail. Defendants similarly fail to explain them to the Court.

Accordingly, the Court **GRANTS** the Motion with respect to El Marazi's individual deposition, Kilicci's individual deposition, and the deposition for the undesignated Rule 30(b)(6) topics. The Court **ORDERS** Defendants to provide Plaintiff with dates for these depositions by March 1, 2024, or another date mutually agreed to by the parties.

With respect to the remainder of the issues raised in the Motion but for which Plaintiff has notified the Court are no longer at issue, the Motion is **DENIED** as moot.

However, this Order does not extend the discovery cut-off in this case, and the parties need to seek an extension of that cut-off with Judge Carney.

**IT IS SO ORDERED.**

Initials of Clerk kh

# PLAINTIFF'S EXHIBIT 92

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 93

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 94

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD, D/B/A PORNHUB, MG FREESITES II, LTD, MG CONTENT RT LIMITED, and 9219-1568 QUEBEC, INC. D/B/A MINDGEEK,<br><br>Defendants. | Case No.: SACV 21-00338-CJC (ADSx)<br><br>ORDER GRANTING IN SUBSTANTIAL PART PLAINTIFF'S RENEWED MOTION TO APPROVE FORM AND MANNER OF CLASS NOTICE [Dkts. 211, 222, 223] |

## I. INTRODUCTION

The parties are familiar with the allegations and posture of this case. In short, the Court granted Plaintiff's motion for class certification on November 17, 2023, certifying a nationwide class and a California subclass of child sexual abuse material ("CSAM") survivors under both Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). (*See* Dkt.

209 [Order Granting Plaintiff's Motion for Class Certification].) Now before the Court is Plaintiff's renewed motion to approve the form and manner of class notice. (*See* Dkt. 211 [Motion for Order for Approval of Form and Manner of Class Notice, hereinafter "Mot."]; Dkt. 222 [Status Report Regarding Motion to Approve Form and Manner of Class Notice, hereinafter "Status Report"]; Dkt. 223 [Minute Order Renewing and Taking Under Submission Plaintiff's Motion for Order for Approval of Form and Manner of Class Notice, hereinafter "Minute Order"].) For the following reasons, Plaintiff's motion is **GRANTED IN SUBSTANTIAL PART**.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

In addition to Rule 23(c)(2)(B), class notice must also comply with constitutional due process because class members are bound by the results of a certified Rule 23(b)(3) class action unless they affirmatively opt out. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). "To meet the constitutional guarantee of procedural due process, notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (cleaned up).

## III. DISCUSSION

Plaintiff proposes a robust direct and indirect notice plan that will sufficiently apprise interested parties of the pendency of this action. To summarize, JND Claims Administration LLC ("JND"), an experienced notice and claims administrator, will send Class Members that can be identified through Defendants' internal records direct notice through physical mail or email. (Mot at 4.) Third-party notice will be sent to non-Class Members who submitted a child pornography content removal request or otherwise notified Defendants about child pornography on their websites. (*Id.*) JND will also post a detailed long form notice to a case-specific website. (*Id.*) Additionally, Class Counsel will coordinate with the National Center for Missing & Exploited Children ("NCMEC") to further disseminate notice through NCMEC's established channels of communication with survivors of child sex trafficking, direct service providers, and advocates. (*Id.* at 4, 6–7.) Further, Plaintiff proposes a variety of forms of publication notice tailored to the known demographics of the Class: digital ads through the search engine Google Display Network and digital social media and news platforms, ads on Defendants' websites, and a global press release in a multitude of languages. (*Id.* at 7–8.) Finally, the parties have worked together to ensure that Class Members may easily opt out if they so choose. (*See* Dkt. 216 [Reply in Support of Motion for Order for Approval of Form and Manner

of Class Notice, hereinafter "Reply"] at 16; Status Report at 2 ["The parties also agree that Plaintiff's revisions to the notice attached to Plaintiff's Reply (ECF No. 216) alleviate Defendants' concerns regarding whether class members can opt out electronically[.]"].)

