# Exhibit A

1
2
3
4
5
6
7
8  **UNITED STATES DISTRICT COURT**
9  **CENTRAL DISTRICT OF CALIFORNIA**
10
11 JANE DOE,                                    Case No. 2:21-cv-02428 SPG(SKx)
12              Plaintiff,                       **ORDER GRANTING IN PART**
                                                **REMAINING DEFENDANTS'**
13     vs.                                      **MOTION TO DISMISS [ECF NO. 180]**
14 WEBGROUP CZECH REPUBLIC, A.S.,
15 et al.,
16              Defendants.
17
18
19      Before the Court is Defendants WebGroup Czech Republic, a.s., NKL Associates
20 s.r.o., WGCZ Limited, s.r.o., NKL Associates, s.r.o., Traffic F, s.r.o., GTFlix TV, s.r.o.,
21 FTCP, s.r.o., HC Media, s.r.o., FBP Media s.r.o., Stephane Michael Pacaud, and Deborah
22 Malorie Pacaud's ("Remaining Defendants") motion to dismiss under Federal Rule of Civil
23 Procedure 12(b)(6) ("Motion"). (ECF No. 180). Plaintiff opposes. (ECF No. 182
24 ("Opp.")). Having considered the parties' submissions, the relevant law, the record in this
25 case, and the arguments of counsel during the hearing on the Motion, the Court **GRANTS**
26 **IN PART** Defendants' Motion.
27
28

## I.   BACKGROUND AND PROCEDURAL HISTORY

The facts underlying this dispute are well-known to the parties and described in the Amended Order Granting Motions to Dismiss, as well as the Order and Amended Opinion from the Ninth Circuit Court of Appeals.  (ECF Nos. 162, 176).  Thus, the Court here recounts only the basic facts relevant to this Motion and summarizes the procedural history of the case.

Plaintiff Jane Doe filed a putative class action against sixteen defendants, including five U.S.-based defendants, nine Czech corporations, and two EU citizens.  *See* (ECF No. 129 ("FAC")).  Plaintiff alleges she was trafficked as a minor and her traffickers filmed her while she was engaged in sex acts.  They then uploaded the videos ("Videos") to adult websites operated by two of the defendants, i.e., WebGroup Czech Republic, a.s. ("WGCZ") and NKL Associates, s.r.o. ("NKL").  The Honorable Virginia A. Phillips, United States District Judge, who originally presided over the matter, dismissed the U.S. based defendants with prejudice because Plaintiff had not articulated any particularized claims against them and failed to amend her complaint when granted leave to do so.  (ECF Nos. 162, 173).  District Judge Phillips also dismissed the Remaining Defendants without prejudice for lack of personal jurisdiction.  (ECF No. 162 at 15-16).  Plaintiff appealed the dismissal of the Remaining Defendants for lack of personal jurisdiction but did not appeal the dismissal with prejudice of the U.S.-based defendants.  Those defendants are therefore no longer part of this case.

The Ninth Circuit reversed in part, holding there was a *prima facie* case for specific personal jurisdiction as to WGCZ and NKL based on the use of U.S.-based Content Delivery Networks ("CDNs") and directed the district court to consider whether those contacts provide a basis for personal jurisdiction as to the other defendants.  (ECF No. 176 at 30-31).  Thereafter, the matter was transferred to this Court.  (ECF No. 178).

Citing *Lee*, the Remaining Defendants argue that this Court need not reach the question of personal jurisdiction at this juncture because this Court may "assume the existence of personal jurisdiction and adjudicate the merits in favor of [a] defendant

without making a definitive ruling on jurisdiction." *Lee v. City of Beaumont*, 12 F.3d 933, 937 (9th Cir. 1993) *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008); *see also Norton v. Mathews*, 427 U.S. 524, 532 (1976) (holding that where jurisdictional questions are complex, such jurisdictional questions can be reserved when the case could alternatively be resolved on the merits in favor of the party challenging jurisdiction).[1] Thus, the Remaining Defendants here argue that the FAC fails to state a plausible claim as to any of the Remaining Defendants under Rule 12(b)(6).

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031

---

[1] As stated in the parties' Joint Stipulation Regarding Briefing Schedule for Defendants' Motion to Dismiss, Plaintiff has stated an intention to pursue jurisdictional discovery, and the Remaining Defendants, other than WGCZ and NKL, intend to re-raise their jurisdictional defense after jurisdictional discovery by Plaintiff. (ECF No. 179 at 2-3).

