DAVIDA BROOK (275370)
dbrook@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
HALLEY W. JOSEPHS (338391)
hjosephs@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100; Fax: (310) 789-3150

(*See additional counsel on signature page)*

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

JANE DOE on behalf of herself and all others similarly situated,

Plaintiff,

v.

MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),

Defendants.

Case No. 8:21-cv-00338-WLH-ADS

*Hon. Wesley L. Hsu*

**CLASS ACTION**

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Date: November 4, 2026
Time: 1:30pm
Courtroom: 9B

# NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND ALL COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on November 4, 2026 at 1:30 p.m., or as soon as this matter may be heard, in Courtroom 9B of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, Plaintiff Jane Doe, on behalf of herself and all others similarly situated, and plaintiff Jane Doe #1 from *Jane Doe #1 v. MG Freesites, Ltd, D/B/A "Pornhub", et al.*, Case No. 7:21-cv-00220-RDP (N.D. Ala.) (collectively, "Plaintiffs") will respectfully move this Court to: (i) grant preliminary approval of the proposed Settlement Agreement ("Settlement Agreement," "Stipulation of Settlement," "Settlement," or "Agreement"); (ii) appoint Gentle Turner & Benson, LLC as Settlement Administrator; (iii) establish procedures for giving notice to Class Members; (iv) approve forms of notice to Class Members; (v) mandate procedures and deadlines for objections; and (vi) set a date, time and place for a final approval hearing and a schedule leading up to the final approval hearing.

This Motion is based on the Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Krysta Kauble Pachman and accompanying exhibits, the Declaration of Gregory Zarzaur and accompanying exhibits, the Declaration of Lauren Coffren, the Declaration of Randi Ellis and accompanying exhibits, the Declaration of Edgar C. Gentle, III, as Settlement Administrator, and accompanying exhibits, the pleadings, records, and other filings in the case, and other such matters and argument as the Court may consider at the hearing of this Motion.

# TABLE OF DEFINED TERMS

| Term | Definition |
|---|---|
| Actions | The Alabama Action and the California Action |
| Alabama Action | *Jane Doe #1 v. MG Freesites, Ltd, D/B/A "Pornhub", et al.*, Case No. 7:21-cv-00220-RDP (N.D. Ala.) |
| Alabama Class Counsel | Zarzaur Law Firm, Levin Papantonio, Clark Hill PLC, Prince Glover Hayes, National Center on Sexual Exploitation Law Center, and Laffey Bucci D'Andrea Reich & Ryan |
| Alabama Plaintiff | Plaintiff Jane Doe in the Alabama Action |
| California Action | *Jane Doe, et al. v. Mindgeek USA Inc., et al.*, Case No. 8:21-cv-00338-WLH-ADS (C.D. Cal.) |
| California Class Counsel | Susman Godfrey L.L.P. |
| California Plaintiff | Plaintiff Jane Doe in the California Action |
| C3P | Canadian Centre for Child Protection |
| Class Counsel | Alabama Class Counsel and California Class Counsel |
| Content | Any depiction of Sexually Explicit Conduct, including but not limited to a photograph, film, video, picture, audio recording, or computer-generated image, including all metadata, but does not include advertising materials or platforms. With respect to live stream and webcam functionality, this definition applies only to the extent such functionality is made available on a Website and compliance is technically feasible using then-available systems and tools. |

| | |
|---|---|
| CSAM or Child Sexual Abuse Material | Content that depicts anyone under 18 years of age engaging in Sexually Explicit Conduct |
| Defendants | MindGeek[1] USA Incorporated, MindGeek S.à.r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., MG Content RT Ltd, MG CY Holdings LTD, and MG Billing LTD[2] individually, collectively, or in any combination, and their successors and assigns |
| Eligible Class Member | Class Members who the Settlement Administrator determines (1) were under 18 years old when they were depicted in Content; and (2) that the Content was viewable on any website owned or operated by Defendants at any time from February 12, 2011 through December 6, 2024 |
| NCMEC | National Center for Missing & Exploited Children |
| Qualified Claimant | An Eligible Class Member who timely submits a claim form and is deemed eligible to receive an equal *per capita* settlement distribution amount from the Settlement Fund |
| Section 230 | Section 230 of the Communications Decency Act of 1996 |
| Sexually Explicit Conduct | Any actual or simulated sexual act, including but not limited to: sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal contact; bestiality; masturbation or any other stimulation of genitals or anus; |

[1] Subsequent to the filing of the California Action and the Alabama Action, the various MindGeek entities were renamed "Aylo." For ease of reference all Defendants will be referred to using the names in effect when those actions were filed.

[2] Defendants in the Alabama Action and in the Settlement include all Defendants listed herein. When describing the California Action, Defendants means "MindGeek USA Incorporated, MindGeek S.à.r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., and MG Content RT Ltd," individually, collectively, or in any combination, and their successors and assigns.

| | |
|---|---|
| | sadistic or masochistic abuse; or lascivious exhibition of the breast(s), anus, genitals, or pubic area of any person |

**TABLE OF KEY DOCUMENTS**

| Document | Source |
| --- | --- |
| Settlement Agreement | Pachman Decl. Ex. B |
| Long-Form Notice | Gentle Decl. Ex. C |
| Plan of Allocation | Gentle Decl. Ex. D |
| Claim Forms & Settlement Overview | Gentle Decl. Ex. E |

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 3
A. Factual Background .......... 3
B. Procedural History .......... 4
i. The California Action .......... 4
ii. The Alabama Action .......... 6
C. Settlement Negotiations .......... 7
III. SUMMARY OF THE PROPOSED SETTLEMENT .......... 8
A. The Class .......... 8
B. Monetary Relief .......... 9
C. Injunctive Relief .......... 9
D. The Release .......... 10
E. Notice and Administration .......... 10
F. Plan of Allocation .......... 12
G. Attorneys' Fees, Expenses, and Awards .......... 13
IV. ARGUMENT .......... 13
A. The Court Should Certify the Settlement Class. .......... 13
B. The Proposed Settlement is Fair, Reasonable, and Adequate. .......... 14
i. Plaintiffs and Class Counsel Have Adequately Represented the Class .......... 15
ii. The Settlement Was Negotiated at Arm's Length .......... 16
iii. The Relief Provided is Adequate .......... 17
iv. The Proposed Settlement Treats Class Members Equitably .......... 21
C. The Court Should Direct Notice to the Class. .......... 22
D. The Court Should Set Deadlines and Schedule a Final Approval Hearing. .......... 22
V. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Baten v. Michigan Logistics, Inc.*,
2022 WL 17481068 (C.D. Cal. Dec. 6, 2022) .......... 14

