DAVIDA BROOK (275370)
dbrook@susmangodfrey.com
KRYSTA KAUBLE PACHMAN (280951)
kpachman@susmangodfrey.com
HALLEY W. JOSEPHS (338391)
hjosephs@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Phone: (310) 789-3100; Fax: (310) 789-3150

(*See additional counsel on signature page)*

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JANE DOE on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),<br><br>Defendants. | Case No. 8:21-cv-00338-WLH-ADS<br><br>*Hon. Wesley L. Hsu*<br><br>**CLASS ACTION**<br><br>**DECLARATION OF KRYSTA K. PACHMAN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# DECLARATION OF KRYSTA K. PACHMAN

I, Krysta K. Pachman, declare as follows:

1. I am an attorney admitted to the bar of California. I am over eighteen years of age and have personal knowledge of the facts set forth in this declaration and could and would testify competently to them. I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

2. I am a partner in the law firm of Susman Godfrey L.L.P. ("Susman Godfrey"), attorneys of record for Plaintiff Jane Doe in the above-captioned matter along with Steve Cohen of Pollock Cohen LLP. I am also Court-appointed Class Counsel. I have no knowledge of the existence of any conflicting interest between my firm and any of its attorneys and Pollock Cohen LLP, on the one hand, and Plaintiff or any other Class Member, on the other.

3. Susman Godfrey has significant experience with class actions and settlements thereof. Susman Godfrey has been appointed Class Counsel in numerous class actions. I have personally spent my career successfully representing classes in complex cases, securing a $100 million settlement in *In re Pattern Energy Group Sec. Litig.*, Case No. 20-cv-275 (D. Del.); a settlement valued at over $100 million in *Ferrick, et al. v. Spotify USA*, No. 1:16-cv-08412 (S.D.N.Y.); a $40 million settlement in *Timber Hill v. Pershing Square Capital Management L.P.*, et al., No. 2:17-cv-04776 (C.D. Cal.); and a $37.5 million settlement in *Schulein, et al. v. Petroleum Development Corp.*, et al., No. 8:11-cv-01891 (C.D. Cal.), among others. A copy of the firm profile and the profiles of myself and my colleagues from Susman Godfrey are attached hereto as **Exhibit A**.

4. I was among the principal negotiators of the proposed class action settlement (the "Settlement Agreement") with Defendants and Plaintiff's counsel in *Jane Doe #1 v. MG Freesites, Ltd, D/B/A "Pornhub", et al.*, Case No. 7:21-cv-

00220-RDP (N.D. Ala.) (the "Alabama Action") (collectively, the "Parties"). A true and correct copy of the Settlement Agreement is attached as **Exhibit B**.[1]

5. This Settlement with Defendants is fair, adequate, and reasonable. The named Plaintiff in the above-captioned action (the "California Action") similarly supports this Settlement and believes it to be fair, adequate, and reasonable.

6. The Settlement Agreement is the result of nine in-person mediation sessions and eight rounds of mediation since 2022 across both Actions. The Parties successfully negotiated the terms of a global settlement of both the California Action and the Alabama Action following in-person mediation sessions on July 8-9, 2025, August 27, 2025, April 20-21, 2026, and May 11, 2026, as well as several virtual sessions, all of which were overseen by Randi Ellis, a private mediator, and the last two of which were overseen by the Honorable R. David Proctor of the United States District Court for the Northern District of Alabama. After the last mediation session on May 11, 2026, the Parties continued to negotiate with the assistance of the mediator until the Term Sheet was signed by all Settling Parties on June 17, 2026. The Parties then prepared and negotiated a draft Settlement Agreement formalizing the Term Sheet, which was executed on July 17, 2026.

7. Before the most recent rounds of mediation sessions began in July 2025, the Parties exchanged settlement offers and engaged in other mediations led by the Honorable Jay C. Gandhi (ret.) from JAMS ADR in May 2024 and the Honorable Edward A. Infante from JAMS ADR in July 2023. The Parties had sharply different views about virtually all issues, including class certification, merits, damages, and what could be argued to the jury.

