**ZARZAUR LAW LLC**
Gregory Zarzaur
2850 Cahaba Road, Suite 220
Birmingham, AL 35223
gregory@zarzaur.com
Telephone: (205) 983-7985

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| JANE DOE on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),<br>Defendants. | Case No. 8:21-cv-00338-WLH-ADS<br><br>*Hon. Wesley L. Hsu*<br><br>**CLASS ACTION**<br><br>**DECLARATION OF GREGORY ZARZAUR IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# DECLARATION OF GREGORY ZARZAUR

I, Gregory Zarzaur, declare as follows:

1. I am an attorney admitted to the bars of Alabama and Mississippi. I am over eighteen years of age and have personal knowledge of the facts set forth in this declaration and could and would testify competently to them. I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

2. I am the founding member of the law firm Zarzaur Law LLC, attorneys of record for Plaintiff Jane Doe #1 in *Jane Doe #1 v. MG Freesites, Ltd, D/B/A "Pornhub", et al.*, Case No. 7:21-cv-00220-RDP (N.D. Ala.) (the "Alabama Action") and Court-appointed Class Counsel in the Alabama Action along with Josh Hayes of Prince Glover Hayes, Kimberly Adams of Levin Papantonio, Guy D'Andrea of Laffey Bucci D'Andrea Reich & Ryan, Mark Schoeller, Kevin Kent, and Vanessa Huber of Clark Hill PLC, and Danielle Pinter and Christen Price of the National Center on Sexual Exploitation Law Center ("Alabama Class Counsel"). I have no knowledge of the existence of any conflicting interest between Alabama Class Counsel and any of its attorneys on the one hand, and Plaintiff or any other Class Member, on the other.

3. Alabama Class Counsel consist of a robust team of lawyers and law firms who have experience in claims involving sex trafficking, sexual abuse, child sexual exploitation, and child pornography. The team also has extensive experience in complex litigation in federal court, including mass and class actions. Alabama Class Counsel are innovators and among the leaders in seeking justice for survivors of sex trafficking and sexual exploitation across the country. A copy of the profiles for members of the Alabama Class Counsel is attached hereto as **Exhibit 1**.

4. I was among the principal negotiators of the proposed class action settlement (the "Settlement Agreement") with Defendants and Plaintiff's counsel in

*Jane Doe, et al. v. Mindgeek USA Inc., et al.*, Case No. 8:21-cv-00338-WLH-ADS (C.D. Cal.) (the "California Action") (collectively, the "Parties").[1]

5. This settlement with Defendants is fair, adequate, and reasonable. The named Plaintiff in the Alabama Action similarly supports this Settlement and believes it to be fair, adequate, and reasonable.

6. The Settlement Agreement is the result of nine in-person mediation days, one zoom mediation session, and eight rounds of mediation since 2022. The Parties successfully negotiated the terms of a global settlement of both the California Action and the Alabama Action following in-person mediation sessions on July 8-9, 2025, August 27, 2025, April 20-21, 2026, and May 11, 2026, with Randi Ellis, a private mediator. After the last mediation session with Ms. Ellis on May 11, 2026, which, like the April 2026 mediation sessions, was also overseen by the Honorable R. David Proctor of the United States District Court for the Northern District of Alabama, the Parties continued to negotiate with the assistance of the mediator until the Term Sheet was signed by all Settling Parties (as defined in the Settlement Agreement) on June 17, 2026. The Parties prepared and negotiated a Settlement Agreement formalizing the Term Sheet, which was executed on July 17, 2026.

7. Before the most recent rounds of mediation sessions began in July 2025, the Parties exchanged settlement offers and engaged in other mediations led by the Honorable Jay C. Gandhi (ret.) from JAMS ADR in May 2024 and, for the Alabama Action, by Randi Ellis in the Fall of 2022 and May of 2023. The Parties had sharply different views about many issues, including class certification, merits, damages, and what could be argued to the jury.

