**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated,<br>Plaintiff,<br>*v.*<br>MINDGEEK USA INCORPORATED, et al.,<br>Defendants. | Case No. 8:21-cv-00338-WLH-ADS<br>*Hon. Wesley L. Hsu* |

**<u>DECLARATION OF EDGAR C. GENTLE, III, AS SETTLEMENT ADMINISTRATOR</u>**

I, Edgar C. Gentle, III, make the following Declaration in support of Plaintiffs' Motion for Preliminary Approval:

I am <u>sui juris</u>, competent to testify, and have personal knowledge of the facts herein.

My resume is in **Exhibit A**. I am the founding partner of the law firm of Gentle, Turner, & Benson, LLC, and the Parties seek to appoint me as the Settlement Administrator in this case. I have extensive experience acting as a mediator, Special Master and Settlement Administrator in Multi-District Litigations and over 150 settlements, and have helped create and administer over $6 billion in settlements during the past 25 years.[1]

I am making this Declaration in support of Plaintiffs' Motion for Preliminary

[1] For example, I served as Special Master and Escrow Agent for the Global Breast Implant Settlement (MDL 926), which involved settling over $1.1 billion in claims. Also, I mediated the $2.7 billion Subscriber/Blue Cross Settlement and the $2.8 billion Provider/Blue Cross Settlement in MDL 2406.

Approval of the Settlement. In my opinion, the Settlement is fair and reasonable.

1. On July 17, 2026, a Stipulation of Settlement (the "Settlement") was made and entered by and among Plaintiffs and Defendants (collectively, "the Parties") to resolve and compromise claims advanced on behalf of plaintiff classes certified in *Jane Doe v. MindGeek USA Inc., et al.*, Case No. 8:21-cv-00338-WLH (ADS), that is pending in the United States District Court for the Central District of California (the "California Action"), and *Jane Doe #1 v. MG Freesites, Ltd, D/B/A "Pornhub," et al.*, Case No. 7:21-cv-00220-RDP, that is pending in the United States District Court for the Northern District of Alabama (the "Alabama Action").

2. This proposed Settlement Agreement ("the Settlement") is intended to resolve all litigation against Defendants concerning, relating to, or arising from the claims advanced in the California Action and the Alabama Action on behalf of the settlement class (the "Class") certified under the Settlement.

3. As I understand it, the Parties have been litigating this matter for more than five years. The Settlement that has been reached is a result of arms-length negotiations, and is fair and reasonable. The proposed Settlement creates a Settlement Fund of $120,000,000, to be deposited in an interest-bearing account, along with injunctive relief. I believe that this Settlement and the Settlement amount represent a significant beneficial result for the Class. I believe that Class Counsel negotiated the best deal for the Class that could reasonably have been obtained. This Settlement represents meaningful monetary relief along with very important injunctive relief designed to deter and reduce the risks of future harms.

4. The Parties have proposed that my law firm serve as the Settlement Administrator. The Parties have detailed the process by which Class settlement notice will be disseminated and by which we will process claims and manage the escrow account where the Settlement Fund payments will be deposited, and we will perform all other services necessary to implement the Settlement.

5. The Settlement Administration Expenses will be paid directly from the Settlement Fund, and we propose, as is standard in these matters, a fee of approximately 4-5% of the Settlement Fund, depending upon the number of claimants who are eligible to receive payments under the Settlement ("Qualified Claimants"). We have budgeted on the high and low end to account for now unknown but possible variation in the number of Qualified Claimants. If there are 3,000 applicants, with 2,000 Qualified Claimants, we expect our Settlement Administration Expenses to total $4.7M, or 3.8% of the anticipated funding. If there are 6,000 applicants, with 4,000 Qualified Claimants, we expect our Settlement Administration fees and expenses to total $6.1M, or 4.9% of the anticipated funding. We have included detailed back-up substantiating this quote in **Exhibit B**. If claims exceed 6,000 applicants, our fee would be capped at 5% of the Settlement Fund. Based on our experience, this fee range is reasonable in relation to the value of the Settlement and is typical in such Settlements. Based on our analysis, we estimate that if there are 2,000 Qualified Claimants, the per Claimant net award (after fees and expenses) will be approximately $35,700, and it is estimated to be approximately $17,500 with 4,000 Qualified Claimants. *See* Exhibit B.

6. As the Settlement Administrator, we accept the responsibilities expected in administering this Settlement. We maintain errors and omissions insurance and data breach insurance to help mitigate settlement administration risk. We also have a full-time IT staff to protect this case's confidential Settlement database.

