UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK USA INCORPORATED, MINDGEEK S.A.R.L., MG FREESITES, LTD (D/B/A PORNHUB), MG FREESITES II, LTD, MG CONTENT RT LIMITED, AND 9219-1568 QUEBEC, INC. (D/B/A MINDGEEK),<br><br>Defendants. | Case No. 8:21-cv-00338-WLH-ADSx<br><br>**ORDER RE UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [433]** |

Before the Court is Plaintiff Jane Doe's ("Plaintiff") Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"), on behalf of herself and the Class defined below, which seeks preliminary approval of the settlement agreement dated July 17, 2026 ("Settlement Agreement" or "Agreement") setting forth the terms and conditions for a proposed settlement of this Action (the "California Action") and *Jane Doe #1 v. MG Freesites, Ltd, D/B/A "Pornhub", et al.*, Case No.

7:21-cv-00220-RDP (N.D. Ala.) (the "Alabama Action") (together, the "Actions")[1] with Defendants MindGeek USA Incorporated, MindGeek S.à.r.l., MG Freesites Ltd, MG Freesites II Ltd, 9219-1568 Quebec Inc., MG Content RT Ltd, MG CY Holdings Ltd and MG Billing Limited (together, "Defendants")[2] and the plaintiff in the Alabama Action (collectively, the "Parties"). (Pls.' Notice of Mot. and Unopposed Mot. for Prelim. Approval of Class Action Settlement ("Mot."), Dkt. No. 433).[3] On November 6, 2026, the Court held a hearing on the Motion. The Court issued a tentative order prior to the hearing. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

### A. <u>Factual Background</u>

The two Actions arose out of Plaintiffs' allegations that Defendants knowingly received, distributed, contributed to and financially benefitted from tens of thousands of pieces of Child Sexual Abuse Material ("CSAM"), content that depicts minors under 18 years of age engaging in Sexually Explicit Conduct, on their network of pornography websites, including Pornhub.com, Youporn.com and Redtube.com. When the California Plaintiff was a minor, she had sex with her physically and psychologically abusive boyfriend, which she alleges he recorded without her consent. (Pl.'s Opp'n to MSJ, Dkt. No. 320 at 6). Their relationship ended when he pushed her out of a moving car. (*Id.*). Years later, the California Plaintiff learned that he had uploaded sexually explicit videos of her as a minor as revenge porn to Defendants' websites, which users could freely view, download and reupload. (*Id.* at 6-7).

---

[1] All capitalized terms not otherwise defined herein have the meanings set forth in the Settlement Agreement. (Decl. of K. Kauble Pachman ("Pachman Decl."), Dkt. No. 434 ¶ 4, Ex. B (Sealed), Dkt. No. 441 ("Settlement Agreement")).

[2] Defendants listed herein include all Defendants in the Alabama Action and California Action. Although the MindGeek Defendants changed their name to "Aylo" in 2023, for ease of reference this Order will continue to refer to all Defendants by the names in effect when this Action was instituted.

[3] Citations to the California docket are cited as "[NAME], Dkt. No. X," while citations to the Alabama docket are cited as "Alabama, [NAME], Dkt. No. X."

Plaintiff alleges that Defendants reviewed her CSAM videos before distributing them to the public. (*Id*. at 6).

The Alabama Plaintiff was a minor when she alleges she was drugged and raped by her abuser, who uploaded videos of her assaults to Pornhub along with other CSAM videos. (Alabama, Memo. of Opinion & Order Denying Cross MSJs, Dkt. No. 261 at 13-17). The Alabama Plaintiff alleges Defendants reviewed her CSAM before distributing and making it available for download after it was viewed thousands of times. (*Id*. at 15).

**B. Procedural History**

The California and Alabama Plaintiffs each brought class-wide claims against Defendants for receipt and distribution of child pornography under 18 U.S.C. §§ 2252 and 2252A and knowingly benefiting from participation in a sex trafficking venture under the federal Trafficking Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). (Third Amended Compl. ("TAC"), Dkt. No. 107; Alabama, First Amended Compl. ("FAC"), Dkt. No. 22). The California Plaintiff also brought class-wide claims under the California Trafficking Victims Protection Act (Cal. Civ. Code § 52.5) and the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.), as well as individual claims for distribution of private sexually explicit materials under California Civil Code § 1708.85 and intentional infliction of emotional distress. (*See* TAC).

*1. The California Action*

The California Plaintiff filed her complaint on February 19, 2021, almost six years ago. (Compl., Dkt. No 1). Defendants moved to dismiss and the Court denied in part, including by rejecting Defendants' Section 230 arguments. (Order Denying in Substantial Part Defs.' Mot. to Dismiss Pls.' First Amended Compl., Dkt. 66). Defendants then filed and lost a motion for reconsideration. (Order Denying Defs.' Mot. for Reconsideration or, in the Alternative, Mot. for Interlocutory Appeal, Dkt. No. 88).

After discovery began, the California Action was stayed pending the California Plaintiff's trafficker's criminal prosecution. (Order Denying Pls.' Mot. to File Third Amended Compl. and Granting Defs.' Mot. for a Stay, Dkt. No. 97). Following his conviction, and pursuant to the parties' joint motion, the stay was lifted on March 6, 2023. (Order Granting Mot. Lifting Stay and Entering Amended Scheduling Order, Dkt. No. 99). California Class Counsel renewed discovery efforts and, in the middle of discovery, secured class certification on November 17, 2023, following a class certification hearing and certifying the below class:

- Class: All persons who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by MindGeek from February 19, 2011, through the present.
- California Subclass: Members of the Class residing in California who were under the age of 18 when they appeared in a video or image that has been uploaded or otherwise made available for viewing on any website owned or operated by MindGeek from February 19, 2011, through the present.

(Order Granting Pls.' Mot. for Class Cert. ("Class Cert. Order"), Dkt. No. 209).

Following class certification, Defendants filed a Rule 23(f) petition in the Ninth Circuit, which was denied. (Order Denying MindGeek's Rule 23(f) Petition, *Doe v. MindGeek USA Incorporated*, No. 23-3909 (9th Cir. Jan. 18, 2024)). This Court then approved the parties' stipulated notice plan and, in February 2024, the notice administrator disseminated Class notice via email, media outreach, press releases, a case-specific notice website, and National Center for Missing & Exploited Children's ("NCMEC") network. (Order Granting in Substantial Part Pl.'s Renewed Mot. to Approve Form & Manner of Class Notice ("Order re Notice"), Dkt. No. 225; Order re Amended Class Notice Forms, Dkt. No. 228; Notice of Proof of Class Notice

Dissemination Pursuant to the Order Approving Form & Manner of Notice, Dkt. No. 259). The opt-out deadline was April 22, 2024. (Pachman Decl. ¶ 16).