By and large, Defendants do not dispute Plaintiff's proposed notice plan, and the Court finds that the notice and plan satisfy the statutory and constitutional requirements because, given the nature and complexity of this case, "a multi-faceted notice plan is the best notice that is practicable under the circumstances." *Doe v. Stephen*, 2022 WL 1700445, at *5 (S.D. Iowa Feb. 2, 2022) (cleaned up). However, the parties disagree as to four issues related to class notice: (1) whether the approved class notice should be posted on Defendants' websites, (2) whether the notice plan should include a global press release, (3) whether the Court's order on class notice should require Plaintiff to bear all costs, and (4) whether Plaintiff's counsel should be required to coordinate with counsel in a similar pending class action in the Northern District of Alabama ("Alabama *Doe* case") on the issue of class notice. (*See* Status Report at 2; Minute Order at 2.) Separately, Plaintiff seeks the Court's approval to use personally identifying information ("PII") produced by Defendants to identify potential Class Members and disseminate class notice. (Mot. at 11.) The Court addresses each issue below.

**A. Notice on Defendants' Websites**

Defendants argue there is no need to post class notice on their websites because Plaintiff's other proposed forms of notice will be sufficient, rendering any ads on Defendants' websites redundant and suggestive of punishment. (Dkt. 212 [Memorandum in Opposition to Motion for Order for Approval of Form and Manner of Class Notice, hereinafter "Opp."] at 3–6.) Plaintiff responds by asserting that "notice on MindGeek's websites is especially appropriate because Class members likely regularly

visit MindGeek's websites to ensure CSAM has not been reposted, which is consistent with Plaintiff's experience." (Reply at 2.) But as Defendants correctly point out, Class Members who have visited Defendants' sites and reached out to Defendants to have content of them taken down will receive direct notice. NCMEC will also assist in distributing notice through a variety of channels, there will be many other digital ads delivered through popular sites, which are projected to deliver tens of millions of impressions, and a global press release (discussed below). (*See* Mot. at 7–8.) Therefore, this form of notice only addresses potential Class Members who visit Defendants' websites regularly but have never issued a takedown request *and* who are not likely to receive notice through any of Plaintiff's other proposed methods of notice. Because requiring Defendants to post class notice on their websites "has the potential to appear punitive, while the incremental chance that potential plaintiffs who do not otherwise receive notice would see it and become aware of their right is small," the Court will not require Defendants to do so. *Mark v. Gawker Media LLC*, 2014 WL 5557489, at *4 (S.D.N.Y. Nov. 3, 2014).

### B. Global Press Release

Defendants claim that a global press release translated into many languages is unnecessary and would serve only as a "publicity vehicle" because the "certified claims do not have extraterritorial application." (Opp. at 7.) Plaintiff argues that the claims do have extraterritorial application. (Reply at 7.) In any event, the Court does not need to resolve that dispute at this time. It is always the case that any publication notice, including a global press release, will be overinclusive. *See Jermyn v. Best Buy Stores, L.P.*, 2010 WL 5187746, at *8 (S.D.N.Y. Dec. 6, 2010). But the Court must direct the best notice that is practicable under the circumstances. Even for trafficking that took place entirely in the United States, the survivors may well not be fluent in English given the international component of human trafficking. Survivors may also no longer be in

the country. The Court agrees with Plaintiff that a wide-reaching press release helps assure the best notice practicable under the circumstances. *See Flynn v. Sony Elecs., Inc.*, 2015 WL 128039, at *3 (S.D. Cal. Jan. 7, 2015) ("[S]imply because the publication reaches residents outside of the Class does not necessarily mean that the notice is overbroad."). And unlike requiring notice on Defendants' websites, the Court does not believe that a global press release risks the appearance of punishment.

**C. Class Notice Costs**

Defendants request that "[a]ny order approving the notice plan should make clear, consistent with Supreme Court precedent, that plaintiff bears the cost of the notice." (Opp. at 14.) Defendants are correct that "[t]he usual rule is that a plaintiff must initially bear the cost of notice to the class." *Eisen*, 417 U.S. at178. Plaintiff does not seek to depart from this rule and "does not request an order requiring MindGeek to bear notice costs at this stage."[1] (Reply at 8.) Therefore, there is no reason for the Court to issue a hypothetical ruling on the issue of class notice costs. If Plaintiff pursues costs related to class notice at some later date, whether warranted or unwarranted, the parties may properly brief and argue the issue then. *See Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1143 (9th Cir. 2009) ("[M]any district courts have placed notice costs on the class action defendant once the defendant's liability has been established."); *Bakov v. Consol. World Travel, Inc.*, 68 F.4th 1053, 1059 (7th Cir. 2023) ("We thus agree with the courts that have said that the district court may elect to shift the cost of class notice (with or without a security bond) to the defendant after the plaintiff's success on the merits has been established.").