(9th Cir. 2008). "[D]ismissal is affirmed only if it appears beyond doubt that [the] plaintiff can prove no set of facts in support of its claims which would entitle it to relief." *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1131 (9th Cir. 2020) (internal citation and quotation marks omitted). However, the Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citing *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

## III. DISCUSSION

The Remaining Defendants offer seven grounds for dismissal under Rule 12(b)(6). They argue, first, that Plaintiff fails to give the Remaining Defendants fair notice of the claims against them. Second, Plaintiff's claims are barred by section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1). Third, Plaintiff has not alleged sufficient facts to invoke an exception to section 230(c)(1) immunity in the Fight Online Sex Trafficking Act ("FOSTA"), 47 U.S.C. § 230(e)(5)(A). Fourth, the Remaining Defendants are beyond the territorial reach of section 1591—the underlying criminal statute on which Plaintiff relies for her section 1595 civil claim. Fifth, Plaintiff's "child pornography" claims under 18 U.S.C. §§ 2252 and 2252A (Count II) and 18 U.S.C. § 2260 (Count III) fail because Plaintiff has not alleged facts showing that any defendant had knowledge Plaintiff was underage in the Videos. Sixth, Plaintiff's claim under section 1708.85 of the California Civil Code (Count IV) fails because Plaintiff has not alleged facts showing any defendant knew or should have known that Plaintiff had a reasonable expectation that the Videos depicting her would remain private. Finally, Plaintiff's claims as to Stephane Pacaud and Deborah Pacaud fail because Plaintiff has not alleged facts showing they are vicariously or personally liable for the alleged wrongdoing.

### A. Whether Plaintiff Fails to Give Defendants Fair Notice

Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short plain statement of the claim showing that the pleader is entitled to relief." To comply with Fed. R. Civ. P. 8(a)(2), a plaintiff "must plead a short and plain statement of the elements of his or her claim, identifying the transactions or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir.2000). Although Fed. R. Civ. P. 8 "encourages brevity, the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). In a previous order, District Judge Phillips noted, "[w]here there are multiple defendants, courts have required that the complaint state with particularity which allegations are attributable to which defendants." (ECF No. 162 at 21); *see also In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094-1095 (N.D. Cal. Aug. 15, 2003) ("A complaint that lumps together thirteen "individual defendants," where only three of the individuals [were] alleged to have been present for the entire period of the events alleged in the complaint, fails to give "fair notice" of the claim to those defendants."). However, a complaint that collectively refers to defendants may satisfy Rule 8's fair notice requirement where the defendants "are connected through a complex series of corporate relationships . . . ." *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 661 F. Supp. 2d 1076, 1087 (D. Ariz. April 29, 2009). Such collective reference at the pleading stage will satisfy Rule 8 if the demand to parse through a complex corporate web – or like structure – would effectively require a "heightened fact pleading of specifics" and "detailed factual allegations," both of which *Twombly* rejected. *Twombly*, 550 U.S. at 554.

Here, Plaintiff has alleged that "Defendants operate, develop and profit from XVideos' complex corporate scheme" and "Defendants are a coordinated group of individuals and companies." (FAC ¶¶ 3, 5). Similarly, Plaintiff alleges that "WebGroup Czech Republic, a.s.; WGCZ Holding, a.s.; WGCZ Limited, s.r.o.; NKL Associates s.r.o.;

Traffic F, s.r.o.; and HC Multimedia LLC (collectively, "WGCZ," "WGCZ entities," or "WGCZ Defendants") are essentially the same entity, act as a single enterprise for a common purpose, and share each other's jurisdictional contacts." (FAC ¶ 14). The FAC also details publicly available facts showing the complexity of Defendants' interrelatedness. *See* (FAC ¶¶ 54-61). Given the alleged complexity of the "corporate scheme" and the alleged interrelatedness of the named defendants, any request that Plaintiff parse through this complex corporate web at the pleading stage would effectively require an improper heightened fact pleading of specifics. In light of this, the Court finds that Plaintiff has pleaded enough to put the Remaining Defendants on notice for the purposes of Rule 8.

## B.    Whether Plaintiff's Claims are Barred by Section 230

Next, the Remaining Defendants contend that section 230(c)(1) of the Communications Decency Act ("the Act") renders them immune from liability in this case. *See* 47 U.S.C. § 230(c)(1).[2] Section 230(c)(1) states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). In other words, section 230 of the Act "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (footnote omitted). Congress designed § 230 "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099–1100 (9th

---

[2] In Defendants' Motion, Defendants focus their argument solely on Defendants WGCZ and NKL; Plaintiff, however, treats Defendants' arguments as applying to all Defendants. The Court similarly accepts this wide-scope reading. That said, the Court follows Defendants in referring to WGCZ and NKL, when this aids comprehension. *See* (Opp. at 15).

Cir. 2009) (quoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003)).

In *Barnes*, the Ninth Circuit created a three-prong test for Section 230 immunity. 570 F.3d at 1096. "Immunity from liability exists for '(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider.'" *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (quoting *Barnes*, 570 F.3d at 1100–01). "When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Id.* The Remaining Defendants argue that all three prongs of this test are met. (Mot. at 20-21). Plaintiff disagrees, arguing that Section 230 of the Act does not apply to the case at hand. The Court takes each of these prongs in turn.