*Doe v. MindGeek USA Incorporated*,
No. 23-3909 (9th Cir. Jan. 18, 2024) .......... 5

*Foster v. Adams & Associates, Inc.*,
2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) .......... 14

*In re Bluetooth Headset Products Liability Litigation*,
654 F.3d 935 (9th Cir. 2011) .......... 20

*In re California Pizza Kitchen Data Breach Litigation*,
129 F.4th 667 (9th Cir. 2025) .......... 15

*In re College Athlete NIL Litigation*,
803 F.Supp.3d 959 (N.D. Cal. 2025) .......... 21

*In re Combustion, Inc.*,
968 F. Supp. 1116 (W.D. La. 1997) .......... 11

*In re ConAgra Foods, Inc.*,
2022 WL 17243625 (C.D. Cal. Nov. 14, 2022) .......... 20

*In re Facebook Biometric Info. Privacy Litigation*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) .......... 23

*In re Google LLC Street View Electronic Communications Litigation*,
611 F. Supp. 3d 872 (N.D. Cal. 2020) .......... 22

*In re High-Tech Employee Antitrust Litigation*,
2015 WL 5158730 (N.D. Cal. Sep. 2, 2015) .......... 21

*In re Hyundai & Kia Fuel Economy Litigation*,
926 F.3d 539 (9th Cir. 2019) .......... 15

*In re Lyft, Inc. Security Litigation*,
2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) .......... 17

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. Apr. 9, 2010) .................... 9

*Low v. Trump University, LLC*,
881 F.3d 1111 (9th Cir. 2018) .................... 9

*MG Freesites Ltd, et al. v. Jane Doe*,
No. 24-90001 (11th Cir. Feb. 12, 2024) .................... 7

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016) .................... 22

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) .................... 21

*Ward v. Indyke, et al.*,
No. 1:24-cv-01204-AS, (S.D.N.Y.) .................... 18

**Statutes**

18 U.S.C. § 2252 .................... 3

18 U.S.C. § 2252A .................... 3

18 U.S.C. § 2255(a) .................... 22

18 U.S.C. § 1595(a) .................... 3

28 U.S.C. § 1715 .................... 11, 23

Cal. Bus. & Prof. Code § 17200 et seq. .................... 3

Cal. Civ. Code § 52.5 .................... 3

Cal. Civ.Code § 1708.85 .................... 4

**Rules**

Fed. R. Civ. P. 23 .................... 9, 14, 22, 23

Fed. R. Civ. P. 23(a) .................... 14

Fed. R. Civ. P. 23(b) .................... 1, 14

Fed. R. Civ. P. 23(e) .................... *passim*

Fed. R. Civ. P. 23(f) ........ 2, 5, 7

Fed. R. Civ. P. 30(b)(6) ........ 5

**Other Authorities**

4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:50 (6th ed. June 2025 update) ........ 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION[3]

Behind the legal standards and docket entries in this motion are thousands of children whose sexual exploitation was recorded and uploaded to Defendants' pornography websites by third parties and distributed by Defendants across the world. Their videos and images were viewed over 684 million times on Pornhub.com and Defendants' other websites, some of the most visited websites on Earth. When Plaintiffs came forward, Defendants invoked Section 230—the shield that has shielded countless internet platforms for liability for user-generated content. Both courts rejected Defendants' Section 230 arguments at the summary judgment stage in the Alabama Action and at the pleading stage in the California Action.

Through more than five years of hard-fought litigation in two courts, Plaintiffs sought to hold Defendants accountable for the CSAM on their websites. With this Settlement, Plaintiffs have succeeded. The Settlement's $120 million non-reversionary fund and sweeping injunctive relief reflect the gravity of what Defendants are alleged to have done and the strength of the cases Plaintiffs built against them.

Plaintiffs now seek preliminary approval under Rule 23(b)(3) of an extraordinary Settlement that delivers:

- ***$120,000,000*** in a non-reversionary Settlement Fund, plus interest;
- ***Extensive injunctive relief*** to permanently improve Defendants' policies and practices to deter and reduce the uploading of CSAM to their websites, including mandatory government-ID verification for all persons depicted in content—to ensure that what happened to Plaintiffs and Class Members never happens to another child; and

---

[3] Unless otherwise noted, the capitalized terms used herein have the meanings set forth in the Settlement Agreement. *See* Declaration of Krysta Kauble Pachman ("Pachman Decl.") Ex. B.

- ***Closure*** for survivors by providing compensation for their public victimization on Defendants' websites.

This Settlement promises concrete, significant financial and injunctive relief without the delay, uncertainty, and risk of continued litigation, and ends these Actions without forcing Plaintiffs to relive their trauma in a public trial.

The results of this Settlement are the product of an unprecedented litigation effort fought on two fronts: Plaintiffs defeated two motions to dismiss across both Actions and a motion for reconsideration in the California Action; won class certification in two circuits; defeated two Rule 23(f) petitions; defeated a summary judgment motion in the Alabama Action; defeated a motion to decertify the class in the Alabama Action; negotiated a discovery protocol in the Alabama Action facilitating Defendants' transfer of CSAM or suspected CSAM to the Attorney General of Alabama; prosecuted an action in Ireland on behalf of the Alabama Plaintiff to identify and trace Defendants' and their affiliates' assets in the European Union; engaged in discovery including production and review of over half a million pages of documents and at least 47 fact and expert depositions; fully briefed the case through summary judgment in the California Action (which remained pending when the parties reached settlement); prepared and presented at least nine expert witnesses through pre-certification and expert disclosures; prepared pre-trial materials including exhibit lists, deposition designations, jury instructions, and witness lists; and engaged in nine in-person mediation sessions and eight rounds of mediation since 2022.