8. Class Counsel was very well informed of all material facts before reaching the proposed Settlement. Both Actions had long advanced past class certification, fact discovery, and expert discovery, and through summary judgment;

[1] Unless otherwise noted, the capitalized terms used herein shall have the meanings set forth in the Settlement Agreement.

full expert reports had been completed and trial preparation had begun. Throughout the case, Class Counsel took steps to ensure that we had all the necessary information to advocate for a fair, adequate, and reasonable Settlement that serves the best interests of the Class. The Settlement negotiations were hard-fought and non-collusive. It is my unequivocal opinion that the Settlement is fair, adequate, and reasonable, and reflects a tremendous result for the Class, particularly given the risks faced on summary judgment in the California Action and at trial.

9. The California Action was originally filed over five years ago on February 19, 2021. Plaintiff brought class-wide claims under 18 U.S.C. § 2252A, the federal Trafficking Protection Reauthorization Act ("TVPRA") (18 U.S.C. § 1595(a)), the California Trafficking Victims Protection Act (Cal. Civ. Code § 52.5), and the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.), as well as individual claims for distribution of private sexually explicit materials under California Civil Code § 1708.85 and intentional infliction of emotional distress ("IIED").

10. Defendants filed a motion to dismiss and the Court denied the motion in substantial part, including by rejecting, at the pleading stage, Defendants' arguments that they were protected by Section 230 of the Communications Decency Act of 1996 ("Section 230"). Dkt. 66. Defendants then filed and lost a motion for reconsideration. Dkt. 88.

11. Plaintiff Jane Doe #2 sought leave to join the California Action at Dkt. 89 and engaged in initial discovery, including disclosing her identity to Defendants. The Court did not grant Plaintiff Jane Doe #2's motion.

12. After discovery began, this case was stayed pending the criminal prosecution of Plaintiff's trafficker. Dkt. 97. Following his conviction, the stay was lifted on March 3, 2023. Dkt. 99.

13. Plaintiff immediately renewed her discovery efforts and, in the middle of fact discovery, Plaintiff moved for and secured class certification on November

17, 2023. Dkt. 209. Plaintiff's motion for class certification comprised 6,844 pages of briefing and exhibits. Defendants' opposition spanned 555 pages of briefing and exhibits, including 103 pages of declarations from three experts, and Plaintiff's reply totaled 93 pages of briefing and exhibits. In total, the Parties submitted 7,492 pages of class certification briefing and exhibits. This Court certified the following classes:

- Class: All persons who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Defendants from February 19, 2011, through the present.
- California Subclass: Members of the Class residing in California who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by Defendants from February 19, 2011, through the present.

14. Following class certification, Defendants filed a Rule 23(f) petition in the Ninth Circuit, which Plaintiff opposed and Defendants lost. *See* Order Denying MindGeek's Rule 23(f) Petition, *Doe v. MindGeek USA Incorporated*, No. 23-3909 (9th Cir. Jan. 18, 2024).

15. The Court then approved Plaintiff's proposed notice plan in substantial part and appointed JND Legal Administration LLC ("JND") as the Notice Administrator. Dkts. 225, 228. As described below, the notice plan included direct notice and an extensive, targeted media outreach and digital notice campaign, bolstered by the participation of the National Center for Missing & Exploited Children ("NCMEC") in distributing class notice to its survivor and law enforcement networks. Dkt. 259.

16. Class certification and opt-out notice proceeded as follows. Class Counsel provided JND with lists of email addresses of known Class Members and third parties who submitted content removal requests on Defendants' websites on

February 2, 2024. In February 2024, JND sent notice via electronic email to the individuals on that email address list. JND also launched its media outreach and supplemental digital notice efforts, publishing digital ads through search engines, social media, audio streaming service providers, and news digital platforms, and launched a press release to select newswires. JND also established a case-specific notice website, www.MindGeekClassActionLitigation.com, to provide additional information to potential class members. In addition, NCMEC disseminated class notice to its direct service providers network, law enforcement victim advocates, and survivor network. The opt-out deadline was April 22, 2024. By the end of the opt-out period, JND's records indicated that more than 100,000 unique visitors had visited the notice website. *See* Dkt. 259.