8. Alabama Class Counsel was very well informed of all material facts before reaching the proposed Settlement. Both Actions had long advanced past class certification, fact discovery, and expert discovery; full expert reports had been

[1] Unless otherwise noted, the capitalized terms used herein shall have the meanings set forth in the Settlement Agreement.

completed and trial preparation had begun. Throughout the cases, Alabama Class Counsel took steps to ensure that we had all the necessary information to advocate for a fair, adequate, and reasonable Settlement that serves the best interests of the Class. The Settlement negotiations were hard-fought and non-collusive. It is my unequivocal opinion that the Settlement is fair, adequate, and reasonable, and reflects a tremendous result for the Class, particularly given the risks faced on summary judgment in the California Action, and at trial and on appeal in both Actions.

9. The Alabama Action was originally filed over five years ago on February 11, 2021. Dkt. 1.[2] Plaintiff, along with Jane Doe #2, brought class-wide claims under 18 U.S.C. §§ 2252 and 2252A and the federal Trafficking Victims Protection Reauthorization Act ("TVPRA") (18 U.S.C. §§ 1591 and 1595).

10. The Alabama Action began with an extensive pre-suit investigation that included in-depth research on the Defendants' websites and business model. Alabama Class Counsel spent well over 100 hours learning about Pornhub and other MindGeek websites including the websites' terms of service, advertising, and revenue streams.

11. Alabama Class Counsel, working with expert consultants, performed technical research to build, strengthen, and later amend the complaint that resulted in the operative amended complaint. This included examination of the websites' operations, perceived changes in policy and process, contract terms with "Models" (now referred to as uploaders) and the Canadian Parliament's inquiry into allegations regarding content on Defendants' websites. Alabama Class Counsel along with their consultants conducted a data export analysis on publicly available files in connection with Defendants' removal of millions of videos from their websites. The team continued its review of information related to Defendants' processes including

---

[2] Unless otherwise noted, docket entry citations refer to docket entries in the Alabama Action, *Jane Doe #1 v. MG Freesites, Ltd, D/B/A "Pornhub", et al.*, Case No. 7:21-cv-00220-RDP (N.D. Ala.).

information related to onboarding new users and evolving terms of service. Further, the team performed further analysis of the website, including how content was uploaded and categorized, downloaded or otherwise disseminated to visitors or users of the Defendants' websites. Alabama Class Counsel also analyzed extensive corporate reorganization and rights transfers, trademark transfers, ownership and responsibility shifts.

12. This research and documentation were instrumental to successes at the pleading and discovery stages and instrumental in crafting discovery requests and providing the Plaintiffs with a strong basis to press for certain discovery that was opposed or objected to by the Defendants.

13. The Pornhub website and other MindGeek websites were modified as this litigation progressed. The pre-suit research and documentation of the Pornhub website conducted in pursuit of the Alabama Action helped to ensure that some of the historical processes and conduct on the MindGeek websites at issue in the litigation were preserved.

14. Defendants filed a motion to dismiss, Plaintiffs opposed, and the Court denied the motion in full. The Court rejected, at the pleading stage, Defendants' arguments that they were protected by Section 230 of the Communications Decency Act of 1996 ("Section 230"). Dkt. 42; *Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1150-1163, 1169-1171 (N.D. Ala. 2022). The Court also found Plaintiffs had stated a plausible claim under the TVPRA. *MG Freesites, LTD*, 676 F. Supp. 3d at 1163-1167. Further, the Court found that the Plaintiffs plausibly alleged that Defendants knowingly received, possessed, and distributed child pornography in violation of 18 U.S.C. §§ 2252 and 2252A. *Id.* at 1167-1171. Finally, the Court found it had personal jurisdiction over Jane Doe #2's claims. *Id.* at 1172-1175.

15. Shortly after answering, Defendants moved to stay the case pursuant to 18 U.S.C.§ 1595(b)(1), arguing the civil case should be stayed while Plaintiff Jane Doe #1's trafficker was being criminally prosecuted, Dkt. 48, and Plaintiffs opposed,

Dkt. 52. A month later, the criminal action was fully adjudicated and Defendants withdrew their motion. Dkt. 54.