7. Notice to the Class – The Settlement provides that the Settlement Administrator shall, no later than 14 calendar days after the Preliminary Approval Date, begin notice by mailing and/or emailing a Class Notice to Class Members on the Notice List. Pursuant to the Settlement, the Parties may agree on another date for such delivery of the Class Notice. The Settlement Administrator shall receive the Notice List within five (5) business days after the Preliminary Approval Date. We anticipate using Epiq Global ("Epiq") to disseminate settlement notice to the class.

Epiq handled class certification notice in the Alabama Action and is already well equipped to disseminate notice through similar channels as it did at the class certification stage. A copy of the draft long-form notice is attached as **Exhibit C**, which will be issued if approved by the Court in substantially this form. We will timely provide the Class Action Fairness Act Notice, pursuant to 28 U.S.C. § 1715, no later than ten (10) calendar days after the Motion for Preliminary Approval is filed with a copy of the Settlement Agreement.

8. The Notice List is comprised of (1) potential Class Members who have been identified through Defendants' internal records; and (2) potential Class Members who submitted a Child Sexual Abuse Material ("CSAM") content removal request or otherwise notified Defendants about CSAM on Defendants' websites.

9. The Settlement also provides that the Settlement Administrator shall, no later than 14 calendar days after the Preliminary Approval Date, commence media outreach and digital efforts and publish a press release to selected newswires as described in the California Action at Dkt. 259 and the Alabama Action at Dkt. 179 (but only to the extent approved by the Court in the Alabama Action in Dkt. 199). We anticipate using Epiq Global ("Epiq") to commence media outreach and digital notice efforts to the class. Epiq effectively handled media outreach and digital notice efforts following class certification in the Alabama Action and is best positioned to disseminate notice in the same manner and on a faster timeline following the Preliminary Approval Date.

10. Finally, the Settlement provides for additional notice in the form of (1) a banner notice on Defendants' websites, no later than 14 calendar days after the Preliminary Approval Date, and (2) notice provided by Class Counsel to the National Center for Missing and Exploited Children ("NCMEC") as well as the Canadian Centre for Child Protection ("C3P") to disseminate to NCMEC's direct service providers network, law enforcement victim advocates, NCMEC's survivor network,

and any other networks or contacts NCMEC or C3P deem appropriate, no later than 5 business days after the Preliminary Approval Date.

11. I have carefully reviewed the proposed Notice Plan and determined that the proposed Notice includes all the necessary information for Class Members to make informed decisions about whether to object or submit claims and how and when to do so. Furthermore, I believe that, given the complexity of this case and the potential size of the Class, this proposed Notice plan meets the requirements of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) and Rule 23 of the Federal Rules of Civil Procedure, in providing the best due process Notice that is reasonably practicable. Epiq has designed and implemented over 700 Legal Notice Plans, including over 75 MDLs, since 2000.

12. Settlement Website - Pursuant to Section 5.5 of the Settlement Agreement, the Settlement Administrator will maintain and update a Class Website, for public accessibility, within 14 calendar days after the Preliminary Approval Date, with the following resources available: the Settlement Notice, Pleadings and Important Documents including, the Settlement Agreement and Exhibits, Preliminary Approval Order, Order Setting Final Approval Hearing, and the Claim Form, as well as answers to frequently asked questions, and contact information for Class Counsel and the Settlement Administrator. My team worked with Class Counsel and NCMEC to help prepare the Claim Form and settlement overview materials that are being submitted to the Court for preliminary approval and were designed to only collect the information required for our team to determine whether a potential Class Member is a Qualified Claimant and reduce the risk of re-traumatization or deterring potential Class Members from filing a Claim Form, to the extent possible. Potential Class Members will have the option to submit a Claim Form and supporting documents electronically using the Settlement Website. We are also working with Class Counsel and NCMEC to prepare a list of frequently asked

questions and answers that will be available on the Settlement Website. The Claim Form will be available in at least English and Spanish.

13. My team has experience administering settlements involving sensitive subject matter, including the MDL 926 Breast Implant Settlement, the MDL 2734 Abilify Settlement, and confidential hotel chain trafficking settlements. My team is also receiving training from NCMEC regarding assisting survivors of sexual trauma before the claims administration process in this case begins.

14. <u>Settlement Administrator Protection of Sensitive Claimant Data Procedures</u> - This Settlement is highly confidential. To that end, we, as the Settlement Administrator, use multiple layers of protection of sensitive claimant information (such as name, Social Security numbers, medical records, tax information, banking information, and other personally identifiable information ("PII")), by using the following procedures:

a. Data minimization: The Settlement Administrator shall collect only the information necessary to administer the Settlement.

b. The Settlement Administrator shall limit access so that employees can view only the information needed for their specific duties. Multi-factor authentication is used for administrator and employee access to systems containing claimant information.

c. Employees of the Settlement Administrator are screened and required to sign Court-approved Confidentiality Agreements, thereby subjecting such employees to the jurisdiction of the Court.

d. When transmitting documents, the Settlement Administrator uses encrypted portals or secure file transfer rather than ordinary email for sensitive documents.

e. The Settlement Administrator requires subcontractors and cloud providers to meet comparable security standards through written agreements.

f. The Settlement Administrator retains claimant information for only as long as necessary for legal, tax, and contractual obligations, then securely destroys it.

g. The Settlement Administrator maintains procedures for detecting, investigating, containing, and notifying affected parties of data breaches where required by law. Moreover, vulnerability scans, penetration testing, and employee cybersecurity training shall be conducted regularly.

h. The Settlement Administrator maintains insurance coverage for data breaches.