Fact discovery continued following class certification and ended on March 1, 2024, with several depositions occurring with the Court's permission through April 17, 2024. (*Id.* ¶ 18). Through discovery, the California Plaintiff uncovered key documents on liability issues, including internal employee emails and messages, spreadsheets detailing tens of thousands of videos and photos that Defendants reported as apparent CSAM or suspected CSAM to NCMEC and records of every content removal request or other report of potential CSAM Defendants received. (*Id.*). The California parties took and defended 26 fact witness depositions. (*Id.* ¶ 19). The California Plaintiff also obtained discovery through third-party subpoenas, including to Defendants' payment processors, Defendants' public relations firm and Ethical Capital Partners' ("ECP"). (Pachman Decl. ¶ 21).

The California Plaintiff responded to discovery requests, including by recounting her claims and harm through a full-day deposition, by producing hundreds of pages of her medical records directly from her medical providers and by producing nearly 2,000 pages of documents, including personal medical records, email, text and social media messages and police files about her abuser. (*Id.* ¶ 22). The California Plaintiff's experts prepared detailed reports for class certification and during merits expert discovery and sat for depositions during both phases. (Pachman Decl. ¶¶ 23-24).

On April 19, 2024, Defendants filed two motions for summary judgment and the California Plaintiff filed a motion for partial summary judgment. (MSJs re TAC, Dkt. Nos. 282-83; Mot. for Partial SJ, Dkt. Nos. 281-93). The Court heard argument on July 19, 2024, and the motions remained pending when this Settlement was reached.

*2. The Alabama Action*

The Alabama Plaintiff filed her complaint on February 11, 2021. (Alabama, Compl., Dkt. No. 1). Defendants moved to dismiss and the Alabama Court denied Defendants' motion in substantial part, including by rejecting Defendants' Section 230 arguments. (Alabama, Memo. of Opinion & Order re Defs.' Mot. to Dismiss, Dkt. No. 42). The Alabama Court granted the Alabama Plaintiff's motion for class certification on December 19, 2023. (Alabama, Memo. of Opinion & Order Granting Pl.'s Mot. for Class Cert. ("Class Cert. Order"), Dkt. No. 147). The class certified by the Alabama Court includes: "All persons who were under the age of 18 when they appeared in a video or image that has been made available for viewing on any website owned or operated by Defendants anytime from February 12, 2011, through the present." (*Id*. at 53).

After Defendants' Rule 23(f) petition was denied by the Eleventh Circuit in February 2024 (Order Denying MindGeek's Rule 23(f) Petition, *MG Freesites Ltd, et al. v. Jane Doe*, No. 24-90001 (11th Cir. Feb. 12, 2024)), the Alabama Court then approved a notice plan that included banner notice on Defendants' websites. (Alabama, Memo. of Opinion & Order Granting in Part and Denying in Part ("Order re Notice"), Dkt. No. 199). Following implementation of notice, the Alabama opt-out period closed on December 6, 2024. (Decl. of G. Zarzaur ("Zarzaur Decl."), Dkt. No. 434-5 ¶ 42). Meanwhile, the Alabama Plaintiff engaged in discovery, obtained an order facilitating the transfer of apparent or suspected CSAM to the Attorney General of Alabama, prosecuted an action in Ireland on behalf of the Alabama Plaintiff to identify and trace the assets of Defendants and their affiliates in the European Union and prosecuted a Letters Rogatory action in Canada. (*Id*. ¶¶ 21-29, 38-39).

Defendants filed a motion for summary judgment, and the Alabama Plaintiff filed a motion for partial summary judgment. (Alabama, MSJ, Dkt. No. 221, Pl.'s Partial MSJ, Dkt. No. 223). The Alabama Court denied the cross-motions on

December 19, 2024, preserving all the Alabama Plaintiff's claims for trial. (Alabama, Memo. of Opinion & Order Denying Cross MSJs, Dkt. No. 261).

In early January 2025, Defendants filed a motion to decertify the class and a motion to certify for interlocutory appeal two questions regarding Section 230 immunity. (Alabama, Mot. Decertify the Pl. Class, Dkt. No. 264; Mot. Cert. of an Interlocutory Appeal, Dkt. No. 266). Both motions were denied in May 2025. (Alabama, Memo. Opinion & Order Denying Defs.' Mot. for Certification of Interlocutory Appeal, Dkt. No. 285, Order Denying Defs.' Mot. to Decertify the Pl. Class, Dkt. No. 286).

The Alabama Court then set a pretrial conference for July 1, 2025 (Alabama, Order Setting Pretrial Conf., Dkt. No. 294), and trial was anticipated to begin on September 2, 2025 (Alabama, Order re Defs.' Mot. to Continue, Dkt. No. 300). After the Alabama parties filed a joint pretrial memorandum, (Alabama, Pretrial Memo., Dkt. No. 303), all Parties renewed settlement efforts across both Actions, which culminated in this Settlement (Alabama, Dkt. No. 312).

*3. Settlement Negotiations*

In total, the Parties participated in nine in-person mediation sessions and eight rounds of mediation since 2022. The last rounds of mediation began on the eve of trial in the Alabama Action and were overseen by the Honorable R. David Proctor of the United States District Court for the Northern District of Alabama and Randi Ellis, a private mediator. (*See* Decl. of R. Ellis ("Ellis Decl."), Dkt. No. 434-13 ¶¶ 11-13). Following in-person mediation sessions on July 8-9, 2025, August 27, 2025, April 20-21, 2026, and May 11, 2026, as well as several virtual sessions, the Parties successfully negotiated the terms of a global settlement of both Actions, and the Term Sheet was signed by all Parties on June 17, 2026, and the long-form Settlement Agreement was executed on July 17, 2026. (*See* Pachman Decl. ¶ 6, Ex. B (the "Settlement Agreement")).

The Parties were preparing for trial before this Settlement was reached. (Zarzaur Decl. ¶¶ 54-58; Pachman Decl. ¶¶ 25-26).