[1] Plaintiff did request an order requiring Defendants to bear the associated costs with posting class notice on its various websites, but that issue is moot in light of the Court's ruling that Defendants will not be required to post class notice on their websites.

**D. Coordination with Alabama *Doe* Case**

Lastly, Defendants argue that "[t]o avoid confusion arising from two competing notice plans targeted toward the same class of individuals, the Court should require plaintiff to coordinate with class counsel in the Alabama *Doe* case to create a single, combined and standardized notice plan that is consistent across both classes." (Opp. at 20.) But this case has never been coordinated with the Alabama *Doe* case, nor does it appear that Defendants have ever moved to do so. Further, any order on this issue by the Court would not be binding on the Alabama plaintiffs. If specific issues (over which this Court has jurisdiction) related to the Alabama *Doe* case arise, the Court trusts that the parties will timely bring them to the Court's attention.

**E. Use of PII for Class Notice Dissemination**

The Court previously ordered that Plaintiff would not use PII produced by Defendants or information derived from the produced PII to contact any individuals, "except in the event Plaintiff's motion for class certification under Federal Rule of Civil Procedure 23 is granted and then only with an Order from the Court permitting and prescribing the contact allowed." (Dkt. 121 [Order Re Production of Personally Identifying Information].) Because the Court granted class certification, such information is necessary for direct notice to Class Members, and Defendants do not object to Plaintiff's request to use PII, the Court approves Plaintiff's request to identify potential Class Members and disseminate class notice. (*See* Reply at 17.)

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's motion to approve form and manner of class notice is **GRANTED IN SUBSTANTIAL PART**. Notice in the form agreed upon by

the parties shall be dispatched in accordance with Plaintiff's proposal, with the exception that Defendants will not be required to post notice on their websites. Plaintiff is authorized to use PII to identify potential Class Members and disseminate class notice.

DATED: January 26, 2024

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

# PLAINTIFF'S EXHIBIT 95

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 96

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 97

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 98




**The Big Read** Technology sector Add to myFT

# MindGeek: the secretive owner of Pornhub and RedTube

In the internet era, porn is everywhere but the company which owns some of the most popular sites is out of sight

Save

**Patricia Nilsson** in London DECEMBER 16 2020 230

**Stay informed with free updates**

Simply sign up to the Technology sector myFT Digest -- delivered directly to your inbox.

Mario Salieri was shooting a pornographic movie in a lavish Prague villa two decades ago when he first caught sight of the computer geeks who were about

to upend his industry.

"The owner of the villa asked me if we could offer a sandwich to a young computer programmer who had been renting a room," says Mr Salieri. "The boy was pale and visibly hungry."

A few years later, Mr Salieri discovered that "the boy" had bought his first Rolls-Royce Phantom. Like other coders, he had made a fortune selling advertising on the early free-to-watch porn sites, which today attract hundreds of millions of visits every day.

Once run by silk-robed moguls such as Playboy founder Hugh Hefner, the adult content industry is now led by a secretive group of experts on algorithms, search engine optimisation and targeted advertising. "All of us old operators in the porn industry were busy counting our millions generated with the sales of VHS, DVD and TV rights . . . no one ever bet on the danger [of the new generation of pornographers]," says Mr Salieri.

In the internet era, porn is everywhere, but its owners are out of sight.

Porn pioneered elements of the global online advertising industry such as targeted advertising, pay-per-click and email marketing and is today a substantial part of the internet economy. So-called "tube" sites have also courted controversy over videos with links to exploitation of children and sex trafficking.




MindGeek's headquarters in Montreal. The Luxembourg-registered group, which in 2018 recorded just over $460m in revenues, entices more than 115m visitors to its websites every day © Kristoffer Tripplar/Alamy

Yet very little is known about the new group of operators whose pockets are being lined by the insatiable demand for sexually arousing footage.