### 1. WGCZ and NKL Provide an "interactive computer service"

Section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). The "most common interactive computer services are websites." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) (en banc). Here, WGCZ and NKL provide an interactive computer service because they run a website. Plaintiff does not dispute this fact. (Opp. at 15).

### 2. Whether Plaintiff Seeks to Hold WGCZ and NKL Liable for Publishing

Defendants seek to show that each of Plaintiff's claims attempt to hold WGCZ and NKL liable for publishing. To determine whether section 230 immunity applies, this Court must decide whether Plaintiff's theories of liability would treat Defendants as a publisher or speaker of third-party content. Defendants' argument is straightforward: because Plaintiff seeks to show that "WGCZ refuses to monitor or control who is posting or present in videos on its websites[,]" "[d]espite its ability to do so," (FAC ¶ 149), "Plaintiff clearly seeks to hold WGCZ and NKL liable for 'deciding whether to exclude material' third

parties uploaded, which is conduct 'perforce immune' under section 230. (Mot. at 180). Plaintiff opposes, arguing that Plaintiff "seeks to hold WGCZ and NKL liable for their *own* bad acts independent of disseminating information to third parties." (Opp. at 16).

"[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. By its plain language, section (c)(1) ensures that, in certain cases, an internet service provider is not "treated" as the "publisher or speaker" of third-party content. Thus, Section 230's grant of immunity applies "only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of" the offending content. *Roommates.com, LLC*, 521 F.3d at 1162 (quoting 47 U.S.C. § 230(f)(3)). "The prototypical service qualifying for [the Act's] immunity is an online message board on which Internet subscribers post comments and respond to comments posted by others." *Dyoff* 934 F.3d at 1097 (citing *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016).

*Barnes* and two other seminal cases have helped to hone the scope and meaning of *Barnes'* second prong. In *Barnes*, the Court decided "how to determine when, for purposes of [Section 230], a plaintiff's theory of liability would treat a defendant as a publisher or speaker of third-party content." 570 F.3d at 1101. There, the plaintiff, Cecilia Barnes, sued Yahoo after it failed to take down fraudulent profiles that had been created by her ex-boyfriend. After Barnes broke off a lengthy relationship with her boyfriend, he responded by posting profiles of her on a website run by Yahoo. The profiles contained nude photographs of Barnes and her boyfriend, taken without her knowledge, and open solicitation to engage in sex. The ex-boyfriend, posing as Barnes, chatted with male correspondents in chat rooms. "Before long, men whom Barnes did not know were peppering her office with emails, phone calls, and personal visits, all in the expectation of sex." (*Id*. at 1098). Barnes asked Yahoo to remove the profiles. Eventually, Yahoo promised it would get rid of the at-issue profiles. Approximately two months passed without word from Yahoo, at which point Barnes filed a lawsuit against Yahoo in state

court. Shortly thereafter, the profiles disappeared. Barnes pursued two theories of liability: (1) Yahoo negligently provided or failed to provide services that it undertook to provide and (2) Yahoo made a promise to her to remove the profiles but failed to do so. (*Id*. at 1099). Yahoo moved to dismiss the action, contending that Section 230(c)(1) rendered it immune from liability.

The court determined that Yahoo was entitled to Section 230 immunity for Barnes's negligence claim, but not for her promissory estoppel claim. (*Id*. at 1105, 1109). The negligence claim was based on Oregon law, which provided that one who undertakes to render services to another may be subject to liability for failure to exercise reasonable care in that undertaking. (*Id*. at 1102). Barnes argued that this theory "treat[ed] Yahoo not as a publisher, but rather as one who undertook to perform a service and did it negligently." (*Id*). The court rejected this argument, concluding that Barnes could not "escape section 230(c) by labeling as a 'negligent undertaking' an action that is quintessentially that of a publisher." (*Id*. at 1103). The court noted that the undertaking Yahoo allegedly failed to perform was the removal of the profiles from its website, an action that is quintessentially that of a publisher. "In other words, the duty that Barnes claims Yahoo violated derives from Yahoo's conduct as a publisher—the steps it allegedly took, but later supposedly abandoned, to de-publish the offensive profiles." (*Id*). Because the choice to publish or de-publish "can be boiled down to deciding whether to exclude material that third parties seek to post online," is paradigmatic publishing conduct, section 230(c)(1) barred the claim. (*Id*). (quoting *Roommates.com*, 521 F.3d at 1170–71).