In short, this Settlement was hard-fought and delivers meaningful monetary relief and significantly enhances how Defendants do business to help prevent future harms to survivors. It should be preliminarily approved.[4]

---

[4] Defendants, which deny all allegations against them in both Actions, have agreed to the relief provided by the Settlement and assent to this Motion.

## II. BACKGROUND

### A. Factual Background

The two Actions arose out of Plaintiffs' allegations that Defendants knowingly received, distributed, contributed to, and financially benefitted from tens of thousands of pieces of CSAM on their network of the world's most popular pornography websites, including Pornhub.com, Youporn.com, and Redtube.com.

When the California Plaintiff was a minor, she had sex with her physically and psychologically abusive boyfriend, which she alleges he recorded without her consent. Dkt. 320 at 6.[5] Their relationship ended when he pushed her out of a moving car. *Id.* Years later, the California Plaintiff learned that he had uploaded sexually explicit videos of her as a minor as revenge porn to Defendants' websites, which users could freely view, download, and reupload. *Id.* at 6-7. Plaintiff alleges that Defendants reviewed her CSAM videos before distributing them to the public. *Id.* at 6.

The Alabama Plaintiff was a minor when she alleges she was drugged and raped by her abuser, who uploaded videos of her assaults to Pornhub along with other CSAM videos. 7:21-cv-00220, Dkt. 261 at 13-17. The Alabama Plaintiff alleges Defendants reviewed her CSAM before distributing and making it available for download after it was viewed thousands of times. *Id.*

The California and Alabama Plaintiffs each brought class-wide claims against Defendants for receipt and distribution of child pornography under 18 U.S.C. §§ 2252 and 2252A and knowingly benefiting from participation in a sex trafficking venture under the federal Trafficking Protection Reauthorization Act ("TVPRA") (18 U.S.C. § 1595(a)). Dkt. 107; 7:21-cv-00220, Dkt. 22. The California Plaintiff also brought class-wide claims under the California Trafficking Victims Protection Act

---

[5] Citations to docket entries in the California Action are identified as "Dkt. X." Citations to docket entries from the Alabama Action are identified as "7:21-cv-00220, Dkt. X."

(Cal. Civ. Code § 52.5) and the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), as well as individual claims for distribution of private sexually explicit materials under California Civil Code § 1708.85 and intentional infliction of emotional distress. Dkt. 107.

**B. Procedural History**

For nearly five and a half years, Plaintiffs and Class Counsel zealously litigated on behalf of the Class in two separate Actions. Defendants vigorously defended in both forums and denied liability for all claims.

The Parties were preparing for trial before this Settlement was reached. Declaration of Gregory Zarzaur ("Zarzaur Decl.") ¶¶ 54-58; Pachman Decl. ¶¶ 25-26.

i. <u>The California Action</u>

The California Plaintiff filed her complaint on February 19, 2021. Dkt. 1. Defendants moved to dismiss and the Court denied in substantial part, including by rejecting Defendants' Section 230 arguments. Dkt. 66. Defendants then filed and lost a motion for reconsideration. Dkt. 88.

After discovery began, the California Action was stayed pending the California Plaintiff's trafficker's criminal prosecution. Dkt. 97. Following his conviction, and pursuant to the parties' joint motion, the stay was lifted on March 6, 2023. Dkt. 99. California Class Counsel immediately renewed discovery efforts and, in the middle of discovery, the California Plaintiff secured class certification on November 17, 2023. Dkt. 209. Following the class certification hearing, this Court certified the following classes:

- <u>Class</u>: All persons who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by MindGeek from February 19, 2011, through the present.
- <u>California Subclass</u>: Members of the Class residing in California who

were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by MindGeek from February 19, 2011, through the present.

Following class certification, Defendants filed a Rule 23(f) petition in the Ninth Circuit, which was denied. Order Denying MindGeek's Rule 23(f) Petition, *Doe v. MindGeek USA Incorporated*, No. 23-3909 (9th Cir. Jan. 18, 2024). This Court then approved the parties' stipulated notice plan and, in February 2024, the notice administrator disseminated Class notice via email, media outreach, press releases, a case-specific notice website, and NCMEC's network. Dkts. 225, 228, 259. The opt-out deadline was April 22, 2024. Pachman Decl. ¶ 16.

Fact discovery continued following class certification and ended on March 1, 2024, with several depositions occurring with the Court's permission through April 17, 2024. *Id.* ¶ 18. The California Plaintiff propounded over a hundred discovery requests and reviewed nearly a hundred thousand of Defendants' documents. *Id*. As a result, the California Plaintiff uncovered key documents on liability issues, including internal employee emails and messages, spreadsheets detailing tens of thousands of videos and photos that Defendants reported as apparent CSAM or suspected CSAM to NCMEC, and records of every content removal request or other report of potential CSAM Defendants received. *Id.*

The California parties took and defended 26 fact witness depositions, some of which extended over multiple days. *Id.* ¶ 19. The California Plaintiff won, in part, a motion to compel key discovery, including: (i) documents pertaining to private equity firm Ethical Capital Partners' ("ECP") acquisition of Defendants; (ii) the documents and deposition of Defendants' Chief Product Officer; (iii) the deposition of Defendants' Vice President of Trust and Safety; and (iv) depositions on thirteen additional Rule 30(b)(6) deposition topics. Dkt. 264.

The California Plaintiff also obtained valuable discovery through third-party

subpoenas, including to Defendants' payment processors, Defendants' public relations firm, and ECP. Pachman Decl. ¶ 21.