17. It is my opinion that JND adequately discharged its duties in its role as the Notice Administrator.

18. Fact discovery closed on March 1, 2024, although several fact witness depositions occurred after the discovery cutoff with the Court's permission through April 17, 2024. Plaintiff propounded 86 requests for production, 12 interrogatories, and 14 requests for admission on Defendants, and in response Defendants produced nearly 100,000 documents totaling 578,613 pages. Plaintiff uncovered key documents on liability issues, including spreadsheets detailing the tens of thousands of videos and photos that Defendants reported as CSAM or suspected CSAM to NCMEC and records of every content removal request or other report of potential CSAM on Defendants' websites.

19. Plaintiff took and defended 26 fact depositions, some of which took place over two days.

20. Plaintiff also won a hotly contested motion to compel key discovery, including: (i) documents pertaining to Ethical Capital Partners' ("ECP") acquisition of Defendants; (ii) the custodial file and deposition of Defendants' Chief Product

Officer; (iii) the deposition of Defendants' Vice President of Trust and Safety; and (iv) depositions on thirteen Rule 30(b)(6) deposition topics. Dkt. 264.

21. Plaintiff also issued subpoenas to relevant third parties, including of Defendants' payment processors Mastercard, Visa, PayPal, Inc., Western Union Financial Services, Inc., Convera USA, LLC, Defendants' public relations firm 5W Public Relations, and ECP, the private equity firm that acquired Defendants. Plaintiffs obtained 18,059 pages of valuable documents from these subpoenas.

22. Plaintiff Jane Doe had to undergo invasive and extensive discovery, including by responding to 61 requests for production and 23 interrogatories. Plaintiff produced nearly 2,000 pages of documents including hundreds of pages of her personal medical records, as well as her email, text, and social media messages, and police files and reports about her abuser, and authorized the release of hundreds of pages of her medical records to Defendants directly from her multiple providers. Plaintiff also sat for a full-day deposition covering the facts underlying her claims and the harm she suffered, and the considerable trauma and emotional distress she suffered and continues to suffer as a result. Plaintiff also endured enormous stress and fear resulting from Defendants' efforts to serve a discovery subpoena on Plaintiff's trafficker. Plaintiff secured a Pre-Trial Protective Order as to the Identity of Plaintiff Jane Doe that severely limited Defendants' ability to take discovery from Plaintiff's trafficker absent court approval. Dkt. 81. Defendants did not thereafter seek to take such discovery, but during pretrial preparations, Defendants listed Plaintiff's trafficker on their trial witness list served on Plaintiff in July 2024.

23. Plaintiff also invested significant resources into the expert discovery necessary to support the Class's claims. During class certification, Plaintiff engaged two experts who prepared declarations spanning 498 pages, including exhibits. Plaintiff defended two expert depositions during class certification and defeated Defendants' two *Daubert* motions to exclude Plaintiff's experts' testimony, which totaled 192 pages of briefing.

24. During merits expert discovery, Plaintiff engaged three experts, who produced three opening expert reports and two rebuttal reports. Defendants produced three opening expert reports and one rebuttal expert report. All three of Plaintiff's experts were deposed. Collectively, the Parties' expert reports totaled 1,326 pages including exhibits.

25. On April 19, 2024, Defendants filed two separate summary judgment motions in this Action: (i) a motion for summary judgment on all of Plaintiff's certified class and individual claims; and (ii) a motion for summary judgment on procedural grounds on behalf of four Defendant entities. Dkts. 282, 283. Plaintiff also filed a partial motion for summary judgment on her Section 2252A claim. Dkt. 293. Plaintiff's affirmative motion totaled 22,607 pages of briefing and exhibits. In total, the Parties submitted 56,682 pages of summary judgment briefing and exhibits to this Court. The Court heard argument on July 19, 2024. The Parties' respective motions for summary judgment remained pending when this Settlement was reached.