16. In the Spring of 2022, Plaintiffs and Defendants attempted to negotiate a 1) protective order; 2) a preservation order; and 3) a protocol for discovery of suspected or actual CSAM. After conferring, the parties were unable to come to a resolution and sought Court intervention. Dkt. 58 & 59. The Court held a full-day hearing on May 31, 2022 in which it assisted with negotiations. 5/31/22 Minute Entry. Following this, the parties submitted their proposals and the Court entered an order regarding Preservation of Documents, Electronically Stored Information, and Tangible Things, Dkt. 62, a Protective Order, Dkt. 61, and a Stipulation and Order on Discovery of Electronically Stored Information, Dkt. 60.

17. On June 6, 2022 and again in May of 2023, Plaintiff issued a subpoena for documents to the National Center for Missing and Exploited Children (NCMEC). NCMEC produced 652,944 documents in response to this subpoena on August 12, 2022.

18. Between April 19, 2022 and April 22, 2022, Plaintiff issued subpoenas to TrafficJunky, the advertising entity for Defendants; and Amazon Web Services and Google Cloud, both believed to be Defendants' storage and cloud computing platforms. Lengthy objections made by these three non-parties required extensive meet and confer efforts.

19. The Court stayed the Alabama Action on September 7, 2022 pending mediation of the case. Dkt. 64. After that mediation was unsuccessful, the Court entered a Revised Schedule Order on January 10, 2023. Dkts. 65, 66. Plaintiffs immediately renewed their discovery efforts.

20. Defendants notified Plaintiffs of their intent to subpoena the third-party production studios who were alleged to be involved in Jane Doe #2's trafficking. Plaintiffs moved for a protective order, or in the alternative to quash Defendants' subpoenas. Dkts. 67, 69. For personal reasons, Jane Doe #2 ultimately decided to

request her case be dismissed without prejudice and the parties agreed to this stipulation. Dkt. 73. The Court dismissed Plaintiff Jane Doe #2's claim without prejudice. Dkt. 74.

21. Beginning in January 2023, Plaintiff Jane Doe #1 shared with Defendants a proposed discovery protocol for handling suspected or actual child sexual abuse material (CSAM) to be submitted for the Court's approval. Defendants questioned whether there was an avenue to conduct civil discovery regarding CSAM. The Court ordered the parties to attend a discovery hearing on May 24, 2023 to discuss this issue. Minute Entry 04/05/23. Plaintiff and Defendants each filed a pre-hearing memorandum outlining their positions. Dkts. 83, 85. The parties attended a full-day hearing along with third-party representatives from the Alabama Attorney General's Office and NCMEC. Minute Entry 05/24/23. Plaintiff and Defendants each filed a post-hearing memorandum outlining their positions regarding a discovery protocol for the handling of suspected or actual CSAM. Dkts. 87, 88, 91. On August 17, 2023, the Court entered an order creating a discovery protocol. Dkt. 92. This protocol gave the Court's authorization for the Alabama Attorney General's Office to request from NCMEC reports of suspected or actual CSAM or apparent CSAM that Defendants had made to NCMEC responsive to Plaintiff's discovery requests and authorized the Alabama Attorney General's Office to hold such items for the purposes of this lawsuit. *Id.* at 18. The Court also ordered Defendants to produce all suspected CSAM responsive to Plaintiff's discovery requests to the Alabama Attorney General's Office. *Id.* at 19.

22. In 2023, Plaintiff initiated an action against several of the Defendants in the Alabama Action and their corporate affiliates in Ireland in order to protect her and the Class's interests in the financial solvency and status of Aylo and its corporate family. *Jane Doe v. MG Freesites, Ltd, MG Freesites II Ltd, Mindgeek S.A.R.L, AYLO Premium Limited, MG Social Limited, Mindgeek USA Incorporated, MG CY Holdings Limited, AYLO Billing Limited, Mirmay Limited, Nutaku Publishing*

*Limited, Appatomic Limited, Liquidum Limited*, Record No. H.P.2023.005880 (IEHC) (hereinafter "the Irish Action"). The Defendants in the Irish Action include five Irish companies, five Cypriot companies, one Luxembourgian company, and one U.S. company. By taking advantage of proceedings and forms of relief that are available in Ireland and the European Union that may not be readily available in U.S. courts prior to the entry of a judgment, the Irish Action complemented and worked parallel to the Alabama Action to advocate for and protect the interests of Plaintiff and the Class to obtain the full relief to which they are entitled in the Alabama Action.