15. <u>Settlement Administrator Fraudulent Claim Detection Procedures</u> – Claims submissions often include fraudulent claims. In the past 25 years, our office has become well versed in settlement fraud detection, and continues to consistently update our fraud detection practices as new fraud detection methods have become available. As Settlement Administrator in a number of cases, our office utilizes the following fraud detection practices (and others that are kept confidential to decrease the risk of potential fraudsters creating methods to get around our fraud detection practices):

a. Confirming names, addresses, date of birth, Social Security or tax identification numbers, and other identifying information.

b. Using software to identify multiple claims submitted by the same individual or from the same address, telephone number, email, IP address, or bank account, or in short intervals, and detecting suspicious email addresses, origination sites, payment request methods and other badges of possible fraud.

c. Reviewing the record and supporting documents for signs of alteration, inconsistencies, or forgery.

d. Comparing claims with Defendants' records, records provided by Class Counsel, or other objective data.

e. Analyzing unusual submission patterns, such as large numbers of claims originating from the same location, identical supporting documents, or unusually high claimed losses.

f. Investigating claims identified by automated systems as potentially fraudulent before making eligibility decisions.

g. Contacting claimants whose submissions are incomplete or raise questions, and giving them an opportunity to provide further documentation.

h. Performing random or targeted audits of approved claims to ensure compliance with the Settlement's requirements.

16. The Parties' proposed plan of allocation is attached **Exhibit D.** We will review each Class Member's Claim Form, along with any supporting documentation, to determine whether he or she is an Eligible Class Member that is a Qualified Claimant. We will determine whether a Class Member is eligible based on documents and information demonstrating that (1) the Class Member was under the age of 18 at the time a Sexually Explicit video/image was made of the Class Member; and (2) that the Sexually Explicit video/image of the Class Member was located on any MindGeek Website[2] at any time between February 12, 2011, through December 6, 2024 ("Eligible Class Member"). To become a "Qualified Claimant," the Eligible Class Member must also timely submit a Claim Form providing the Class Member's identifying information, and, if the Class Member is a non-United States citizen, by also signing a Release. All Claim Forms shall be signed by the Class Member or the Class Member's legal representative under penalty of perjury. A copy of the Parties' proposed Claim Form for US citizens, Settlement Overview document, and Claim Form for non-US citizens (which is substantially the same as the Claim Form for US

---

[2] "MindGeek Websites" has the same meaning as the term "Websites" in the Settlement Agreement and includes, but is not limited to: Pornhub.com, Pornhubpremium.com, Redtube.com, Redtubepremium.com, YouPorn.com, YouPornpremium.com, Tube8.com, Mofosex.com, ExtremeTube.com, Spankwire.com, Keezmovies.com, Thumbzilla.com, and XTube.com.

Citizens except that it also contains a Release for non-US citizens to sign, as required by the Settlement Agreement) are attached as **Exhibit E.** The plan of allocation allows us sufficient time to review the Claim Forms and supporting document submittals listed in this paragraph, complete the fraud prevention measures listed in paragraph 15, and determine the total number of Qualified Claimants.

17. Once we have determined the total number of Qualified Claimants, we will distribute payments on a *per capita* basis based on the total number of Qualified Claimants. The award payments will not be for any specific personal injury. In my opinion, given the number of Qualified Claimants and complexity of this case, the class settlement nature of the case resolution, and the disparate amount of documentation among Claimants, many of whom have sustained grave injury, this proposed equal apportionment is the fairest, best and most economical way to administer this Settlement Fund and its payments. Our office will work with the Huntington Bank to ensure several methods of payments will be available to Qualified Claimants, including physical checks, ACH direct deposits, Venmo, and Zelle.

18. Unclaimed Settlement Funds will not revert to Defendants. If necessary, Class Counsel will apply to the Court for a *cy pres* distribution of remaining unclaimed funds to one or more nationally recognized non-profit organizations, reasonably acceptable to and independent from all Parties, that engage in or conduct efforts to remediate or prevent the creation and dissemination of CSAM.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 14, 2026 in Shelby County, Alabama.

Edgar C. Gentle, II