### C. Summary of the Proposed Settlement

#### *1. Proposed Class*

The Settlement Agreement defines the "Class" as: (i) the class certified by the Order Granting Plaintiff's Motion for Class Certification at Dkt. No. 209 in the California Action,[4] and (ii) the class certified by the Memorandum of Opinion and Order Granting Plaintiff's Motion for Class Certification at Dkt. No. 148 in the Alabama Action, which collectively includes all persons who were under the age of eighteen when they appeared in a video or image that has been made available for viewing on any website owned or operated by the Defendants anytime from February 12, 2011, through December 6, 2024. (Settlement Agreement § 1.11). The Class does not include individuals who timely exercised their right to be excluded from the class(es) as certified in the Alabama Action or California Action, other than the Plaintiffs in the two Actions.[5]

#### *2. Monetary Relief*

Under the Agreement, Defendants will pay $120,000,000 into a non-reversionary Settlement Fund in seven installments starting with (1) $25,000,000 paid on July 31, 2026, then (2) six annual installment payments of $15,833,333.33 on the first six anniversaries of June 17, 2026. (Settlement Agreement §§ 2.1-2.2). The last installment will be adjusted as necessary so the installments equal $120,000,000.

---

[4] Because all members of the California Subclass are coextensive with the Class, the Settlement Agreement does not define a separate California subclass.

[5] The Court approves of the portion of the Settlement Agreement that does not allow another opt-out opportunity because there were already two separate opt-out periods after class certification in both the Alabama and California Actions. Additional opt-out opportunities at settlement are not required under Rule 23(e)(4), *see, e.g., Low v. Trump University, LLC*, 881 F.3d 1111, 1122 n. 6 (9th Cir. 2018) ("[T]he Rule [23(e)(4)]'s language anticipates that parties can reach a settlement agreement that does not permit an additional opt-out opportunity"), especially where class members had proper notice of prior opportunities to opt out, *see Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 662-65 (N.D. Tex. Apr. 9, 2010); Fed. R. Civ. P. 23 Advisory Committee's Note to 2003 Amendment.

(Mot. at 9 n.9). All payments will be deposited into an interest-bearing escrow account administered by the Settlement Administrator. (Settlement Agreement § 2.4).

*3. Injunctive Relief*

The Agreement also provides for injunctive relief set forth in Appendix A directed at deterring and reducing the uploading of CSAM on Defendants' websites. (*See id.* App'x A). Key provisions of Appendix A require Defendants to do the following:

- Verify and Validate using government-issued identification that every person who uploads and/or is depicted in Content on Defendants' websites was 18 or older when the Content was created;
- Use extensive content moderation using technological tools and human moderation to review, detect and remove suspected or actual CSAM from Defendants' websites;
- Conduct mandatory CSAM prevention training for all trust and safety employees;
- Expand procedures regarding content removal requests, withdrawal of consent requests and content flagging;
- Implement enhanced mandatory policies and procedures addressing suspected or actual CSAM, including fingerprinting and reporting, deleting Content and banning users who upload suspected or actual CSAM or Content that cannot be Verified;
- Annually assess and monitor Defendants' CSAM safeguards and content moderation;
- Report on Defendants' websites semi-annually regarding policies, procedures and actions taken by Defendants relating to suspected or actual CSAM; and

- Expand procedures directed at preventing non-consensual material from being available on Defendants' websites.

The Settlement Agreement also establishes a Monitoring Committee to meet at least annually for five years to assist in the enforcement and monitoring of Defendants' compliance with Appendix A. (Settlement Agreement § 3.3). Defendants also agreed to undergo external audits for five years. (*Id.* § 3.2).

*4. Releases*

The Settlement Agreement provides that Plaintiffs and Class Members will release all Released Claims, as defined in the Agreement, against Defendants that were asserted in the Actions or arise out of the acts, facts, or omissions involved in the Actions. (*Id.* § 4.1). The Release does not cover claims arising from acts or conduct occurring after December 6, 2024, the last opt-out deadline in the two Actions. (*Id.*). Claims against third-party platforms, Models, Content Partners, advertisers, sponsors, advertising networks and non-fully Defendant entities are preserved. (*Id.*).

*5. Notice to Settlement Class and Administration*

The Parties propose that Gentle Turner & Benson, LLC ("Gentle")—an experienced and reputable national class action administrator with experience handling sex abuse settlements and settlements involving sensitive claimant data-serve as Settlement Administrator to provide Class settlement notice,[6] process claims, manage the escrow account where Settlement Fund payments will be deposited, and handle all other services necessary to implement the Settlement. (*Id.* § 1.56).

Settlement administration cost estimates are approximately 4-5% of the Settlement Fund, depending on the number of Qualified Claimants, paid from the Settlement Fund. (Decl. of Edgar C. Gentle, III ("Gentle Decl.") ¶ 5, Ex. B (budget); Settlement Agreement § 2.2(d), (e)); *see, e.g.*, *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131 (W.D. La. 1997) (finding settlement administration costs capped at 6%

---

[6] Gentle anticipates using Epiq Global to disseminate settlement notice to the class. (Gentle Decl. ¶ 7).

reasonable). The costs of the notice that was implemented following certification in both Actions are also paid from the Settlement Fund. (Settlement Agreement § 2.2(d)). Gentle accepts responsibility and maintains insurance (Gentle Decl. ¶ 6) and uses multiple layers of protection for safely handling sensitive claimant information, (*id*. ¶ 13 (providing further detail); App'x 1 §§ A, C (same)). Gentle also uses multiple fraud prevention practices, including contacting claimants for further documentation where appropriate. (Gentle Decl. ¶ 14 (providing further detail about Gentle's fraud prevention measures); App'x 1 § B (same)).

The proposed notice plan includes: (1) email and/or mail notice to all mailing and email addresses on the Notice List, described below; (2) media outreach, press releases and digital notice to selected newswires; (3) banner notice on Defendants' websites; (4) notice disseminated by NCMEC to its direct service providers, survivors and law enforcement victim advocates network; (5) notice via a Settlement website and (6) notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. (Settlement Agreement § 5; Gentle Decl. ¶¶ 7-12; Decl. of Lauren Coffren ("Coffren Decl."), Dkt. No. 434-14 ¶¶ 9-10).