No entity exemplifies this more than MindGeek, which with very little scrutiny or accountability, has quietly become the dominant porn company. The

Montreal-based business is the owner of several of the sector's most visited sites including Pornhub, RedTube and YouPorn. At least according to public financial records, MindGeek towers over the pornography industry in Europe and America.

Despite this, basic facts about the company are largely unknown. That includes its main owner — a businessman called Bernard Bergemar, whose name is almost completely invisible on the internet but who has a claim to the title of the world's most successful porn tycoon. Until this Financial Times investigation, his identity was secret, known only to a small circle of MindGeek executives and their advisers.

MindGeek's website bears little trace of the adult industry. Instead, the company bills itself as a "leader in the design, development . . . and management of highly trafficked websites".

High traffic is an understatement. The Luxembourg-registered group, which in 2018 recorded just over $460m in revenues, entices more than 115m visitors to its websites every day. In the US over the past month, for example, more web searches were recorded for "Pornhub" than "coronavirus" or "Trump", according to Google data.

Prospective MindGeek employees are told they will be able to take "big data to the next level", uncovering "user habits overnight that take others months to gather". Every day, roughly 15 terabytes worth of videos get uploaded to MindGeek's sites, equivalent to roughly half of the content available to watch on Netflix.



The Pornhub Christmas store in Milan, in 2017. In the US over the past month, more web searches were recorded for 'Pornhub' than for 'coronavirus' or 'Trump', according to Google data © Emanuele Cremaschi/Getty

In recent years, the largest internet companies have become both household names and the subject of intense political scrutiny. Facebook founder Mark

Zuckerberg is regularly asked to testify before Congress, while YouTube's content policies are an issue of widespread public debate.

Online porn has not been completely immune to the sort of political and regulatory pressure that the big tech companies have started to face. After years of campaigns against revenge porn — sexual footage taken or shared without consent that often identifies the victim — and other forms of exploitation, Pornhub agreed on Monday to temporarily take down all content from unverified sources, while it rolls out a new scheme to verify users. There have long been stringent laws governing child pornography.

But even though it has reshaped an industry that is responsible for a significant part of the traffic on the internet, MindGeek and entrepreneurs such as Mr Bergemar have remained largely in the shadows. MindGeek's early lenders — including Wall Street names such as JPMorgan — made sure to also hide from view. And regulators have steered clear of asking too many questions.

"No politician wants to talk about the porn industry because then they have to acknowledge how it is part of everyday life," says Kate Isaacs at Not Your Porn, which campaigns against the use of sexual images without consent. "So no one is holding a multinational corporation like MindGeek to account."

## Free content

MindGeek's business model will be all too familiar to those who have watched the disruptive power of Silicon Valley. Most of the pornography hosted by its free-to-watch sites is uploaded directly by the public. Much like Facebook's huge reach convinces news publishers to promote stories on its platform — with the hope it will drive subscriptions — many porn production studios post snippets of their films on to MindGeek's sites, hoping that some viewers will want to pay for more.

But a vast amount of pornography available on free-to-watch tube sites is stolen. Jason Tucker, president of copyright enforcement consultancy Battleship Stance, says porn is the most pirated content in the world simply because "it is the most desired content in the world".

Mr Tucker, who has worked with online porn companies since the late 1990s and counts MindGeek as a client, says large and well-established porn sites such as Pornhub are "the most responsible . . . they have too much risk not to adhere to laws".



Swedish adult film director Erika Lust says MindGeek 'came into the market with a business model based on piracy and completely destroyed the industry'. MindGeek says it has processes in place to detect and remove videos that violate other companies' copyright © A.Marquez/EPA-EFE

Other people in the industry disagree and single out MindGeek as driving the free porn business model, which has squeezed profit margins for producers, squashed smaller companies and pushed down pay and working conditions for a growing number of actors.

"They came into the market with a business model based on piracy and completely destroyed the industry, putting many production studios and performers out of business," says Erika Lust, a Barcelona-based adult film producer. She says her team sends MindGeek requests to remove her videos — both US and EU regulations mandate copyright holders to monitor whether their material is shared illegally — from their sites "weekly, if not daily".