Regarding the promissory estoppel claim, the court determined that Section 230 did not apply. (*Id*. at 1109). Observing that promissory estoppel "is a subset of a theory of recovery based on a breach of contract, the court concluded that "Barnes does not seek to hold Yahoo liable as a publisher or speaker of third-party content, but rather as the counter-party to a contract, as a promisor who has breached." (*Id*. at 1106–07). The court explained that "[c]ontract liability here would come not from Yahoo's publishing conduct, but from

Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication." (*Id*. at 1107).

Next, in *Fair Housing Valley Council of San Fernando Valley v. Roommates.com*, 521 F.3d 1157, 1161 (9th Cir. 2008) (en banc), defendant, Roomates.com, operated an online roommate-matching service that was designed to match people renting out spare rooms with people looking for a place to live. (*Id*.) Before subscribers could search listings or post housing opportunities on Roommate's website, they had to create profiles, a process that required them to answer a series of questions. (*Id*.) "In addition to requesting basic information—such as name, location and email address—Roommate requires each subscriber to disclose his sex, sexual orientation and whether he would bring children to a household." (*Id*.) Each subscriber also had to describe "his preference[ ] in roommates with respect to the same three criteria: sex, sexual orientation, and [children]." (*Id*.) The site also encouraged subscribers to provide "Additional Comments" describing themselves and their desired roommate in an open-ended essay. (*Id*.) After a new subscriber completed the application, Roommate assembled his answers into a "profile page," which displayed the "subscriber's pseudonym, his description and his preferences." (*Id*. at 1162). The Fair Housing Councils of the San Fernando Valley and San Diego ("the Councils") sued Roommate, alleging that Roommate's business violated the federal Fair Housing Act ("FHA") and California housing discrimination laws. (*Id*.) Roommate argued it was immune from suit under Section 230 of the CDA.

The Ninth Circuit held that because Roommates.com had "materially contributed" to the unlawfulness of the content under the Fair Housing Act, it had "developed" the content within the meaning of CDA § 230(c)(1). (*Id*. at 1167–68). "Here, the part of the profile that is alleged to offend the [FHA] and state housing discrimination laws—the information about sex, family status and sexual orientation—is provided by subscribers in response to Roommate's questions, which they cannot refuse to answer if they want to use defendant's services." (*Id*. at 1166). By requiring subscribers to provide the information as a condition of accessing its service, and by providing a limited set of pre-populated

answers, Roommate became more than a passive transmitter of information provided by others; it became the developer, at least in part, of that information. (*Id*.) "The CDA does not grant immunity for inducing third parties to express illegal preferences. Roommate's own acts—posting the questionnaire and requiring answers to it—are entirely its doing and thus section 230 of the CDA does not apply . . . . Roommate is entitled to no immunity." (*Id*. at 1165).

The court further held that Roommate was not entitled to CDA immunity for the operation of its search system, which filtered listings, or its email notification system, which directed emails to subscribers according to discriminatory criteria. (*Id*. at 1167). Roommate developed its search system so it would steer users based on the preferences and personal characteristics that Roommate forced subscribers to disclose. (*Id*.) "If Roommate has no immunity for asking the discriminatory questions, . . . it can certainly have no immunity for using the answers to the unlawful questions to limit who has access to housing." (*Id*.) Unlike search engines such as Google, Yahoo!, or MSN, the Roommate search system used unlawful criteria to limit search results. As alleged in the complaint, Roommate's search was designed to make it harder, if not impossible, for individuals with certain protected characteristics to find housing—something the law prohibits. (*Id*.) By contrast, ordinary search engines are not developed to limit the scope of searches conducted on them and are not designed to achieve illegal ends. (*Id*.) Thus, such search engines "play no part in the 'development' of any unlawful searches." (*Id*.) (citing 47 U.S.C. § 230(f)(3)). Liability only attaches where a "website helps to develop unlawful content, and thus falls within the exception to section 230, if it contributes materially to the alleged illegality of the conduct." (*Id*. at 1168).

In *Roommates.com*, the Ninth Circuit clarified that the lack of Section 230 immunity is premised on the particular activity of a website in eliciting the content at issue. If a website encourages or aids in the production of illegal content, the website cannot be said to be "neutral" and, instead, is properly said to be an "active" co-developer. By contrast,

if a website simply provides neutral tools, specifically designed to accomplish a benign objective, the website cannot be said to be a co-developer of illicit content.

Finally, in *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1089 (9th Cir. 2021), the Ninth Circuit reversed a district court that found Section 230 barred plaintiffs' claims against Snap. The case concerned a "speed filter" created by Snap. Users could open Snap and take a video of themselves while the filter showed the speed they were moving. Such content could then be posted/shared on SnapChat. Plaintiffs alleged that it was commonly believed that Snap would somehow reward photos or videos posted with the filter showing the user went more than 100 mph, and that Snap was aware of this belief. Plaintiffs' children died in a car accident after driving over one-hundred miles per hour off a road. During the accident, one of them had the speed filter open on their phone.