For her part, the California Plaintiff had to undergo invasive and extensive discovery, including by responding to nearly 100 discovery requests, authorizing the release to Defendants of hundreds of pages of her medical records directly from her medical providers, and producing nearly 2,000 pages of documents, including personal medical records, email, text, and social media messages, and police files about her abuser. *Id.* ¶ 22. She also sat for a full-day deposition covering the facts underlying her claims and the harm she suffered, and the considerable trauma and emotional distress she suffered and continues to suffer as a result. *Id.*

The California Plaintiff also invested significant resources into the expert discovery necessary to support the Class's claims. The California Plaintiff's experts prepared detailed reports for class certification and during merits expert discovery and sat for depositions during both phases. Pachman Decl. ¶¶ 23-24.

On April 19, 2024, Defendants filed two motions for summary judgment and the California Plaintiff filed a motion for partial summary judgment. Dkts. 282, 283, 293. The Court heard argument on July 19, 2024, and the motions remained pending when this Settlement was reached.

ii. The Alabama Action

The Alabama Plaintiff filed her complaint on February 11, 2021. 7:21-cv-00220, Dkt. 1. Defendants moved to dismiss and the Alabama Court denied Defendants' motion in substantial part, including by rejecting Defendants' Section 230 arguments. *Id.* Dkt. 42.

The Alabama Court granted the Alabama Plaintiff's motion for class certification on December 19, 2023. *Id.* Dkt. 147. The class certified by the Alabama Court includes: "All persons who were under the age of 18 when they appeared in a video or image that has been made available for viewing on any website owned or operated by Defendants anytime from February 12, 2011, through the present." *Id.*

Defendants' Rule 23(f) petition was denied in the Eleventh Circuit in February 2024. Order Denying MindGeek's Rule 23(f) Petition, *MG Freesites Ltd, et al. v. Jane Doe*, No. 24-90001 (11th Cir. Feb. 12, 2024). The Alabama Court then approved a notice plan that included banner notice on Defendants' websites. 7:21-cv-00220, Dkt. 199. Following implementation of notice, the Alabama opt-out period closed on December 6, 2024. Zarzaur Decl. ¶ 42. Meanwhile, the Alabama Plaintiff engaged in extensive discovery, obtained an order facilitating the transfer of apparent or suspected CSAM to the Attorney General of Alabama, prosecuted an action in Ireland on behalf of the Alabama Plaintiff to identify and trace the assets of Defendants and their affiliates in the European Union, and prosecuted a Letters Rogatory action in Canada. *Id.* ¶¶ 21-29, 38-39. Defendants filed a motion for summary judgment and the Alabama Plaintiff filed a motion for partial summary judgment. 7:21-cv-00220, Dkts. 221, 223. The Alabama Court denied the cross-motions on December 19, 2024, preserving all the Alabama Plaintiff's claims for trial. *Id.* Dkt. 261.

Defendants continued to challenge the Alabama case. In early January 2025, they filed a motion to decertify the class and a motion to certify for interlocutory appeal two questions regarding Section 230 immunity. *Id.* Dkts. 264, 266. Both motions were denied in May 2025. *Id.* Dkts. 285, 286. The Alabama Court then set a pretrial conference for July 1, 2025, *id.* Dkt. 294, and trial was anticipated to begin on September 2, 2025, *id.* Dkt. 300.

After the Alabama parties filed a joint pretrial memorandum, *id.* Dkt. 303, all Parties renewed settlement efforts across both Actions, *see* 7/15/2025 Minute Entry & Dkts. 307, 311, which culminated in this Settlement, *id.* Dkt. 312.

### C. Settlement Negotiations

In total, the Parties participated in nine in-person mediation sessions and eight rounds of mediation since 2022.

The last rounds of mediation began on the eve of trial in the Alabama Action

and were overseen by The Honorable R. David Proctor of the United States District Court for the Northern District of Alabama and Randi Ellis, a private mediator. *See* Ellis Decl. ¶¶ 11-13. Following in-person mediation sessions on July 8–9, 2025, August 27, 2025, April 20–21, 2026, and May 11, 2026, as well as several virtual sessions, the Parties successfully negotiated the terms of a global settlement of both Actions. The Term Sheet was signed by all Parties on June 17, 2026, and the long-form Settlement Agreement was executed on July 17, 2026. *See* Pachman Decl. ¶ 6; *id.* Ex. B (the Settlement Agreement).[6]

## III. SUMMARY OF THE PROPOSED SETTLEMENT

### A. The Class

The Settlement Agreement defines the "Class" as: (i) the class certified by the Order Granting Plaintiff's Motion for Class Certification at Dkt. 209 in the California Action,[7] and (ii) the class certified by the Memorandum of Opinion and Order Granting Plaintiff's Motion for Class Certification at Dkt. 148 in the Alabama Action, which collectively includes all persons who were under the age of eighteen when they appeared in a video or image that has been made available for viewing on any website owned or operated by the Defendants anytime from February 12, 2011 through December 6, 2024. SA § 1.11. The Class does not include individuals who timely exercised their right to be excluded from the class(es) as certified in the Alabama Action or California Action, other than the Plaintiffs in the two Actions. *Id.*[8]

---

[6] Citations to sections in the Settlement Agreement are identified as "SA § X."

[7] Because all members of the California Subclass are coextensive with the Class, the Settlement Agreement does not define a separate California subclass.

[8] The Settlement Agreement does not allow another opt-out opportunity because there were already two separate opt-out periods after class certification in both the Alabama and California Actions. Additional opt-out opportunities at settlement are not required under Rule 23(e)(4), *see, e.g., Low v. Trump University, LLC*, 881 F.3d 1111, 1122 n. 6 (9th Cir. 2018) ("the Rule [23(e)(4)]'s language anticipates that parties can reach a settlement agreement that does not permit an additional opt-out opportunity"), especially where class members had proper notice of prior opportunities to opt out, *see Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 662-65 (N.D. Tex. Apr. 9, 2010); Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment.

**B. Monetary Relief**

Under the Agreement, Defendants will pay $120,000,000 into a non-reversionary Settlement Fund in seven installments starting with (1) $25,000,000 paid on July 31, 2026, then (2) six annual installment payments of $15,833,333.33 on the first six anniversaries of June 17, 2026. *Id.* §§ 2.1-2.2.[9] All payments will be deposited into an interest-bearing escrow account administered by the Settlement Administrator. *Id.* § 2.4.