26. After submitting summary judgment briefing, the Parties began preparation for trial that was scheduled to begin September 3, 2024. Dkt. 355. In July 2024, the Parties exchanged an exhibit list containing over 1,422 exhibits, deposition designations for 40 depositions, expert witness designations, witness lists, and proposed stipulated facts, and met and conferred on numerous occasions about the trial plan, motions in limine, and pretrial exchanges. Plaintiff prepared general and special jury instructions and was finalizing them for exchange with Defendants when the Court took the trial date and pretrial deadlines off calendar on July 9, 2024 pending the July 19, 2024 hearing on the Parties' cross-motions for summary judgment. Dkt. 361. The Court did not reschedule the trial date after the motions for summary judgment were taken under submission.

27. As discussed above, the Parties renewed mediation discussions through in-person sessions on July 8-9, 2025, August 27, 2025, April 20-21, 2026, and May 11, 2026, as well as several virtual sessions, which were all overseen by Randi Ellis,

a private mediator, while the last two sessions in April and May 2026 were also overseen by the Honorable R. David Proctor of the United States District Court for the Northern District of Alabama. The mediation included a confidential evaluation of Defendants' financial condition, which informed the Parties' assessment of the range of recoverable damages and the risks associated with collectability of any potential judgment.

28. The specific terms and conditions of the Settlement are set forth in the Settlement Agreement, which is attached as **Exhibit B**. The principal terms of the Settlement are as follows:

- Defendants will pay $120,000,000 into a common fund in exchange for a release of all class members' claims against Defendants that were asserted in the Actions or that may have been asserted and that arose out of the same acts or omissions involved in the Actions through December 6, 2024 (the date of the last opt out period in the Alabama Action);
- The "Class" for purposes of the Settlement consists of all persons who were under the age of eighteen when they appeared in a video or image that has been made available for viewing on any website owned or operated by the Defendants anytime from February 12, 2011 through December 6, 2024;
- Defendants agreed to make an initial payment of $25,000,000 to the Settlement Fund within thirty days of the Term Sheet becoming effective, then will pay the remainder of the $120,000,000 in six annual installments;
- Costs of notice, settlement administration, and any court-awarded attorneys' fees, expenses, and incentive awards, are to be paid from the Settlement Fund;
- Upon the Settlement Effective Date, Plaintiffs and the Class release all claims against Defendants that were asserted in the Actions or arise out of the acts, facts, or omissions involved in the Actions. The release does not cover claims arising from acts or conduct occurring after December 6, 2024. Claims against third-party platforms, Models or Content Partners (as those terms are defined in the Settlement Agreement), and non-fully Defendant entities are fully preserved;
- Defendants committed to extensive injunctive relief as set forth in Appendix A (described in more detail below);

- A three-person Monitoring Committee will be established to meet at least annually for a period of five years to assist in the enforcement and monitoring of Defendants' compliance with the injunctive relief set forth in Appendix A to the Settlement Agreement; and
- Defendants agreed to undergo external audits over a period of five years pertaining to satisfying the obligations described in Appendix A and as otherwise agreed by the Parties.