23. On December 1, 2023, Plaintiff filed a Plenary Summons in the Irish High Court in Dublin, Ireland against Aylo and its affiliates for breach of constitutional rights, seeking, among other things, an accounting and tracing of profits derived from activities relating to the videos on the MindGeek/Aylo websites of Plaintiff and other Class Members in the Alabama Action, disclosure of assets and liabilities, as well as interlocutory and protective orders to secure compliance with statutory and legal obligations under Irish and European law.

24. On May 21, 2024, solicitors for Aylo and its affiliates entered a conditional appearance in the Irish Action.

25. On May 23, 2025, Plaintiff issued a Notice of Motion in the Irish Action seeking disclosure orders against the Irish-registered entities named as Defendants in the Irish Action. The reliefs sought in that Motion included orders requiring disclosure of assets and liabilities, disclosure of bank accounts worldwide in which these Irish entities have an interest, and the filing of outstanding annual returns and financial statements with the Irish Companies Registration Office.

26. Plaintiff's foregoing Motion for interlocutory relief was stayed in July 2025 when Aylo and its affiliates moved to dismiss the Irish Action on jurisdictional and forum non conveniens grounds. According to Plaintiff's Irish counsel, Aylo's Motion in the Irish Action involved more legal work than most full High Court trials would entail, including a protracted exchange of extensive affidavits, exhibits,

independent expert legal opinions from the United States and comprehensive legal submissions. The hearing on Aylo's jurisdictional Motion was scheduled for hearing before the High Court on June 3, 2026 but the hearing was continued until October 2026 when the parties in the Alabama Action informed their respective counsel in Ireland that they were making progress toward potentially settling the class actions in the United States.

27. Unlike in the United States, lawyers in Ireland cannot be compensated for their work based on a contingent fee agreement. As a result, the fees and expenses of Plaintiff's lawyers in Ireland are a cost that Plaintiff incurred in supporting and fully litigating, and protecting the interests of the Class, in the Alabama Action.

28. Jarlath Ryan (senior counsel), Jim O'Callaghan (senior counsel), Sam Saarsteiner (barrister at law), and Robert O'Reilly (barrister at law) represented Plaintiff in the Irish Action.

29. In the Alabama Action, Plaintiff propounded 25 requests for production, 29 interrogatories, and 21 requests for admission on Defendants, and in response Defendants produced more than 9,865 files, excluding emails, chats and other native files, documents totaling around 618,047 pages, and 13 GB of native files. Defendants separately produced images, texts and/or videos of actual and suspected CSAM to the Alabama Attorney General's office. These documents were produced through a secure access-protected micro-site accessible to the Alabama Attorney General, a process that was initiated, coordinated, and shepherded by Alabama Class Counsel and the Court Order in the Alabama Action. Plaintiff took and defended sixteen fact depositions. Through discovery from Defendants, Plaintiff uncovered key documents and facts on liability issues that are referenced in detail by the Court in the Order denying the Defendants' Motions for Summary Judgment. Dkt. 261.

30. Plaintiff Jane Doe #2 participated in written discovery prior to her withdrawal from the case, including by responding to 28 requests for production and

18 interrogatories. Plaintiff Jane Doe #2 engaged in the process of gathering her responsive documents as well.

31. In pursuing this case, Plaintiff Jane Doe #1 had to undergo invasive and extensive discovery, including responding to 40 requests for admission, 40 requests for production and 40 interrogatories. Plaintiff produced around 2,577 pages of documents that included personal medical records, email, text, and other messages, and police files and/or reports. Plaintiff also sat for a full-day deposition during which she was examined about subjects including past physical abuse and neglect in childhood, history of sexual assault, self-harm, mental health, and her sexual history.

32. Alabama Class Counsel also invested significant resources into the expert discovery necessary to support the Class's claims. During class certification, Plaintiff engaged an expert, Mr. Timothy Weaver, who prepared a declaration spanning 21 pages, not including exhibits. Plaintiff defended Mr. Timothy Weaver's expert deposition during class certification and defeated Defendants' *Daubert* motion to exclude Plaintiff's expert's testimony. Dkt. 147 at 51.