The proposed notice clearly informs Class Members of their rights to object to the Settlement and/or submit a claim, how to do so and of all deadlines. (*See* Gentle Decl. Ex. C (proposed notice)). The proposed notice plan aligns with the class certification notice processes in the California and Alabama Actions, which were approved by this Court and the Alabama Court. (Order re Notice at 3-6; Notice of Proof of Class Notice Dissemination, Dkt. No. 259; Alabama, Order re Notice). The California Plaintiff and the Alabama Plaintiff explained why those processes were effective when seeking approval at the class certification stage (*see* Mot. for Order for Approval of Form & Manner of Class Notice, Dkt. No. 211; Alabama, Mot. to Approve Class Notice, Dkt. No. 179), and those same reasons are applicable here. The Notice List is comprised of: (1) Class Members identified through Defendants' internal records; and (2) non-Class Members who submitted a CSAM content removal

request or notified Defendants about CSAM on Defendants' websites and whose contact information has been obtained from Defendants' internal documents. (Settlement Agreement § 1.40).

Additional details about the Settlement Administrator's procedures and the proposed notice plan are provided in Appendix 1 and in the Gentle Declaration. To be eligible to receive a Settlement payment, Class Members must submit a claim. According to Plaintiff, the proposed claim form was designed by Class Counsel in consultation with the Settlement Administrator and NCMEC to ensure that Class Members feel encouraged and safe giving enough detail for the Settlement Administrator to confirm their Class membership and eligibility. (Mot. at 12). At the same time, the form is apparently easy to complete and not so burdensome or invasive that it deters Class Members from coming forward. (*Id.*; Gentle Decl. Ex. E (proposed claim form and Settlement overview); *id.* ¶¶ 12, 16).

*6. Plan of Allocation*

The objective of the proposed plan of allocation is to equitably distribute the Settlement Fund among Class Members *per capita*, *i.e.*, each Qualified Claimant receives an equal cash share of the Settlement Fund (less attorneys' fees, service awards and Settlement Administration Expenses). (*See* Gentle Decl., Ex. D (proposed plan of allocation); *id.* ¶¶ 16-17). To that end, the Settlement Administrator will review each Class Member's claim form along with any supporting documentation to determine whether he or she is a Qualified Claimant. All information submitted with a claim form or shared with the Settlement Administrator by Class Members will be kept strictly confidential. Payments will be distributed *per capita* based on the total number of Qualified Claimants and in separate installments as funds become available in the Settlement Fund and within 30 days after each of Defendants' installment payments.

Once final approval is entered by the Court, unclaimed Settlement Funds will not revert to Defendants under any circumstances. If necessary, Class Counsel will

apply to the Court for a *cy pres* distribution of unclaimed funds to a CSAM prevention or remediation organization, reasonably acceptable to and independent from all Parties. (Settlement Agreement § 2.11(d)).

*7. Attorneys' Fees, Expenses, and Awards*

The Settlement Agreement provides that Class Counsel will move for reasonable attorneys' fees, reimbursement of expenses, and service awards for Class Representatives no later than 14 days before the objection deadline expires. (*Id.* § 6.4). Class Counsel intends to request fees not exceeding one-third of the Settlement Fund, including a *pro rata* share of the interest, which will be justified with the Ninth Circuit factors before final approval. (*Id.*). Class Counsel also intends to request service awards of up to $150,000 for each Class Representative, up to $5,000 for Jane Doe #2 who sought leave to join the California Action at Dkt. No. 89 and participated in initial discovery, and up to $5,000 for Jane Doe #2 who appeared in the original Complaint and the FAC in the Alabama Action at Dkt. No. 1 and Dkt. No. 22 and participated in initial discovery. (*Id.*).

The Settlement is not conditioned on the Court's approval of any service awards, attorneys' fees, or expenses, nor does the Settlement Agreement contain a clear sailing provision under which Defendants agree not to oppose any such requests. Any court-awarded attorneys' fees, expenses and service awards are paid from the Settlement Fund. (*Id.* § 2.2(e)).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) ("Rule 23") requires judicial review and approval of any class settlement. "Preliminary approval and conditional certification are the first stage of the approval process." *Grady v. RCM Techs., Inc.*, 2023 WL 3327093, at *2 (C.D. Cal. May 2, 2023). To preliminarily approve a class action settlement, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). *See e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Specifically, the Court must examine the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Notably, because some factors cannot be fully assessed at this preliminary approval stage, a full fairness analysis is unnecessary, and the Court need only "evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

## III. DISCUSSION

### A. <u>The Court Preliminarily Approves the Proposed Settlement</u>

#### *1. Plaintiffs and Class Counsel Have Adequately Represented the Class*

The Court first considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The focus "is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment. The Court may also consider "the nature and amount of discovery in this or other cases," which "may indicate whether counsel negotiating on behalf of the class had an adequate

information base." *Id.*

This Court already found at class certification that the California Plaintiff was an adequate Class Representative and that Susman Godfrey was adequate Class Counsel. (Class Cert. Order at 11-12). In Alabama Court found the Alabama Plaintiff to be an adequate Class Representative and Alabama Class Counsel to be adequate Class Counsel. (Alabama, Class Cert. Order at 20-22). Plaintiffs attest that they and Class Counsel "have continued to zealously represent the Class in both Actions and in extensive mediation efforts leading to this Settlement," and that the decision to settle was "informed by thorough investigations of the relevant claims, full fact and expert discovery in both Actions, extensive motion practice, trial preparation, and extensive settlement negotiations," all of which is described above in the Procedural History section. (Mot. at 16). The Court agrees and, therefore, finds that this factor weighs in favor of preliminary approval.

*2. The Settlement Was Negotiated at Arm's Length*

Based on Plaintiffs' assertions, the settlement negotiations and resulting Settlement Agreement appear to be the product of arms-length negotiations. Rule 23(e)(2)(B) directs courts to consider whether "the proposal was negotiated at arm's length." This "'procedural' concern[]" requires courts to examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment; *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666-67 (E.D. Cal. 2008) (noting the parties' enlistment of "a prominent mediator with a specialty in [the subject of the litigation] to assist the negotiation of their settlement agreement" as an indicator of non-collusiveness) (*citing Parker v. Foster*, 2006 WL 2085152, at *1 (E.D. Cal. July 26, 2006*); In re Lyft, Inc. Sec. Litig.*, 2022 WL 17740302, at *4 (N.D. Cal. Dec. 16, 2022) (granting preliminary approval where the parties settled "with the assistance of an experienced mediator after two-and-a-half years of litigation, extensive discovery and motion practice, and months of negotiations" and without any "signs of collusion" like reversions or clear-

sailing agreements).