MindGeek says it has processes in place to detect and remove videos that violate other companies' copyright or feature child pornography and other illegal content.

The company's assurances are, however, questioned by campaigners such as Ms Isaacs, who was last year told by a Pornhub representative that the site had a "couple of dozen" people screening the vast amount of porn uploaded to the site.

MindGeek says the number cited to Ms Isaacs was "inaccurate" but declined to provide a figure. YouTube has roughly 10,000 people who work with moderating content uploaded to its pages.

## Knowing users' fantasies

The man who defined the new era of porn was Fabian Thylmann. As a teenager in Germany in the late 1990s, he developed one of the first pieces of software that enabled website owners to charge for advertisements by tracking what

visitors clicked on. It offered a glimpse of how lucrative online marketing could be if only there was something to attract crowds — such as free videos of people having sex.

With money made from his first venture, Mr Thylmann, began snapping up fledgling porn sites and production companies, which were struggling to compete with free sites full of videos ripped off from them. His stroke of luck came when he learnt that the Montreal-based groups behind Pornhub and Brazzers — which in 2010 were already profitable businesses and well-known brands — were up for sale.



YouPorn is one several of the adult content industry's most visited sites that are owned by MindGeek © ullstein bild/Getty

As a result of the deal, worth more than $130m, Mr Thylmann was desperate for cash to expand his porn empire, then called Manwin. Mr Thylmann did not respond to requests for comment but in 2016 told attendees at a start-up conference that venture capitalists had been wary, telling him "the numbers look great, but it is porn, so I can't get this past my board".

The solution came in 2011, in the form of $362m in debt from 125 secret investors that — according to one financial backer — included Fortress Investment Group, JPMorgan Chase and Cornell University. The two firms declined to comment, while the university said that its investment managers' portfolios are confidential.

Mr Thylmann told the conference-goers that interest payments were "a very, very steep cost, which if I will tell you, you would all fall over and think I'm crazy". But "a very nice [profit] margin of 25 per cent" made the dizzying cost of growth worth paying.

The funding helped the software developer expand from 200 to 1,200 staff within three years, with dozens of corporate offshoots stretching from

Montreal and Luxembourg to Ireland, Cyprus and the British Virgin Islands.

His run as one of the world's most powerful people in porn came to an abrupt end in late 2012 when German public prosecutors charged him with tax evasion. Soon after, he sold the company to senior managers Feras Antoon and David Tassillo, who renamed the company MindGeek and now run it out of Montreal. They both declined to comment for this article.




A demonstration in Thailand against the banning of Pornhub. "Pornhub is the adult site with the most traffic on the planet, that's the pitch we were making to clients," says one former employee © Lauren DeCicca/Getty

Detailed data tracking the sexual fantasies of hundreds of millions of people direct what MindGeek orders production studios to shoot for their subscription pages, which are then promoted on the company's vast network of tube sites to tap into their massive audience. If the "free" product flops, audiences for premium products grow and vice versa, leaving MindGeek profiting either way in what Mr Thylmann called "in-house competition".

"This is why MindGeek is one of the most powerful ones in the business, because they have these free sites and they have all the traffic and they don't need to depend on anyone else," he said in 2016.

Yet, until its most recent accounts in 2018, MindGeek had made only modest profits. Pre-tax profit reached $38.3m in 2018, up from $9.7m in 2017 and $26m the year before, with net revenues hovering just under $500m.

The legacy of Mr Thylmann's deal with lenders is one potential explanation for the modest profits, with MindGeek's accounts showing it has for years paid an annual 20.4 per cent interest rate on outstanding debt that in 2018 reached $370m.

But money is also funnelled into a complex network of subsidiaries that MindGeek owns less than a third of and in which Mr Bergemar holds a significant set of shares, according to a person close to the company. These

corporate branches, which control a network of companies to which MindGeek pays licence fees for its various brands and issue dividends to their undisclosed owners, were set up shortly after the porn company swapped hands in 2013.