Section 230 did not apply, the Ninth Circuit reasoned, because plaintiffs did not seek to hold Snap liable as a publisher or speaker of third-party content. No content was shared. Instead, the claim derived from the alleged dangerous feature of Snap's platform, i.e., a filter that showed the user's speed. Though the incentive to use the filter was to create and then post third-party content, the conduct directly at issue (Snap's creation of the filter) is distinct from its role as publisher and "Snap could have satisfied its 'alleged obligation'—to take reasonable measures to design a product more useful than it was foreseeably dangerous—without altering the content that Snapchat's users generate . . . . Snap's alleged duty in this case thus 'has nothing to do with' its editing, monitoring, or removing of the content that its users generate through Snapchat." *Lemmon*, 995 F.3d at 1092 (9th Cir. 2021) (internal citations omitted).

Turning to the present case, Defendants argue that they are not content creators with respect to the infringing pornography on their websites, and thus that Plaintiff attempts to hold Defendants liable for publishing. (Mot. at 20-21). Plaintiff maintains, to the contrary, that the FAC "seeks to hold WGCZ and NKL liable for their *own* bad acts independent of disseminating information to third parties." (Opp. at 16). Plaintiff asserts that, "[t]o the extent Plaintiff's child pornography claims seek to hold WGCZ and NKL liable for

"receipt" or "possession," they clearly are not the acts of "publishers" or "speakers" of information, and those claims thus seek to hold WGCZ and NKL accountable for their own bad acts, just like any other person who knowingly "receives" or "possesses" child pornography regardless of what business they are in." (Opp. at 16). Plaintiff points out that Defendants similarly "engage in revenue-sharing relationships with sex traffickers and child pornographers," by virtue of sharing advertising revenues with uploaders based on the number of views a video has received. (*Id.* at 17).

Here, the Court finds insofar as Plaintiff seeks to hold Defendants liable for "receipt" of the illicit videos, these claims are immune from liability under Section 230. Receipt of materials or content is, as it were, simply the first step in any publishing regime; if so, then mere receipt of illicit material is not sufficient to preclude immunity under Section 230.

Second, the Court finds revenue-sharing — so long as the methods by which revenue sharing is conducted are neutral with respect to the content — is again an insufficient basis for liability here. (FAC ¶¶ 130-140). As was made clear in *Roommates*, if a website simply provides neutral tools specifically designed to accomplish a benign objective—e.g., posting videos and allowing for monetization based on views—the website cannot be said to be a co-developer of illicit content.

        3.    <u>Whether the Infringing Information was Provided by Another Information Content Provider</u>

The third prong overlaps with the prior two and concerns information provided by another information content provider. *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 625 F. Supp. 3d 971, 978 (N.D. Cal. 2022) ("Practically speaking, the second and third factors tend to overlap in significant ways."). Given the complexity with which online platforms function, it is not always clear whether a platform is merely acting as an interactive services provider and publisher of another's content, or if the platform's involvement or intervention in the posting or presentation of that content crosses the line into what courts generally refer to as "development." *Kimzey*, 836 F.3d at 1269 ("The

meanings of the words 'creation' and 'development' are hardly self-evident in the online world, and our cases have struggled with determining their scope.").

The Ninth Circuit has established a test for determining if a platform's actions in altering or presenting content constitute development, namely, whether it provides "neutral tools" for the creation or dissemination of content which does not destroy Section 230 immunity. *Roommates.Com*, 521 F.3d at 1172. However, if the platform's conduct materially alters the content, enhancing its alleged illegality, the tool is not neutral, and Section 230 does not bar liability. (*Id*. at 1174–75) ("Where it is very clear that the website directly participates in developing the alleged illegality . . . immunity will be lost.").

Here, Defendants argue that "there are no allegations that any defendant 'materially contribut[ed]' to the 'alleged unlawfulness' of the videos." (Mot. at 22). "Nor did any defendant allegedly alter or edit the contents of the Videos or their titles, such as to suggest they depicted an underage person. And there are no allegations that any defendants encouraged or required Plaintiff's trafficker(s) to post the Videos or child pornography generally." (Mot. at 22-23). Plaintiff opposes, citing a litany of allegations that together attempt to show that WGCZ and NKL materially contribute to the illegality of the conduct—chiefly, Defendants (1) create guidelines which permit, promote, and encourage sex trafficking (FAC ¶ 163); (2) use VPNs to anonymize web traffic, making it difficult for law enforcement to locate child pornography and child sexual abuse material ("CSAM") on its websites (FAC ¶ 125); (3) create titles, tags, keywords, search terms, and categories indicative of CSAM to make it easier for users seeking CSAM to find it, and to maximize views and profits (FAC ¶ 139); and (4) create thumbnails from all videos, including the CSAM depicting Plaintiff (FAC ¶ 202).