**C. Injunctive Relief**

The Agreement also provides for extensive injunctive relief set forth in Appendix A directed at deterring and reducing the uploading of CSAM on Defendants' websites. *See id.* Apx. A. Key provisions of Appendix A require Defendants to:

- Verify and Validate using government-issued identification that every person who uploads and/or is depicted in Content on Defendants' websites was 18 or older when the Content was created;
- Use extensive content moderation using technological tools and human moderation to review, detect, and remove suspected or actual CSAM from Defendants' websites;
- Conduct mandatory CSAM prevention training for all trust and safety employees;
- Expand procedures regarding content removal requests, withdrawal of consent requests, and content flagging;
- Implement enhanced mandatory policies and procedures addressing suspected or actual CSAM, including fingerprinting and reporting, deleting Content, and banning users who upload suspected or actual CSAM or Content that cannot be Verified;

[9] The last installment will be adjusted as necessary so the installments equal $120,000,000.

- Annually assess and monitor Defendants' CSAM safeguards and content moderation;
- Report on Defendants' websites semi-annually regarding policies, procedures, and actions taken by Defendants relating to suspected or actual CSAM; and
- Expand procedures directed at preventing non-consensual material from being available on Defendants' websites.

The Agreement also establishes a Monitoring Committee to meet at least annually for five years to assist in the enforcement and monitoring of Defendants' compliance with Appendix A. *Id.* § 3.3. Defendants also agreed to undergo external audits for five years. *Id.* § 3.2.

**D. The Release**

The Agreement provides that Plaintiffs and Class Members will release all Released Claims, as defined in the Agreement, against Defendants that were asserted in the Actions or arise out of the acts, facts, or omissions involved in the Actions. *Id.* § 4.1. The release does not cover claims arising from acts or conduct occurring after December 6, 2024, the last opt out deadline in the two Actions. *Id.* Claims against third-party platforms, Models, Content Partners, advertisers, sponsors, advertising networks, and non-fully Defendant entities are preserved. *Id*.

**E. Notice and Administration**

The Parties propose that Gentle Turner & Benson, LLC ("Gentle")—an experienced and reputable national class action administrator with experience handling sex abuse settlements and settlements involving sensitive claimant data—serve as Settlement Administrator to provide Class settlement notice,[10] process claims, manage the escrow account where Settlement Fund payments will be deposited, and handle all other services necessary to implement the Settlement. *Id.* §

[10] Gentle anticipates using Epiq Global to disseminate settlement notice to the class. Gentle Decl. ¶ 7.

1.56.

Settlement administration cost estimates are approximately 4–5% of the Settlement Fund, depending on the number of Qualified Claimants, paid from the Settlement Fund.[11] Declaration of Edgar C. Gentle, III ("Gentle Decl.") ¶ 5; *id.* Ex. B (budget); SA § 2.2(d), (e).[12] Gentle accepts responsibility and maintains insurance, Gentle Decl. ¶ 6, and uses multiple layers of protection for safely handling sensitive claimant information, *id.* ¶ 13 (providing further detail); Appendix 1 §§ A, C (same). Gentle also uses multiple fraud prevention practices, including contacting claimants for further documentation where appropriate. Gentle Decl. ¶ 14 (providing further detail about Gentle's fraud prevention measures); Appendix 1 § B (same).

The proposed notice plan includes: (1) email and/or mail notice to all mailing and email addresses on the Notice List, described below; (2) media outreach, press releases, and digital notice to selected newswires; (3) banner notice on Defendants' websites; (4) notice disseminated by NCMEC to its direct service providers, survivors, and law enforcement victim advocates network; (5) notice via a Settlement website; and (6) notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. SA § 5; Gentle Decl. ¶¶ 7-12; Declaration of Lauren Coffren ("Coffren Decl.") ¶¶ 9-10. The proposed notice clearly informs Class Members of their rights to object to the Settlement and/or submit a claim, how to do so, and of all deadlines.[13] *See* Gentle Decl. Ex. C (proposed notice).

The Notice List is comprised of: (1) Class Members identified through Defendants' internal records; and (2) non-Class Members who submitted a CSAM

---

[11] *See, e.g.*, *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131 (W.D. La. 1997) (finding settlement administration costs capped at 6% reasonable).

[12] The costs of the notice that was implemented following certification in both Actions are also paid from the Settlement Fund. SA § 2.2(d).

[13] The proposed notice plan aligns with the class certification notice processes in the California and Alabama Actions, which were approved by this Court and the Alabama Court and highly effective. *See* Dkt. 225 at 3-6; Dkt. 259; 7:21-cv-00220, Dkt. 199. The California Plaintiff and the Alabama Plaintiff explained why those processes were effective when seeking approval at the class certification stage, *see* Dkt. 211; 7:21-cv-00220, Dkt. 179, and those same reasons are applicable here.

content removal request or notified Defendants about CSAM on Defendants' websites and whose contact information has been obtained from Defendants' internal documents. SA § 1.40.

Additional details about the Settlement Administrator's procedures and the proposed notice plan are provided in Appendix 1 and in the Gentle Declaration.

To be eligible to receive a Settlement payment, Class Members must submit a claim. The proposed claim form was designed by Class Counsel in consultation with the Settlement Administrator and NCMEC to ensure that Class Members feel encouraged and safe giving enough detail for the Settlement Administrator to confirm their Class membership and eligibility. At the same time, the form is easy to complete and not so burdensome or invasive that it deters Class Members from coming forward. *See* Gentle Decl. Ex. E (proposed claim form and Settlement overview); *Id.* ¶¶ 12, 16.

**F. Plan of Allocation**

The objective of the proposed plan of allocation is to equitably distribute the Settlement Fund among Class Members *per capita*—*i.e.*, each Qualified Claimant receives an equal cash share of the Settlement Fund (less attorneys' fees, service awards, and Settlement Administration Expenses). *See* Gentle Decl. Ex. D (proposed plan of allocation); *id.* ¶¶ 16-17. To that end, the Settlement Administrator will review each Class Member's claim form along with any supporting documentation to determine whether he or she is a Qualified Claimant.