29. The Settlement Agreement also provides for extensive injunctive relief set forth in Appendix A to the Settlement Agreement, which is directed at deterring and reducing the uploading of CSAM on Defendants' websites. Key provisions in Appendix A specify that Defendants will do the following:

- Verify and Validate using government-issued identification that every person who uploads and/or is depicted in Content on Defendants' websites was 18 years of age or older when the Content was created;
- Enhance, implement, and conduct extensive Content moderation procedures and policies that use both automated technological tools and human moderation aimed at reviewing, detecting, and removing suspected or actual CSAM from Defendants' websites;
- Conduct mandatory CSAM prevention training for all trust and safety employees;
- Implement expanded procedures regarding content removal requests, withdrawal of consent requests, and content flagging from law enforcement, trusted flaggers, and registered users;
- Enhance mandatory policies and procedures addressing instances of suspected or actual CSAM on Defendants' websites, including but not limited to fingerprinting and timely reporting content, deleting Content, and banning users who uploaded suspected or actual CSAM or Content that cannot be Verified as defined in the Settlement Agreement;
- Conduct annual assessments and monitoring of Defendants' CSAM safeguards and content moderation practices and procedures;
- Provide semi-annual public reporting on Defendants' websites regarding policies, procedures, and actions taken by Defendants relating to suspected or actual CSAM on Defendants' websites; and
- Expand procedures directed at preventing non-consensual material from being available on Defendants' websites.

30. The cash portion of the Settlement is, in Class Counsel's view, exceptional. For Defendants' alleged violation of 18 U.S.C. § 2252A, Class Members would be entitled to statutory liquidated damages of $150,000 per Class Member in lieu of proving actual damages. *See* 18 U.S.C. § 2255(a). Under California Civil Code § 52.5 (the "California TVPA"), each Class Member could be awarded up to three times his or her actual damages, or $10,000, whichever is greater.

31. In Class Counsel's judgment and experience, this Settlement is an outstanding recovery, particularly given the complexities of this Action the risk of trial, and the inherent uncertainties of litigation. The Settlement Fund amount of $120,000,000 is a guaranteed result for the Class that will result in meaningful monetary recovery for every eligible Class Member. The non-monetary benefits to the Class under the policy and practice changes secured by Class Counsel and memorialized in Appendix A to the Settlement are also exceptional and will provide meaningful protections for all minors on Defendants' websites. The Settlement also gives the Class Member survivors finality. It provides concrete relief without the delay, uncertainty, and risks of continued litigation, and without forcing the California Plaintiff to undergo even more trauma by facing the risks of exposure and the re-victimization that would be inevitable if she were to testify in a public, adversarial trial. The same is true of the Alabama Plaintiff, as detailed in the declaration of Gregory Zarzaur.

32. As stated in the Settlement Agreement, Class Counsel will file a motion seeking reimbursement of their costs, fees, and for service awards for the Class Representatives, which Plaintiff proposes to be heard at the same time as the final approval hearing. Class Counsel has committed to only seeking a maximum of 1/3 of the $120 million Settlement Fund in fees, and this is reflected in the proposed notice. Class Counsel will not receive any funds until the Court has granted their fee request. Class Counsel also intends to request service awards of up to $150,000 for each Class Representative, up to $5,000 for Jane Doe #2 who sought leave to join the

California Action at Dkt. 89 and engaged in initial discovery which included the disclosure of her identity to Defendants, and up to $5,000 for Jane Doe #2 who appeared in the original Complaint and the First Amended Complaint in the Alabama Action at Dkt. 1 and Dkt. 22 and engaged in initial discovery.

33. The Parties propose that Gentle Turner & Benson, LLC—an experienced and reputable national class action administrator with particularly valuable experience in administering settlements involving sensitive claims—serve as Settlement Administrator to initiate settlement notice using third-party vendor Epiq, process claims, manage the escrow account where the Settlement Fund payments will be deposited, and handle all other services necessary to implement the Settlement. The resumes of the proposed Settlement Administration professionals at Gentle Turner & Benson, LLC's are attached to the declaration of Edgar C. Gentle, III. Settlement administration costs—including those already incurred by the class notice administrators and to be incurred by Gentle Turner & Benson—will be paid directly from the Settlement Fund.

34. Class Counsel recommends the proposed plan of allocation described in the notice and attached in full as Exhibit D to the Declaration of Edgar C. Gentle, III. This plan was developed in conjunction with NCMEC and the proposed Settlement Administrator, and with input from Defendants. This distribution plan treats all Class Members equitably because it distributes settlement proceeds among Class Members *per capita* based on the number of Qualified Claimants who timely submit claims.