33. During merits expert discovery, Plaintiff engaged six experts, who produced six opening expert reports and six rebuttal reports, totaling 371 pages. Defendants produced four opening expert reports and three rebuttal expert reports, totaling 162 pages. Collectively, the parties' expert reports totaled 533 pages including exhibits. Plaintiff's experts spent over 1,100 hours conducting their essential work in this case.

34. In the middle of fact discovery, Plaintiff moved for and secured class certification on December 19, 2023. Dkts. 147, 148. Plaintiff's motion for class certification comprised 3,941 pages of briefing and exhibits. Dkts. 94, 95. Defendants' opposition spanned 535 pages of briefing and exhibits, including 120 pages of declarations from three experts, Dkt. 102, and Plaintiff's reply totaled 184 pages of briefing and exhibits, Dkt. 129. In total, the parties submitted 4,660 pages of class certification briefing and exhibits. The court certified the following class:

"All persons who were under the age of 18 when they appeared in a video or image that has been made available for viewing on any website owned or operated by Defendants anytime from February 12, 2011, through the present." Dkt. 147.

35. Following class certification, Defendants filed a Rule 23(f) petition in the Eleventh Circuit, which Plaintiff opposed and Defendants lost. *See* Order Denying MindGeek's Rule 23(f) Petition, *MG Freesites Ltd, et al. v. Jane Doe*, No. 24-90001 (11th Cir. Feb. 12, 2024).

36. Shortly before the Eleventh Circuit denied Defendants' Rule 23(f) petition, on February 4, 2024, Defendants moved to transfer venue to the U.S. District Court for the Central District of California. Dkt. 160. Plaintiff responded in opposition, Dkt. 171, and Defendants replied in support of their motion, Dkt. 174. The Court denied Defendants' motion on March 9, 2024. Dkt. 180.

37. While Defendants were attempting appeal and to get the venue changed, Alabama Class Counsel was working vigilantly on obtaining remaining discovery items and getting the class notice approved.

38. In January and February of 2024, Alabama Class Counsel moved for issuance of letters rogatory to the Quebec Superior Court seeking information from five former employees and executives of Defendants who reside in Canada through the production of documents and depositions. Dkts. 150, 151, 152, 153, 155, 163, 164, 167, 168. After the Court granted Plaintiff's motions, Dkts. 156-157, 169-170, Plaintiff served the letters rogatory on the witnesses and began a lengthy (three years-long) process to attempt to gain documents and deposition testimony. This process included hiring Canadian counsel who attended hearings in a Canadian court on Plaintiff's behalf. Alabama Class Counsel was required to gather information regarding all of the evidence received from Defendants and answer questions brought forth from the Canadian witnesses' counsel. It also included the taking of a deposition of Alabama Class Counsel, Guy D'Andrea, Esq., in May of 2024 regarding the nature of the evidence sought. Plaintiff and the respondents agreed to a continuance *sine die*

of the Plaintiff's Application, and Plaintiff's hearing date scheduled for February 2-3, 2026 was postponed indefinitely.

39. On March 5, 2024, Plaintiff moved to compel Defendants to provide documents in response to certain requests for production. Dkts. 175, 176, 177, 181. On March 29, 2024, Defendants moved to compel Plaintiff's discovery responses to several interrogatories, requests for admission, and requests for production. Dkts. 187, 188, 190, 192. The Court ordered the parties to attempt to resolve the discovery issues and set a hearing on the Motion for Thursday, April 4, 2024. Dkts. 185, 191. After conferring at length with Defendants, it was determined that the parties could not reach agreement on several remaining issues, and Plaintiff filed her opposition to Defendants' motion to compel on April 24, 2024. Dkt 202. That same day, Defendants filed their opposition to Plaintiff's motion to compel. Dkt. 203. The Court held a hearing on April 24, 2024, in which it required the parties to continue discovery negotiations.

40. On March 6, 2024, Plaintiff moved to approve class notice. Dkt. 179. Defendants opposed Plaintiff's class notice plan. Dkt. 189.