Here, there is evidence of adversarial, arms-length negotiations: it took place after full fact and expert discovery and after the parties "fiercely litigated" the key legal and factual issues in both Actions for over five, nearly six years. (Mot. at 16). Consequently, by the time the Term Sheet was executed, the parties "0thoroughly understood the merits of their claims and defenses and the risks all sides faced at trial and on appeals." (*Id.*). Notably, the proposed Settlement was negotiated under the supervision of Judge Proctor and Randi Ellis and is the product of "vigorous, heavily disputed negotiations," (Ellis Decl. ¶ 8) and was reached only after the mediator conducted a confidential evaluation of Defendants' financial condition (*id.* ¶ 12; Pachman Decl. ¶ 27). The Court is satisfied that the Settlement Agreement was the product of "serious, informed, non-collusive negotiations." *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. Jan. 25, 2026). Accordingly, this factor weighs in favor of preliminary approval.

*3. The Relief Provided is Adequate*

The proposed relief appears to be adequate in that it is reasonable and fair to class members. Rule 23(e)(2)(C) directs the Court to evaluate whether "the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees.; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]"

a. <u>The costs, risks, and delay of trial and appeal</u>

In general, a trial presents a serious risk due to the uncertainty of the outcome and the expensive cost of litigation. "Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. 2015); *See Officers for Justice v. Civil Serv. Comm'n of*

*City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (finding that a proposed class action settlement is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators" given the uncertainty of litigation and avoidance of expensive and protracted litigation).

As this Court recognized in its Order granting class certification, "any individual's efforts to litigate this case involve[s] reliving considerable trauma." (Class Cert. Order at 21). The Court agrees with Plaintiff that, if approved, the Settlement will protect Plaintiffs and Class Members from publicly "reliv[ing] the unconscionable acts they experienced as children," (*id.*) and from potentially having their identities exposed at trial and undergoing a public, adversarial trial (Mot. at 19). Moreover, the risk of litigation is high, given that, in the California Action, the Court has not ruled on Defendants' two pending summary judgment motions, which could eliminate some or all of Plaintiff's claims before trial. (Mot. at 19). There is also litigation risk in the Alabama Action, where there was no guarantee that any victory achieved at trial would survive post-trial litigation or whether Plaintiffs would have secured the same extent of monetary and injunctive relief provided for in the Settlement Agreement. (*See* App'x A; Pachman Decl. ¶ 27).

Here, instead of facing such litigation risk, the parties have reached a settlement for extensive relief for Class Members. As to monetary relief, the Settlement secures a non-reversionary common fund of $120,000,000. Plaintiff highlights that the Settlement Fund *amount* falls well within the range of other comparable class action settlements in cases involving sex trafficking and/or sexual abuse. (Mot. at 17-18 (citing four class actions against defendant banks alleging violations of the TVPRA in connection with Jeffrey Epstein's sex trafficking that settled for between $25 and $290 million)). As to injunctive relief, the Settlement appears to affect and improve how Defendants operate the most popular pornography websites in the world, including by requiring age verification for persons depicted in user-uploaded content, implementing enhanced mandatory content moderation procedures related to CSAM

or suspected CSAM and reporting and banning users who upload suspected or actual CSAM. (*See* Mot. at 17; Settlement Agreement App'x A).

Accordingly, the Court finds that this factor weighs in favor of adequate relief.

b. <u>The effectiveness of the proposed method of distributing relief</u>

"A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re ConAgra Foods, Inc.*, 2022 WL 17243625, at *8 (C.D. Cal. Nov. 14, 2022) (quoting Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment). Plaintiffs contend that "Class Counsel worked in consultation with NCMEC to ensure that the claim form is accessible and sensitive to Class Members' unique needs and experiences," by designing it "to be easy enough to understand and complete without an attorney" and "to collect enough information," while "giving Class Members control over what information to provide and in how much detail," such that it does not deter eligible Class Members. (Mot. at 19-20 (citing Gentle Decl., Ex. E (claim form)); *id.* ¶¶ 12, 16)). The Court finds that the proposed method of distributing relief will adequately deter or defeat unjustified claims, but not be unduly demanding such that deters justified claims, and therefore, weigh in favor of finding that the relief provided by the proposed Settlement is adequate.

c. <u>The terms of any proposed award of attorney's fees</u>

Class Counsel has stated that it intends to request attorneys' fees not exceeding one-third of the Settlement Fund, reimbursement of litigation expenses and costs and services awards. (Settlement Agreement § 6.4). The Settlement Agreement is not conditioned on the Court ordering fees, expenses, or service awards, and does not contain any "clear sailing agreement." *Cf. In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947-48 (9th Cir. 2011) (finding signs of collusion where defendants agreed not to object to attorneys' fees up to a certain amount). Once the request for attorneys' fees is made, the Court will consider the specific circumstances of this matter including the advanced stage of litigation, hearings, motion practice and

extensive discovery in its decision to award attorneys' fees and reasonable expenses. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (finding that an award of 25% of the fund was justified by "excellent results," "extremely risky" litigation and more than a decade of litigation).

Plaintiffs contend that any requested service awards will be justified by the Class Representatives' efforts over the past five years and will reflect the sacrifices they have made in bringing these Actions, including the disclosure of their identities to Defendants and subjecting themselves to depositions and discovery about their trauma. (Mot. at 20). The smaller service awards Class Counsel plans to seek for the prior Jane Does are likewise intended to reflect their initial involvement in the Actions and their willingness to disclose their identities to Defendants and subject themselves to discovery. *See generally Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (analysis considers "risk to the class representative in commencing suit").

Despite that the Court does not have in its possession a request for attorneys' fees or award for Class Representatives at this time, Plaintiffs have indicated that these requests will be addressed prior to the Final Approval Hearing, and therefore, this factor weighs in favor of *preliminary* approval.

d. <u>No Agreement Required to be Identified under Fed. R. Civ. P. 23(e)(3)</u>

The Parties have no agreements "made in connection with the proposal" to disclose other than the Settlement Agreement itself. *See* Fed. R. Civ. P. 23(e)(3); Fed. R. Civ. P. 23(e)(2)(C)(iv). Therefore, this factor does not affect the Court's findings as to the settlement's preliminary approval under Rule 23.