MindGeek owes one of these subsidiaries $200m in debt issued when Mr Bergemar entered the business, which is paid in monthly instalments that range from $1.5m to $1.8m, some years eclipsing declared profits. Another subsidiary, which in 2018 paid shareholders $24m in dividends, increased its stake in two cash-generating companies that hold MindGeek's licences shortly after the refinancing of MindGeek's debt the same year, at a cost of $149m.




A banner at an International Women's Day march in Toulouse carries the message 'I'm more than a keyword on YouPorn'. © Alain Pitton/NurPhoto/Getty

Mr Bergemar does not feature in the porn company's corporate filings and declined to speak to the FT. But several sources confirmed that, through a complex structure involving shares in MindGeek-controlled subsidiaries, Mr Bergemar is the group's largest owner and biggest beneficiary.

MindGeek would not comment on who currently owns its debt, but a former investor says one of the company's bigger backers was California-based investment adviser Glendon Capital, which focuses on "distressed opportunities". Glendon declined to comment, but a person close to the firm said it had sold its position.

The opaqueness surrounding the company's financing also covers management — the names of many of the company's senior executives who feature in corporate filings do not appear in internet searches, leaving little or no trace of who they are. Mr Bergemar appears on three Google results, all related to a decade-old court case where he gave evidence as the director of RedTube, the porn site MindGeek acquired soon after Mr Thylmann's exit.

Previous media reports have stated that Mr Tassillo and Mr Antoon bought the company from Mr Thylmann in 2013, and their names are — aside from anonymous family trusts and shell companies — the only ones listed as owning shares in MindGeek.

## Industry frontrunner

MindGeek denies being the world's largest porn company, a position that would justify growing scrutiny into its business, and points to rival WGCZ Holding, a Czech-registered company behind tube sites Xvideos and Xnxx that is owned by two French citizens who share a surname.

But internally, the company is less modest, say former employees. "Pornhub is the adult site with the most traffic on the planet, that's the pitch we were making to clients," says one former employee, who handled client accounts at MindGeek's advertising network TrafficJunky. "They were making more money than anyone else [in the industry]."

Bandwidth data by network firm Sandvine confirms that Pornhub is the world's most popular adult site. Rival Xvideos comes close, but MindGeek controls an entire network of related businesses, with arms such as TrafficJunky and age verification service AgeID strengthening its arsenal of top-ranking tube sites and subscription platforms.

To critics, the taboo of sex has allowed MindGeek and other distributors to fall under the radar of regulators.

While Google-owned YouTube has been dragged in front of politicians for failing to spot and remove copyrighted videos or outright illegal content of people getting harmed, criticism of MindGeek and other tube sites has been muted.

"YouTube is a lot more visible and more conscious of reputational damage," says Lorna Woods, an internet law professor at the University of Essex.

Ms Woods, who drafted key parts of the proposal for the UK's online harms bill, says that until this spring she had not paid much attention to MindGeek "which is interesting given the amount of research I have been doing in the field".

If MindGeek has benefited from a low profile, it continually finds itself fighting smaller companies that are trying to beat it at its own game.

MindGeek frequently takes smaller players to court for failing to take down pirated content, often using a Cyprus-registered subsidiary that has sent over 213m requests to Google, demanding it delists illegally shared content.

**Recommended**

In one of its most recent lawsuits, filed at a Washington district court last February,

Case 8:21-cv-00338-WLH-ADS Document 318-2 Filed 05/08/24 Page 320 of 330 Page ID #:65753

MindGeek accused two smaller porn sites of "blatant infringement" of its copyright, stating it was "causing serious harm" to its business and "must be put to a stop immediately". MindGeek, however, declared that it could not locate the owners of the websites it was trying to take down.

Ms Lust says the industry has acquired a reputation as "secretive and seedy", with many sites providing no contact information other than an anonymous post box.

"These are the people who have the power to decide what we, and most importantly, our children can find online," she says. "We need to know who is controlling the type of sex that we are being fed."

US opioid epidemic

France reopens border with UK, DoJ sues Walmart, an investigation into Pornhub's secretive owner

Copyright The Financial Times Limited 2024. All rights reserved.

# PLAINTIFF'S EXHIBIT 99

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 100

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 102

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 103

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 104

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 105

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 106

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# PLAINTIFF'S EXHIBIT 107

# DOCUMENT PROPOSED TO BE FILED UNDER SEAL