Here, taking the allegations in the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to adequately allege that Defendants' conduct goes beyond the neutral tools protected within the ambit of Section 230 immunity. The Court's holding rests on the following set of considerations.

-14-

First, although Plaintiff alleges generally that Defendants create guidelines which permit, promote, and encourage sex trafficking and child pornography on their websites, Plaintiff has failed to present allegations to show how any such guideline specifically promotes illegal conduct. Instead, Defendants' terms of service explicitly prohibit CSAM. *See* (ECF No. 137, Exh. A). Thus, Defendants' prohibition on CSAM distinguishes this case from *Roommates*, where the website "encouraged" or "required" the posting of illegal content. Without more, it is not clear whether or why Defendants' guidelines promote CSAM in the ways alleged by Plaintiff.

Second, the Court disagrees that the mere creation of thumbnails is sufficient to show that Defendants created new and distinct CSAM. Plaintiff refers to this practice as the "most egregious" conduct by Defendants. (Opp. at 20). If, however, Defendants create thumbnails from "all videos," (Opp. at 20), then this appears either to be a standard publishing function or a neutral tool made available to all third parties seeking to upload material onto Defendants' websites. *See, e.g., Roommates*, 521 F.3d at 1169 ("[A] website operator who edits user-created content—such as by correcting spelling, removing obscenity or trimming for length—retains his immunity for illegality in the user-created content, provided that the edits are unrelated to the illegality.") At the hearing on the Motion, Plaintiff confirmed that the creation of thumbnails is a standard function of Defendants' websites.

Third, similar problems plague Plaintiff's contention that the existence of "titles, tags, keywords, search terms, and categories indicative of CSAM" itself promotes or encourages CSAM. These tools are, again, either a standard publishing function or a neutral tool made available to all third parties seeking to upload material onto Defendants' websites. Additionally, Plaintiff at the hearing did not deny that most tags and keywords in use on Defendants' websites are user-generated.

Finally, Plaintiff alleges that Defendants use VPNs to anonymize web traffic, making it difficult for law enforcement to locate CSAM on its websites. Again, however, Plaintiff has not made clear why the use of VPNs is, in itself, a sign that Defendants

materially contributed to the unlawful content posted to its websites, rather than a neutral tool protected under Section 230.

For these reasons, the Court GRANTS Defendants' Motion to Dismiss because Plaintiff's claims are barred by Section 230. Since leave to amend should be "freely given when justice so requires" and amendment in this case is not futile, the Court grants Plaintiff leave to amend. Fed. R. Civ. P. 15(a).

## C.    Whether Plaintiff has Alleged Facts to Invoke FOSTA Exception

In 2018, Congress enacted an exception to Section 230 immunity known as the Allow States to Fight Online Sex Trafficking Act, or "FOSTA." *See* 47 U.S.C. § 230(e)(5)(A). FOSTA exempts certain provisions of the federal Trafficking Victims Protection Reauthorization Act ("TVPRA") from Section 230's immunity. (*Id.*) ("[n]othing in [Section 230] ... shall be construed to impair or limit any claim in a civil action brought under 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title"). In other words, an Interactive Computer Service Provider ("ICS"), such as a website, cannot use Section 230 immunity if the ICS violates federal anti-trafficking laws.

Section 1595 of the TVPRA provides trafficking victims with a private right of action to pursue claims against perpetrators of trafficking ("direct liability"), or those who knowingly benefit financially from trafficking ("beneficiary liability"). 18 U.S.C. § 1595. To state a claim under Section 1595 (the civil liability statute), a plaintiff must allege that the defendant has "constructive knowledge" of the trafficking at issue. *See* (*id.*) (imposing civil liability against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter . . . .") Section 1591 of the TVPRA, on the other hand, is a criminal statute, penalizing the same conduct when a defendant has actual knowledge of the sex trafficking at issue. 18. U.S.C. § 1591(a). The FOSTA exemption references both sections, abrogating Section 230 immunity for civil Section 1595 claims,

"if the conduct underlying the claim constitutes a violation of section 1591[.]" 47 U.S.C. § 230(e)(5)(A).