All information submitted with a claim form or shared with the Settlement Administrator by Class Members will be kept strictly confidential.

Payments will be distributed *per capita* based on the total number of Qualified Claimants and in separate installments as funds become available in the Settlement Fund and within 30 days after each of Defendants' installment payments. Once final approval is entered by the Court, unclaimed Settlement Funds will not revert to Defendants under any circumstances. If necessary, Class Counsel will apply to the

Court for a *cy pres* distribution of unclaimed funds to a CSAM prevention or remediation organization, reasonably acceptable to and independent from all Parties. SA § 2.11(d).

**G. Attorneys' Fees, Expenses, and Awards**

The Agreement provides that Class Counsel will move for reasonable attorneys' fees, reimbursement of expenses, and service awards for Class Representatives no later than 14 days before the objection deadline expires. *Id.* § 6.4. Class Counsel intends to request fees not exceeding one-third of the Settlement Fund, including a pro rata share of the interest, which will be justified with the Ninth Circuit factors before final approval.[14] *Id.* Class Counsel also intends to request service awards of up to $150,000 for each Class Representative, up to $5,000 for Jane Doe #2 who sought leave to join the California Action at Dkt. 89 and participated in initial discovery, and up to $5,000 for Jane Doe #2 who appeared in the original Complaint and the First Amended Complaint in the Alabama Action at Dkt. 1 and Dkt. 22 and participated in initial discovery. *Id.*

The Settlement is not conditioned on the Court's approval of any service awards, attorneys' fees, or expenses, nor does the Agreement contain a clear sailing provision under which Defendants agree not to oppose any such requests. Any court-awarded attorneys' fees, expenses, and service awards are paid from the Settlement Fund. *Id.* § 2.2(e).

**IV. ARGUMENT**

The Court should preliminarily approve the Settlement under Federal Rule of Civil Procedure 23.

**A. The Court Should Certify the Settlement Class.**

The Court should preliminarily certify the Settlement class for purposes of judgment under Rule 23(e)(1)(B) for the same reasons this Court and the Alabama

---

[14] Class Counsel's request for attorneys' fees will be filed jointly with this Court on behalf of California and Alabama Class Counsel.

Court previously certified the classes at class certification. *See* Dkt. 209; 7:21-cv-00220, Dkt. 147. The numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3) are still satisfied. Plaintiffs only propose two non-substantive changes to the class certified by this Court: (1) that the Settlement class period start on February 12, 2011, the Alabama Action's class start date (1 week earlier than the California Action's class start date); and (2) the Settlement class period end December 6, 2024. The certified classes in both Actions were defined temporally as continuing through "present," but the Parties agreed the Class definition should run through December 6, 2024, the last day of the final opt-out period in the Alabama Action. SA § 1.11. The Release likewise goes only to December 6, 2024. *Id.* § 4.1. Because these changes do not alter the reasoning underlying this Court's and the Alabama Court's prior orders granting class certification, this Court should preliminarily approve the Settlement class for the same reasons. *See Baten v. Michigan Logistics, Inc.*, 2022 WL 17481068, at *4 (C.D. Cal. Dec. 6, 2022) (approving a settlement class previously certified where the only change was an extension of the class period end-date); *Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *3 (N.D. Cal. Oct. 21, 2021) (approving a settlement class previously certified where the class end date changed).

**B. The Proposed Settlement is Fair, Reasonable, and Adequate.**

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (internal citation omitted). To decide whether to preliminarily approve a settlement, the Court must determine, on a preliminary basis, whether the proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). *See* Fed. R. Civ. P. 23(e)(2). Courts conduct this analysis by applying the *Hanlon* factors and the Rule 23(e) criteria. *See In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025).

Under Rule 23(e)(2), to determine whether a settlement is "fair, reasonable, and adequate," courts consider whether: (A) "the class representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2); *see also In re California Pizza Kitchen*, 129 F. 4th at 674. Under *Hanlon*, courts assess: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *In re California Pizza Kitchen*, 129 F. 4th at 674 (citation omitted). The *Hanlon* factors are baked into the Rule 23(e)(2) analysis. *Id.*

The proposed Settlement satisfies Rule 23(e)(2).

i. <u>Plaintiffs and Class Counsel Have Adequately Represented the Class</u>

The Court first considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The focus "is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. The Court may also consider "the nature and amount of discovery in this or other cases," which "may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.*

As an initial matter, this Court already found at class certification that the California Plaintiff was an adequate Class Representative and that Susman Godfrey was adequate Class Counsel. Dkt. 209 at 11-12. In the Alabama Action, the court

found the Alabama Plaintiff to be an adequate Class Representative and Alabama Class Counsel to be adequate Class Counsel. 7:21-cv-00220, Dkt. 147 at 20-22.

Since then, Plaintiffs and Class Counsel have continued to zealously represent the Class in both Actions and in extensive mediation efforts leading to this Settlement. Plaintiffs' and Class Counsel's decision to settle these Actions was informed by thorough investigations of the relevant claims, full fact and expert discovery in both Actions, extensive motion practice, trial preparation, and extensive settlement negotiations.

This factor weighs in favor of preliminary approval.

ii. The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) directs courts to consider whether "the proposal was negotiated at arm's length." This "'procedural' concern[]" requires courts to examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Evidence of "a truly adversarial bargaining process" is "the presence of a neutral third party mediator." 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:50 (6th ed. June 2025 update); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (neutral mediator involvement "may bear on whether [settlement negotiations] were conducted in a manner that would protect and further the class interests").

This Settlement was the product of a highly adversarial, arm's length bargaining process that arose after full fact and expert discovery and after the Parties fiercely litigated the key legal and factual issues in both Actions for over five years. By the time the Term Sheet was executed, the Parties thoroughly understood the merits of their claims and defenses and the risks all sides faced at trial and on appeals.

The proposed Settlement was also negotiated under the supervision of Judge Proctor and Randi Ellis and is the product of vigorous, heavily disputed negotiations, Ellis Decl. ¶ 8, and was reached only after the mediator conducted a confidential

evaluation of Defendants' financial condition, *id.* ¶ 12; Pachman Decl. ¶ 27.