35. To that end, the proposed plan of allocation establishes that the Settlement Administrator will review each Class Member's claim form along with any supporting documentation they choose to include to determine whether he or she is eligible.

36. A Class Member becomes a "Qualified Claimant" and therefore eligible to receive an equal *per capita* Settlement distribution amount (the "Allocated Amount") from the Settlement Fund if the following occurs: the Settlement

Administrator determines a Class Member is eligible based on documents and information demonstrating that (1) the Class Member was under the age of 18 at the time a Sexually Explicit video/image was made of the Class Member; (2) the Sexually Explicit video/image of the Class Member was located on any MindGeek Website[2] at any time between February 12, 2011, through December 6, 2024; and (3) the Class Member timely submits a claim form and questionnaire ("Claim Form") providing the Class Member's identifying information, and, if the Class Member is a non-United States citizen, the Class Member also signs a Release. All Claim Forms shall be signed by the Class Member or the Class Member's legal representative under penalty of perjury.

37. For the avoidance of doubt, should the Settlement Administrator have concerns as to the accuracy or validity of information included in the Class Member's Claim Form or documentation and information submitted to support the Class Member's eligibility, the Settlement Administrator shall promptly notify the Class Member of those concerns so as to afford the Class Member or his or her representative an adequate opportunity to respond to any such concerns within a reasonable time period set by the Settlement Administrator. Should the Settlement Administrator then find that the Class Member's allegations lack credibility and/or validity, the Settlement Administrator shall take that finding into consideration in making a determination whether the Class Member is a Qualified Claimant. After a Claimant receives the Settlement Administrator's initial determination, the Claimant will have an opportunity to appeal the initial determination to the Settlement Administrator. After a Claimant receives the Settlement Administrator's appeal determination, the Settlement Administrator's determination on whether a Class

[2] "MindGeek Websites" has the same meaning as the term "Websites" in the Settlement Agreement and includes, but is not limited to: Pornhub.com, Pornhubpremium.com, Redtube.com, Redtubepremium.com, YouPorn.com, YouPornpremium.com, Tube8.com, Mofosex.com, ExtremeTube.com, Spankwire.com, Keezmovies.com, Thumbzilla.com, and XTube.com.

Member has met eligibility requirements, has timely submitted a valid claim form and is a Qualified Claimant shall be final and non-appealable.

38. Every Qualified Claimant will be awarded an Allocated Amount that is equal to the Qualified Claimant's *per capita* share of the net amount distributable from the Settlement Fund based on the total number of Qualified Claimants.

39. The proposed plan of allocation provides that all information submitted along with a Claim Form or shared with the Settlement Administrator by Class Members will be kept strictly confidential. Class Members will have the option to request a meeting with the Settlement Administrator (by telephone, video, or in person, at the Class Member's election) if requested.

40. Once the Settlement Administrator has determined the Allocated Amounts for each Qualified Claimant, the Qualified Claimant's Allocated Amount will be distributed by the Settlement Administrator in *per capita* shares as funds become available in the Settlement Fund within 90 days after the Settlement Effective Date and within 30 days after each of Defendants' Installment Payments are made to the Settlement Fund. Unclaimed funds will be periodically redistributed to Class Members who received funds in prior rounds, to the extent feasible and practical. If further redistributions are no longer economically or administratively feasible, Class Counsel will apply to the Court to distribute remaining unclaimed Settlement Funds *cy pres* to an appropriate non-profit or charitable organization. Under no circumstances will any unclaimed Settlement Funds revert to Defendants.

41. The Release is also equitable, as it treats all Class Members the same and does not affect apportionment of damages.

42. In sum, it is my strong opinion that the proposal is fair, adequate, and reasonable, especially in light of Class Counsel's detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 14, 2026, in Los Angeles, CA.

Krysta Kauble Pachman

Krysta Kauble Pachman