41. On April 10, 2024, the Court approved Plaintiff's proposed notice plan in substantial part and appointed Epiq Class Action and Claims Solutions, Inc. ("Epiq") as Notice Administrator. Dkts.199, 208, 209. As described below, the notice plan included direct notice and an extensive, targeted media outreach and digital notice campaign, bolstered by the participation of NCMEC in distributing class notice to its survivor and law enforcement networks. It also included banner notices on Defendants' websites.

42. Class certification and opt-out notice proceeded as follows. Alabama Class Counsel provided Epiq with the background information, including the operative Complaint and the Order on the Motion to Dismiss in January 2024. On September 25, 2024, Epiq sent notice via electronic email to the individuals with emails and as identified by Defendants as potential CSAM victims or persons with

knowledge of potential CSAM victims. Epiq also launched its media outreach and supplemental digital notice efforts, publishing digital ads through search engines, social media, audio streaming service providers, and news digital platforms, and launched a press release to select newswires. Epiq also established a case-specific notice website, www.victimimagelawsuit.com, to provide additional information to potential class members. Epiq mailed out 37 third-party notice packets and notified 1,300 third-party organizations. In addition, NCMEC disseminated class notice to its direct service providers network, law enforcement victim advocates, and NCMEC's survivor network. The Canadian Centre for Child Protection (C3P) also disseminated class notice to its direct service providers' network. The opt-out deadline was December 6, 2024. Epiq's records, as of May 6, 2026, indicated that the notice website had a total of 54,388 unique sessions.

43. It is my opinion that Epiq adequately discharged its duties in its role as the Notice Administrator.

44. Fact discovery closed on March 19, 2024, Dkts. 66, 147, although several fact witness depositions occurred after the discovery cutoff with the Court's permission, Dkt. 183, 184.

45. Plaintiff renewed her motion to compel in part on July 8, 2024. Dkt. 210. The Court held a telephone conference on the motion on July 17, 2024. Minute Entry 07/17/24.

46. Due to a change in Defendants' counsel over the summer of 2024, the parties requested through informal communications with the Court and the Court consented to an extension of the dispositive motion deadline to September 6, 2024. Under the governing Revised Scheduling Order, Dkt. 66, the jury trial was set for "[f]ive months after the dispositive motion deadline . . . ." So, the jury trial was set for February 6, 2025. Dkt. 66.

47. On September 6, 2024, Defendants filed a motion for summary judgment on all of Plaintiff's claims. Dkt. 221. Plaintiff also filed a partial motion

for summary judgment on her 18 U.S.C. §§ 2252 and 2252A claims for receipt and distribution of child pornography. Dkt. 223. Plaintiff's affirmative motion totaled 4,796 pages of briefing and exhibits. In total, the parties submitted 13,706 pages of summary judgment briefing and exhibits.

48. On December 19, 2024, the Court denied both cross-motions for summary judgment. Dkt. 261.

49. On January 15, 2025, the Alabama Action was reassigned to the Honorable Judge R. David Proctor as the Honorable Judge L. Scott Coogler was retiring. Dkt. 263.

50. In early January 2025, Defendants filed a motion to decertify the class and a motion to certify for interlocutory appeal the Court's summary judgment ruling regarding two questions on Section 230 immunity. Dkts. 264-265, 266-267. Plaintiffs responded in opposition to both motions. Dkts. 269, 270. Defendants replied in support of their motions. Dkts. 273, 274.

51. On February 7, 2025, the Alabama parties filed a Joint Request for Status Conference to discuss setting the case for trial. Dkt. 271. The Court set a status conference on February 24, 2025 and directed the parties to confer and submit a Proposed Amended Scheduling Order on February 20, 2025 along with a joint report summarizing the case, its status, and any similar pending litigation. Dkt. 272. During the February 24, 2025 telephone conference, the Court directed the Plaintiff to file a brief on the proposed trial schedule and structure and what Plaintiff would establish at trial by March 10, 2025, and Defendants were directed to file a response by March 24, 2025. Dkt. 276. Plaintiff filed her brief, Dkt. 277, and Defendants filed their response, Dkt. 278. Defendants also requested oral argument on these issues. Dkt. 283. The Court granted this request, Dkt. 284.