In sum, the Court finds that this factor concerning whether relief is adequate weighs in favor of granting preliminary approval.

*4. The Proposed Settlement Treats Class Members Equitably*

The Court now turns to the last Rule 23(e)(2) factor, which considers whether

"the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D); (*see* Gentle Decl., Ex. D (proposed plan of allocation)). Here, Eligible Class Members who timely submit claims get equal *per capita* payments from the Settlement Fund. (Gentle Decl. ¶¶ 16-18). The Release does not treat any Class Members differently or bear on the apportionment of relief. (Settlement Agreement § 4.1). Likewise, the Settlement's injunctive relief applies equally to every Class Member, including Opt-Outs. (*See* Settlement Agreement App'x A).

Barring any equity concerns related to Class Representatives' future request for an award, this final factor weighs in favor of *preliminary* approval.

**B. <u>The Court Preliminarily Certifies the Settlement Class</u>**

Next, the Court must determine whether the Settlement class may be preliminary and conditionally certified for purposes of judgment under Rule 23(e)(1)(B). Class certification is a prerequisite to preliminary settlement approval. *See Spann v. J.C. Penney Corp*., 314 F.R.D. 312, 319 (C.D. Cal. 2016) ("[A]lthough the fact of settlement is relevant to the class certification analysis, certification must nonetheless meet Rule 23(a) and (b)[] requirements . . . ").[7] Class certification is appropriate only if each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23(a), the plaintiff must show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

---

[7] Ordinarily, in instances where a class is already certified, the only information necessary is whether the proposed settlement "calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Advisory Comm. Notes to 2018 Amendments, Fed. R. Civ. P. 23(e).

Although the California and Alabama Courts already certified the classes at the class certification stage, finding satisfaction of the numerosity, commonality, typicality and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3) (Class Cert. Order; Alabama, Class Cert. Order), Plaintiffs now propose two changes to the class certified by this Court: (1) that the Settlement class period start on February 12, 2011, the Alabama Action's class start date (1 week earlier than the California Action's class start date); and (2) the Settlement class period end December 6, 2024. (Mot. at 13-14).

The certified classes in both Actions were defined as continuing through "present," but the Parties have agreed that the Class definition should run through December 6, 2024, the last day of the final opt-out period in the Alabama Action. (Settlement Agreement § 1.11). The Release likewise runs through December 6, 2024. (*Id.* § 4.1). Because these changes do not alter the reasoning underlying this Court's and the Alabama Court's prior orders granting class certification, this Court preliminarily approves the Settlement class for the same reasons as it did previously. *See Baten v. Michigan Logistics, Inc.*, 2022 WL 17481068, at *4 (C.D. Cal. Dec. 6, 2022) (approving a settlement class previously certified where the only change was an extension of the class period end-date); *Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *3 (N.D. Cal. Oct. 21, 2021) (approving a settlement class previously certified where the class end date changed).

**C. <u>Notice to the Class</u>**

Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Class notice must state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). Notice is satisfactory if it "generally describe[s] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotation marks omitted). It "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Id.*

Here, the Court finds that the proposed Class Notice is satisfactory as it contains the required information under Rule 23(c)(2)(B). (*See* Gentle Decl., Ex. C). It was vetted by an experienced and well-qualified Settlement Administrator and includes all information necessary for Class Members to make informed decisions about whether to object or submit claims and how and when to do so. (*Id.* ¶¶ 7-11). The plan for disseminating notice, including direct email and/or mail notice, digital notice via press releases and media outreach, banner notices on Defendants websites, notice disseminated by NCMEC to its direct service providers, survivors and law enforcement networks, and any other networks or contacts NCMEC and/or C3P deem appropriate, and notice on a case-specific website-constitutes the best notice practicable under the circumstances. *See, e.g., Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1255 (C.D. Cal. 2016) (approving notice plan involving email and email notice, digital publication, and a press release); *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 624-25 (N.D. Cal. 2021) (approving notice plan including email notice, notice on defendant Facebook's website, newspaper publication, a settlement website and an internet ad campaign); Alabama, Order re Notice (Alabama Court approving the same notice plan); Order re Notice (this Court's approving a similar notice plan).

The proposed Class Notice sufficiently informs Class Members of the terms of the Settlement, their rights under the Settlement, their right to object to the Settlement, their right to receive a Settlement Share or elect not to participate in the Settlement and the processes for doing so, and therefore, is approved.

## IV. CONCLUSION

The Court **GRANTS** Plaintiff's Motion and **ORDERS** the following:

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1596 and has personal jurisdiction over the Parties and the Class Members for purposes of these Actions and the contemplated settlement. Venue is proper in this District under 28 U.S.C. § 1391.

2. The Court hereby **PRELIMINARILY APPROVES** the Settlement Agreement and the terms embodied pursuant to Rule 23(e), subject to further consideration at the Final Approval Hearing to be conducted as described below. The Court finds that it will likely be able to approve the Settlement Agreement under Rule 23(e)(2). The Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate as to the Class Members based on the relevant factors under Rule 23(e)(2), subject to the right of any Class Member to challenge the fairness, reasonableness, or adequacy of the Agreement and to show cause, if any exists, why a final judgment dismissing the Action against Defendants, and ordering the release of the Released Claims against the Releasees, should not be entered after due and adequate notice to the Class as set forth in the Agreement and after a hearing on final approval.

3. The Court finds that Plaintiffs and Class Counsel have adequately represented and will continue to adequately represent the Class.

4. The Court appoints Alabama Class Counsel and California Class Counsel as Class Counsel.

5. The Court further finds that the Settlement Agreement is the product of arm's-length negotiations by the Parties with the assistance of The Honorable R. David Proctor of the United States District Court for the Northern District of Alabama and Randi Ellis as mediator.

6. The Court preliminarily finds that the relief provided-including (i) a non-reversionary common Settlement Fund of $120,000,000, plus all interest earned thereon, and (ii) the injunctive relief set forth in the Settlement Agreement and in Appendix A-is adequate considering the costs, risks, and delay of trial and appeal, the alleged harm to Class Members, and the risks associated with continued litigation, trial, and/or appeal. The Court preliminarily finds that the Parties had adequate information, including as to Defendants' financial condition during mediation, to assess the risks associated with collectability of any potential judgment. The Court preliminarily finds that the Settlement Agreement treats the Class Members equitably relative to each other, and that the proposed plan of allocation of Settlement Funds to Eligible Class Members who timely submit valid claims ("Qualified Claimants") is reasonable and equitable.