The Ninth Circuit recently addressed the interplay of Section 230 immunity and the FOSTA exception for sex trafficking claims in *Does 1–6 v. Reddit*, 51 F.4th 1137 (9th Cir. 2022). The court held that "civil plaintiffs seeking to overcome section 230 immunity for sex trafficking claims must plead and prove that a defendant-website's own conduct violated 18 U.S.C. § 1591." (*Id.* at 1146). In particular, "the defendant must have actually engaged in some aspect of the sex trafficking. To run afoul of § 1591, a defendant must knowingly benefit from and knowingly assist, support, or facilitate sex trafficking activities. Mere association with sex traffickers is insufficient absent some knowing participation in the form of assistance, support, or facilitation. The statute does not target those that merely turn a blind eye to the source of their revenue. And knowingly benefitting from participation in such a venture requires actual knowledge and a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." (*Id.* at 1145) (cleaned up). In sum, a website does not violate section 1591 if it merely "provides a platform where it is easy to share child pornography, highlights [webpages] that feature child pornography to sell advertising on those pages, allows users who share child pornography to serve as moderators, and fails to remove child pornography even when users report it." (*Id.* at 1145).

Here, Plaintiff asserts liability under 18 U.S.C. §§ 1591 and 1595. As Plaintiff explains, however, "*Reddit* was decided more than one year *after* Plaintiff filed her FAC . . . . As a result, it would be fundamentally unfair to apply *Reddit's* subsequent pleading standard to Plaintiff's earlier FAC without allowing Plaintiff leave to amend her complaint in light of *Reddit*." (Opp. at 21). The Court agrees and GRANTS leave to amend on Plaintiff's Section 1591 and 1595 claims.

**D.** **Whether Defendants are Beyond the Territorial Reach of 18 U.S.C. § 1595**

Defendants contend that Plaintiff's section 1595 claim fails "because the Remaining Defendants are beyond the territorial reach of section 1595." (Mot. at 28). Plaintiff opposes, arguing that this Court has subject matter jurisdiction over Plaintiff's TVPRA claims regardless of Defendants' physical location abroad. (Opp. at 28). In the alternative, Plaintiff requests leave to amend her FAC after jurisdictional discovery, especially since jurisdictional discovery may disclose facts relevant to whether Defendants are within the territorial reach of 18 U.S.C. § 1595.

To determine whether a statute applies extra-territorially, the court applies a "two-step framework . . . ." *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 337, 136 (2016). First, the court presumes that a statute applies only domestically. *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 632 (2021). This presumption can only be rebutted if the statute "gives a clear, affirmative indication" that it covers foreign conduct. (*Id.*) (quoting *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016)). "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). This appears to be the case here. The text of § 1595 does not include anything concerning extraterritorial jurisdiction.[3]

Both parties point out, however, that § 1596 may grant extra-territorial application in the present case. Section 1596 reads, in full:

"In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or

---

[3] "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595.

any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if--

(1)   an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 101 of the Immigration and Nationality Act (8 U.S.C. 1101)); or

(2)   an alleged offender is present in the United States, irrespective of the nationality of the alleged offender."

That is, if a plaintiff can show that either (1) or (2) is satisfied, then there **may** be reason to extend the reach of Section 1595 extra-territorially. *But see Doe I v. Apple Inc.*, 2021 WL 5774224, at *16 (D.D.C. Nov. 2, 2021) (holding that it "seems likely that when in § 1596(a) Congress granted extraterritorial jurisdiction over 'any *offense* (or any *attempt or conspiracy to commit an offence*) under section 1581, 1483, 1584, 1589, 1590, or 1591,' its omission in § 1595 was not mistaken but was an intentional decision not to extend extraterritorially the reach of the statute's civil component."). However, because Plaintiff has not shown that either (1) or (2) is satisfied, the Court does not need to decide in this case whether Section 1595 applies extra-territorially to Defendants. *Accord Ratha v. Phatthana Seafood Co., Ltd.* 26 F.4th 1029, 1037 (9th Cir. 2022).[4]

Here, neither requirement for extraterritorial application under Section 1596 is met. Plaintiff alleges that the Czech entities have their principal place of business in the Czech Republic. (FAC ¶ 54). Plaintiff also alleges that Stephane Pacaud last resided in France, (FAC ¶ 59), and that Deborah Pacaud last resided in the Czech Republic (FAC ¶ 60). Nor

---

[4] As the Ninth Circuit has explained, the question whether Section 1595 has extra-territorial reach is a merits question, not a jurisdictional question, thus the "assumption that [Section] 1595 may reach extraterritorial conduct does not overstep this court's 'adjudicatory domain'." *Ratha*, 26 F.4th at 1037. A district court can therefore assume, for the sake of argument, that Section 1595 applies extra-territorially to query whether the Section 1596 requirements are met. Because the answer to that question here is no, the Court can put aside for the time being the antecedent question of whether Section 1595 does have extra-territorial reach.

are there any allegations showing that any Remaining Defendants are nationals of the U.S., aliens lawfully admitted for permanent residence, or present in the United States. The Court grants Plaintiff leave to amend on her Section 1595 claim.