This process bears all the hallmarks of an arm's-length negotiation. *See In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *4 (N.D. Cal. Dec. 16, 2022) (granting preliminary approval where the parties settled "with the assistance of an experienced mediator after two-and-a-half years of litigation, extensive discovery and motion practice, and months of negotiations" and without any "signs of collusion" like reversions or clear-sailing agreements).

iii. <u>The Relief Provided is Adequate</u>

Rule 23(e)(2)(C) next directs the Court to evaluate whether "the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees…; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]"

Each factor weighs in favor of preliminary approval.

*a) The Extraordinary Relief Provided to the Class*

"The relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Here, the monetary and injunctive relief provided to the Class is extraordinary. And for this Class of survivors in particular, the added relief of finally resolving these Actions may be equally valuable.

As discussed, the Settlement secures a non-reversionary common fund of $120,000,000 and extensive injunctive relief that significantly enhances how Defendants operate the most popular pornography websites in the world.

The Settlement Fund amount falls well within the range of other comparable class action settlements in cases involving sex trafficking and/or sexual abuse. For example, the plaintiff victims of Jeffrey Epstein's sex trafficking have settled four separate class actions against defendant banks alleging violations of the TVPRA for

between $25 and $290 million.[15]

The injunctive relief achieved by the 16 single-spaced pages of Appendix A is exceptional on its face. But Appendix A's terms are even more extraordinary when compared to the policies in place before these Actions were filed, which did not include age verification for persons depicted in user-uploaded content. No. 7:21-cv-00220, Dkt. 261 at 4. The scope of the injunctive relief is particularly significant given that discovery revealed tens of thousands of potential CSAM videos and photos that were viewed on Defendants' websites millions of times before they were removed. *Id*. at 6-12.

Now, pursuant to Appendix A, Defendants are required to, among many other things: (i) verify and validate that every person who uploads or appears in Content on their websites was over 18 when the Content was created; (ii) implement enhanced mandatory Content moderation procedures to review, detect, and remove CSAM or suspected CSAM; and (iii) report and ban any user who uploads suspected or actual CSAM or Content that cannot be verified. *See* SA Apx. A.

The Settlement also offers Class Members finality and closure.

*b) The Avoided Costs, Risks, and Delay of Trial and Appeal*

"Another central concern [] relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

As this Court recognized in its Order granting class certification, "any individual's efforts to litigate this case involve[s] reliving considerable trauma." Dkt. 209 at 21. That observation applies with particular force here. If approved, the Settlement will ensure that Plaintiffs and Class Members will never again have to

---

[15] *Doe v. Deutsche Bank*, No. 1:22-cv-10018-JSR, Dkt. 56 at 2, Dkt. 122 at 7 (S.D.N.Y.); *Doe v. Bank of America, N.A.*, No. 1:25-cv-08520-JSR (S.D.N.Y.), Dkt. 73 at 42, Dkt. 121-1 at 4, Dkt. 134 (S.D.N.Y.); *Doe v. JP Morgan Chase Bank, N.A.*, No. 1:22-cv-10019-JSR, Dkt. 66 at 2-3, Dkt. 284 at 7-8 (S.D.N.Y.); *Ward v. Indyke, et al.*, No. 1:24-cv-01204-AS, Dkt. 415 at 1, 4, Dkt. 419 (S.D.N.Y.).

publicly "relive the unconscionable acts they experienced as *children*," *id.* (emphasis in original), and can finally focus on healing and trying to move forward.

The Settlement is especially significant when considered against the risks of pursing these Actions in further litigation. In the California Action, the Court had not ruled on Defendants' two pending summary judgment motions, which could have eliminated some or all of Plaintiff's claims before trial.

In the Alabama Action, there was no guarantee that any victory achieved at trial would survive subsequent motions or appeals, or that Plaintiffs could have secured or defended any significant monetary relief or the vast injunctive relief achieved in Appendix A. There is also no guarantee that Plaintiffs would have been able to collect any larger judgment from Defendants. The confidential evaluation of Defendants' financial resources during mediation informed the Parties' assessment of the risks associated with collectability of any potential judgment. *See* Pachman Decl. ¶ 27.

And as discussed, the personal risks (including of potentially having their identities exposed at trial) and the inevitable trauma that Plaintiffs would have experienced in a public, adversarial trial cannot be overstated. This Settlement obviates those risks and offers Plaintiffs and Class Member survivors the closure and privacy that even a resounding trial victory could not.

*c) The Effectiveness of the Proposed Method of Distributing Relief*

"A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re ConAgra Foods, Inc.*, 2022 WL 17243625, at *8 (C.D. Cal. Nov. 14, 2022) (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). The proposed claims process here aims to strike that balance while placing appropriate emphasis on the specific concerns of the Class Members.

To that end, Class Counsel worked in consultation with NCMEC to ensure that the claim form is accessible and sensitive to Class Members' unique needs and

experiences. *See* Gentle Decl. Ex. E (claim form). It is designed to be easy enough to understand and complete without an attorney and aims to collect enough information to fairly evaluate and limit the possibility of unjustified claims, while giving Class Members control over what information to provide and in how much detail so the claims process itself does not deter eligible Class Members. *Id.* ¶¶ 12, 16.

*d) The Terms of Any Proposed Award of Attorneys' Fees*

As discussed, Class Counsel intends to request attorneys' fees not exceeding one-third of the Settlement Fund, reimbursement of litigation expenses and costs, and service awards. SA § 6.4. The attorneys' fees request will be justified by Ninth Circuit caselaw.

The Settlement Agreement is not conditioned on the Court ordering fees, expenses, or service awards, and does not contain any "clear sailing agreement." *Cf. In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947-48 (9th Cir. 2011) (finding signs of collusion where defendants agreed not to object to attorneys' fees up to a certain amount).