52. Both Defendants' motion to decertify the class and motion to certify for interlocutory appeal were denied in May 2025. Dkts. 285, 286.

53. The Court set a pretrial conference for July 1, 2025, Dkt. 294, with trial anticipated to begin on September 2, 2025, Dkt. 293.

54. The parties in the Alabama Action began preparation for trial that was initially expected to begin as early as July 2024. The trial date was moved to begin February 6, 2025, *see supra* ¶ 46; and then moved again to September 2, 2025. Dkt. 293.

55. Defendants moved to continue the pretrial conference and trial on June 20, 2025. Dkt. 299. On June 23, 2025, the Court granted the motion in part and moved the pretrial conference and trial plan status conference to July 15, 2025. Dkt. 300. The Court ordered the parties to confer and submit a joint proposed Pretrial Order and file a joint report detailing a trial management plan by July 8, 2025. Dkt. 300. On July 7, 2025, Plaintiff responded in opposition to Defendants' motion to continue trial arguing that Plaintiff had been fighting for justice for over four years and delaying trial would only continue to deny Plaintiff justice. Dkt. 302. Defendants filed a reply in support of their motion to continue the trial on July 14, 2025. Dkt. 304.

56. In accordance with the Court's June 23, 2025 Order, the Alabama parties conferred and filed a Joint Trial Management Plan on July 8, 2025. Dkt. 303. The Alabama parties also submitted a confidential proposed pretrial order that same day.

57. The Court held a pretrial conference on July 15, 2025 during which the Honorable R. David Proctor vacated the trial date and directed the parties to resume mediation discussions. 7/15/2025 Minute Entry.

58. After the pretrial conference on July 15, 2025, all Parties renewed settlement efforts across both Actions, 7/15/2025 Minute Entry & Dkts. 307, 311, which culminated in this Settlement, Dkt. 312.

59. As discussed above, the Parties renewed mediation discussions through in-person sessions on August 27, 2025, April 20-21, 2026, and May 11, 2026, as well as several virtual sessions.

60. The cash portion of the Settlement is, in Alabama Class Counsel's view, exceptional. For Defendants' alleged violation of 18 U.S.C. § 2252A, each eligible Class Member would be entitled to statutory liquidated damages of $150,000 per Class Member in lieu of proving actual damages. *See* 18 U.S.C. § 2255(a).

61. In Alabama Class Counsel's judgment and experience, this Settlement is an outstanding recovery, particularly given the complexities of this Action, the risk of Section 230 foreclosing the litigation at trial or on appeal, and of trial, and the inherent uncertainties of litigation. The Settlement Fund amount of $120,000,000 is a guaranteed result for the Class that will result in meaningful monetary recovery for every Class Member. The non-monetary benefits to the Class under the policy and practice improvements and developments secured by Alabama Class Counsel and California Class Counsel (together "Class Counsel") and memorialized in Appendix A to the Settlement are also exceptional and will enhance how Defendants operate their websites. The Settlement also gives the Class Member survivors finality. It provides concrete relief without the delay, uncertainty, and risks of continued litigation, and without forcing the Alabama Plaintiff or the California Plaintiff to undergo even more trauma by facing the risks of exposure and the re-victimization that would be inevitable if they were to testify in a public, adversarial trial.

62. The specific terms and conditions of the Settlement are set forth in the Settlement Agreement, which is attached as **Exhibit B** to the Declaration of Krysta K. Pachman. The principal terms of the Settlement are as follows:

- Defendants will pay $120,000,000 into a common fund in exchange for a release of all class members' claims against Defendants that were asserted in the Actions, or that may have been asserted and that arose out of the same acts or omissions involved in the Actions through December 6, 2024 (the date of the last

opt-out period in the Alabama Action);