7. The Court finds under Rule 23(e) that it will likely be able to certify the following settlement Class for purposes of judgment on the proposed Settlement: all persons who were under the age of eighteen when they appeared in a video or image that has been made available for viewing on any website owned or operated by Defendants anytime from February 12, 2011, through December 6, 2024. The settlement Class does not include individuals who have already timely exercised their right to be excluded from the class(es) as certified in the Alabama Action or California Action.

8. The Court hereby appoints Gentle Turner & Benson, LLC ("Gentle") as Settlement Administrator and directs Gentle to carry out all duties and responsibilities of the Settlement Administrator as specified in the Settlement Agreement and herein, including but not limited to the use of a third-party vendor to assist in effectuating class notice and the creation and maintenance of a Qualified Settlement Fund. Funds required to pay

the Settlement Administrator and all Settlement Administration Expenses may be paid from the Settlement Fund as they become due as set forth in the Agreement.

9. Pursuant to Rules 23(e)(1) and 23(c)(2)(B), the Court directs that notice be provided to Class Members in substantially the form as the proposed Notice attached as Exhibit C of the Gentle Declaration and through the notice program described in Section 5 of the Agreement and Paragraphs 7-12 of the Gentle Declaration. (Gentle Decl. ¶¶ 7-12; Ex. C; *see* Settlement Agreement at § 5). The Court finds that the manner of distribution of the Notice constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to the Class and complies fully with the requirements of Rule 23 and the due process requirements of the United States Constitution.

10. Upon entry of this Preliminary Approval Order, the Parties shall begin implementation of the notice program as outlined in Section 5 of the Settlement Agreement and Paragraphs 7-12 of the Gentle Declaration. (*See* Gentle Decl. ¶¶ 7-12, Settlement Agreement § 5).

11. Within 5 business days after entry of this Preliminary Approval Order, Class Counsel will deliver the Notice List to the Settlement Administrator. The Parties agree and understand that if more time is needed to prepare the Notice List, they will agree on another date for delivering the Notice List to the Settlement Administrator, unless otherwise ordered by the Court. Defendants agree to provide all other data in Defendants' possession that is reasonably necessary for Class Counsel to effectuate the distribution of Class Notice and payments to Class Members.

12. On December 4, 2026, a copy of the Notice shall also be posted on the Internet at the Settlement Website. Any Court-approved changes to the

Agreement, or to any filings made in connection with the Agreement, may be posted to that website address, and by doing so, will be deemed due and sufficient notice to Class Members in compliance with Due Process and Rule 23.

13. **Email and Mail Notice**: Subject to the requirements of any orders entered by the Court, on December 4, 2026, the Settlement Administrator shall commence notice by mailing a Class Notice by first-class mail to the mailing addresses on the Notice List, if any, and email a Class Notice to the email addresses on the Notice List. Considering the sensitivity of the subject matter involved in this case, and at the direction of the Settlement Administrator, if an email address is available for a given recipient, Class Notice will not also be mailed to the same person. The Settlement Administrator will run an update of the last known mailing addresses through the National Change of Address database before initially mailing the Class Notice. If a Class Notice is returned to the Settlement Administrator as undeliverable, the Settlement Administrator will endeavor to: (i) re-mail any Class Notice so returned with a forwarding address; and (ii) make reasonable efforts to attempt to find an address for any returned Class Notice that does not include a forwarding address. The Settlement Administrator will endeavor to re-mail the Class Notice to every person in the Notice List for which it obtains an updated address. The Parties agree and understand that if more time is needed to prepare the Notice List and mail Class Notice, they will agree on another date for delivering the Class Notice, unless otherwise ordered by the Court. The mailing or emailing of a Class Notice to any person or entity that is not in the Class shall not render such person or entity a part of the Class or otherwise entitle such person to participate in this Settlement.

14. **Digital Notice**: Subject to the requirements of any orders entered by the Court, on Decemberr 4, 2026, the Settlement Administrator shall commence media outreach and digital efforts and publish a press release to selected newswires as described in this Action at Dkt. No. 259 and the Alabama Action at Dkt. No. 179 (but only to the extent approved by the Court in the Alabama Action in Dkt. No. 199).

15. **Banner Notice on Defendants' Websites**: Subject to the requirements of any orders entered by the Court, on December 4, 2026, Defendants will post the banner notice on Defendants' websites as described in the Alabama Action at Dkt. No. 208 and the exhibits thereto. Posting of banner notices will terminate on the day after the deadline to submit claims. The deadline to submit claims shall be April 5th, 2027.

16. **NCMEC Notice**: Subject to the requirements of any orders entered by the Court, no later than 5 business days after entry of this Preliminary Approval Order, Class Counsel will provide the Class Notice to the National Center for Missing & Exploited Children ("NCMEC") as well as the Canadian Centre for Child Protection ("C3P") to disseminate to NCMEC's direct service providers network, law enforcement victim advocates, and survivor network, and any other networks or contacts NCMEC and/or C3P deem appropriate.

17. **CAFA Notice**: Pursuant to 28 U.S.C. § 1715, by November 16, 2026, Defendants, through the Settlement Administrator, shall cause notice of the proposed Settlement and all materials required by 28 U.S.C. § 1715 to be served upon the appropriate Federal official and the appropriate State official of each State in which a Class Member resides, and any other government official required under Section 1715. The Settlement Administrator shall provide all Counsel with confirmation of service promptly after service is completed and shall

serve any supplemental CAFA notice reasonably required by law or order of the Court.