**E.    Whether Plaintiff Adequately Pleads Claims Under 18 U.S.C. § 2252 or 18 U.S.C. § 2260**

Defendants argue that Plaintiff's claims under 18 U.S.C. § 2252 (Receipt and Distribution of Child Pornography) and 18 U.S.C. § 2260 (Receipt and Distribution of Child Pornography) fail because Plaintiff has "not alleged facts showing that any defendant knew she was underage in the Videos." (Mot. at 30).

Claims under section 2252 and 2252A require proof that the defendant knew the plaintiff was underage. 18 U.S.C. § 2252. Claims under section 2260 similarly require proof that the defendant knowingly received, distributed, or possessed with intent to distribute visual depiction of a minor engaged in sexually explicit conduct. 18 U.S.C. § 2260.

Here, Plaintiff does not allege facts sufficient to overcome a motion to dismiss on these claims. Plaintiff alleges, for instance, that WGCZ uses the tag "toddler" to classify pornographic content on its website (FAC ¶ 141); "WGCZ suggests to users what other content a particular user might like based on prior viewing, and categorizes all material on its websites, including the child sexual abuse material, based on widely-searched terms (FAC ¶ 158); and "[m]inor victims of sex trafficking and their representatives have contacted WGCZ to remove videos of them from its websites, but WGCZ has refused to do so." (FAC ¶ 150). The Court found above, however, that Defendants' use of classificatory tags was both a neutral tool, and that these tags were—on the whole—user generated. Similarly, the fact that Defendants' website(s) suggest to users similar content based on prior viewing is not alone sufficient to show knowing receipt of CSAM, especially if this website function is a neutral tool designed to promote videos irrespective of their content. Lastly, although the Court takes seriously allegations that minor victims have contacted Defendants to remove videos, threadbare allegations to that effect are not

sufficient to allege liability under the at-issue statutes.  In light of this, therefore, the Court holds that Plaintiff has not done enough to plausibly allege that Defendants knowingly received and distributed child pornography.  Defendants' Motion on these claims is GRANTED.

**F.    Whether Plaintiff Adequately Pleads a Claim under Section 1708.85 of the California Civil Code**

Defendants next argue that Plaintiff's claim under section 1708.85 fails because Plaintiff has not alleged that any defendant "knew or should have known that she had a reasonable expectation that the Videos would remain private." (Mot. at 31).  Additionally, Defendants argue that Plaintiff's 1708.85 claim is barred by section 230(c)(1). *Id*.  Plaintiff counters with two arguments.  First, since CSAM is "always illegal," there are no situations in which the "public disclosure of her CSAM would be legally permissible." (Opp. at 26).  Second, Plaintiff has alleged facts sufficient to show her "expectation that her CSAM would remain private." (*Id.*).

Here, the Court agrees with Defendants that Plaintiff's section 1708.85 claim is barred by section 230(c)(1).  Section 230 expressly preempts state law claims: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).  And section 1708.85(h) provides: "Nothing in this section shall be construed to alter or negate any rights, obligations, or immunities of an interactive service provider under Section 230 of Title 47 of the United States Code." Cal. Civ. Code §1708.85(h).  Because the Court has already granted Defendants' motion to dismiss on the ground that section 230 bars liability, the Court also GRANTS Defendants' motion to dismiss Plaintiff's claim under section 1708.85 of the California Civil Code.

**G.    Whether Plaintiff Adequately Pleads Facts Establishing Vicarious or Personal Liability as to the Pacauds**

Finally, Defendants argue that "Plaintiff's claims against the Pacauds also fail because she has not alleged facts establishing vicarious or personal liability." (Mot. at 32).

A corporate "officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985) (citing *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.,* 467 F.Supp. 841, 852 (N.D. Cal. 1979), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981)).

Here, Plaintiff alleges that the Pacauds are "the founder[s], majority shareholder[s] and [] executive[s] of Defendant WebGroup Czech Republic, and its corporate affiliations and alter egos," that they "founded and developed WebGroup Czech from its inception and [are] primary decision maker[s] with knowledge and control over all aspects of the corporation and its corporate affiliations and alter egos," and that they exercise control over business operations, management, supervision, administration and procedures for Defendant-entities. (FAC ¶ 59-60). Although the Court here views all facts in the FAC in the light most favorable to the Plaintiff, the Court has above dismissed every substantive underlying claim in the above Order. Because all the underlying claims have been dismissed, the Court here dismisses the claims against the Pacauds with leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendants' Motion to dismiss under Rule 12(b)(6). Plaintiff may file an amended complaint that cures the deficiencies identified in this Order within twenty-one (21) calendar days of the date of this order. If

//
//
//
//
//
//
//

1   Plaintiff fails to file an amended complaint within the time prescribed, this matter will be

2   dismissed without prejudice and the case closed.

3        **IT IS SO ORDERED.**

4

5   DATED:  July 24, 2024



6                                                    _____
                                                      HON. SHERILYN PEACE GARNETT
7                                                     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28