Any requested service awards will be justified by the Class Representatives' extensive efforts over the past five years and will reflect their enormous risks and sacrifices in bringing these Actions, disclosing their identities to Defendants, subjecting themselves to invasive and traumatic discovery and depositions, and risking having their identities publicized at trials.[16] *See, e.g.*, *In re College Athlete NIL Litig.*, 803 F.Supp.3d 959, 993 (N.D. Cal. 2025) (approving $125,000 service awards to three class representatives, $10,000 for two, and $5,000 for one as reasonable where they helped Class Counsel prosecute the case, respond to discovery, sat for depositions, undertook financial and reputational risks in bringing

---

[16] The smaller service awards Class Counsel plans to seek for the prior Jane Does are likewise intended to reflect their initial involvement in the Actions and their willingness to disclose their identities to Defendants and subject themselves to discovery. *See generally Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (analysis considers "risk to the class representative in commencing suit").

the action, and achieved favorable results in the settlement); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *17-18 (N.D. Cal. Sep. 2, 2015) (authorizing $120,000 and $80,000 service awards where class representatives spent significant time and effort litigating the case for four years and risked serious workplace retaliation by serving as named plaintiffs).

*e) No Agreement Required to be Identified under Fed. R. Civ. P. 23(e)(3)*

The Parties have no agreements "made in connection with the proposal" to disclose other than the Settlement Agreement itself. *See* Fed. R. Civ. P. 23(e)(3); Fed. R. Civ. P. 23(e)(2)(C)(iv).

iv. <u>The Proposed Settlement Treats Class Members Equitably</u>

The last Rule 23(e)(2) factor considers whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

The proposed plan of allocation for monetary relief satisfies this factor. *See* Gentle Decl. Ex. D (proposed plan of allocation). As discussed above, Eligible Class Members who timely submit claims get equal *per capita* payments from the Settlement Fund. Gentle Decl. ¶¶ 16-18. This allows Class Members to recover without extensively relitigating their trauma and aligns with the statutory liquidated damages available for Plaintiffs' claims under 18 U.S.C. § 2255(a). The Release does not treat any Class Members differently or bear on the apportionment of relief. *See* SA § 4.1.

The Settlement's injunctive relief applies equally to every Class Member, including Opt-Outs. *See In re Google LLC Street View Elec. Commc'ns Litig.*, 611

F. Supp. 3d 872, 895 (N.D. Cal. 2020) (noting each class member benefitted equally from the injunctive relief).

This factor supports preliminary approval.

**C. The Court Should Direct Notice to the Class.**

Once the Court concludes a proposed Settlement is likely to be approved, Rule 23(e)(1)(B) instructs the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."

Plaintiffs' proposed notice plan comports with Rule 23. The comprehensive plan for disseminating notice—including direct email and/or mail notice, digital notice via press releases and media outreach, banner notices on Defendants' websites, notice disseminated by NCMEC to its direct service providers, survivors, and law enforcement networks, and any other networks or contacts NCMEC and/or C3P deem appropriate, and notice on a case-specific website—constitutes the best notice practicable under the circumstances. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1255 (C.D. Cal. 2016) (approving notice plan involving email and mail notice, digital publication, and a press release); *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 624-25 (N.D. Cal. 2021) (approving notice plan including email notice, notice on defendant Facebook's website, newspaper publication, a settlement website, and an internet ad campaign); 21-cv-00220, Dkt. 199 (the Alabama Court's ruling approving the same notice plan); Dkt. 225 (this Court's prior ruling approving a similar notice plan).

The proposed long-form notice also complies with Rule 23. *See* Gentle Decl. Ex. C. It was vetted by an experienced and well-qualified Settlement Administrator and includes all information necessary for Class Members to make informed decisions about whether to object or submit claims and how and when to do so. *Id.* ¶¶ 7-11.

**D. The Court Should Set Deadlines and Schedule a Final Approval Hearing.**

In connection with preliminary approval, the Court must also set a Final Approval Hearing date and deadlines for notice, objecting to the Settlement, and filing papers in support of the Settlement. Plaintiffs propose the following schedule:

| EVENT | PROPOSED DEADLINE |
| --- | --- |
| CAFA Notice Pursuant to 28 U.S.C. § 1715(b) | Within 10 days of filing Motion for Preliminary Approval |
| Establishment of Settlement Website | Within 14 days of entry of Preliminary Approval Order |
| Notice Date | Within 14 days of entry of Preliminary Approval Order |
| Motion for Attorneys' Fees, Costs, Expenses, and Service Awards | No later than 14 days before the Objection Deadline |
| Objection Deadline | 45 days after Notice Date |
| Claims Submission Deadline | 120 days after Notice Date |
| Final Approval Motion and Response to Any Objections | 21 days before Final Approval Hearing |
| Deadline to Submit Notices of Appearance at the Final Approval Hearing | 18 days before Final Approval Hearing |
| Final Approval Hearing | At least 96 days of entry of Preliminary Approval Order |

## V. CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement, appoint Gentle Turner & Benson, LLC as Settlement Administrator, approve the proposed notice plan, and enter the proposed schedule.

Dated: August 14, 2026 Respectfully submitted,

By: */s/ Krysta Kauble Pachman*

DAVIDA BROOK
dbrook@susmangodfrey.com
KRYSTA KAUBLE PACHMAN

kpachman@susmangodfrey.com
HALLEY W. JOSEPHS
hjosephs@susmangodfrey.com
ROHIT D. NATH
rnath@susmangodfey.com
NICHOLAS N. SPEAR
nspear@susmangodfrey.com
EMILY K. CRONIN
ecronin@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel : (310) 789-3100

CHRISTINA M. DIECKMANN
(*Pro Hac Vice*)
cdieckmann@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001-8602
Tel : (212) 336-8330

STEVE COHEN *(Pro Hac Vice)*
SCohen@pollockcohen.com
POLLOCK COHEN LLP
60 Broad St., 24th Floor
New York, NY 10004
Phone: (212) 337-5361

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,473 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 14, 2026

*/s/ Krysta Kauble Pachman*
Krysta Kauble Pachman

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2026, I electronically filed the foregoing document with the clerk of the Court and served counsel of record via the CM/ECF system and email.

*/s/ Krysta Kauble Pachman*
Krysta Kauble Pachman