- The "class" consists of all persons who were under the age of eighteen when they appeared in a video or image that has been made available for viewing on any website owned or operated by the Defendants anytime from February 12, 2011, through December 6, 2024;
- Defendants agreed to make an initial payment of $25,000,000 to the Settlement Fund within thirty days of the Term Sheet becoming effective, then will pay the remainder of the $120,000,000 in six annual installments;
- Costs of notice, settlement administration, and any court-awarded attorneys' fees, expenses, and incentive awards, are to be paid from the Settlement Fund;
- Upon the Settlement Effective Date, Plaintiffs and the Class release all claims against Defendants that were asserted in the Actions or arise out of the acts, facts, or omissions involved in the Actions. The release does not cover claims arising from acts or conduct occurring after December 6, 2024. Claims against third-party platforms, Models or Content Partners (as those terms are defined in the Settlement Agreement), and non-fully Defendant entities are fully preserved;
- Defendants committed to extensive injunctive relief as set forth in Appendix A (described in more detail below);
- A three-person Monitoring Committee will be established to meet at least annually for a period of five years to assist in the enforcement and monitoring of Defendants' compliance with the injunctive relief set forth in Appendix A to the Settlement Agreement; and
- Defendants agreed to undergo external audits over a period of five years pertaining to satisfying the oblications described in Appendix A and as otherwise agreed by the Parties.

63. The Settlement Agreement also provides for extensive injunctive relief as set forth in Appendix A to the Settlement Agreement, which is directed at deterring

and reducing the uploading of CSAM on Defendants' websites. Key provisions in Appendix A specify that Defendants will do the following:

- Verify and Validate, using government-issued identification that every person who uploads and/or is depicted in Content on Defendants' websites was 18 years of age or older when the content was created;
- Enhance, implement, and conduct extensive content moderation procedures and policies that use both automated technological tools and human moderation aimed at reviewing, detecting, and removing suspected or actual CSAM from Defendants' websites;
- Conduct mandatory CSAM prevention training for all trust and safety employees;
- Implement expanded procedures regarding content removal requests, withdrawal of consent requests, and content flagging from law enforcement, trusted flaggers, and registered users;
- Enhance mandatory policies and procedures addressing instances of suspected or actual CSAM on Defendants' websites, including but not limited to fingerprinting and timely reporting content, deleting content, and banning users who uploaded suspected or actual CSAM or content that cannot be Verified as defined in the Settlement Agreement;
- Conduct annual assessments and monitoring of Defendants' CSAM safeguards and content moderation practices and procedures;
- Provide semi-annual public reporting on Defendants' websites regarding policies, procedures, and actions taken by Defendants relating to suspected or actual CSAM on Defendants' websites; and
- Expand procedures directed at preventing non-consensual material ("NCM") from being available on Defendants' websites.

64. As stated in the Settlement Agreement, Class Counsel will file a motion seeking reimbursement of their costs, fees, and for service awards for the Class

Representatives, which the Alabama Plaintiff also proposes to be heard at the same time as the final approval hearing. Class Counsel has committed to seeking a maximum of 1/3 of the $120 million Settlement Fund in fees, and this is reflected in the proposed notices. Class Counsel will not receive any funds until the Court has granted their fee request. Class Counsel also intends to request service awards of up to $150,000 for each Class Representative, up to $5,000 for the Jane Doe #2s in both the Alabama and California Actions.

65. The Parties propose that Gentle Turner & Benson, LLC—an experienced and reputable national class action administrator with particularly valuable experience in administering settlements involving sexual abuse claims—serve as Settlement Administrator to provide settlement notice, process claims, manage the escrow account where the Settlement Fund payments will be deposited, and handle all other services necessary to implement the Settlement. Settlement administration costs—including those incurred by the class notice administrators and to be incurred by Gentle Turner & Benson—will be paid directly from the Settlement Fund.

66. Alabama Class Counsel recommends the proposed plan of allocation described in the notice and attached in full as **Exhibit D** to the Declaration of Edgar C. Gentle, III. This plan was developed in conjunction with NCMEC and the proposed Settlement Administrator, and with input from Defendants. This distribution plan treats all Class Members equitably because it distributes settlement proceeds among Class Members per capita.

67. The Release is also equitable, as it treats all Class Members the same and does not affect apportionment of damages.

68. In sum, it is my strong opinion that the proposal is fair, adequate, and reasonable, especially in light of Alabama Class Counsel's detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 14, 2026, in Birmingham, Alabama.

Gregory Zarzaur

1. **EXHIBIT 1 -** Profiles of Alabama Class Counsel