18. Class Members may object to this Settlement by filing a written objection with the Court and sending a complete copy to the Settlement Administrator by mail or email no later than forty-five (45) days after the Notice Date (the "Objection Deadline"), which is January 18, 2026. Any Class Member who intends to object to this Settlement must present the objection in writing, which must be personally signed by the objector and must include: (1) the Class Member's full name telephone number, current address, and email address, if any; (2) a URL or video/image title, or some other form of identification to indicate that the Class Member is a member of the Class (i.e., a copy of a content removal request relating to content depicting the Class Member, or any other communication to Defendants or a third-party regarding such content appearing on Defendants' Websites); (3) a written statement of all grounds for the objection accompanied by any legal support for the objection (if any); (4) copies of all documents or writings that the Class Member desires the Court to consider, although absolutely NO video or images should be attached (Class Members who allege to have videos or images should contact the Settlement Administrator for further instruction); (5) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; (6) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel, who must file an appearance or seek pro hac vice admission in accordance with the Local Rules); and (7) the signature of the Class Member and/or his/her counsel (if represented by separate

counsel for purposes of the objection). All written objections must be filed with the Court no later than the Objection Deadline with a complete copy sent to the Settlement Administrator by mail or email also by the Objection Deadline. To the extent that the objection contains or attaches confidential documents or personally identifying information, the objector may seek leave from the Court to file those documents under seal and/or with any personal information redacted or using a pseudonym in the publicly filed version of the objection, subject to the Court's discretion. Unless otherwise ordered by the Court, any Class Member who fails to timely file a written objection with the Court in accordance with the terms of this Paragraph shall not be permitted to object to this Settlement at the Final Approval Hearing, shall be foreclosed from seeking any review of this Settlement or Final Judgment by appeal or other means, and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Actions or any other action or proceeding. The Class Notice shall advise Class Members of their right to object and the manner required to do so.

19. Any Eligible Class Member who objects to the Settlement and submits a timely claim form and thus becomes a Qualified Claimant shall nevertheless be entitled to all benefits of the Settlement if it is approved and becomes final.

20. The Court hereby finds that the proposed form and content of the Settlement notice is the best notice practicable, is reasonable, due, adequate, and sufficient notice, and is reasonably calculated, under the circumstances, to apprise the Class Members of their rights, including their right to object to the Settlement or submit claims, as set forth in the notice, and will give the Class Members sufficient information to enable

them to make informed decisions about the proposed Settlement and its terms.

21. The Court hereby finds that the notices of the pendency of the class actions, which were distributed in 2024, were the best notices practicable, were reasonable, adequate, and sufficient notice, and were reasonably calculated, under the circumstances, to apprise the Class Members of their rights, including their right to opt out of the Class at that juncture, as set forth in the notices, and fully satisfied the requirements of due process and all other applicable provisions of law.

22. The Court approves the form and content of the proposed Claim Form attached as Exhibit E to the Gentle Declaration, approves the plan of allocation set forth in Exhibit D to the Gentle Declaration, and directs Class Counsel and the Settlement Administrator to implement the claims process as specified therein. (Gentle Decl., Ex. E; *id*., Ex. D).

23. The Court will hold a Final Approval Hearing on February 26, 2027, at 1:30 p.m. The purposes of the Final Approval Hearing will be to: (i) determine whether the proposed Settlement Agreement should be finally approved by the Court as fair, reasonable, adequate, and in the best interests of the Class; (ii) determine whether judgment should be entered pursuant to the Settlement Agreement, dismissing the Action with prejudice and releasing the Released Parties of all Released Claims as set forth in the Settlement Agreement; (iii) determine whether the proposed Settlement class should be certified for settlement purposes; (iv) rule on Class Counsel's motion for attorneys' fees, costs, and service awards; (v) consider any properly filed objections; and (vi) consider any other matters necessary in connection with the final approval of the Settlement Agreement.

24. By January 4, 2027, Plaintiffs and Class Counsel shall file their motion for attorneys' fees, costs, and service awards. This document shall be posted on the Settlement Website within one (1) business day of filing.

25. By February 3, 2027, Plaintiffs and Class Counsel shall file their motion for final approval of the Settlement Agreement and any responses to any Class Member objections.

26. The deadline to submit notices of appearance for the Final Approval Hearing shall be February 8, 2027.

27. The Court may, in its discretion, modify the date and/or time of the Final Approval Hearing. In the event the Court changes the date, time, and/or the format of the Final Approval Hearing, the Parties shall ensure that the updated information is posted on the Settlement Website.

28. Only Class Members who have submitted timely and valid objections, in accordance with the requirements of this Preliminary Approval Order, may be heard at the Final Approval Hearing.

29. If the Settlement Agreement, including any amendment made in accordance therewith, is not approved by the Court or shall not become effective for any reason whatsoever, the Settlement Agreement and any actions taken or to be taken in connection therewith (including this Preliminary Approval Order and any judgment entered herein), shall be a nullity, and none of its terms shall be effective or enforceable, and the Settlement Fund, including any accrued interest, less any taxes, notice related expenses, and reasonable administrative costs paid and/or incurred, shall be returned to the persons or entities paying the same within thirty (30) business days of termination. Additionally, the Parties shall revert to their litigation positions in both this Action and the Alabama Action immediately prior to the execution of the Term Sheet on June 17, 2026, and the fact and terms of the Settlement shall not be

admissible in any trial or other proceeding, shall not be deemed an admission of liability or wrongdoing by any party, and shall not be used against any party for any purpose.

30. Neither this Order, the Agreement, the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Agreement or Settlement is or may be used as an any concession or admission of liability, wrongdoing, fault, violation of law, or actionable conduct, including but not limited to any concession or admission concerning Defendants' entitlement to the immunities set forth in 47 U.S.C. § 230, whether Defendants' alleged conduct constitutes "participation in" sex trafficking or renders them "perpetrators of" a sex trafficking venture under 18 U.S.C. § 1595 as a matter of law, or whether this Court has personal jurisdiction over any of the Defendants for purposes of any other proceeding.

31. Neither this Order, the Agreement, the Settlement contained therein, nor any act performed, or document executed pursuant to or in furtherance of the Settlement is or may be used as an admission or evidence that the claims of Plaintiffs or the Class lacked merit in any proceeding.

32. Other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement, all proceedings in the Action are hereby stayed and suspended until further order of this Court.

33. The Court retains jurisdiction over this Action to consider all further matters arising out of or connected with the Settlement, including enforcement of the Settlement payment obligations set forth in the Settlement Agreement and the Release provided for in the Settlement Agreement.

34. The Parties are directed to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement according to its terms should it be finally approved.

35. The Court may, for good cause, extend any of the deadlines set forth in this Preliminary Approval Order without further notice to Class Members. In the event the Court extends any such deadlines, the Parties shall ensure that the updated information is posted on the Settlement Website.

36. The Court hereby adopts the following schedule for events and Court submissions which must be completed prior to the Final Approval Hearing:

**IT IS SO ORDERED.**

Dated: November 9, 2026

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE